UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

        Plaintiff,

v.                                        CIVIL ACTION NO.:  1:17-CV-52
                                        Honorable Irene M. Keeley

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

        Defendants.

DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER
RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY'S
REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

## I.      INTRODUCTION

In his response brief, Plaintiff Scott T. Ballock attempts to overcome the factual

shortcomings of his Amended Complaint by making new allegations not contained in the

pleading or by misrepresenting the facts that are alleged.  Defendants State Troopers Michael

Kief, Ronnie M. Gaskins, and Chris Berry (collectively, the "State Police Defendants"),

however, moved to dismiss the Amended Complaint as it was written, not as Mr. Ballock has

attempted to rewrite it in his response.

As to the merits of the Motion to Dismiss, Mr. Ballock remarkably attempts to disavow

the very document that forms the basis of many of his claims, arguing on the one hand that the

agreement that led to the dismissal of the criminal charges underlying his malicious prosecution

claims is a "fugitive document," which should not be considered by the Court, while arguing on

the other hand that Defendant Ellen Ruth Costlow breached the terms of that same agreement.

The fact remains, however, that in order to gain dismissal of the criminal charges against him, Mr. Ballock represented to the Monongalia County, West Virginia Magistrate Court that probable cause existed for his arrest, thereby negating an essential element of his malicious prosecution claims.

Finally, Mr. Ballock fails to identify any factual allegations that push his remaining causes of action across the line from conceivable to plausible.  Therefore, the Court should dismiss all counts against the State Police Defendants.

## II.   PLAINTIFF MAKES NEW FACTUAL ALLEGATIONS OR MISREPRESENTS FACTUAL ALLEGATIONS MADE IN THE AMENDED COMPLAINT

Mr. Ballock makes numerous new factual allegations in his response brief or misrepresents the facts that actually were alleged in the Amended Complaint.  The following are merely among the most notable factual issues in the response brief:

- "Eventually, Ballock was ultimately able to present his side of the story to the Monongalia County Prosecutor, who recognized the injustice and agreed to dismiss the charges."  Resp. Br. 2 (ECF No. 21).  There is nothing in the Amended Complaint alleging that the Prosecutor "recognized the injustice" Mr. Ballock claims was inflicted on him.  To the contrary, the Prosecutor agreed to dismiss the charges against Mr. Ballock as part of an overall agreement between the Prosecutor, Mr. Ballock, and Ms. Costlow.  Memo. in Support of Mot. to Dismiss, Ex. A (ECF No. 16-1).

- "the deliberate use of false and manufactured evidence"  Resp. Br. 7.  There are no allegations in Amended Complaint that the State Police Defendants deliberately used false or manufactured evidence.

- "withholding the exculpatory truth"  *Id.* at 20.  Again, it is not alleged in the Amended Complaint that the State Police withheld any exculpatory evidence from either Mr. Ballock or the magistrate who issued the arrest warrant.

- "These lies [as set forth in ¶¶ 63-64 of the Amended Complaint] were among those incorporated by Gaskins."  *Id.* at 22.  Paragraphs 63 and 64 of the Amended Complaint allege that Ms. Costlow sent an e-mail *to her attorneys*, indicating that Mr. Ballock threatened and abused her, but that Mr. Ballock did not do so.  Am. Compl. ¶¶ 63-64 (ECF No. 14).  Nowhere in the Amended Complaint is it alleged that these

allegations were incorporated by Trooper Gaskins in his report.  It is not even alleged that any of the State Police Defendants were aware of this e-mail Ms. Costlow allegedly sent her attorneys.

- "[Trooper Gaskins's] report's role in the continued prosecution is a matter of fact and legal procedure"  Resp. Br. 23.  Nothing in the Amended Complaint ties the incident report allegedly prepared by Trooper Gaskins to the prosecution of Mr. Ballock.

Mr. Ballock's attempts to use his response brief to raise new factual allegations and to attempt to tie existing factual allegations to matters that they were not related to in the Amended Complaint should not be permitted.  *See Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 879 (S.D. W. Va. 2014) (declining to consider new allegations, which were raised for the first time in response to a motion to dismiss).

## III.   PLAINTIFF FAILS TO IDENTIFY ANY FACTS THAT MAKE HIS CLAIMS PLAUSIBLE

### A. The Dismissal Agreement Mr. Ballock Signed Bars His Malicious Prosecution Claims.

Mr. Ballock understandably spends nearly half of his response brief attempting to explain away the agreement that led to the dismissal of the criminal charges against him.  Resp. Br. 4-14.  Mr. Ballock is merely "trying to have his cake and eat it, too," however.  All his efforts fail, and this Court should dismiss his malicious prosecution counts because of his admission during the underlying criminal proceedings that there was probable cause for his arrest.

#### 1.   The Dismissal Agreement Is Not a "Fugitive Document" Because Mr. Ballock Refers to, and Explicitly Relies Upon, the Agreement in the Amended Complaint.

Mr. Ballock first argues that the dismissal agreement is a "fugitive document" that cannot be considered in a motion to dismiss because Defendants did not authenticate it, demonstrate its admissibility, or request that the Court take judicial notice of it.  *Id.* at 5.  Mr. Ballock's efforts are misguided because he fails to recognize that he explicitly referred to and relied upon the

agreement in the Amended Complaint.  Therefore, the Court may consider the agreement when deciding a motion to dismiss.

A court may consider documents attached to a motion to dismiss if they are "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge [their] authenticity."  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation and citation omitted).

Here, Mr. Ballock expressly refers in his pleading to the dismissal of the criminal charges against him, which was carried out by means of the magistrate court order that is part of Exhibit A to the State Police Defendants' dismissal brief.  Am. Compl. ¶ 55.  Indeed, because his malicious prosecution counts depend upon a favorable outcome in the underlying criminal matter, the dismissal order and attached agreement are expressly relied upon in support of those counts.  In addition, he expressly refers to the motion to dismiss the criminal charges and the attached agreement in the pleading.  *Id.* at ¶ 117.  Incredibly, Mr. Ballock is attempting to bring into question the very document that forms the basis of his breach of contract claim against Ms. Costlow.  *Id.* at ¶ 241.

Importantly, while Mr. Ballock argues that Defendants did not authenticate the agreement or demonstrate its admissibility, at no point in the response brief does he challenge its authenticity.  Indeed, he cannot, as his malicious prosecution and breach of contract claims depend upon that document.

Mr. Ballock claims that authority cited by the State Police Defendants does not support allowing the Court to consider the dismissal agreement in a motion to dismiss because in one case, the appellate court reversed the lower court's dismissal.  Resp. Br. 5 (citing *Zak v. Chelsea*

*Therapeutics Int'l*, 780 F.3d 597, 604 (4th Cir. 2015)).  Mr. Ballock ignores other controlling authority cited by the State Police Defendants, which affirmed the dismissal of claims after the trial court considered extrinsic documents that were referred to and relied upon by the plaintiffs in their complaints.  *Trigon Healthcare*, 367 F.3d at 234-35; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that, in considering Rule 12(b)(6) motions, courts are to consider "documents incorporated into the complaint by reference").

Mr. Ballock also complains that "Defendants make no effort to request judicial notice" of the dismissal agreement.  Resp. Br. 5.  That is because there is no need for the Court to take judicial notice of the document; Mr. Ballock expressly refers to the agreement in the Amended Complaint and relies upon it to support his malicious prosecution and breach of contract claims.

Mr. Ballock expressly referred to the magistrate court dismissal agreement in the Amended Complaint, and it is integral to his malicious prosecution and breach of contract claims.  He does not challenge the authenticity of the document.  Therefore, the Court may properly consider the document in deciding a Rule 12(b)(6) motion.

## 2.   The Dismissal Agreement May Be Used to Contradict the Allegations Made in the Amended Complaint.

Mr. Ballock next tries to avoid his admission of probable cause by arguing that the dismissal agreement may not be used to contradict the allegations he made in the Amended Complaint.  Resp. Br. 6 (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013)).  Mr. Ballock fails to appreciate that in *Clatterbuck*, the court found it was improper for the trial court to take judicial notice of public records—city council meeting archives—in deciding a motion to dismiss.  *Clatterbuck*, 708 F.3d at 557-58.  The records at issue in *Clatterbuck*, unlike the dismissal agreement at issue here, were not expressly referred to or relied

upon by the plaintiff in the complaint.  To the contrary, where, as here, a plaintiff expressly refers to an extrinsic document in the complaint and relies upon that document as the basis of a claim, a court may consider it in a motion to dismiss without converting the motion into one for summary judgment.  *Elliot v. AAA Ins.*, Civil Action No. 5:15CV146, 2016 WL 2766651, at *5 (N.D. W. Va. May 12, 2016) (considering settlement agreement extrinsic to plaintiffs' complaint in Rule 12(b)(6) motion, when the settlement agreement was "central to the plaintiffs' claims" and plaintiffs repeatedly referred to the agreement throughout the complaint).

In this case, Mr. Ballock represented to the magistrate court in the underlying criminal proceeding that there was probable cause for his arrest; now, he attempts to plead to this Court that there was not probable cause for his arrest.  As the State Police Defendants argued in their opening brief, he is estopped from doing so.

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.  The purpose of the doctrine is to prevent a party from playing fast and loose with courts, and to protect the essential integrity of the judicial process."  *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) (internal quotation and citation omitted).  There are three elements that must be present in order for a court to apply judicial estoppel:  (1) the party sought to be estopped must be attempting to take a position that is inconsistent with one taken in prior litigation; (2) the prior inconsistent position must have been accepted by a court; and (3) the "determinative factor" is that the party sought to be estopped must have intentionally misled the court in order to gain an unfair advantage.  *Id.* at 224.

Judicial estoppel prevents a party from entering into an agreement in one judicial proceeding, then disavowing the facts contained in that agreement in a subsequent judicial proceeding.  In *Lowery*, the plaintiff filed a Section 1983 action against police officers, alleging that they had used excessive force against him by shooting him during his arrest.  *Id.* at 221. While the civil case was pending, the plaintiff pled guilty in the underlying criminal case to

6

maliciously assaulting one of the officers. *Id.* Based upon the plaintiff's guilty plea, the officers moved for summary judgment. *Id.* at 222. The plaintiff argued that summary judgment was inappropriate because there was a factual dispute as to what happened during the shooting. *Id.*

The district court held that judicial estoppel precluded the plaintiff from disputing that he maliciously attacked one officer before the other shot him, and the Fourth Circuit affirmed. *Id.* The appellate court reasoned that the plaintiff had taken a contrary position in the criminal proceeding from that in the civil action—that he had maliciously attacked the officer; the trial judge in the criminal matter accepted that position when he accepted the plaintiff's guilty plea; and after receiving the benefit of the bargain in the criminal case, the plaintiff attempted to have it the other way in the civil action by denying he had maliciously attacked the officer. *Id.* at 224-25. Consequently, the court held that the trial court did not err in finding judicial estoppel precluded the plaintiff from arguing that he did not attack the officer. *Id.* at 225.

Applying the *Lowery* factors to this case, it is clear that judicial estoppel precludes Mr. Ballock from disavowing his previous admission that there was probable cause for his arrest. He is making a factual allegation in this matter—that there was no probable cause for his arrest— that is flatly inconsistent with the position he took in the underlying criminal matter. Contrary to Mr. Ballock's argument, the existence of probable cause is not a "legal conclusion," but a question of fact. *Alexander v. Alexander*, 229 F.2d 111, 117 (4th Cir. 1956) (noting that the existence of probable cause is a question of fact); *Kingsland v. City of Miami*, 382 F.3d 1220, (11th Cir. 2004) (observing that it is well settled that the existence of probable cause in a malicious prosecution action is a question of fact). Mr. Ballock's position was accepted by the magistrate court: The agreement was attached to the motion to dismiss submitted to, and the

order signed by, the magistrate.  ECF No. 16-1.  Finally, as to the "determinative factor," Mr. Ballock is intentionally misleading this Court in order to gain an unfair advantage in this case. By agreeing that there was probable cause for his arrest, Mr. Ballock received a dismissal of the criminal charges against him, the favorable outcome essential to his malicious prosecution claims.  After Mr. Ballock carried out his part of the bargain, the State kept its word and moved to dismiss the criminal charges against Mr. Ballock.  But, after receiving the benefit of the dismissal, Mr. Ballock now wants to have it the other way, arguing that he was arrested without probable cause.  *See Lowery*, 92 F.3d at 225.  As the Fourth Circuit noted in *Lowery*, this situation is particularly galling, and "[t]here certainly should be an estoppel in such a case." *Id.* (quotation and citation omitted).

Because the principles of judicial estoppel apply, the dismissal agreement Mr. Ballock signed in the underlying criminal case may be used to contradict the factual allegations in the Amended Complaint.

### 3.   The Dismissal Agreement Is Not a "Release-Dismissal" Agreement.

Next, Mr. Ballock paradoxically admits that the dismissal agreement he signed is not a "release-dismissal" agreement, but nonetheless argues that it should be treated as one.  Resp. Br. 8.  Mr. Ballock expressly acknowledges that the agreement he signed "[d]oes [n]ot [c]onstitute a release-[d]ismissal [a]greement," and "does not contain an actual release."   *Id.* at 8-9. Nevertheless, he argues that it should be treated as a release-dismissal agreement and not enforced.

The dismissal agreement in this case is not a release-dismissal agreement.  It was not just between Mr. Ballock and the State, but among three parties—Mr. Ballock, the State, and the complainant, Ms. Costlow, each of whom agreed to take or forego certain actions.  As Mr.

8

Ballock acknowledges, it does not release anyone from liability.  Contrary to his assertion, the State Police Defendants do not argue that it acts "as a complete bar and release."  *Id.* at 8.  The State Police Defendants merely argue that it negates one element of his malicious prosecution claims.  They do not raise the agreement as a defense to Mr. Ballock's other claims.  Because the dismissal agreement in this case does not act as a release, the *Rumery* factors identified by Mr. Ballock do not apply.

Even if the Court should consider the agreement as a release-dismissal agreement, however, application of the *Rumery* factors argue in favor of its enforcement.  First, the agreement was not presented to Mr. Ballock immediately after his arrest, but nearly three years later.  Resp. Br. 20; *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 353 (4th Cir. 2003).  Second, as an FBI agent, Mr. Ballock is presumably knowledgeable and experienced in criminal matters.  *Town of Newton v. Rumery*, 480 U.S. 386, 401 (1987) (O'Connor, J., concurring).  Third, the charges that were dismissed through the agreement were only misdemeanor charges; therefore, the likelihood Mr. Ballock was unduly coerced is "particularly small."  *Rodriguez*, 338 F.3d at 354.  Fourth, there was a legitimate criminal justice objective for the State to enter into the agreement—saving the expense of a three-year prosecution for misdemeanor counts for which the underlying conduct might best be addressed by the family court.  *See Rumery*, 480 U.S. 399-400 (noting that sparing the local community the expense of litigation associated with minor crimes for which there may be little public interest may be a legitimate objective).  Fifth, and finally, Mr. Ballock was represented by counsel when he signed the agreement.  *Id.* at 401.  The facts as alleged in the Amended Complaint and as shown by the dismissal agreement prove

that the agreement was voluntarily made, not the product of prosecutorial overreaching, and in the public interest.  Therefore, it should be enforced.

### 4. Mr. Ballock Has Alleged No Facts to Show That He Was Arrested Without Probable Cause.

At the end of the day, Mr. Ballock can show no reason why he should not be held to the agreement he executed in order to gain dismissal from the criminal charges he faced.  Mr. Ballock has presented no evidence that his arrest was not supported by probable cause, other than bald, unsupported allegations.  Am. Compl. ¶¶ 164, 184.  These are not enough to survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for . . . malicious prosecution.  This is so even where the defendant officers allegedly acted upon a malicious motive."  *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).  Here, Mr. Ballock himself admitted his arrest was supported by probable cause.  Additionally, he was arrested pursuant to an arrest warrant issued by a magistrate.  Am. Comp. at ¶ 40.  Mr. Ballock does not allege that the magistrate lacked probable cause to issue the warrant , or that the State Police Defendants deliberately or recklessly made false statements or material omissions to the magistrate, such that the magistrate would not have probable cause to issue the warrant.  *See Smith v. Almeda*, 640 F.3d 931, 937 (9th Cir. 2011).

Mr. Ballock does not allege any facts to show that his arrest was unsupported by probable cause.  To the contrary, he alleges he was arrested pursuant to a warrant issued by a magistrate. In the magistrate court dismissal agreement, expressly referenced in the Amended Complaint and upon which his malicious prosecution claims depend, he agreed that there was probable cause for

his arrest.  Consequently, the Court should dismiss both Mr. Ballock's Section 1983 and state law malicious prosecution claims.

### B.  Mr. Ballock Does Not Identify Any Facts Alleged in the Amended Complaint That Make His Remaining Claims Plausible.

In his response brief, Mr. Ballock does not identify any alleged facts that make his remaining claims plausible.  Therefore, all of his claims against the State Police Defendants should be dismissed.

Mr. Ballock does not address at all the State Police Defendants' argument that Count 14, "Color of Law," fails to state claim.  Presumably, he has no opposition to the dismissal of that count.

As to Count 3, the Section 1983 "access to courts" claim, Mr. Ballock does not address the fact that *he is currently in court*; therefore, he has failed to state a claim.  Furthermore, he does not identify any facts that make it plausible that the unnamed State Trooper who allegedly visited his work place did so at the State Police Defendants' request or with their knowledge.  He also identifies no facts to make it plausible that the unnamed trooper was acting with the authority of, or the approval of, the State of West Virginia.  Therefore, he has alleged no fact to show that the officer was acting under color of law.

Mr. Ballock's Tortious Interference with Contract claim is also based upon the alleged visit by an unnamed trooper.  Therefore, it also should therefore be dismissed for failure to plead any fact to connect the alleged visit by the unnamed trooper to the State Police Defendants, for failure to show the trooper was acting under color of law, and also on the additional ground that Mr. Ballock has alleged no fact to show that his employment relationship was harmed by this visit.  In fact, Mr. Ballock concedes that he does not yet have facts to "flesh out the causal

11

connection between [the visit by the unnamed trooper] and his reputational and career damages." Resp. Br. 14.

Mr. Ballock does not identify any facts to make his Section 1983 or state law abuse of process claims plausible.  As acknowledged by Mr. Ballock, the Fourth Circuit has not yet recognized an abuse of process theory under Section 1983.  *Id.* at 18.  Other courts, however, have rejected the theory.  *Cloutier v. Town of Epping*, 714 F.2d 1184, 1190 (1st Cir. 1983) (observing that neither the Fourteenth Amendment nor the Civil Rights Act secures a person against abuse of process, especially when state laws provide a remedy).

Moreover, any abuse of process claim is barred by the statute of limitations.  Mr. Ballock argues that his abuse of process claims did not accrue until he received a favorable outcome in the underlying criminal proceedings.  Resp. Br. 17 (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)).  Mr. Ballock fails to recognize that *Brooks* involved a malicious prosecution claim, not an abuse of process claim.  *Brooks*, 85 F.3d at 183.  The State Police Defendants concede that Mr. Ballock's malicious prosecution counts are timely.  But because a favorable outcome is not an essential element of an abuse of process claim, the action accrues, and the statute of limitations begins to run, from the termination of the last act that constitutes the abuse, not from the completion of the action for which the process was issued.  *Preiser v. MacQueen*, 177 W. Va. 273, 280, 352 S.E.2d 22, 29 (1985).

Although Mr. Ballock argues that the Amended Complaint alleges acts beyond his arrest, this is not supported by the facts alleged in the pleading; the only allegations against the State Police Defendants related to Mr. Ballock's criminal proceeding are that they investigated and arrested him.  The last act by any of the State Police Defendants related to Mr. Ballock's

12

criminal charge is his arrest on September, 13, 2013.  Am. Compl. ¶ 34.  The additional "allegations" Mr. Ballock points to in his response brief either occurred more than two years before he filed the complaint in this case or do not involve the State Police Defendants.  Resp. Br. 19-20.

Mr. Ballock's arguments that the Amended Complaint alleges the State Police Defendants continued his prosecution or "dumped" the case in the prosecutor's lap are puzzling. Resp. Br. 16-17.  It is axiomatic that it is the prosecutor, not the police, who decides whether to prosecute a case or continue the prosecution.  *See Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976) (noting that the duties of a prosecutor include deciding whether and when to prosecute and whether to dismiss a case).  In every case, the police "dump" the case in the prosecutor's lap, as it is the prosecutor who must prosecute the case.  This general allegation of "continuing" his prosecution, lacking any factual development tying the conduct to any of the State Police Defendants, is not enough to overcome the statute of limitations.

Similarly, Mr. Ballock does not identify any facts to save his Section 1983 and state law defamation claims.  It is important to remember that the defamation claims are pled against *only* Trooper Gaskins and Ms. Costlow.  Am. Compl. ¶¶ 193-210.  Mr. Ballock does not allege any facts besides that Trooper Gaskins completed the report on September 2, 2013.  *Id.* at ¶ 67. Thus, the statute of limitations for a slander claim expired on September 2, 2014.

Turning beyond the statute of limitations issue, however, as addressed in the State Police Defendants' opening brief, a Section 1983 defamation claim must allege that the defamation caused a change to or extinguished an individual's legal status.  Memo. in Support of Mot. to Dismiss 17 (citing *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314-15 (4th Cir. 2012)).  Mr.

Ballock does not identify in his response brief any alleged facts that demonstrate a change to his legal status as a result of Trooper Gaskins's incident report.  Instead, Mr. Ballock identifies allegations related to the criminal proceeding, or damages that were supposedly caused by Ms. Costlow, not Trooper Gaskins.  Even then, he does not and cannot allege that he has lost his job as a result of the incident report prepared by Trooper Gaskins.  To the contrary, he argues that "his status has changed by a pending investigation and his employment status is the subject of a review that *may* result in his termination."  Resp. Br. 21 (emphasis added).  This is insufficient to state a Section 1983 defamation claim.  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) ("[A]ction which inflicts a stigma on the reputation of a plaintiff causing that plaintiff hardship in obtaining employment is harm to reputation that does not rise to the level of constitutional deprivation.")

Also, Mr. Ballock does not identify any allegation to show that Trooper Gaskins communicated the statements in the incident report to a third person without privilege.  Instead, Mr. Ballock asks the Court to *assume* facts not pled in the Amended Complaint—that the identification number of the report demonstrates that it was reported and that the report was used, and its statements repeated, in the criminal proceedings.  Resp. Br. 23.  This is improper under the *Twombly/Iqbal* standard.  Yet, even if the statements allegedly found in Trooper Gaskins's report were repeated during the criminal proceedings, those communications would be privileged.  *Lightfoot v. Floyd*, 667 So. 2d 56, 69-70 (Ala. 1995) (noting that communications in an investigator's incident report would likely be privileged because making reports is usually a discretionary function within the scope of a police officer's authority).  Mr. Ballock attempts to get around this factual deficiency by claiming that the State Police Defendants believe Trooper

14

Gaskins's report was absolutely privileged and by arguing that the question of privilege is one of fact.  Resp. Br. 23-24.  The question here is not whether the report would be absolutely or qualifiedly privileged, or whether a qualified privilege was abused.  The dispositive issue is that Mr. Ballock did not make *any* allegation that Trooper Gaskins made an unprivileged communication of the contents of his report to a third person.  There can be no factual dispute if there are no facts alleged.

Finally, Mr. Ballock does not identify any facts alleged in the Amended Complaint to show any outrageous conduct by Sgt. Kief or Trooper Gaskins.  The allegations he points to involving Trooper Berry—that he "surveilled *and harassed* Ballock *and his children*" and that he "encouraged and supported the prosecution of plaintiff for three years"—are not contained in the Amended Complaint. Resp. Br. 24-25 (emphasis added).  Instead, Mr. Ballock alleges that Sgt. Kief arrested Mr. Ballock, pursuant to an arrest warrant.  Am. Comp. ¶¶ 34, 40.  This conduct cannot support an intentional infliction of emotional distress claim.  Moreover, Mr. Ballock does not identify any allegations of severe emotional distress beyond mere "legal conclusions and labels."  *Patrick v. PHH Mortg. Corp.*, 937 F. Supp. 2d 773, 791 (N.D. W. Va. 2013).

## IV.    CONCLUSION

WHEREFORE, for all the reasons above, as well as those discussed in their opening brief, Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry respectfully request that the Court GRANT their Motion and enter an Order dismissing Plaintiff Scott T. Ballock's claims against them and that an award for costs, including any attorney fees, be awarded to them.

7748090

Dated this 14th day of August 2017.

Respectfully submitted,

*/s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper*
*Michael Kief, State Trooper Ronnie M.*
*Gaskins, and State Trooper Chris Berry*

16

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT T. BALLOCK,**

   **Plaintiff,**

**v.**               **CIVIL ACTION NO.:  1:17-CV-52**
                 **Honorable Irene M. Keeley**
**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M.**
**GASKINS, AND STATE TROOPER**
**CHRIS BERRY,**

   **Defendants.**

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that, on the 14th day of August 2017, I filed the foregoing "*Defendants*

*State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris*

*Berry's  Reply to Plaintiff's Response in Opposition to Motion To Dismiss*" with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

        Frederick R. Juckniess, Esq.
        302 E. Liberty St., Suite 203
        Ann Arbor, MI 48104

        Charles J. Crooks, Esq.
        CROOKS LAW FIRM PLLC
        244 Pleasant Street
        Morgantown, WV 26505
        *Counsel for Plaintiff*

        P. Todd Phillips, Esq.
        P. TODD PHILLIPS & ASSOCIATES
        235 High Street, Suite 322
        Morgantown, WV  26505

        *Counsel for Defendant Ellen Ruth Costlow*

17

7748090

**/s/ Mark G. Jeffries**
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

18

7748090