# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### CLARKSBURG

**SCOTT T. BALLOCK**

    **Plaintiff,**            **Case No.: 1:17-CV-52**
                    **(JUDGE KEELEY)**
v.

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,** and
**STATE TROOPER CHRIS BERRY,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

   This matter is before the undersigned pursuant to a referral order entered by Senior Judge Irene M. Keeley on April 6, 2017. (ECF No. 5).  Plaintiff filed a *pro se* complaint on April 6, 2017. (ECF No. 1). On May 2, 2017, the Defendants Kief, Gaskins, and Berry (the "Trooper Defendants") filed a joint motion to dismiss for failure to state a claim. (ECF Nos. 12 & 13). Plaintiff, still *pro se*, filed an amended complaint on May 25, 2017. (ECF No. 14). Thereafter, the Trooper Defendants filed a second motion to dismiss on June 8, 2017. (ECF Nos. 15 & 16). Defendant Costlow subsequently also filed a motion to dismiss on June 9, 2017. (ECF No. 18). On July 6, 2017, Plaintiff – by counsel, at that point – filed memoranda in opposition to the Trooper Defendants' (ECF No. 21) and Defendant Costlow's (ECF No. 22) motions to dismiss. Replies to Plaintiff's response in opposition to the motions to dismiss were filed by the Trooper Defendants on August 14, 2017 (ECF No. 32), and by Defendant Costlow on August 17, 2017 (ECF No. 33).

On October 13, 2017 came the parties for a motion hearing – Plaintiff by counsel Frederick Juckniess, Esq., and Charles Crooks, Esq.; Defendant Costlow by counsel P. Todd Phillips, Esq.; and the State Trooper Defendants (Kief, Gaskins, and Berry) by counsel Mark Jeffries, Esq. The parties presented oral arguments on the motion for leave to file a second amended complaint – which was granted (ECF No. 44), and Plaintiff's second amended complaint subsequently docketed (ECF No. 45) – and on the motions to dismiss. Accordingly, this matter is now ripe for consideration.

## II.    Contentions of the Parties

**1. Plaintiff's Second Amended Complaint**

Plaintiff's second amended complaint contains fourteen (14) claims for relief:

- Abuse of Process, against all Defendants, in violation of 42 U.S.C. § 1983 (Claim 1) and West Virginia State Law (Claim 4);

- Malicious prosecution, against all Defendants, in violation of 42 U.S.C. § 1983 (Claim 2) and West Virginia State Law (Claim 5);

- Violation of First Amendment right to seek redress in the Courts in violation of 42 U.S.C. § 1983 (Claim 3);

- Conspiracy, against all Defendants (Claim 6);

- Defamation, against Defendants Costlow and Gaskins, in violation of 42 U.S.C. § 1983 (Claim 7) and West Virginia State Law (Claim 12);

- Slander, against Defendants Costlow and Gaskins (Claim 8);

- Intentional Infliction of Emotional Distress against all Defendants (Claim 9);

- Tortious Interference with Contract (Employment) against Defendants Kief, Gaskins, and Berry (Claim 10) and Defendant Costlow (Claim 11);

- Breach of Contract, against Defendant Costlow (Claim 13); and

- "Color of Law," against Defendants Kief, Gaskins, and Berry (Claim 14)

(ECF No. 45 at 16-25). The amended complaint also contains a "Request for Declaratory Judgment" declaring Plaintiff's right to obtain an unsealed copy of a sealed forensic evaluation of Defendant Costlow that the Monongalia County Family Court has refused to unseal. Id. at 25-28. Plaintiff seeks compensatory and consequential damages, economic losses on all claims allowed by law, "presumed damages for the harm to Plaintiff [for violation of] rights that are difficult to quantify, including but not limited to violations of the right to be free from abuses of the judicial system," special damages, punitive damages, costs and fees, pre-and post-judgment interest, and any other relief that this Court deems just and proper. (ECF No. 45 at 28).

Generally, Plaintiff alleges that the Defendants "abused the judicial process by arresting [Plaintiff] in an attempt to assist Costlow in an ongoing Family Court dispute regarding alimony and child custody." (ECF No. 45 at 1). Plaintiff further alleges that the Trooper Defendants continued to do so "even after it was apparent that Plaintiff was innocent," and that the Defendants acted "willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federal[ly-]protected Constitutional rights." Id.

## 2. Motions to Dismiss

### a. State Trooper Defendants

The Trooper Defendants moved for dismissal of all claims because "most of Mr. Ballock's claims against the State Police Defendants are time-barred by the applicable statutes of limitation[; and for those claims] that were timely filed, Mr. Ballock fails to allege sufficient facts to make the claims plausible." (ECF No. 15 at 1). The Troopers assert that:

1. Plaintiff's § 1983 claims are undermined by his acknowledgement in the dismissal agreement that probable cause existed for his arrest (ECF No. 16 at 1);

2. Plaintiff's § 1983 claim alleging denial of access to the courts is undermined by the fact that Plaintiff currently has a pending case before the court (Id.);

3. Because Plaintiff does not allege that any of the named Defendants in this case personally interfered with a contractual relationship, or that his business relationship ended as a result of the alleged interference, he has failed to plead the essential elements of tortious interference with contract (Id. at 1-2);

4. Plaintiff's defamation and slander claims are barred by the West Virginia statute of limitations, which provides a two-year statute of limitations for most torts, and one year for defamation (Id. at 2); and

5. Plaintiff has not "alleged sufficient facts to make each element of his claims plausible" (Id.).

**b.  Defendant Costlow**

Defendant Costlow asserts that:

1. Plaintiff's § 1983 claims against Defendant Costlow fail to state a cognizable claim for relief because Ms. Costlow was neither a state actor, nor acting under color of law (ECF No. 18 at 1);

2. Plaintiff's § 1983 claims of abuse of process, redress in court, defamation, and malicious prosecution – as well as the state law claim for malicious prosecution – should all be dismissed because probable cause existed for his arrest (Id.);

3.   Plaintiff's state law claims of abuse of process, conspiracy, slander, and intentional infliction of emotion distress are time-barred by the applicable statutes of limitation (<u>Id.</u> at 1-2);

4.   Plaintiff's tortious interference claims should be dismissed because Plaintiff has "suffered no termination of contract or other damages related to his employment" (ECF No. 18 at 2);

5.   Plaintiff's state law defamation claim is time-barred because it does not relate back to the filing of the original complaint, and also lacks relevant damages (<u>Id.</u>);

6.   Plaintiff's breach of contract claim should be dismissed because no monetary loss was alleged and monetary damages are not a specified remedy in any event (<u>Id.</u>);

7.   Plaintiff is not entitled to a declaratory judgment unsealing the Family Court custody evaluation because it has no relevance to Plaintiff's claims (<u>Id.</u>).

### III.   <u>Legal Standard</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)).  The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable

to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, courts must "liberally construe" complaints filed *pro se*. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . a pro se complaint rais[es] civil rights issues") (citing Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct 594, 30 L.Ed.2d 652 (1972).

## IV.    Analysis

### 1.  Plaintiff's claims are not barred by the applicable statutes of limitations.

"[W]here the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6) . . . only if it clearly appears on the face of the complaint." Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250. (4th Cir. 1993) (internal citations omitted). Affirmative defenses include – in relevant part – statutes of limitations. Fed. R. Civ. P. 8(c)(1). "[R]aising [] the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005) (citations omitted). Defendants' affirmative defense involving the applicable statutes of limitations can thus be considered on a motion to dismiss. However, because Defendants misconstrue the last relevant date in making their calculations, their statute of limitations arguments fail.

Defendants argue that Plaintiff's claims of abuse of process, conspiracy, slander, defamation and intentional infliction of emotional distress are time-barred by the statutes of limitation because "the last [alleged] act by any of the State Police Defendants . . . [was] September 13, 2013. (ECF No. 32 at 12-13). Costlow argues the same as to her. (ECF No. 18 at 10).

Plaintiff argues that Defendants fail to recognize that he alleges continuing conduct up through *at least* the date of dismissal – April 7, 2016. (ECF No. 45). Plaintiff further alleges conduct up to the date of filing of the original complaint in May 2017. (Id. at 17). Accordingly, Plaintiff argues, Defendants are mistaken as to when the last relevant date of conduct was alleged, and as a result, mistaken as to when the statutes of limitations began to run. Id. And because Plaintiff's original complaint was filed April 6, 2017, his claims are within all of the applicable statutes of limitations. Costlow argues that Plaintiff's amended complaint does not relate back to his original complaint, because it does not meet any of the criteria in Rule 15(c). ECF No. 18 at 18 (citing no case for this argument). The undersigned disagrees.

First, by virtue of Plaintiff's conspiracy claim, all Defendants are liable for each act undertaken as part of the conspiracy, regardless of whether they personally committed the act themselves or not, so long as it was done in furtherance of the overall goal. Dunn v. Rockwell, 225 W.Va. 43, *57, 689 S.E.2d 255, **269 (2009) ("A conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort.").

Second, Rule 15(c)(l )(B) provides, in relevant part, that an amended pleading will relate back to the time of filing of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading;" Fed. R. Civ. P. 15(c)(1)(B). Plaintiff alleged conspiracy in his original complaint. (ECF No. 1 at 16). The entire thrust of this case is that all alleged acts were undertaken as part of a common plan to damage Plaintiff. Accordingly, all alleged acts would certainly appear to "arise from" the conspiracy Plaintiff alleged from day one. Fed. R. Civ. P.

15(c)(1)(B). For that reason, and also because Costlow fails to cite any case to support her argument as to relation back, no merit can be ascertained from it.

Lastly, to the extent that the last relevant date is disputed, and it is not apparent from the face of the complaint that Plaintiff's claims *are* time barred – if anything, it would appear they are likely not – Plaintiff can proceed on those claims. <u>Imagine Medispa, LLC v. Transformations, Inc.,</u> 999 F.Supp.2d 873, *884, Civil Action No. 2:13-26923 (S.D.W.Va. Feb. 26, 2014) (denying a motion to dismiss raised on the grounds of the "latest date of alleged [mis]conduct" when the face of the complaint does not clearly show that there were no acts after that date).

**2. Plaintiff's termination on September 25, 2017 has rendered the Defendants' arguments as to lack of damages and change in status moot.**

Defendants had originally argued that relevant to his tortious interference and defamation claims, Plaintiff "does not and cannot allege that he has lost his job as a result of the incident report prepared by Trooper Gaskins[; t]o the contrary, he argues that 'his status has changed by a pending investigation and his employment status is the subject of a review that *may* result in his termination." (ECF No. 32 at 14; ECF No. 33 at 7). Plaintiff argues he *has* both sustained and alleged damages prior to, and independent of, termination – "including [the denial] of promotions and transfer opportunities, due to Defendants' abuse of the judicial system." (ECF No. 45 at 11; ECF No. 22 at 5). However, after the Defendants' motions to dismiss were filed in August 2017, Plaintiff *was* subsequently terminated from his employment, a fact included in the Second Amended Complaint. (ECF No. 45 at 11) ("on Monday, September 25, 2017, as a direct consequence of the defendants' joint and several acts and omissions as alleged, Ballock was terminated as an employee of the FBI"). Accordingly, Plaintiff has clearly now suffered damages

and his status has clearly changed, satisfying the corresponding elements of tortious interference and defamation. Therefore, Defendants' arguments on this point are now moot.

### 3. Plaintiff alleges facts sufficient to show that Costlow was acting "under color of law" as to his § 1983 claims against her.

Costlow argues that "Plaintiff's four Federal civil rights claims against Ms. Costlow must be dismissed [because] she was not under color of law in the incidents alleged in support of the Plaintiff's Federal claims, and cannot be subject to an action under 42 U.S.C. § 1983." (ECF No. 17 at 1). Plaintiff points out that the Supreme Court has expressly recognized the extension of § 1983 liability to private persons who act in conspiracy with state actors, citing Adickes v. SH Kress & Co., 398 U.S. 144, 152 (1970) and United States v. Price, 383 U.S. 787, 794 (1966). (ECF No. 22 at 3). As such, because Plaintiff has "plainly alleged a long-standing joint effort between Costlow and the trooper defendants," Plaintiff asserts that Costlow is not exempt from § 1983 liability. Id. Costlow counters that, even if the Trooper Defendants violated Plaintiff's civil rights, "no § 1983 or State law claim would exist against Ms. Costlow, as witnesses making reports to law enforcement cannot be held liable for the officer's subsequent conduct." Id., citing, *inter alia*, Brice v. Nkaru, 220 F.3d 233 (4th Cir. 2017). However, Brice concerned a post-jury-verdict motion for judgment as a matter of law, not at the 12(b)(6) stage. Further, even if Brice was relevant at this stage, Defendant Costlow's statement of Brice's holding is incomplete.

In Brice, the Fourth Circuit observed that even when information provided by a witness turns out to be incorrect, a witness who acts *in good faith* is shielded from civil liability. 220 F.3d at *238 (emphasis added). In contrast, a witness "whose truthfulness was questionable" - which may be inferred from the witness' actions - is not. Id. As a result, the "critical question is whether the witness provided the police with [an] honest or good faith belief of the facts." Id.;

see also Earle v. City of Huntington, 2017 WL 2960542, Civil Action No. 3:14-29536 (S.D.W.Va. 2017) (A witness may be subject to liability when the witness knew (or had reason to know) her statements to law enforcement were not fully accurate). Facts relevant to consideration of good faith include whether the witness is a "disinterested party" who "simply report[s] the occurrence of a crime." Id.

Considered in its entirety, then, Brice does not aid Costlow. Plaintiff clearly alleges bad faith, and that Costlow stood to benefit from the prosecution of Plaintiff – indeed, the benefit to Costlow is alleged to be the underlying motivation for Defendants' acts. See, e.g., ECF No. 21 at 2 ("Concerned about losing her children, Costlow admitted to others, both orally and in writing that it was her intention to have Plaintiff Ballock arrested so that he would lose his job. (Am. Compl. 93, 113, 114)"). Whatever other facts may be in dispute, Costlow was not a disinterested witness in the proceedings against Plaintiff. Accordingly, Brice does not support dismissal of Plaintiff's claims against Costlow.

Those issues being ascertained, the undersigned next turns to the sufficiency of Plaintiff's claims by cause of action.

### 4. Legal Standard – Sufficiency of Claim

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002).

Detailed factual allegations are not required. <u>Twombly</u>, 550 U.S. at 555. However, the factual allegations must "be enough to raise a right to relief above the speculative level" (<u>Id.</u> at 555) – to be "plausible on its face," rather than merely "conceivable." <u>Id.</u> at 548. A "sheer possibility that a defendant has acted unlawfully" is not enough. <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678, 129 S.Ct 1937, 1949, 173 L.Ed.2d 868 (2009). Rather, the plausibility standard is met when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

### A.  Plaintiff alleges facts sufficient under Rule 8(a)(2) as to his Conspiracy claim (6).

Under West Virginia law, "[a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, <u>Dunn v. Rockwell</u>, 225 W. Va. 43, 689 S.E.2d 255 (2009). Defendants argue that Plaintiff's conspiracy claim fails because he "alleges no facts to make plausible a claim that Defendants acted in concert." (ECF No. 16 at 24; ECF No. 18 at 15). Plaintiff argues that Defendants have selectively ignored allegations in the amended complaint that Costlow and the Trooper Defendants acted in concert to "obtain a warrant on false information, design and plan an arrest for maximum detrimental effect, carry out that arrest, detail Ballock, maintain and support the prosecution of Ballock." (ECF No. 21 at 25, citing to Plaintiff's Amended Complaint). Plaintiff has further alleged motivation, "including the romantic affair [between] Defendant Berry [and Costlow], as the basis for "his coordination with the other defendants." (<u>Id.</u> citing to the Amended Complaint). Lastly, Plaintiff alleges supporting facts, "including that each defendant acted against procedures and protocols, [] without reason or justification, and participated in a scheme to knowingly and intentionally harm Plaintiff at Costlow's behest." (<u>Id.</u> at 26, citing to Amended Complaint).

As to conspiracy specifically, Plaintiff's complaint here can be distinguished from the complaint in Twombly, which also concerned an alleged conspiracy. Twombly's complaint alleged only a "course of [parallel] conduct,' combined with the "absence of meaningful competition." *565, **1970. "[I]n light" of those facts and circumstances, Twombly simply "concluded 'that [they had] entered into a . . . conspiracy." Id. at *565. The Supreme Court observed that "[a]lthough in form a few stray statements [in the complaint] sp[oke] directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations." (Id.)

Here, unlike in Twombly, Plaintiff has directly alleged conspiracy between the Defendants based not solely on conclusions drawn from behavior and circumstances, but rather based on specific communications that fairly permit a reasonable inference of plausibility. For example, Plaintiff alleges that Costlow sent an email to the West Virginia State Police (hereinafter "WVSP") five days before the scheduled custody hearing at which Plaintiff was arrested, stating in part that:

> "The custody hearing is this Friday at 8:30 am in Judge Minor's chambers. Custody of my daughter is what is at stake as it's been difficult for the Guardian ad Litem and the forensic psychiatrist to decipher which of us is telling the truth (me or Scott) and the lies he tells are bringing into question my fitness as a primary custodial parent…"

(ECF No. 45 at 7). Subsequently, WVSP arrested Plaintiff at that same custody hearing. (ECF No. 45 at 9). Plaintiff further cites the Family Court Judge's belief that "the timing of the arrest represented primarily a strategic decision to gain advantage in this case . . . [because] communications at issue occurred over several months with no apparent effort by the Mother to seek assistance from this Court or any other judicial body until the time of the hearing." Id. It is these types of specific factual allegations in Plaintiff's complaint, among others, that elevate the pleadings from describing mere parallel conduct that could have other

innocent explanations, to pleadings that satisfy the plausibility standard. (Indeed, it is unclear for what other plausible purpose Costlow would need to convey to WVSP what she stood to lose in the custody hearing or where she stood in the matter, as WVSP would not need that information to carry out their investigation or the arrest.) Thus, Plaintiff's complaint is distinct from Twombly's in that it includes what Twombly's complaint lacked. At the 12(b)(6) stage, no more is required of Plaintiff for his sixth conspiracy claim to survive the motion to dismiss.

### B. Plaintiff alleges facts sufficient to satisfy Rule 8(a)(2) as to his Malicious Prosecution claims.

The elements of a Section 1983 "malicious prosecution" claim are that a "defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). Similarly, under West Virginia law, the elements of a malicious prosecution claim are: "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." Syl. Pt. 2, in part, Norfolk S. Ry. Co. v. Higgenbotham, 228 W. Va. 522, 721 S.E.2d 541 (2011). ECF No. 16 at 7.

Defendants argue that Plaintiff cannot maintain a claim for malicious prosecution when he has previously admitted that probable cause existed for his prosecution, thus negating an essential element of his malicious prosecution claims. (ECF No. 16 at 7; ECF No. 18 at 7-8). Plaintiff argues that the agreement that led to dismissal of his prosecution by the Monongalia County Prosecutor's Office is a fugitive document on which Defendants cannot rely at this stage in the proceedings; consideration of this type of extrinsic evidence at the 12(b)(6) stage is error, citing Zak v. Chelsea Therapeutics Int'l, 780 F .3d 597 (4th Cir. 2015).  (ECF No. 21 at 4). The Trooper Defendants argue that the court may properly consider the agreement without converting

the motion to dismiss to a motion for summary judgment because, unlike in <u>Zak</u>, it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity, citing <u>American Chiropractic Ass'n v. Trigon Healthcare, Inc.</u> 357 F.3d 212 (4th Cir. 2004).

> Plaintiff's complaint states, in relevant part, the following as to the agreement:
>
> 55. The charges against Ballock were dismissed – with prejudice - by the Monongalia County Prosecutor on April 7, 2016.
>
> 56. With concurrence from the Monongalia County Prosecutor, the entire case against Ballock was expunged on July 13, 2016, and WVSP was ordered to destroy any and all records related to its investigation.

ECF No. 45 at 5. This portion of the factual allegations relevant to the malicious prosecution claim does not explicitly reference the agreement; it states only that the charges *were* dismissed and expunged by the Monongalia County Prosecutor. Further, Defendants have not argued that there is no other document or means by which Plaintiff could prove that the charges were dismissed without presenting the agreement itself; indeed, that appears unlikely on its face. Thus, the undersigned cannot so conclude. As to his breach of contract claim against Costlow, however, Plaintiff states that:

> 116. The charges against Ballock were dismissed on April 7, 2016, and upon recommendation by the prosecutor, expunged on July 13, 2016, but not before great harm was done to Ballock and his rising career as an FBI agent.
>
> 117. In an attachment to the motion to dismiss criminal charges in Magistrate Court dated April 7, 2106, Defendant Costlow agreed that "she will not communicate any disparaging information or commentary to Scott Ballock's employer or place of employment..."
>
> 118. Defendant Costlow thereafter violated the agreements and communicated disparaging, outrageous lies to Plaintiff's employer.

(ECF No. 45 at 11.)

Accordingly, the document at issue is relied upon by Plaintiff in his complaint, and to the extent that Plaintiff must necessarily rely on the agreement for his breach of contract claim against Costlow, it is central. Further, Plaintiff has not disputed the authenticity of the document. Thus, the court may rely on it in deciding a 12(b)(6) motion to dismiss without converting to a motion for summary judgment. Gasner v County of Dinwiddie, 162 F.R.D. 280, 282, Civ. A. No. 3:95-CV-378 (E.D.Va. Jul. 27, 1995). However, even when considered, the agreement does not suffice to warrant dismissal of Plaintiff's malicious prosecution claims at this stage for two reasons. First, judicial estoppel on the issue of probable cause is not appropriate. Second, it is not clear that Rumery should apply; even if it did, the Rumery factors do not support enforcement of the agreement.

### i.  Judicial Estoppel is not appropriate under these circumstances.

Three elements must be met before judicial estoppel can be considered: 1) the party "must be seeking to adopt a position [of fact] that is inconsistent with a stance taken in prior litigation;" 2) that position "must have been accepted by the court;" and 3) the party "must have 'intentionally mislead the court to gain unfair advantage.'" Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996).

The Trooper Defendants cite Lowery v. Stovall in arguing that Plaintiff "is [judicially] estopped from" adopting the position here that there was no probable cause for his arrest, inconsistent with the agreement Plaintiff signed pursuant to dismissal of the charges against him in Monongalia County Circuit Court. (ECF No. 32 at 6.) In actuality, Plaintiff is not judicially estopped unless and until a judge estops him. Further, "[b]ecause of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution." John S. Clark Co. v. Faggert & Frieden, P.C., 65

F.3d 26, *29 (4th Cir. 1995). For that reason, and also because <u>Lowery</u> is distinctly not analogous to the situation presently before the Court, the undersigned will decline.

Unlike the agreement at issue here, <u>Lowery</u> concerned a plea agreement – and, "a release-dismissal agreement is not directly analogous to a plea bargain." <u>Town of Newton v. Rumery</u>, 480 U.S. 386, *400 (1987) (O'Connor, J., concurring). In a plea hearing, the court does not simply accept a defendant's admission that he has committed a crime and consider the matter settled.[1] Rather, he is placed under oath and questioned – at great length and in significant depth – about the circumstances of his plea. Fed. R. Crim. P. 11. Second only to a trial, a plea hearing is the most time-consuming, lengthy, and in-depth proceeding that a criminal defendant experiences. An order following a plea hearing contains numerous pages of findings of fact addressing, among many other things, whether a defendant has in fact committed each element of the offense. It is these detailed findings of fact that permit the court to determine whether the plea can fairly be accepted, and exactly what facts support the commission of the offense. In other words, the court must satisfy itself that a defendant did indeed commit all the necessary acts to constitute an offense before it will accept a Defendant's guilty plea.  Indeed, this was the case in <u>Lowery</u>, and it was discussed at length by the court in its decision to estop Lowery from claiming in his § 1983 action that he had not maliciously attacked a police officer, after previously pleading guilty to exactly that:

---

[1] The court must not accept a guilty plea until it "determine[s, by addressing the defendant personally in open court,] that the plea is voluntary and did not result from force, threats, or promises" other than those contained in the plea agreement. Fed. R. Crim. P. 11(b)(2). The court must not "enter[] judgment on a guilty plea [until it] determine[s] that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3), which requires the Defendant testifying in his own words what he did that makes him guilty of *each element* of the offense. The court must determine that the defendant's plea is accurate, given the nature of the charges. (Rule 11(b)(1)(G)) The court must discuss with the defendant and determine that he understands all of the rights he gives up by entering a guilty plea, including – *inter alia*- the ability to plead otherwise afterward (Rule 11(b)(1)(B)); the right to a jury trial (Rule 11(b)(1)(C)); the right to appeal or to collaterally attack the sentence (Rule 11(b)(1)(N)); and the right to "confront and cross examine adverse witnesses . . . to testify and present evidence, and to compel the attendance of witnesses" (Rule 11(b)(1)(E)). There are at least fifteen categories of information that a judge must cover in-depth, on the record, with a defendant who is under oath, before a guilty plea can be accepted.

16

First, Lowery's present position regarding the circumstances of the shooting is
contradictory to the position he took when he pled guilty. During his guilty plea hearing,
Lowery admitted to maliciously attacking Redd. Specifically, the trial judge, in taking
Lowery's guilty plea, asked if Lowery had cut Redd on the face with the metal key holder
to escape, and Lowery said that he had. Lowery's present position, however, is that he did
not attack Redd with the magnetic key holder prior to the shooting and that Stovall shot
him without reason.

Lowery argues that these positions are reconcilable. Specifically, Lowery contends that
his statement does not show when he cut Redd. Thus, Lowery reasons that his statement
is consistent with his present position because the statement allegedly does not foreclose
the possibility that he cut Redd on the face by scratching Redd as he was trying to crawl
into the patrol car after being shot by Stovall.

Lowery's argument, however, is undercut by the plain language in his statement
accompanying his guilty plea:

> On February 1, 1991 when I was arrested, I cut Officer Thomas E. Redd on the
> face with a metal key holder *because I wanted to escape custody.* I knew he
> would find my cocaine. I intended to maim and disable him and at the time
> Officer Stovall shot me I was intending to kill Redd if I had to [in order] to get
> away.

(J.A. 686) (emphasis added). The "wanted to escape custody" language cannot be
reconciled with Lowery's claim that he scratched Redd as he was trying to get back
into the patrol car because the positions are diametrically opposed to each other. Because
Lowery's present position necessarily conflicts with his prior position, the first
requirement for applying judicial estoppel has been met . . .

As it is clear that Lowery is "blowing hot and cold as the occasion demands" or wanting
to "have [his] cake and eat it too," we conclude that Lowery's arguments are nothing
more than an intentional attempt to mislead the district court and this court to gain unfair
advantage in this action. Thus, the district court did not err in finding that the doctrine of
judicial estoppel precluded Lowery from arguing that he did not maliciously attack Redd.
See Lichon v. American Universal Ins. Co., 435 Mich. 408, 459 N.W.2d 288, 293 (1990)
(finding that if a plea of nolo contendere constituted an admission of guilt then
the defendant would be judicially estopped from asserting he was innocent of the charge
to which he plead nolo contendere); People v. Goestenkors, 278 Ill.App.3d 144,
214 Ill. Dec. 1008, 1011, 662 N.E.2d 574, 577 (1996) (finding that after pleading guilty a
party is estopped from asserting his preplea position because "[t]he law will not tolerate a
party in a legal proceeding swearing under oath to the untruth of some matter and then
swearing under oath to the truth of that same matter").

Id. at *225. The distinctions are beyond obvious. Unlike Lowery, Plaintiff did not admit guilt for

the charges against him; he merely agreed that probable cause existed for his arrest. There is no

indication that Plaintiff was placed under oath during a hearing on the state's motion to dismiss,

swore that there was probable cause, or swore to any particular facts to support probable cause.

There is no indication that the judge inquired any further into the matter before signing the order granting the motion to dismiss – at least, none before the court at this time.

This is relevant to all three elements that must be met before judicial estoppel is appropriate. Lowery swore under oath that he had cut an officer's face with the intent to maim and disable him in order to escape custody and avoid being caught with cocaine, before later claiming that he had not. Plaintiff here has *sworn* to nothing whatsoever. Further, Plaintiff has not even *agreed* to facts sufficient to support probable cause. Although Costlow characterizes the agreement thus:

> The Plaintiff was charged with a non-violent offense, *Id.* at 40, consisting of sending unwanted communications to Ms. Costlow, *Id.* at 39, and was based upon information provided solely by Ms. Costlow to the Trooper Defendants. *Id.* at 46. The Plaintiffs admits sending at least some of the communications serving as the basis for the charges against him, Dismissal Agreement at 2, and admits that the information Ms. Costlow provided to the Troopers established probable cause for the charges against him.

(ECF No. 33 at 11), what the agreement *actually* stated, in relevant part, was that:

> Scott Ballock acknowledges **communicating via email** with Ellen (Ballock) Costlow after **it is alleged that a letter was sent to him** asking him to stop such communications to Ellen Costlow.

(ECF No. 18 at 27). Since Costlow argues it, and it appears in the document Defendants have insisted this court consider, the undersigned will take judicial notice of W.Va. Code § 61-3C-14(a), which provides in relevant part that:

> (a) It is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to:
> > (2) Make contact with a person after being requested by the person to desist from contacting them . . .

W.Va. Code. § 61-3C-14(a)(2). Even if it was appropriate to consider the agreement an "admission of guilt" on par with the entry of a guilty plea (which it is not, for the reasons explained above), the agreement falls far short. First, intent is an element that plainly appears on

the face of the relevant criminal code, and Plaintiff has conceded no such thing. Plaintiff did not

agree that he intended to *harass or abuse* Costlow, and in fact he explicitly denies doing so in his

complaint. Second, the agreement states that "it is *alleged* that a letter was *sent* to him asking

him to stop such communications to Ellen Costlow." (emphasis added). The agreement notably

does not state that Plaintiff ever received such a letter, and so it is further far from clear that the

"request" portion of that crime was considered complete. Accordingly, it is far from clear that

Plaintiff agreed anything more than a "communication" occurred, which in and of itself, would

satisfy only one of the three necessary conditions to constitute a complete offense under § 61-

3C-14(a)(2).

As to W. Va. Code § §61-2-9(a), the other statute appearing in the agreement under

which Plaintiff was purportedly charged, that code states:

> (a) Any person who repeatedly follows another knowing or having reason to know that
> the conduct causes the person followed to reasonably fear for his or her safety or suffer
> significant emotional distress, is guilty of a misdemeanor and, upon conviction thereof,
> shall be incarcerated in the county or regional jail for not more than six months or fined
> not more than one thousand dollars, or both.

W. Va. Code § 61-2-9(a). Plaintiff did not agree to *any* portion of that offense in the agreement,

nor is there any information in his complaint that would so indicate. Thus, considering Plaintiff's

complaint and the agreement, there are serious questions as to whether there was probable cause

for his arrest.

If Plaintiff had attempted to enter a guilty plea on these admissions of fact alone, the

undersigned would reject it as insufficient to establish an independent factual basis for his plea.

Indeed, <u>Lowery</u> met the "acceptance" requirement because of precisely this high bar having been

well satisfied:

> In taking the guilty plea, the trial judge had a duty to determine that Lowery entered his
> guilty plea "voluntarily with an understanding of the nature of the charge and the

consequences of the plea." Va. S.Ct. Rule 3A:8(b). The record of the plea proceeding shows beyond dispute that the trial judge carried out this mandate. Moreover, the record here shows that the trial judge had a factual basis for finding Lowery guilty. The trial judge asked Lowery whether each of the assertions in the statement accompanying his guilty plea was true, rather than whether he merely understood the statements. Further, the court heard a summary of the state's evidence from a prosecution witness. Significantly, in sentencing Lowery, the trial judge stated that Lowery was "in fact guilty of each charge." (J.A. 769). Thus, we find that the trial judge accepted Lowery's position when he accepted his guilty plea.

Id.at *225, noting specifically that "[a]lthough judicial estoppel does not apply to the settlement of an ordinary civil suit because "there is no 'judicial acceptance' of anyone's position," the taking of a guilty plea in a criminal proceeding is not similar to the settlement of a civil suit." Here, the circumstances are neither, but may perhaps be most accurately considered a settlement of a *criminal* matter. However, a mere form order containing no findings of fact, and nothing more than the Judge's signature, granting the State's motion to dismiss – all that is before the court now – does not establish that there was "judicial acceptance" of Plaintiff's agreement that probable cause existed, or that the "prior success rule, which "ensures that judicial estoppel is applied *in the narrowest of circumstances*," is properly met. Id. at *224 (emphasis added).

For these reasons, the undersigned cannot find that "'the record conclusively shows' that [Plaintiff] had successfully asserted a prior inconsistent position," as there is no indication that the issue of whether probable cause existed for his arrest was ever examined by the court in granting the State's motion to dismiss. Lowery, 92 F.3d at *224, citing Allen v. Zurich Ins. Co., 667 F.2d 1162 (4th Cir. 1982). Nor can the undersigned find that Plaintiff has "intentionally misled the court to gain unfair advantage," Id., because there is no indication whether Plaintiff understood what probable cause was, how he believed it existed under these facts, and whether the facts as he admitted them could constitute probable cause.[2] For these same reasons, it cannot

---

[2] The fact that Plaintiff was represented by counsel does not suffice, either, because criminal defendants are also represented by counsel who also sign the plea agreement. Yet, in the plea context, representation does not negate the

be ruled out that Plaintiff's prior position was "based on inadvertence or mistake." Id. The "determinative factor" for judicial estoppel is therefore not satisfied, and neither are the other factors. Id. Accordingly, the undersigned will decline to judicially estop Plaintiff from arguing there was no probable cause for his arrest.

This likewise clearly illustrates why such questions are wholly premature at the motion to dismiss stage, as Plaintiff argued - pointing out in oral argument that the cases relied on by the Defendants concern motions for summary judgment; none addressed motions to dismiss. Indeed, Lowery was at the summary judgment stage, after discovery had concluded and all of the many facts relevant to the court's consideration were known and able to be presented. Whether there is additional evidence to support probable cause contained in the warrant affidavit considered by the judge who issued the arrest warrant is a question that the Defendants are free to address on a motion for summary judgment when such evidence may be considered.

### ii. Even if the Rumery factors are properly applied to the dismissal agreement, they do not weigh in favor of enforcement.

Plaintiff argues that Town of Newton v Rumery, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), is most analogous as it concerned an agreement to release Defendants from liability and dismiss charges, similar – but not identical - to the agreement here. (ECF No. 21 at 8). Defendants disagree that the agreement contained a release; rather, it operates to "negate[] one element of [Plaintiff's] malicious prosecution claims." (ECF No. 32 at 9). Plaintiff did not agree to give up his right to sue the Trooper Defendants (or, indeed, anyone at all) under § 1983. He merely "acknowledge[d] that probable cause existed for West Virginia State Police to file for the issuance of the warrants in this case pursuant to W.Va. Code § 61-3C-14a and § 61-2-9a."

---

court's duty to ascertain all of the relevant facts with the defendant personally on the record to ensure that counsel's representation was adequate and the defendant is fully informed.

(ECF No. 16-1 at 1). The Supreme Court began its analysis in Rumery by specifying that the policy rationales underlying analysis of *release*-dismissal agreements is predicated on a plaintiff having waived a right to sue conferred by federal statute. As Plaintiff has not waived his right to sue in this agreement, it is not expressly clear that this dismissal agreement should be subject to the same analysis as a release-dismissal agreement. On the other hand, admitting probable cause is in essence a *de facto* waiver of a right to sue, since the inability to satisfy the probable cause element would render a malicious prosecution claim dead on arrival. The agreement thus would have the same *effect* as a release-dismissal agreement if enforced, and so on those grounds, there is also an argument for Rumery's applicability nonetheless. However, even if the agreement is properly subject to a Rumery analysis, Defendants would not prevail.

Rumery was charged with tampering with a witness. Rumery obtained counsel, who advised the deputy county attorney that "he had better [dismiss] these charges, because [Rumery was] going to win them and after that we're going to sue." 480 U.S. at *389; 107 S.Ct. at **1190. After discussion between the deputy county attorney and defense counsel, Rumery signed a document agreeing to release any claims he might have against the town, its officials, or [the witness] if the deputy county attorney agreed to dismiss the criminal charges. 480 U.S. at *390; 107 S.Ct. at **1191. The criminal charges against Rumery were subsequently dropped. Ten months later, Rumery filed a § 1983 action against the town and its officers for violating his constitutional rights. Id. The First Circuit Court of Appeals reversed the District Court's dismissal of Rumery's suit on the basis of the agreement, and held release-dismissal agreements should be *per se* invalid as against public policy. Id.

The Supreme Court held that a *per se* rule invalidating *all* release-dismissal agreements went too far, as it did not take into account "the wide variety of factual situations that can result

in release-dismissal agreements," some of which could further "significant public interests." 480 U.S. at *392, 107 S.Ct. at **1192. On the other hand, not all agreements should be enforced, either, since "in some cases these agreements infringe upon important interests of the criminal defendant and of society as a whole," Id. at 392; they "may not be the product of an informed and voluntary decision," Id. at 393, and "they may tempt prosecutors to bring frivolous charges, or to dismiss meritorious charges, to protect the interests of other officials," Id. at 395. For those reasons, the Supreme Court held that release-dismissal agreements must be examined on a case-by-case basis.

Defendants seeking to enforce a release-dismissal agreement bear the burden of establishing that such a release was "voluntarily made, not the product of prosecutors overreaching, and in the public interest." 480 U.S. at *401. A court must consider the following factors: 1) the knowledge and experience of the criminal defendant; 2) the nature of the criminal charges; 3) the existence of a legitimate criminal justice objective for obtaining the release; 4) whether the defendant was counseled; and 5) whether the agreement was executed under judicial supervision. 480 U.S. at *401-02.

Counsel for the Trooper Defendants argued at the hearing that even if the Court applied the Rumery factors, those would be in favor of enforcement because the agreement was presented nearly 3 years after arrest; as an FBI agent Ballock was presumably knowledgeable and experienced in criminal matters; the charges were only misdemeanor charges so there was little chance of undue coercement [sic]; "there was  a legitimate criminal justice objective in getting rid of two misdemeanor counts that had been going on for almost three years, and putting those concerns in family court where they were better addressed;"[3] the agreement was executed

---

[3] As stated by counsel in oral argument held October 13, 2017.

under judicial supervision; and Ballock was represented by counsel who also signed the agreement.

It is true that Plaintiff was not in custody, and he likely was reasonably sophisticated in criminal matters by virtue of his work. These factors can fairly weigh in Defendant's favor. However, the others do not. It is true that under more general circumstances, the fact that the charges were only misdemeanors might be less coercive and weigh in favor of Defendants. Rumery, 480 U.S. at *402 ("The nature of the criminal charges . . . is also important, for the greater the charge, the greater the coercive effect"). Here, the undersigned is unable to so conclude because Plaintiff alleges that the mere fact of the *investigation and arrest* caused him to suffer in his employment and fear the loss of his job – as a career FBI agent for the federal government. In Plaintiff's specific case, there was thus significant impact from even mere pending misdemeanor charges, far beyond the coercive effect misdemeanors may have on an average defendant. (Ultimately, Plaintiff lost his job *despite* the charges being dismissed, which is a testament to the significant detrimental effect of the investigation and arrest alone despite being only misdemeanors.)

The circumstances of the execution of the release generally include, in part, whether Plaintiff was represented by counsel. Here Plaintiff was, but there is insufficient evidence to determine that this fact alone should weigh in Defendant's favor. The mere fact of representation alone does not satisfy this factor. Rather, courts consider whether counsel sufficiently explained the agreement and in what depth. See, e.g., Wilson v. Chester Tp. Police Dept., No. Civ. A. 04-1262, 2005 WL 2704882, 2 (E.D.Pa. Ocgt. 20, 2005) (considering that Plaintiff had reviewed the agreement "at length," and discussed it with her attorney "numerous times"). Courts consider not just whether there was judicial supervision, but the *extent* of it. Id. ("Moreover, the district

attorney agreed to the proposed settlement and its amendment following an *extensive colloquy before Judge Hazel*. [Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 527 (3d Cir.1996) quoting Rumery, 480 U.S. at 398 ("judicial supervision of release-dismissal agreements can help ensure that the agreements did not result from prosecutorial misconduct.") The circumstances also include who "conceived, initiated, and proposed the arrangement, and [who] drafted the release," and the length of time available to a defendant consider it. Rodriguez v. Smithfield Packing Co., Inc., 338 F.3d 348, 353-54 (4th Cir. 2003). See also Wilson, 2005 WL 2704882 at *1 (Plaintiff's attorney proposed an amendment to – and later amended – the agreement). None of these relevant details are known here.

As to a legitimate criminal justice objective, that, too, has not been sufficiently shown. The mere fact that there is a general, objective interest in avoiding the cost of litigation is one thing, but not the only thing, that courts consider. Rumery, 480 U.S. at 399–400, 107 S.Ct. 1187 (O'Connor, J., concurring in part and concurring in the judgment) ("Sparing the local community the expense of litigation associated with some minor crimes for which there is little or no public interest in prosecution **may be a** legitimate objective of a release-dismissal agreement.") (emphasis added). Also relevant are the prosecuting attorney's subjective, actual reasons for dismissing the specific charges at issue; for example, whether a necessary witness was refusing to testify, or would be subject to undue trauma in so doing. Rumery, 480 U.S. at *402-3 (finding that the Prosecutor testified to a legitimate criminal objective in avoiding having to force a victim of sexual assault to testify when she was emotionally distraught and unwilling to testify, and the case's viability was questionable without her testimony). See also Poling v. Ferguson, 878 F.Supp 880, 881 (N.D.W.Va. 1995) (finding a legitimate criminal justice objective in release-dismissal when the Prosecuting Attorney concluded it would be "extremely

difficult . . . to ascertain [the true facts of the case]"). None of these issues are argued here, or even – apparently – known, as counsel for the Trooper Defendants stated at the hearing that they "d[id]n't know exactly why the prosecuting attorney agreed to dismiss the charges." However, that is precisely what the court needs to consider.

Therefore, even *if* it were appropriate to apply the Rumery factors to this agreement, Defendants would not prevail. In any event, as the Trooper Defendants point out, whether there was probable cause for Plaintiff's arrest is a question of fact. ECF No. 32 at 7, citing Alexander v. Alexander, 229 F.2d 111, 117 (4th Cir. 1956). Here, that fact is very clearly in dispute. And, at the 12(b)(6) stage, the court does not resolve questions of fact. Republican Party, 980 F.2d 943, 952 (4th Cir. 1992).  While Defendants may rely on the agreement as *evidence* relevant to the factual inquiry of whether probable cause existed at a later stage in these proceedings, it does not resolve the inquiry at this point. Accordingly, the probable cause element of Plaintiff's malicious prosecution claim is not negated, and that claim survives the motion to dismiss.

### C.  Plaintiff alleges facts sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2) as to his Abuse of Process claims.

Abuse of process requires proof of a willful and intentional abuse or misuse of process for the accomplishment of a wrongful object; some collateral advantage not properly involved in the proceeding. Preiser v MacQueen, 177 W. Va. 273, 279, 352 S.E.2d 22, 28. Section 1983 liability for abuse of process has been neither recognized nor rejected by the Fourth Circuit, though that fact does not affect the viability of Plaintiff's state law abuse of process claim, nor does it expressly preclude it, either.

The Trooper Defendants argue that Plaintiff fails to "allege that the State Police Defendants carried out any improper actions after he was arrested" or identify a collateral advantage not properly involved in the proceeding itself, or that either Trooper Gaskins or

Trooper Berry played any part in the issuance of the arrest warrant or his arrest. ECF No. 16 at

16. In turn, Plaintiff lists specific portions of the complaint that address precisely what

Defendants claim it lacks (ECF No. 21 at 19-20, citing paragraphs 32, 33, 34, 35, 90, and 91 of

the complaint). In those paragraphs, Plaintiff alleges that there *was* an improper purpose sought

by the conspirators as a result of strategically executing his arrest during a break in a family

court hearing in which Plaintiff was a participating party. The collateral advantage Plaintiff

alleges was financial and custodial benefit to Costlow in the divorce proceedings – something

that traditionally is not part of an arrest based on sending "unwanted emails." Plaintiff's claim

suffices at this stage. As to Gaskins and Berry, discovery will tell.

### D. Plaintiff does not allege facts sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2) as to his Intentional Infliction of Emotional Distress claim.

To prevail on an intentional infliction of emotional distress claim (also known as

"outrage" in West Virginia), a plaintiff must show (1) that the defendant's conduct was

atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2)

that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it

was certain or substantially certain emotional distress would result from his conduct; (3) that the

actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the

emotional distress suffered by the plaintiff was so severe that no reasonable person could be

expected to endure it. Travis v. Alcon Laboratories, Inc., 202 W. Va. 369, 374, 504 S.E.2d 419,

425 (1998).

Defendants argue that "Mr. Ballock admitted that there was probable cause for his arrest[;

t]herefore, there was no outrageous conduct by the State Police Defendants." ECF No. 16 at 22.

Because there is serious doubt as to probable cause at this point, Defendant's conclusion

logically fails. Defendants further argue that "Mr. Ballock has not pled any facts to support the

fourth element . . . [he] merely pleads that . . . he and his children 'have suffered actual emotional injuries or other damages and losses,'" which is nothing more than labels and conclusions, citing <u>Travis v. JP Morgan Chase Bank</u>, N.A., No. 1:12-CV-89, 2012 WL 3193341, at *5 (N.D. W. Va. Aug. 6, 2012). ECF No. 16 at 23; ECF No. 18 at 14. Plaintiff counters that Defendants' position selectively cherrypicks and cites only the conclusion, while "utterly ignor[ing] all factual allegations on which the count is made." Rather, Plaintiff argues, the supporting facts pled by Plaintiff to *support* that conclusion are as follows:

> State Trooper Berry actively slept with Ballock's wife Costlow, personally and through his fellow defendants surveilled and harassed Ballock and his children, developed a plan with Ballock's wife and his fellow troopers to arrest Ballock at family court during a custody proceeding, caused an investigation that damaged and continues to damage Ballock and may result in termination, and encouraged and supported the prosecution of plaintiff for three years during which Ballock and his children were faced with destructive and damaging false assertions knowingly spread by Costlow, her boyfriend, and his trooper friends. That conduct is outrageous, goes beyond all possible bounds of decency.

(ECF No. 21 at 24-25). In addition, Plaintiff's Amended Complaint further alleges that as a result of Defendant's alleged actions, he was fired from his job as a career FBI Agent:

> 119. Ballock has suffered negative repercussions at work, including being denied promotional and transfer opportunities, due to Defendants' abuse of the judicial system.
> 120. Since the filing of this action, specifically on Monday, September 25, 2017, as a direct consequence of the defendants' joint and several acts and omissions as alleged, Ballock was terminated as an employee of the FBI. The termination decision is subject to an appeal, but as of Monday, September 25, 2017, Ballock lost his base compensation as a GS 14, Step 6 Federal Employee, including the law enforcement authorized-overtime allowance, medical, vision and dental insurance, participation in the employee thrift plan including employer contributions, as well as his federal pension.

It is necessary to distinguish between whether the conduct is sufficiently outrageous to survive a motion to dismiss, versus whether the complaint has sufficiently alleged severity, as outrageousness and severity of distress are two distinct elements. As to outrageousness, Plaintiff's claim suffices.

"[A] finder of fact may consider whether the extreme and outrageous character of the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests. *Restatement of Torts (Second),* § 46, comment (e) [1965]. Id. at *380, **430. The "power differential" consideration has been explicitly extended and applied to law enforcement encounters. Hutchinson v. West Virginia State Police, 731 F. Supp.2d 521, 550 (S.D.W.Va. 2010). For that reason, when the acts at issue – as here – are committed by law enforcement, that can lend support to claims of outrageousness when it otherwise might not be. In the law enforcement context, whether probable cause supported an arrest tends to negate outrageousness. (Lowe v. Spears, 2009 WL 1393860, Civil Action No. 3:06-0657 (S.D.W.Va. May 15, 2009). Here, probable cause is very much in dispute, and factually underdeveloped at this point.

In the law enforcement context specifically, the types of conduct that have *not* been found to be "legally outrageous" include being lifted off the ground by the handcuffs during a wrongful arrest due to mistaken identity (Woods v Town of Danville, W.V., 712 F. Supp.2d 502 (S.D.W.Va. 2010)); a public strip search that exposed plaintiff's genitals, but only to the officer (Lee v. City of South Charleston, 668 F.Supp.2d 763  (S.D.W.Va. 2009)); being arrested for a minor offense, because – while atypical – there was probable cause for the arrest (Lowe, 2009 WL 1393860); and being forcibly removed from his home and choked when the plaintiff refused to leave it voluntarily following a DHHR home visit dispute. (Leonard v. Starkey, 2016 WL 183557 (N.D.W.Va. Jan. 14, 2016)). Plaintiff's allegations - taken as true, and liberally construed in the light most favorable to Plaintiff - would appear to be at least somewhat more outrageous than these situations. For these reasons, the undersigned cannot conclude that the conduct alleged here, taken as true, is not sufficiently outrageous to survive dismissal.

The pleadings as to severity of the distress are another matter. Generally, when a complaint merely pleads that a plaintiff *has* suffered severe emotional distress, that will not suffice to meet the fourth element on a motion to dismiss; particularly when the facts and events alleged do not give rise to a reasonable inference of same. "Severe distress must be proved; but *in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed*." Travis, 202 W.Va. at *380, 504 S.E.2d at **430. It is therefore logical that complaints found lacking under the severity element tend to be those in which the nature of the conduct itself does not lead the court to infer sufficient severity - e.g., Patrick v. PHH Mortg. Corp., 937 F. Supp. 2d 773, 790-91 (N.D. W. Va. 2013), cited by defendants. In Patrick, the plaintiffs alleged suffering "severe emotional distress such that no reasonable person could be expected to endure" caused by Defendant's wrongful debt collection practices and foreclosure proceedings at which their home was ultimately sold. The court found that this did not adequately explain the distress beyond "mere labels and conclusions." Id. Patrick concerned debt collection companies, however; not law enforcement; and those plaintiffs were not *pro se*.[4] Patrick is thus somewhat distinct.

Further, the policy rationale behind granting a motion to dismiss is to spare a Defendant the significant burden, time and expense of discovery when it is clear there are no plausible and facially valid claims. Twombly, 550 U.S. at *546 (the heightened pleading standard "serves the practical purpose of preventing a plaintiff with a largely groundless claim from taking up the time of a number of other people . . . [as] proceeding to [] discovery can be expensive.") (internal quotation marks and citations omitted). Here, because many of Plaintiff's claims survive,

---

[4] Defendants cite Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) for the proposition that *pro se* pleadings "must nevertheless comply with the heightened pleading standard of Iqbal and Twombly." ECF No. 16 at 5. In a footnote, the court stated that it did not read Erickson v. Pardus, a case involving a *pro se* plaintiff, to be at odds with Twombly's "more than labels and conclusions" standard.

Defendants will be properly subject to the burdens of discovery regardless of whether Plaintiff's intentional infliction of emotional distress claim is dismissed now, or survives at least until summary judgment.

However, despite these compelling reasons that tempt survival, as a technical matter, Plaintiff's complaint and response *do* speak more to the outrageousness of the conduct, rather than addressing the severity element with as much specificity as we have required in other cases. On balance, then, though the complaint does not quite suffice in its current form as to severity of the distress suffered,

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to [amend], the federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading.

Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999) citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 360–67 (2d ed.1990). Plaintiff should have an "opportunity to offer supporting evidence." Thompson v. Echols, Civ. No. 99-6304, 1999 WL 717280 (4th Cir. 1999). Accordingly, Plaintiff's claim for intentional infliction of emotional distress should not be dismissed yet. Rather, Plaintiff shall have the opportunity to amend his complaint as to severity within fourteen (14) days from the date of this Report and Recommendation.

### E.  Plaintiff alleges facts sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2) as to his Defamation and Slander claims.

As to defamation specifically, as previously discussed, any arguments based on injury and statute of limitations are now moot as a result of Plaintiff's subsequent termination on September 25, 2017. That leaves Defendants' arguments that Plaintiff has failed to state a claim for defamation.

"The essential elements for a successful defamation action . . . are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, Crump v. Beckley Newspapers, Inc., 173 W. Va. 699, 320 S.E.2d 70 (1984). Defendants argue Plaintiff fails to allege that Ms. Costlow made a defamatory statement, which Trooper Gaskins incorporated into the incident report, or that Trooper Gaskins made a nonprivileged communication of the allegedly defamatory statements to anyone.

The question of whether a challenged statement is capable of a defamatory meaning is a question of law. Syl. Pt. 7, Belcher v. Wal-Mart Stores, Inc., 211 W. Va. 712, 568 S.E.2d 19 (2002). In this case, it is a question easily answered. Plaintiff has satisfied the first element by alleging that the report contains defamatory statements. Ellis v. Thornsbury, 2016 WL 3039961, Civil Action No. 2:14-C-24641 (S.D.W.Va. May 27, 2016). Identifying "direct defamatory statements" is not necessary, since "defamation may also be accomplished through inference, implication, innuendo or insinuation." Crump, 173 W. Va. at 706. Further, communication which falsely imputes crime is actionable *per se*. Colcord v. Gazette Pub. Co., 206 W.Va. 419, 145 S.E. 751 (1928).[5]

Plaintiff has satisfied the second element because absolute privilege does not apply, and because qualified privilege is premature given the disputed facts. There are two types of privilege (and thus, two types of immunity). "The scope of absolute privilege is confined within fairly narrow limits . . . limited to legislative, judicial and quasi-judicial proceedings and other acts of the State." Crump, 320 S.E.2d at 78; 173 W.Va. at 706-07.   Alternatively, "a

---

[5] As previously discussed, whether probable cause existed is a question of fact to be decided at a later stage of this proceeding. At present, Plaintiff's admission of probable cause in the agreement does not render any of his claims less plausible at this stage. Further, admitting to sending emails is a far cry from admitting to completing any of the offenses with which Plaintiff was charged.

communication made in the discharge of a duty, and looking to the prevention of wrong towards another or to the public, is [subject to qualified privilege[] *when made in good faith*." <u>City of Mullens,</u> 133 W.Va. at *564 (emphasis added). "The existence or nonexistence of a qualifiedly privileged occasion ... in the absence of controversy as to the facts, [is a] question [ ] of law for the court." <u>Crump,</u> Syl. pt. 6, quoting Syl. pt. 3, <u>Swearingen v. Parkersburg Sentinel Co.,</u> 125 W.Va. 731, 26 S.E.2d 209 (1943)." Plaintiff clearly alleges bad faith in his complaint and a factual controversy is very much present. As such, a claim of qualified immunity cannot support dismissal at this stage.[6]

Defendants argue that the report is privileged because it is a "normal part of [Gaskins'] duties as a State Trooper and, therefore, privileged," citing three cases from other states, none of which are analogous to the facts alleged here.[7] Defendants cite no West Virginia statute or case that expressly confers *absolute* immunity to police officers in making a report. West Virginia

---

[6] A showing of any of the following will defeat a qualified privilege: actual malice, an intentional publication of false defamatory material, publication of false defamatory material and reckless disregard for its truth or falsity, a publication of false defamatory material made to persons who have no reason to receive the information, or a publication of false defamatory material with a primary purpose unrelated to the purpose of the privilege. <u>Crump,</u> 320 S.E.2d at 78 (W.Va. 1984). <u>See</u> Jarmuth v. Frinzi, 2006 WL 4730263, 9, Civil Action No. 1:04-CV-63 (N.D.W.Va. Jul. 25, 2006) ("a genuine issue of material fact exists with regard to whether [the alleged defamatory communication] was published to Healy under circumstances that would trigger a qualified privilege defense.").

[7] <u>Lightfoot v. Floyd</u>, an Alabama case, granted *summary judgment* for defendant on plaintiff's defamation claim because discovery had revealed no evidence to support the claim that the statements *were* defamatory, and any written reports filed by the investigator (a *university* police officer) "would very likely be entitled to *qualified* immunity . . . [as] a discretionary function square within the police' officer's authority." 667 So.2d 56 (Ala. 1995). <u>Hopkins v. O'Connor</u> likewise found a grant of *summary judgment* appropriate for a defamation claim in connection with statements written by an officer in a report connected to potential *commitment* proceedings, when *Connecticut* law had already identified that specific class of proceedings as ones to which absolute immunity attached. And lastly, "<u>Board of School Commissioners of City of Indianapolis v. Pettigrew</u>, 851 N.E.2d 326, 331 (Ind. Ct. App. 2006) (finding statement made by school employee to school supervisor regarding suspicious activity by plaintiff was privileged in defamation action)," ECF no. 16 at 20, which does not even involve *police*, but rather held that *school employees* were protected by a *qualified* privilege in reporting observations of suspicious activity. Whether absolute or qualified privilege applies to statements *made by police in a police report* varies by jurisdiction. Law from other states that have actually considered the precise issue at hand and come to the opposite conclusion is just as easily located - for example, <u>Dear v. Devaney,</u> 83 Mass.App.Ct. 285, 983 N.E.2d 240 (2013) (concluding based on review of Supreme Court precedent that statements made by police in a report are not protected by an absolute privilege in defamation action), or <u>Bradford v. Mahan.</u> 219 Kan. 450, 548 P.2d 1223 (1976) (holding that police report filed by city police officer was not a publication of legislative, executive, or judicial proceedings and was not absolutely privileged in a defamation action). But here, the court is concerned with West Virginia law.

Code § 57-2-4 identifies only truth as a defense to a defamation action, or in mitigation of damages for defamation. W.Va. Code Ann. § 57-2-4. In City of Mullens v. Davidson, the Supreme Court of Appeals of West Virginia held that "[t]he statements or communications of a municipal police officer are not within any category covered by the [absolute privilege] rule." 133 W.Va. 557, 564; 57 S.E.2d 1, 6 (W.Va. 1949). Accordingly, communications of a police officer in West Virginia are subject to qualified, rather than absolute, privilege.[8]

Other courts in this circuit have likewise found that a state trooper alleged to be involved in a conspiracy to issue subpoenas for a false purpose have no absolute privilege as part of a legal proceeding. Ellis, ("No case in West Virginia affords [] absolute privilege . . . [as s[ubpoenas perform an investigative function comparable to the activities of police officers, and, in West Virginia, officers receive only a qualified privilege for their statements," citing Mullens). The Ellis plaintiffs argued the "extra-governmental" nature of the subpoenas removed them from the scope of legitimate government activity. Id. at 4-5 ("Litigation privilege cannot fairly be said to extend to documents created at a wine bar by men engaged in a conspiracy to indict a man so the judge can have an affair with his wife and ... destroy his nephew's business."). Further, in Malley v Briggs, the Supreme Court held that § 1983 does not "give [an] officer the same absolute immunity enjoyed by the prosecutor." 475 U.S. 335, 342, 106. S.Ct. 1092, 1096 (1986).

Plaintiff has satisfied elements three, four, five, and six, because he clearly and sufficiently alleges falsity, that the report identifies him, bad faith, and injury. The "highly public and flamboyant manner in which" Plaintiff's arrest was carried out (at a family law proceeding at the Monongalia County Courthouse in which Plaintiff was a party), which ultimately caused the

---

[8] Although the officer in Mullens was a municipal officer, rather than a state trooper, Parker v Appalachian Electric Power suggests that is a distinction without a difference. 126 W.Va. 666 (W.Va. 1944) ("Merely being a state employee does not confer an absolute privilege when "neither [the employee] nor the division which he represented [are] authorized to perform any legislative, judicial, or quasi-judicial functions."). No West Virginia law supports the argument that a police officer's report belongs in this category.

FBI to be "deterred . . . from association or dealing with him" by terminating his employment, is sufficient. Ellis at 4.

Under West Virginia law, slander is simply defamation through oral means. Butts v. Royal Vendors, Inc., 202 W. Va. 448, 453, 504 S.E.2d 911, 916 (1998). Defendant Gaskins argues that the court must assume facts not explicitly pleaded in order to infer slander, and that even if the statements allegedly found in his report were repeated during the criminal proceedings, those communications would be privileged. As already discussed at length, any such communications are not absolutely privileged, and qualified privilege cannot be determined prior to discovery. Taken in the light most favorable to him, Plaintiff's complaint permits a reasonable inference that Gaskins orally communicated the defamatory statements as part of the criminal proceedings. It would be odd indeed if the prosecuting attorney never once spoke to the officer who wrote the report on which the criminal case she was responsible for prosecuting was based. Further, Plaintiff alleges that a uniformed state trooper, whose identity he cannot discern prior to discovery, came in person to the FBI office to lodge a complaint. The court can reasonably infer that trooper communicated orally, and the facts alleged permit a reasonable inference that the unidentified trooper was likely one of the trooper defendants. Accordingly, Plaintiff's slander claim suffices.

### F.  Plaintiff alleges facts sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2) as to his Breach of Contract claim against Costlow.

Costlow argues that Plaintiff cannot maintain a breach of contract claim against her "based upon a criminal plea agreement." (ECF No. 18 at 2). Plaintiff counters that the agreement was not a plea agreement in any respect, as to any party, as Plaintiff did not enter a guilty plea to the charges; rather, the charges were dismissed. (ECF No. 45 at 11). The undersigned agrees.

35

The agreement specifically addressed what "[Plaintiff] and [Costlow] mutually agree[d]" to do, or refrain from doing – nothing more. ECF No. 18-1 at 1. Arguments regarding plea agreements are inapplicable.

"A complaint that asserts the existence of a contract and a breach thereof with damages is sufficient to survive a motion to dismiss." State ex rel. State Auto Property Ins. Cos. v. Stucky, 2016 WL 3410352, *5, No. 15-1178 (W.Va. Jun. 14, 2016) (citing Harper v. Bus Lines, 117 W. Va. 228, 185 S.E.2d 225 (1936)). Plaintiff alleges that the agreement was breached by Costlow "shortly thereafter [when she] told defamatory lies about Plaintiff to Plaintiff's employer." (ECF No. 45 at 24). Plaintiff's claim thus suffices.

### G. Plaintiff does not allege facts sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2) as to his Right of Access to the Courts claim.

Defendants argue that the fact that Plaintiff's case is pending before this court renders Plaintiff's right of access claim unsustainable. (ECF No. 16 at 9; ECF No. 18 at 8-9). Plaintiff appears to concede this, or at least, does not argue against it.

"The Constitution guarantees a right to reasonable access to the courts." Smith v. Hampton Roads Regional Jail, Civil Action No. 3:08-CV-610 , 2008 WL 3109835, 2, (E.D.Va. Sept. 25, 2009) (citation omitted). To sustain a claim for violating this right, "a plaintiff must demonstrate that the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had." Pollard v. Pollard, 325 F. App'x 270, 272 (4th Cir. 2009). A court must "assess whether [a plaintiff's attempted] access was in fact 'effective' and 'meaningful.'" Thorne v. Huntington Police Department, Civil Action No. 3:12-6280, 2013 WL 2458544, 7 (S.D.W.Va. Jun, 6, 2013) quoting Swerkel v. City of River Rouge, 119 F.3d 1259, 1264 (6th Cir. 1997).

Here, though Plaintiff alleges that an unidentified State Trooper attempted to interfere with his pending case and intended to incite pressure on Plaintiff to abandon his claims, the Trooper was obviously unsuccessful. When the acts alleged occur post-filing, because a Plaintiff is already in court, any improper conduct can be addressed by the court. Swerkel v. City of River Rouge, 119 F.3d 1259, 1263 (6th Cir. 1997). Plaintiff has thus failed to allege sufficient facts to sustain this claim, and it appears that he could not. Therefore, this claim should be dismissed.

### H.  Plaintiff alleges facts sufficient to satisfy Federal Rule of Civil Procedure 8(a)(2) as to his Tortious Interference with Contract (Employment) claim.

Initially, Plaintiff requested injunctive relief pursuant to further interference by WVSP (e.g., as complaining to the FBI about his civil suit). As Plaintiff has now been terminated, his request for an injunction is moot, as Defendants could not conceivably harm his employment any further. However, his claims as to tortious interference are not.

As addressed above, Plaintiff's termination on September 25, 2017 renders moot Defendants' arguments regarding failure to show an altered status as required.  Further, in addition to termination, Plaintiff also has sufficiently alleged "the status of being investigated [and] the denial of regular promotion and transfer opportunities." (ECF No. 45 at 11).

In order to establish a claim of tortious interference with contract, a plaintiff must show: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by an outside party; (3) that the interference caused harm; and (4) damages. Syl. Pt. 5, Hatfield v. Health Mgmt. Assocs. of W. Va., 223 W. Va. 259, 672 S.E.2d 395 (2008). "Although the plaintiffs need not prove a link between the damages they complain of and defendants' alleged misconduct at the motion to dismiss stage, they must at least allege some fact that would allow 'the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" <u>Imagine Medispa,</u> 999 F.Supp. at *883 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678–79).

The Trooper Defendants argue that Plaintiff fails to allege facts to make the second and fourth elements plausible, and that he has failed to plead that the as-yet unidentified state trooper who complained to the FBI was acting under color of law. The mere fact that the complainant was a State Trooper may not necessarily prove he was acting under color of state law at the time he complained to the FBI. However, Plaintiff is not required to prove that at the motion to dismiss stage. His complaint permits a reasonable and plausible inference that the trooper was. Indeed, a state trooper who appears - in person and in uniform - at an FBI office to lodge a complaint about a civil suit filed against state troopers would be brazen indeed, if he was engaging in a purely personal pursuit.

Defendants argue that "even if the unidentified State Police representative . . . acted with the knowledge of, or on behalf of, the State Police Defendants, there is still no allegation that the acts described in the Amended Complaint were done under color of state law." ECF No. 16 at 11, citing two cases from the Seventh Circuit. In the Fourth Circuit, however, Plaintiff's complaint is sufficient.

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." <u>U.S. v. Classic,</u> 313 U.S. 299, 327; 61 S.Ct. 1031, 1043 (1941). Although actions of state officials in furtherance of personal or private pursuits are not covered by § 1983, the lack of the appearance of state authority is not determinative of whether the act is done under the color of state law. While § 1983 complaints that recite bare legal conclusions "wholly devoid of facts" . . . may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts—

even if the factual assertions are equally consistent with a contrary conclusion—should survive a Rule 12(b)(6) motion to dismiss." Revene v. Charles County Commissioners, 883 F.3d 870 (4th Cir. 1989) (pleading that a sheriff was "acting under color of law" when off-duty and driving his own vehicle at the time of the alleged deprivation, though it could also be read as consistent with a "purely personal pursuit," were also sufficient to survive a motion to dismiss). Accord Padgett v. Wilson, 68 F.3d 461, 1995 WL 610349 (4th Cir. 1995) (table) (Act committed by state employee during business hours while at work affords a presumption he was acting under color of state law, regardless of the fact that the act was outside the scope of his duties).

Plaintiff alleges the Trooper here was both in uniform and, the court can reasonably infer, undertaking the alleged acts during business hours since he was able to meet with someone to lodge a complaint. Further, he was there pursuant to a civil case filed against the Trooper Defendants for acts they performed *as* State Troopers; his presence did not "arise out of purely personal circumstances" Johnson v. Baltimore City Police Department, 2013 WL 604899 (D.Md. Jan. 29, 2013). "[I]f a defendant's purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law." Rossignol v. Voorhaar, 316 F.3d 516, 524 (4th Cir. 2003). Circumstances supporting an inference that a police officer was acting under color of state law include when "the animosity gr[ows] out of the officer's performance of his official duties . . . [or that the officer's] desire to retaliate . . . arose out of criticism of the [officer's] actions in his official capacity." Id. (internal citations and quotations omitted). Plaintiff has alleged precisely this, and his claims suffice. Lastly, Costlow's additional argument that Plaintiff has failed allege that she was responsible for the acts of the unnamed Trooper fails because Plaintiff has sufficiently pled conspiracy, as discussed.

5. **The Monongalia County Family Court custody evaluation report is relevant to Plaintiff's claims.**

Lastly, Plaintiff requests "a declaratory judgment unsealing the Family Court's custody evaluation report," noting that the "Family Court indicated that the records concerning Dr. Cooper-Lehki's findings may be unsealed at the request of another judicial body should the information be deemed relevant to court proceedings." (ECF No. 45 at 26). Defendant Costlow argues that Plaintiff's request is "evidence of the Plaintiff's malicious motivation in filing his Amended Complaint," and accuses Plaintiff of seeking the document "more for purposes of embarrassing Ms. Costlow, than for the probative value of such documents." ECF No. 33 at 10. Costlow argues that Plaintiff was charged with the offense of sending unwanted communications to Ms. Costlow, and so if the report concerned whether Costlow's claims of domestic violence were bona fide, it is not relevant to these proceedings either way. Id. at 11.

Plaintiff's defamation claim against Costlow alleges the following facts:

231. Defendant Costlow contacted the FBI and/or FBI investigators in or around May 2016.

232. Costlow was aware that the investigators were seeking information regarding Ballock and whether the allegations, as alleged above, were true, false, or otherwise inaccurate.

233. Costlow repeated defamatory and disparaging statements about Ballock, made claims that he committed acts that he did not commit, and made other false claims concerning Ballock.

234. This includes, but is not limited to, **the false and outrageous lies that Ballock threatened and physically abused Costlow.**

235. Costlow knew that her statements about Ballock were false.

236. Furthermore, Costlow knew the statements would cause harm to Ballock and his employment with the FBI, and to his life.

237. Furthermore, the same lies and defamatory statements made by Costlow to the FBI investigators were thoroughly refuted by the court-appointed forensic psychiatrist, Dr. Christi Cooper-Lehki.

238. Dr. Christi Cooper-Lehki's report and testimony further proves and corroborates this claim and the facts above.

(ECF No. 45 at 23) (emphasis added). The report is therefore directly relevant to Plaintiff's defamation claims, as its contents address an issue specifically alleged in that claim, and an

element that Plaintiff must prove (that the statements were false). The report is likewise directly

relevant to Plaintiff's slander claim, as he alleges Costlow knowingly and falsely communicated

that "Plaintiff engaged in criminal behavior when he did not." (ECF No. 45 at 21). The report is

also more generally relevant to the issue of probable cause, which Plaintiff must prove as part of

his malicious prosecution claim. Plaintiff alleges communications from Costlow to her attorneys

prior to Plaintiff's arrest stating that the basis for pursuing the harassment charges against him

was that she was in fear of Plaintiff:

> 63. On May 29, 2013, one day after the above-noted events, Costlow sent an email
>     message to her attorneys, which read in part:
>> A. "Amber and Matt, I need to file harassment charges against Scott today and I
>>    would appreciate your help in the matter. **Scott's constant threats, insults,
>>    and other abusive tactics** are intolerable. I'm losing sleep at night as **I fear
>>    what Scott will do next**, and **I am afraid he's going to keep ramping things
>>    up until he threatens my life. But unlike times before, this time I fear he
>>    will be successful in taking my life. I have lived far too long in an abusive
>>    relationship** to have any ability to heal from it while trying to cope with what
>>    Scott throws my way via texts and email. He's out of control trying to control
>>    and hurt me, and what he writes to me is nothing compared to what he's doing
>>    in secret. The writing is meant to distract me as he plots his next attack. The
>>    writing is meant to take my energy, frighten me, and keep me from living a
>>    productive life apart from him…"
> 64. Plaintiff never threatened, harmed, abused, or attacked Defendant Costlow.
> 65. Defendant Costlow created a false narrative which was ultimately thoroughly
>     Debunked by the court-appointed psychiatrist and the Family Court.
> 66. Costlow's divorce attorneys fired Costlow as a client.

(ECF No. 45 at 6), "Allegations common to **all counts**." (emphasis added). As Costlow points

out, the West Virginia criminal codes under which Plaintiff was charged involve harassment,

abusive intent, and stalking. Plaintiff also alleges communications from Gaskins stating that the

reason Plaintiff was arrested at the Monongalia County Family Court was "out of a concern for

officer safety; [because] as an FBI agent, Ballock carried a firearm;" but that "explanation was

pretense and knowingly false." (ECF No. 45 at 4). If Plaintiff had a credible history of violence,

that would aid Costlow and the Trooper Defendants' assertions of probable cause, and support an innocent explanation for the suspect timing of his arrest; if he did not, it aids Plaintiff.

Either way, the report appears to contain information that would make those alleged facts more or less probable. Indeed, every claim and factual allegation contained in Plaintiff's complaint shares the connecting premise that they were all either directly or proximately caused by Costlow for the purpose of obtaining a more favorable outcome for herself in family court proceedings against Plaintiff. Plaintiff asserts that a forensic psychiatric report, prepared by an expert in that field, "directly support[s] Plaintiff's allegations." (ECF No. 45 at 26). Costlow does not dispute Plaintiff's characterization of the report; only its relevance. Further, the considerations involved in sealing the report are far different here than they were in the Family Court of Monongalia County.

The public right of access to court documents and records has roots in both a common law as a general right, Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978), and in the First Amendment as a right to specific types of documents. Stone v University of Maryland Medical System Corp., 855 F.2d 178, *180 (4th Cir. 1988). Family court proceedings between estranged spouses are inherently more private matters, the details of which typically have little relevance or value to the public at large. In such cases, the public's common law general presumption of access to court documents can easily be rebutted "if countervailing interests heavily outweigh the public interests." Rushford, 846 F.2d at *253. However, this is no longer a matter solely in Family Court between Plaintiff and Costlow, and the policy behind the low bar for sealing family court documents does not control Plaintiff's right to relevant evidence in a civil proceeding in Federal Court. Plaintiff's claims involve allegations of civil rights violations carried out by employees of a law enforcement agency, the

West Virginia State Troopers – a matter of direct interest to the public at large, whom it serves. See Virginia Department of State Police v. Washington Post, 386 F.3d 567, *578-9 (4th Cir. 2004)

Further, a joint protective order has already been entered in this case preventing the dissemination of sensitive, confidential information in the pretrial stage (ECF No. 47). When such information is directly relevant to a disputed fact or issue, the fact that it may also be embarrassing to Costlow is of little consequence at the 12(b)(6) stage. For these reasons, the undersigned finds no discernible reason why Plaintiff should not have use of it in these proceedings. However, in order to maximize fairness to both parties, the report should be provided directly from the Family Court to the undersigned for *in-camera* review to permit a determination of relevance.

## V.   Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that:

Defendants' motions to dismiss (ECF Nos. 15 and 17) Plaintiff's claims for Abuse of Process (1 and 6), Malicious Prosecution (2 and 5), Conspiracy (6), Defamation (7 and 12), Slander (8), Tortious Interference with Contract (10 and 11), and Breach of Contract (13) be **DENIED**;

A ruling on Defendant's motions to dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress is **HELD IN ABEYANCE**; Plaintiff is **DIRECTED** to amend his complaint within **FOURTEEN DAYS** from the date of this Report and Recommendation. Plaintiff is hereby **NOTICED** that failure to satisfy the severity element by so doing within fourteen days will result in the dismissal without prejudice of that claim; and

Defendant's motions to dismiss Plaintiff's claims for Violation of First Amendment Right to Seek Redress in the Courts (3) and Color of Law (14) be **GRANTED** and those claims **DISMISSED** with prejudice.

Further, the undersigned **DIRECTS** that the sealed family court report should be provided directly to the court for *in-camera* review by one of the means indicated below.[9]

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to counsel of record.  The Clerk is further **DIRECTED** to terminate Defendants' original motion to dismiss (ECF No. 12) as moot.

Respectfully submitted this **December 6, 2017.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

---

[9] Said report may be mailed to the undersigned's chambers at 500 West Pike Street, P.O. Box 2857, Clarksburg, West Virginia 26302, or sent via email to jenny_thoma@wvnd.uscourts.gov.

44