UNITED STATES DISTRICT COURT
NOTHERN DISTTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK,**

      **Plaintiff,**

**v.**                                              **CIVIL ACTION NO: 1:17-CV-52**
                                                **Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M.**
**GASKINS, AND STATE TROOPER**
**CHRIS BERRY,**

      **Defendants.**

## MEMORANDUM IN SUPPORT OF ELLEN RUTH COSTLOW'S MOTION FOR SUMMARY JUDGMENT

      Defendant Ellen Ruth Costlow, by counsel, hereby provides the following Memorandum in support of her Motion for Summary Judgment.

### I.    INTRODUCTION/QUESTIONS PRESENTED

      As shown below, the action brought by the Plaintiff against Ruth Ellen Costlow and others is another example of the abuse the Plaintiff has inflicted upon her, which resulted in criminal charges being filed against him and led to the termination of his employment with the FBI. No genuine issue exists for a reasonable juror to find for the Plaintiff on any count he alleges, entitling Ms. Costlow to summary judgment on all claims.

      A determination of whether the Plaintiff can produce evidence sufficient for a reasonable jury to rule in his favor involves resolving three pertinent questions:

1. Did probable cause exist on September 12, 2013 for the issuance of arrest warrants for the Plaintiff on one count of harassment, pursuant to W. Va. Code § 61-2-9(b) and

one count of Harassment by electronic device, pursuant to W. Va. Code § 61-3C-14(a)(2), where the Plaintiff sent Ms. Costlow 3,000 emails and texts, most after Ms. Costlow had asked him to stop contacting her?;

2.  Can the Plaintiff produce a genuine issue that a conspiracy to harm him existed, where he was arrested based upon probable cause after a lawful investigation?; and

3.  Can the Plaintiff maintain any of his causes of action, where he was terminated for conduct constituting Misuse of a Weapon, Unprofessional Conduct and Lack of Candor/Lying Under Oath, unrelated to allegations contained in his Complaint?

The argument below will show that no genuine dispute exists that there was probable cause for the Plaintiff's arrest on the two charges against him and that nothing more than an ordinary investigation of the thousands of texts and emails, which the Plaintiff does not dispute sending to Ms. Costlow, *See, generally*, Ex. 1, Investigation Report of Trooper Gaskins, Ex. 2, Ballock Dep. 136:24-137:9 (acknowledging accuracy of Gaskins' Report, ensued. The Plaintiff is unable to produce evidence of any illegal act on the part of any of the Defendants and, although the Plaintiff's claims can be dismissed on multiple grounds, the two overriding issues in this case are: (1) no dispute exists that probable cause for his arrest existed; and (2) the Plaintiff's employment was terminated for reasons unrelated to any allegation against the Defendants.

## II.  STATEMENT OF UNDISPUTED FACTS

Ms. Costlow and the Plaintiff separated on or about September 14, 2012, with Ms. Costlow filing for divorce soon thereafter. Ballock Dep. 24:10-16. In succeeding months, the Plaintiff sent Ms. Costlow more than 3,000 emails and text message, many of which were preceded by a request by Ms. Costlow to cease communicating with her. Ex. 1. Trooper Gaskins found many of the communications to reflect "obsessive" attempts toward reconciliation, and

others to be more hostile, demeaning, threatening and expressing an indifference on the part of the Plaintiff to requests from Ms. Costlow to be left alone. *Id.*

As an example of some of the communications sent by the Plaintiff to Ms. Costlow, an October 7, 2012 email accused her of neglecting parental duties to "have sex with a dirty troll," Ex. 3, Email from Plaintiff to Ms. Costlow (October 7, 2012 11:16 a.m.), and wrote "You are not street smart and are easily manipulated, especially where cock is involved," to which Ms. Costlow replied, "Please stop cutting me down. Stop with the insults. Stop judging me. Stop lashing out. Please." Ex. 4, Emails between the Plaintiff and Ms. Costlow (October 20, 2012 7:06 p.m., 7:10 p.m.). He also described her as "pure evil," Ex. 5, Email from Plaintiff to Ms. Costlow (November 22, 2012 10:22 p.m.), and threatened exposing Ms. Costlow to criminal liability. On May 28, 2013 the Plaintiff sent Ms. Costlow an email, which he had copied the text to 18 U.S.C. § 641, which threatened that "Theft of government property is an matter we will be addressing immediately," Ex. 6, Email from Plaintiff to Ms. Costlow (May 28, 2013 11:00 p.m.),

Some hostile communications from the Plaintiff to Ms. Costlow closely followed requests for the Plaintiff to stop harassing his estranged wife. On September 29, 2012, in response to the Plaintiff's repeated communications beginning earlier in the month, Ms. Costlow requested that the Plaintiff stop communicating with her, noting that he had texted her for seven hours the previous day. The Plaintiff responded by sending an email at 1:38 a.m. on September 30 which consisted of a "Final Poem," reading "Black boots, Black coat, Black heart, Black soul." Ex. 7, Email from Plaintiff to Ms. Costlow (September 30, 2012 1:38 a.m.). The Plaintiff ignored another request from Ms. Costlow to cease harassing her on November 7, 2012. On that date Ms. Costlow informed the Plaintiff that she considered his emails to be "harassing," in stating, "I have asked you many times to leave me alone. This is my last request. Please refrain

3

from sending harassing emails and texts, as well as any other means of communication." To which the Plaintiff responded, "My correspondence has been polite and respectful. Calling it 'harassing' does not make it so." Ex. 8, Emails between Plaintiff and Ms. Costlow, (November 7, 2012 3:31 p.m., 4:01 p.m.).

After a letter from Ms. Costlow's divorce attorney was sent to the Plaintiff on May 3, 2013, informing the Plaintiff that he was not to contact Ms. Costlow except on matters "directly necessary for the care of your children," Ex. 9, Letter from Matthew Stout to Plaintiff (May 3, 2013),[1] the Plaintiff's communications in that month became even more voluminous, *See* Ex. 12, Texts messages between Plaintiff and Ms. Costlow (May 17, 2013 8:24 a.m.-8:48 p.m.) *infra*, and often threatening and ugly. *See*, Ex. 6, Email from Plaintiff to Ms. Costlow (May 28, 2013 11:00 p.m.) *supra*.

The Plaintiff renewed efforts at reconciliation on May 3, 2013 and threatened that if reconciliation did not occur there was a "real risk" that custody would be taken from both Ms. Costlow and the Plaintiff and that their children would be raised by a foster family Ex. 10, Email from Plaintiff to Ms. Costlow (May 3, 2013 9:00 p.m.). Later that month, the Plaintiff indicated that he would not respect a request that he speak to Ms. Costlow only about matters directly concerning their children, stating, "I will not go through your attorneys for anything. Ever. As long as you have custody of [daughter's name], I will make my requests directly to you. That is my privilege." Ex. 11, Email from Plaintiff to Ms. Costlow (May 15, 2013 10:29 p.m.). The Plaintiff then increased communication in days following, sending Ms. Costlow 62 text messages on May 17, 2013 alone. Ex. 12, Texts messages between Plaintiff and Ms. Costlow (May 17, 2013 8:24 a.m.-8:48 p.m.). Two dozen of these messages were sent by the Plaintiff to Ms.

---

[1] The document was recovered from the Monongalia County Prosecuting Attorney's "Expunged" file from the Plaintiff's criminal case, requiring that the Plaintiff's name be erased.

Costlow after she had implored the Plaintiff, with underlined text, to "Stop texting me" and "Please leave me alone." *Id*. The Plaintiff indicted on several occasions that he would never cease to harass Ms. Costlow, despite her frequently communicated wishes to be left alone. A particularly blunt message was sent by the Plaintiff on December 15, 2012, in which he stated, "I will never stop reminding you of the terrible, life-altering mistake you have made," Ex. 13, Email from Plaintiff to Ms. Costlow (December 15, 2012 9:28 a.m.), after first informing Ms. Costlow, "When your daughter gets pregnant in the back seat of a corvette by some ill spoken Fairmont hillbilly or when your troubled son kills himself because of the inner turmoil he feels, I will be there to remind you that you chose this path." *Id*. The volume and content of the Plaintiff's communications with Ms. Costlow is detailed in Trooper Gaskins Report, Ex. 1, and the Plaintiff does not dispute Trooper Gaskins' account of such communications. Ex. 2, Ballock Dep. a136:24-137:9.

During the time that the Plaintiff was sending thousands of emails and texts to Ms. Costlow, despite her requests to stop such communications, the Plaintiff also engaged in other acts, which OPR determined constituted unprofessional, abusive, harassing conduct, and which resulted in his employment being dismissed. *See, generally*, Ex. 14, Letter from OPR to Plaintiff, March 5, 2019. This includes, providing his father with material, defamatory to Ms. Costlow and an individual close to her, to be posted on internet websites operated by the Plaintiff's father, *Id. 5-6*, conducting an unauthorized investigation, presumably to help his divorce case, *Id. at 14-16*, and misuse of a database. *Id. at 16-17*. OPR observes that the Plaintiff "admitted to using FBI investigative techniques" "to gain information" against Ms. Costlow, and contracted with a business the Plaintiff claimed was used by the FBI to conduct a forensic examination of a phone used by Ms. Costlow's boyfriend to uncover information related to his estranged wife. *Id. at 21*,

5

14-16. The database search, which sought criminal justice records of Ms. Costlow's boyfriend,[2] was conducted by a subordinate of the Plaintiff, who also assisted the Plaintiff in his investigation of Ms. Costlow and individuals associated with her. *Id.* at 16.

OPR determined that the Plaintiff had "abused his position as an FBI Special Agent" in taking advantage of the "extreme power differential" between his position and that of an individual he described as a "low-level criminal" to obtain information against Ms. Costlow. *Id.* at 21. It determined that the Plaintiff's association with an individual the Plaintiff apparently believed to be a criminal "created an appearance of corruption," *Id.*, and noted that FBI employees are prohibited from unauthorized associations with individual known to be engaging in criminal activities. *Id.* at fn. 19. The Plaintiff apparently shared much of the information about his "investigation" and the information he gathered from such with OPR during its investigation of the Plaintiff. *Id.* at 19-20. OPR determined that the Plaintiff's efforts at uncovering information about Ms. Costlow and an individual close to her evidenced intrusion into Ms. Costlow's life to an extent the OPR found to be "disturbing". *Id.* The Plaintiff references his "investigation" in his Third Amended Complaint. 3rd Am. Compl. ¶¶ 60-61, 137-43 (describing communications allegedly recovered from forensic examination of phone).

The investigation by the West Virginia State Police into emails and texts sent by the Plaintiff to Ms. Costlow was set into motion when, on or about August 13, 2013, the Plaintiff's father contacted Defendant Trooper Michael Kief, to inform him of an allegation that Ms. Costlow was having an affair with another West Virginia State Trooper, Defendant Chris Berry.[3]

---

[2] The database search apparently uncovered "[n]o compelling or noteworthy information" about Ms. Costlow's associate and was not cited as a ground to terminate the Plaintiff's employment. Ex. 14, OPR Letter to Plaintiff, March 5, 2019 at 17.

[3] The allegation seems to have somehow originated from an incident where Trooper Berry was investigating a string of car break-ins in Ms. Costlow's neighborhood and gave Ms. Costlow his cell phone number, so she could share information with him. Ex. 16, Berry Dep. 10:16-12:11, 16:6-16.

Ex. 15, Kief Dep. 123:4-12, 51:4-11, 3rd Am. Compl. ¶¶ 25, 29. Trooper Kief called Ms.

Costlow, to ask her about the allegation he had received from the Plaintiff's father. Ex. 15, Kief

Dep. 60:21-61:16. Upon being contacted by Trooper Kief, Ms. Costlow informed the Trooper

that the Plaintiff's father had posted derogatory material about her on multiple websites and that

the Plaintiff had been harassing her by sending her unwanted emails and text messages. Id., 66:7-

22. An investigation of the Plaintiff's acts was initiated by the West Virginia State Police as a

result. Id. 97:9-16, Ex. 1.

On September 2, 2013 the State Police investigation was assigned to Trooper Defendant

Ronnie Gaskins, who soon reviewed a DVD-R provided to him by the Plaintiff's divorce

attorney, which contained more than 3,000 emails and texts from the Plaintiff to Ms. Costlow

and evidenced Ms. Costlow's repeated requests for the Plaintiff not to contact her in this manner.

Ex. 1. Trooper Gaskins took the DVD-R to a meeting with Monongalia County Assistant

Prosecuting Attorney Cindy Scott on September 11, 2013. Id. Whereupon, Ms. Scott reviewed

communications from the Plaintiff to Ms. Costlow and advised Trooper Gaskins to charge the

Plaintiff with Harassment, in violation of W. Va. Code § 61-2-9(b) and Harassment by electronic

device, in violation of W. Va. Code § 61-3C-14(a)(2). Id.

The following day Trooper Gaskins presented two criminal complaints with the charges

suggested by Assistant Prosecuting Attorney Scott to Monongalia County Magistrate Sandy

Holepit, who found probable cause to issue a warrant for the arrest of the Plaintiff on each

charge. Id., Ex. 17, Warrants and Criminal Complaints, Magistrate Court of Monongalia County.

After consultation between the West Virginia State Police and the FBI, the Plaintiff was arrested

outside Monongalia County Family Court during a proceeding in Ms. Costlow and the Plaintiff's

divorce. Ex. 1, Ex. 15, Kief Dep. 203:11-14, Ex. 18, OPR Letter to Plaintiff, September 21, 2017

7

at-10. An FBI representative was present for the arrest. Ex. 18, OPR Letter to Plaintiff, September 21, 2017 at 9-10.

On April 7, 2017, the charges against the Plaintiff were dismissed upon an agreement, attached to the State's Motion to Dismiss and signed by the Plaintiff, his attorney, Ms. Costlow and the prosecuting attorney. Ex. 19, Motion with Attachment, Magistrate Court of Monongalia County, April 7, 2016. Pursuant to the agreement, the Plaintiff:

1. [A]cknowledges that probable cause existed for West Virginia State Police to file for the issuance of the warrants in this case pursuant to W. Va. Code §61-3C-14a and §61-2-9a;

2. [A]cknowledges communicating via email with Ellen (Ballock) Costlow after it is alleged that a letter was sent to him asking him to stop such communications to Ellen Costlow; and

3. [A]grees to cease, and to not initiate or reinitiate, if applicable, efforts to affect Ellen Costlow's personal reputation, employment, professional status or workplace relationships, and he agrees to discourage and other person purporting to act on his behalf to similarly cease, or not reinitiate any disparagement of Ellen Costlow on social media or other platforms of public communications...[and] agrees to assist in removing any remaining remnants of disparaging social media postings by taking reasonable steps within his control to remove these postings, links or other social media communications.

The Plaintiff further agreed "not to contact Ellen Costlow by any means or for any reason other than to notify her by email of hospitalization of either child, or regarding either child traveling outside of the country." Id. at ¶6. Ms. Costlow agreed "that she will not communicate any disparaging information or commentary to Scott Ballock's employer or place of employment, or on social media or any other platforms of public communication." Id. at ¶4. The Plaintiff has disavowed the agreement and admitted that he falsely signed the agreement to have charges dismissed. Ex. 2, Ballock Dep.109:8-19.

On May 12 or 18, 2016,[4] Ms. Costlow was interviewed by FBI investigators regarding the Plaintiff's conduct. Ex. 14, OPR letter to Plaintiff, March 5, 2019 at 4. OPR reports receiving information from Ms. Costlow during this interview, which was either corroborated or not disputed by the Plaintiff, and which was used as a reason for termination of the Plaintiff's employment. *See, generally,* Ex. 14, OPR letter to Plaintiff, March 5, 2019. The information included an incident where the Plaintiff vaginally penetrated Ms. Costlow with a gun, which the Plaintiff admits, *Id.* 4-5, 20, 23, another where the Ms. Costlow needed emergency medical attention after the Plaintiff penetrated her with another object, which a was also admitted by the Plaintiff, *Id.* 4-5, 20-24, and a third where the Plaintiff placed a gun in his mouth and threatened suicide. *Id.* According to OPR's letter, the Plaintiff did not dispute using a loaded weapon to threaten suicide. *Id.* 19. OPR reports interviewing Ms. Costlow about other behaviors, including the Plaintiff's texts and emails, website postings by the Plaintiff's father and the Plaintiff's forensic examination of a cell phone, which were considered as grounds for termination of the Plaintiff's employment, and which were corroborated either by documents delivered by the State Police or the Plaintiff's submissions during the FBI's investigation of his conduct. *Id.* 4, 14-24.

On September 21, 2017 OPR dismissed the Plaintiff from employment under the "Other Misdemeanors" section of the FBI Offense Code for his text and email harassment of Ms. Costlow, and also dismissed his employment for violation of the Code's "Lack of Candor/Lying-Under Oath" section, based upon communications from the Plaintiff to the FBI during the investigation of the Plaintiff. Ex. 18, OPR letter to Plaintiff, September 21, 2017. In dismissing the Plaintiff for delivering harassing emails and texts to Ms. Costlow, OPR conducted an independent analysis of the texts and emails sent by the Plaintiff to Ms. Costlow and concluded,

---

[4] The OPR report provides inconsistent dates on which Ms. Costlow was interviewed. Both indicating that only one interview occurred. Ex. 14, OPR letter to Plaintiff, March 5, 2019 at 4.

not only that the communication established probable cause to believe that the Plaintiff had committed a criminal offense, but that the Plaintiff's texts and emails constituted Harassment by electronic device, in violation of W. Va. Code § 61-3C-14a.[5] *Id.* 13. In finding that the Plaintiff violated the Lack of Candor/Lying-Under Oath section, OPR emphasized that in a signed, sworn statement (SSS #1) responding to the allegations against him, the Plaintiff had stated that his communications with Ms. Costlow "were always 'appropriate and respectful' and never 'harassing'". *Id.* 12.

The Plaintiff appealed the September 21, 2017 decision and delivered dozens of pages of documents in support, *See*, Ex. 14, OPR Letter to Plaintiff, March 5, 2019 1-2 for administrative procedural history, which resulted in OPR conducting additional investigation, re-interviewing the Plaintiff and re-adjudicating the issue of his employment. *Id.* The additional investigation resulted in the Plaintiff being dismissed for three FBI Offense Code violations, instead of the two cited in the September 21, 2017 OPR letter. *Id.* 23-24, Ex. 18, OPR Letter to Plaintiff, September 21, 2017 17-18. The re-adjudication followed the September 2017 decision in dismissing the Plaintiff for the offense of Lack of Candor/Lying Under Oath. Ex. 14, OPR letter to Plaintiff, March 5, 2019 20-24. OPR also dismissed the Plaintiff for Misuse of Weapon/Safety Violation for vaginally penetrating Ms. Costlow with a gun and for placing a loaded weapon in his mouth. *Id.* The ground of Other Misdemeanors, found to justify dismissing the Plaintiff from employment in September 2017, was broadened to the offense of Unprofessional Conduct-Off Duty, based upon what OPR determined were abusive actions by the Plaintiff extending beyond

---

[5] OPR found § 61-3C-14a to more appropriately characterize the offense the Plaintiff committed than § 61-2-9a(b), which the Plaintiff was also charged with violating. Confusion exists in several documents in regard to this charge. The criminal complaint identifies the Plaintiff's violation of § 61-2-9a, then identifies subsection '(b)" and lists the elements contained in that subsections. It appears that the Plaintiff was charged and would have been prosecuted under § 61-2-9a(b) had his case been tried, as will be discussed, *infra*.

his emails and texts, for which the Plaintiff was also dismissed. *Id.* 3, 20-24. In addition to

harassing emails and texts, OPR also cited the Plaintiff contributing to abusive internet postings,

conducting an unauthorized investigation with an FBI subordinate and having a cell phone

forensically examined by a company he claimed was used by the FBI as examples of the

Plaintiff's Unprofessional Conduct. *Id.* 14-24. OPR explicitly stated that the Plaintiff's arrest on

September 13, 2013 was not considered in its decision to dismiss the Plaintiff. *Id.* at 3.

### III.   ARGUMENT

#### A.   Standard for Summary Judgment

"Summary judgment 'should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law.'" Cloaninger v. McDevitt, 555 F.3d 324,

332 (4th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). In considering a motion for summary judgment,

courts are to view the facts and draw reasonable inferences in the light most favorable to the party

opposing the motion, but only if there is a "genuine" dispute as to those facts. *Id.* A mere

"scintilla" of evidence, however, is not sufficient to create a genuine fact issue; there must be

evidence on which a jury might rely. Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir.

1984).

#### B.   Probable Cause Existed for the Plaintiff's Arrest, Requiring Dismissal of the Plaintiff's Malicious Prosecuting Claims

The Plaintiff's federal and state claims for malicious prosecution (Second and Fifth

Claims) must be dismissed based upon the existence of probable cause for his arrest. The

absence of probable cause is a central element in malicious prosecution claims under both federal

and state law. To maintain a § 1983 malicious prosecution claim, a plaintiff must show that a

defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

11

probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). A West Virginia state law malicious prosecution claim requires proof that:

1. The prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge;

2. It was caused or procured by defendant;

3. It was without probable cause; and

4. It was malicious." Syl. Pt. 2, in part, Norfolk S. Ry. Co. v. Higgenbotham, 228 W. Va. 522, 721 S.E.2d 541 (2011).

Because the absence of probable cause is an essential element of a malicious prosecution claim, "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for . . . malicious prosecution. This is so even where the defendant officers allegedly acted upon a malicious motive." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006).

"The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 112 (1975), citing, Beck v. Ohio, 379 U.S. 89, 91 (1964). The Plaintiff was charged with Harassment by electronic device, in violation of W. Va. Code § 61-3C-14a(a)(2), and Harassment, in violation of W. Va. Code § 61-2-9a(b). The former holds that "It is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to:....(2) Make contact with a person after being requested by the person to desist from contacting them." W. Va. Code § 61-3C-14a(a)(2). The latter holds that "Any

person who repeatedly harasses or repeatedly makes credible threats against another is guilty of a misdemeanor." W. Va. Code § 61-2-9a(b).

It would be impossible for any prudent, reasonable person to conclude that the sheer volume and content of the Plaintiff's communications, after receiving repeated requests to stop, does not constitute probable cause for both charges. The fact that the Plaintiff continued to send texts and emails (more than 3,000 in total) after being informed that Ms. Costlow considered his communications to be harassing and that she did not wish to receive such communications establishes the necessary elements for both offenses. *See, generally*, Ex. 1.

A reasonable, prudent person observing all or even a portion of the communications would conclude that the Plaintiff had committed the offense for which he was charged. The texts and emails were reviewed by Trooper Kief, Trooper Gaskins and Assistant Prosecuting Attorney Cindy Scott, and all concluded that the Plaintiff had committed a criminal offense, *Id.*, as did Magistrate Holepit in issuing warrants for the Plaintiff's arrest. Ex. 17, Warrants and Criminal Complaints. The Plaintiff also acknowledged, albeit disingenuously, that probable cause for his arrest existed. Ex. 19, Motion to Dismiss with Attachment. OPR went even further, in determining from its independent review of the Plaintiff's communications, that only did probable cause exist to charge the Plaintiff, but that OPR could affirmatively conclude that the Plaintiff had violated W. Va. Code § 61-3C-14a(a)(2). Ex. 18, OPR Letter to Plaintiff, September 21, 2017 at 13[6].

No credible allegation as to the role Ms. Costlow played in the Plaintiff's arrest can be found in his pleading. Her involvement in the investigation was limited to informing Troopers Kief and Gaskins that she had been harassed by the Plaintiff. Ex. 1. After that, the investigation

---

[6] The letter does not contain a page 14.

consisted of an examination of the texts and emails themselves, _Id.,_ which the Plaintiff does not dispute sending. Ex. 2, Ballock Dep. 136:24-137:9. Insomuch as she is alleged to have been working in collusion with the West Virginia Troopers, however, it is important to make note that the Troopers (and Ms. Costlow by implication) are shielded from liability by virtue of filing charges against the Plaintiff upon the advice of Assistant Prosecuting Attorney Cindy Scott. _See, Evans, 703 F.3d at 647_(establishing that advice from a prosecuting attorney or other independent decision-maker can insulate police from liability in a § 1983 malicious prosecution action), _see also_, Pote v. Jarrell, 186 W. Va. 369, 374, 412 S.E.2d 770, 775 (1991)(establishing same protection in state law malicious prosecution claim).

For these reasons, no evidence can be produced for a reasonable jury to find that probable cause for the Plaintiff's arrest did not exist and the Plaintiff's Second and Fifth claims must be dismissed as to all Defendants. The evidence establishing criminal charges against the Plaintiff is undisputed, as found in the volume, content and context of the Plaintiff's texts and emails. Every individual independently reviewing this evidence, at the investigatory, judicial and administrative stages, has concluded that at least probable cause of criminal conduct has been established. _See_, Ex. 1, Ex. 17, Warrants and Criminal Complaints, Ex. 18, OPR Letter to Plaintiff, September 21, 2017 at 13. Additionally, as will be more fully discussed below, the Plaintiff's malicious prosecution claims, like all other claims advanced by the Plaintiff, must be dismissed as a result of undisputed evidence showing that the Plaintiff was dismissed from employment with the FBI for reasons unrelated to his allegations against the Defendants.

## C. NO CONSPIRACY CAN BE PRESENT WHERE PROBABLE CAUSE EXISTED FOR THE PLAINTIFF'S ARREST

The Plaintiff's claim that his arrest was not supported by probable cause is the linchpin of his case. His remaining claims cannot be supported where probable cause for his arrest is

undisputed and clearly evidenced. Chief among these is the Plaintiff's cause of action for Conspiracy (Sixth Claim). "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, Dunn v. Rockwell, 225 W. Va. 43, 689 S.E.2d 255. Civil conspiracy is not a stand-alone cause of action; instead, it is merely a legal doctrine by which liability for a tort may be imposed on those who did not actually commit a tort themselves, but who shared a common plan for its commission with the actual perpetrator. Id. at Syl. Pt. 9. In addition, a Plaintiff must show "that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement." Ash v. Allstate Ins. Co., No. 12-1533, 2013 WL 567774, at *5 (W. Va. Oct. 18, 2013)(memorandum decision).

As demonstrated, the Plaintiff's arrest was lawful and the Plaintiff can produce no evidence of unlawful means used by the Defendants in a concerted effort, or of another objective held in common by all Defendants. As shown below, the lack of a common illegal objective requires dismissal of all § 1983 claims against Ms. Costlow, as she was not a state actor and cannot be held liable under the section in the absence of proof of her illegally conspiring with the Trooper Defendants. See, 42 U.S.C. § 1983, infra. Several of the Plaintiff's remaining state law claims, including abuse of process (Fourth Claim), slander (Eighth Claim), intentional infliction of emotional distress (Ninth Claim) and the Plaintiff's first tortious interference with contract claim (Tenth Claim) are also dependent upon the existence of a common illegal motive among Ms. Costlow and the Troopers and/or upon a determination that no probable cause for the Plaintiff's arrest existed.

The Plaintiff's most descriptive attempt to establish an illegal motive among Ms. Costlow and the Troopers concerns his allegation that the site of his arrest, in the Family Court of

Monongalia County, was selected by the Defendants in an attempt to assist Ms. Costlow in proceedings in that court, 3rd Am. Compl. ¶¶ 33-36, and cites a statement by Family Court Judge Randal Minor, expressing concern at the site and timing of the Plaintiff's arrest. *Id.* ¶ 91. As noted, the site of the Plaintiff's arrest was coordinated between the West Virginia Troopers and the FBI for safety reasons. Ex. 15, Kief Dep. 203:11-14, Ex. 20, Gaskins Dep. 156:17-157:1, Ex. 18, Letter from OPR to Plaintiff, September 21, 2017 at 9-10. OPR notes the existence of FBI memos documenting coordination of the Plaintiff's arrest with West Virginia State Police and the fact that Judge Minor was unaware of these efforts, Ex. 18, Letter from OPR to Plaintiff, September 21, 2017 9-10, and notes deception of the part of the Plaintiff in omitting this fact in his pleading, in addressing the Plaintiff as follows:

> Although you have had an opportunity to review the file, which (along with OPR's proposal letter) shows the State Troopers coordinated with the FBI regarding the arrest, your filing in the civil suit fail to disclose the efforts by the State Police to coordinate the arrest with the FBI, and the legitimate concerns shared by the State Police and the FBI regarding the need to ensure you were unarmed when arrested to reduce the risk of violence. *Id.* at 10.

The Plaintiff is unable any evidence of an illegal objective of the part of Ms. Costlow and the Troopers, which would be plausible to a reasonable juror. The record in this case provides only evidence of Troopers Kief and Gaskins doing their jobs, in investigating a record of more than 3,000 texts and emails, which were unceasingly delivered to Ms. Costlow against her expressed wishes, to harass her, Ex. 1, seeking the opinion of an Assistant Prosecuting Attorney and filing criminal complaints against the Plaintiff, based upon the APA's advice, *Id.*, which a Magistrate found to constitute probable cause for the Plaintiff's arrest. *Id.*, Ex. 17, Criminal Warrants and Complaints. The Plaintiff can produce no evidence, whatsoever, of any involvement by Trooper Berry in his arrest and prosecution. Ms. Costlow, for her part, became an unwitting criminal complainant upon receiving a call from Trooper Kief after the Trooper had

16

learned of allegations made by the Plaintiff's father. Ex. 15, Kief Dep. 60:21-61:16, 66:7-22. As

such, the Plaintiff can produce no evidence for a reasonable jury to conclude that the Defendants

had a common unlawful objective or that the Plaintiff's arrest resulted from any illegal act

committed by Ms. Costlow and the Troopers, requiring dismissal of the Plaintiff's claim for

conspiracy and any claims dependent upon the existence of such a conspiracy.

### D. SECTION 1983 CLAIMS AGAIST MS. COSTLOW MUST BE DISMISSED WHERE SHE DID NOT ACT IN CONCERT WITH THE TROOPER'S TO VIOLATE THE PLAINTIFF'S CIVIL RIGHTS

The Plaintiff's § 1983 claims against Ms. Costlow must be dismissed, as he can produce

no evidence for a reasonable jury to find that he suffered a deprivation of any protected right.  42

U.S.C. § 1983 provides a cause of action for an individual whom suffers deprivation of "rights,

privileges, or immunities secured by the Constitution and laws." To maintain a claim under

Section 1983, a plaintiff must establish that: (1) a defendant was acting under color of state law;

and (2) deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution

or laws of the United States. Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011).

"First, the deprivation must be caused by the exercise of some right or privilege created

by the State or by a rule of conduct imposed by the State or by a person for whom the State is

responsible…..Second, the party charged with the deprivation must be a person who may fairly

be said to be a state actor. This may be because he is a state official, because he has acted

together with or has obtained significant aid from state officials, or because his conduct is

otherwise chargeable to the State." Jackson v. Pantazes, 810 F.2d 426, 428-29 (4th Cir. 1987),

citing, Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982). A private party may be liable under §

1983 where the party participates with a state actor in a conspiracy to violate the constitutional

rights of another, Lugar, 457 U.S. at 930-31, citing, Adickes v. S. H. Kress & Co., 398 U.S. 144,

152 (1970), or where there exists an interdependence or "symbiosis'" in the relationship between the private party and the state actor. Jackson 810 F.3d 430, *citing*, Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961).

The Plaintiff's claims fail as a matter of law because the Plaintiff can produce no evidence to establish: (1) that he was deprived of any right secured by the Constitution or law of the United States; and (2) that Ms. Costlow conspired with the Trooper Defendant to illegally deprive the Plaintiff of any such right. The only right alleged by the Plaintiff to support his § 1983 abuse of process and malicious prosecution claims is that the criminal charges against him were not supported by probable cause. As shown, the undisputed evidence in the record clearly shows that probable cause existed for the Plaintiff's arrest on each count with which he was charged. In light of that, it is equally impossible for a reasonable jury to find that Ms. Costlow conspired with the Trooper Defendants to deprive the Plaintiff of a protected right, where her only action was, in response to a call from Trooper Kief about a matter concerning the Trooper, to merely related the harassment and abuse she had been suffering from the acts of the Plaintiff and, with the assistance of her divorce attorney, provided the Troopers with the evidence that established probable cause to believe that the Plaintiff had committed two criminal offenses. *See,* Ex. 1. After that, as has been described, decisions affecting prosecution of the Plaintiff were made by the appropriate investigative, prosecutorial and judicial authorities, *Id.*, Ex. 17, Criminal Warrants and Complaints, with the Plaintiff not included in the decision to charge the Plaintiff. *Id,* Ex. 1. Based upon this evidence, it would be impossible for a reasonable jury to conclude that the Plaintiff, or any other party, acted with the intention of illegally depriving the Plaintiff of any right or privilege.

18

The Plaintiff's § 1983 defamation claim against Ms. Costlow (Seventh Claim) is even more implausible. More than reputational injury is required to sustain a § 1983 action based upon defamatory statements. Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314-15 (4th Cir. 2012).  In such cases, a Plaintiff "must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status" in order to prevail. Id., quoting, Paul v. Davis, 424 U.S. 693, 711 (1976)). The Plaintiff's claim is based upon information communicated by Ms. Costlow to Trooper Gaskins in a September 2, 2013 interview being incorporated into a report which, at the FBI's request, Trooper Gaskins shared with FBI investigators some time after criminal charges against the Plaintiff were dismissed on April 7, 2016. Ex. 18, Letter from OPR to Plaintiff, September 21, 2017 at fn 7 (noting Trooper Gaskins' Report had been incorporated into the report of OPR's investigation).

This claim fails for several reasons. First, the Plaintiff was not deprived of any liberty interest by either Ms. Costlow of Trooper Gaskins. Instead his employment was dismissed by the FBI. See, Shirvinski, 673 F.3d at 317(defamatory statement by government entity not actionable where plaintiff was fired by subcontractor). Second, Trooper Gaskins' act in publishing his report to the FBI in 2016 was privileged and subject to immunity. See, Restatement (Second) of Torts at § 595(A publication is privileged if it is reasonable to believe that there is information that affects an important interest of the third person and the recipient is one to whom the publication is within the generally accepted standards of decent conduct. Especially where the publication is requested, rather than volunteered). Finally, the Plaintiff can produce no evidence that Ms. Costlow and Trooper Gaskins were conspiring to deprive the Plaintiff of a constitutionally protected right when Ms. Costlow was interviewed by the Trooper in September 2013. As with all other claims, the facts only document independent actions by a victim and

19

investigator and the Plaintiff's claim must be dismissed for failure to produce evidence sufficient for reasonable juror to find in his favor.

### E.   THE PLAINTIFF'S REMAING STATE LAW CLAIMS MUST BE DISMISSED, AMONG OTHER REASONS, FOR A FAILURE TO ESTABLISH DAMAGES

The Plaintiff's remaining state law claims, abuse of process (Fourth Claim), and slander intentional infliction of emotional distress, tortious interference with contract (against all Defendants), tortious interference with contract (against Ms. Costlow), defamation and breach of contract (Claims 8-13, respectively) can all be dismissed, among other reasons, for the Plaintiff's inability to produce evidence of any damages he suffered as a result of any act committed by Ms. Costlow. This applies equally to all claims previously discussed.

Each of the Plaintiff's causes of action is predicated upon the claim that an act on Ms. Costlow's part caused the FBI to terminate his employment. The Plaintiff's claims specifically reference consequences to his employment as the damages he suffered, with his IIED claim alleging additional emotional injury that he claims resulted from his termination. 3rd Am. Compl. ⁋ 223. The facts surrounding the FBI's decision to dismiss the Plaintiff paint a completely different picture.

OPR's March 5, 2019 letter to the Plaintiff indisputably evidences that the Plaintiff was dismissed for conduct unrelated to allegations contained in his Complaint, Ex. 14, OPR Letter to Plaintiff, March 5, 2019 at 20-24, consisting of acts committed by the Plaintiff prior to the criminal investigation against him being commenced in August/September 2013, and the plaintiff's lack of candor during the investigation of his conduct. *Id*. The Plaintiff's arrest *was not considered* in OPR's decision to dismiss the Plaintiff. *Id.* at 3. Neither was Ms. Costlow's credibility considered in determining whether and to what extent she had been abused by the Plaintiff. Ex. 18, Letter from OPR to Plaintiff, September 21, 2017 at 16. Apparently faced with

20

reports of abuse from Ms. Costlow and the Plaintiff's denials of such, OPR decided to focus on

the Plaintiff's own words, as contained in his texts and emails to Ms. Costlow. From this, OPR

concluded:

> In short, although you stated under oath that the allegation you physically abused your Ex-Wife is "false," the evidence establishes you likely physically abused your Ex-Wife and threatened her life. *This finding does not turn on a credibility assessment of your Ex-Wife*, but instead on your own admissions, apologies, and acquiescence in your communications about the abuse. You had a clear motive for lying in your SSS, given the potential disciplinary consequences, and it is reasonable to assume you forgot that you had admitted to the abuse in your communications with your Ex-Wife. *Id. (emphasis added)*.

OPR added that it was "unnecessary" to address other evidence of physical abuse

provided by Ms. Costlow "because the strongest evidence comes not from your Ex-Wife, but

from your own emails and texts." *Id.* at fn 17.

The same approach was adopted in OPR's March 5, 2019 dismissal letter. Under the

heading "Additional Abuse," OPR simply provides three pages of communications between Ms.

Costlow and the Plaintiff, with little to no commentary interspersed between the

communications. As an example, the letter contains the following:

> <u>10/02/2012</u>
>
> <u>You</u> (1:55 p.m.): I was sitting in a meeting today and pictured you out on your date tonight, then I flashed to you in a wedding dress, smiling and kissing your new husband. I had to leave abruptly. I am lost without you. It feels like part of me has died. The best part.
>
> EC (2:55 p.m.): I have pictured you going to see [KL] instead of staying home with us so many times. [I] picture you in [Location #6] with her. I picture you looking up [MC] to see what's up with her. And all of this you to hide from me. I don't know how you got that those things would not cause long-lasting damage. Shall I Move on to the physical abuse? The psychological abuse? How about the sexual abuse?
>
> <u>You</u> (3:20 p.m.): You do not need to move on to anything else. I was wrong. I ask forgiveness. I ask to move forward with you. Because, despite your anger and

hatred right now, there is part of you that lives in me. There were magical times and a closeness. Ex.   Letter from OPR to Plaintiff, March 5, 2019 at 12.

and

10/08/2012

EC (5:31 p.m.): What is wrong is you fondling me at your apartment and in the emergency room. What's wrong is expecting to the point of nearly demanding I hug you when we drop off or pick up the kids.

You (5:33 p.m.): I still think of you as my loving wife when I see you. I was trying to make you laugh in the ER. I see you and I want to hold you. I don't see red. I see my love.

EC (5:33 p.m.): My body is not for you to touch. I have boundaries.
You (5:34 p.m.): Ok, I will stop again. Please understand how difficult this is for me. To experience, to believe. It's unreal to me. It really is.

You (5:34 p.m.): I understand. Goodbye.

You (5:36 p.m.): I hold out this false hope that the next text or phone call I receive is you saying you miss me. I still dream of you visiting me. . . . I have so much love for you that it's hard to understand that you are empty. Please forgive me.

EC (5:36 p.m.): It was unreal the first time you strangled me. It was unreal when you didn't spend my 37th birthday with me and the kids at a campground [made] sad because you wanted to see KC. It was unreal when you told me you didn't want to be married as everything was loaded onto a moving truck (twice). Need I go on?

You (5:38 p.m.): You needn't. *Id.* at 13.

The Plaintiff, thus, was not dismissed for anything associated with his arrest and the criminal charges against him and was not dismissed for anything Ms. Costlow communicated to the West Virginia Troopers, in September 2013 or at any other time, or to the FBI in May 2016. Instead, the Plaintiff was dismissed for three FBI Offense Code violations: (1) Misuse of Weapon/Safety Violation; (2) Unprofessional Conduct-Off Duty; and (3) Lack of Candor/Lying Under Oath. *Id.* at 23-24. All three provided independent grounds for his dismissal. *Id.*

The Misuse of Weapon violation was based upon incidents where the Plaintiff placed a gun into Ms. Costlow's vagina and where he placed a loaded gun in his mouth. *Id.* at 20. OPR notes that the Plaintiff admitted to penetrating Ms. Costow with a gun, *Id.*, and that the Plaintiff chose not to respond to the other weapon violation. *Id.* 19.

Acts committed by the Plaintiff which constitute the violation of Unprofessional Conduct-Off Duty all predate criminal charges being filed against him. Conduct OPR found to support this violation included the Plaintiff's abuse and harassment of Ms. Costlow by text and email, physical abuse documented in the Plaintiff's communications with Ms. Costlow, and an incident where Ms. Costlow required emergency medical attention after the Plaintiff penetrated her with a wine bottle. *Id.* 6-14, 20. OPR also cited the Plaintiff's contributions to derogatory website postings and unauthorized investigation of Ms. Costlow and her boyfriend as establishing a violation of Unprofessional Conduct. *Id.* 14-17, 20-21. The fact of the Plaintiff's unauthorized investigation appears to have become known to OPR through material submitted by the Plaintiff during the investigation, which OPR found to "further evidence the disturbing extent of your intrusion into EC's life and complete invasion of her privacy." *Id.* at 19-20.

OPR's decision to dismiss the Plaintiff for Lack of Candor/Lying Under Oath is based upon two statements the Plaintiff provided to the FBI on separate occasions: (1) where he "falsely denied ever sexually, physically, or psychologically abusing EC;" and (2) where he claimed that his communications with Ms. Costlow were "respectful and appropriate" and that "none of [his] communications were threatening or harassing." *Id.* 22. In describing why it found the Plaintiff's first statement to be dishonest, OPR noted that:

> Despite EC's numerous requests that you stop, you sent her unrelenting communications, which fluctuated between harsh condemnation and extensive idealized descriptions of EC and your life together. You left no area of her life untouched as you threatened her with disparaging, highly personal information

> you gathered through your investigative efforts. You obtained EC's private communications and surreptitious recordings by convincing a "low level criminal" to cooperate with your efforts. You used this information against EC and provided the content to your father to post on multiple public websites, extending your abuse of EC to the public domain. *Id.*

OPR also observed that the Plaintiff's communications with Ms. Costlow were "far from appropriate and respectful." *Id.* These being the same emails found by police investigators, a prosecuting attorney, a Magistrate and OPR itself to constitute, at the least, probable cause to believe that the Plaintiff had engaged in criminal activity. No genuine issue of fact, thus, exists that the Plaintiff was dismissed from his employment for lying to his employer and other reasons unrelated to any act of Ms. Costlow.

The reasons provided for the Plaintiff's dismissal from employment preclude him from maintaining any of his remaining causes of action. In an action for defamation, a Plaintiff must show the existence of: (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, Crump v. Beckley Newspapers, Inc., 173 W. Va. 699, 320 S.E.2d 70 (1984). For the reasons noted above, the Plaintiff cannot produce evidence of his being injured by any statement published by Ms. Costlow. The evidence is clear that the Plaintiff own words were the cause of his dismissal and his two defamation claims against Ms. Costlow (Eighth[7] and Twelfth Claims) must be dismissed as a matter of law.

The Plaintiff's claims for intentional infliction of emotional distress (Ninth Claim) and his two tortious interference with contract against Ms. Costlow (Tenth and Eleventh Claims) should be dismissed for similar reasons. To maintain a claim for intentional infliction of emotional distress, a Plaintiff must show that:

---

[7] The Plaintiff identifies his Eighth Claim as "Slander"

(l) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

(2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;

(3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and,

(4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Travis v. Alcon Laboratories, Inc., 202 W. Va. 369 374, 504 S.E.2d 419, 425 (1998).

The Plaintiff is unable to produce evidence sufficient for a reasonable juror to find in favor of the Plaintiff on any of the elements required of an IIEP claim. The emotional stress the Plaintiff claims to experience is alleged to have resulted from either his probable cause arrest or his loss of employment, which occurred solely as a result of the Plaintiff's own conduct. See, 3rd Am. Compl. ¶ 223. He can produce no evidence of outrageous conduct which was intended to, and in fact did, illegally harm him. In fact, it was the Plaintiff's own outrageous, unprofessional conduct which led to his dismissal from employment.

The elements of a cause of action for tortious interference with contract are: (l) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by an outside party; (3) that the interference caused harm; and (4) damages. Syl. Pt. 5, Hatfield v. Health Mgmt. Assocs. of W. Va., 223 W. Va. 259, 672 S.E.2d 395 (2008). The reasons for the Plaintiff's dismissal are obviously fatal to this claim as well, as no genuine issue exists that the Plaintiff's loss of employment occurred for reasons independent of any act on the part of Ms. Costlow.

The Plaintiff's loss of employment for unprofessional conduct and lying to his employer also make it impossible for the Plaintiff maintain a trial-worthy breach of contract claim. The

Plaintiff seeks to bring a cause of action based upon the agreement attached to the motion to dismiss criminal charges against him, Ex. 19, Motion to Dismiss with Attachment. Pursuant to the agreement, among other terms, the Plaintiff acknowledged that probable cause existed for the West Virginia State Police to file for the issuance of warrants on the criminal charges against him and Ms. Costlow agreed to "not communicate any disparaging information or commentary to Scott Ballock's employer or place of employment. *Id*. The Plaintiff has since disavowed his acknowledgment in the agreement and admits to falsely signing a statement to have criminal charges against him dismissed. Ex. 2, Ballock Dep. 102:8-19. His claim is based upon statements Ms. Costlow made to the FBI when interviewed in May 2016. *See*, Ex. 14, Letter from OPR to Plaintiff, March 5, 2019 at 4.

The elements of a state law breach of contract claim are: 1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result. Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals group, Inc., 2011 U.S. Dist. Lexis 80411 *29, 2011 WL 3022239 (S.D. W. Va. Charleston July 22, 2011), *citing*, Exec. Risk, Inc. v. Charleston Area Med. Ctr., Inc. 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009).

Even assuming that the agreement was valid, enforceable and could give rise to a claim for monetary damages, the Plaintiff cannot satisfy elements two and four of the rule. No genuine issue exists that the Plaintiff has not performed under the contract, in filing the present action, based largely upon a claim that no probable cause existed for his arrest. Furthermore, no reasonable juror could find that the Plaintiff was injured as a result of anything Ms. Costlow may have communicated to the FBI, where undisputed evidence establishes that the Plaintiff was

dismissed from his employment for multiple incidents of abusive, harassing, unprofessional conduct occurring years before Ms. Costlow was interviewed, and for the dishonesty the Plaintiff subsequently displayed in the course of OPR's investigation. Ms. Costlow is, thus, entitled to summary judgment on this claim as well.

The Plaintiff similarly cannot produce a genuine issue to maintain a state law claim for abuse of process. "[A]buse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process. Preiser v. MacQueen, 177 W. Va. 273, 279, 352 S.E.2d 22, 28 (1985)(citations omitted). "The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person." *Id., quoting*, Glidewell v. Murray-Lacy and Company, 124 Va. 563, 98 S.E. 665 (1919). "[T]o maintain the action for abuse of process there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object - an intentional and willful perversion of it to the unlawful injury of another." *Id*.

The Plaintiff can produce no evidence that, after being lawfully issued, the process against him was used for anything other than prosecuting him for the charged offenses and Ms. Costlow is entitled to summary judgment on that basis. In addition, the criminal prosecution of the Plaintiff was not referenced in OPR's decision to dismiss his employment, depriving the Plaintiff of any claim for damages associated with the criminal process, and entitling Ms. Costlow to summary judgment, dismissing the Plaintiff's claim.

IV.   CONCLUSION

The Plaintiff's decision to pursue his present Complaint is another example of the abusive behavior that led OPR to terminate his employment. He has no legitimate action where probable cause existed for his arrest and where his employment was terminated for a history of appalling conduct, abuse of his position as an FBI Special Agent and dishonesty. He produces no genuine issue for trial on any claim he alleges, but does produce plenty of material designed to humiliate and further harass his ex-wife. For these reasons, Ms. Costlow is entitled to summary judgment on all counts, dismissing the Plaintiff's Complaint.

WHEREFORE, Ms. Costlow prays that this Honorable Court GRANTS her Motion, dismisses the Plaintiff's Complaint with prejudice, and any other relief as the Court finds in the interest of justice.

Dated July 8, 2019

**RESPECTFULLY SUBMITTED,**
**ELLEN RUTH COSTLOW,**
**By counsel,**


  /s/ P. Todd Phillips
P. Todd Phillips (WV State Bar #9499
LYONS PHILLIPS LEGAL GROUP PLLC
141 Walnut Street
Morgantown, WV 26505
304-296-3200
304-296-0713 *fax*
toddphillips.law@gmail.com

# UNITED STATES DISTRICT COURT
## NOTHERN DISTTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK,**

      **Plaintiff,**

**v.**                                    **CIVIL ACTION NO..: 1:17-CV-52**
                                                  **Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M.**
**GASKINS, AND STATE TROOPER**
**CHRIS BERRY,**

      **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 8th day of July 2019, I served "Memorandum in Support of Ellen Ruth Costlow's Motion for Summary Judgment" with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

> Mark G. Jeffries, Esq.
> STEPTOE & JOHNSON, PLLC
> 400 White Oaks Boulevard
> Bridgeport, WV 26330-4500
>
> Montè L. Williams
> STEPTOE & JOHNSON, PLLC
> PO Box 1616
> Morgantown, WV 26507-1616

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins and State Trooper Chris Berry*

Charles J. Crooks, Esq.
CROOKS LAW FIRM PLLC
244 Pleasant Street
Morgantown, WV 26505

*Counsel for Plaintiff*

**RESPECTFULLY SUBMITTED,**

  /s/ P. Todd Phillips
P. Todd Phillips (WV State Bar #9499)
LYONS PHILLIPS LEGAL GROUP PLLC
141 Walnut Street
Morgantown, WV 26505
304-296-3200
304-296-0713 *fax*
toddphillips.law@gmail.com