UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

      Plaintiff,

v.

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

      Defendants.

CIVIL ACTION NO.: 1:17-CV-52
Honorable Irene M. Keeley

### DEFENDANT STATE TROOPER MICHAEL KIEF'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Scott T. Ballock seeks partial summary judgment against Defendant State Trooper Michael Kief as to duty and breach, which are not elements of the cause of action for which he seeks judgment. Nevertheless, to the extent that Mr. Ballock seeks partial summary judgment against Sgt. Kief on the tortious interference with contract claim (Count Ten), Mr. Ballock fails to produce evidence to show that he is entitled to summary judgment on any element. Instead, Mr. Ballock misstates the evidence of record, confuses the sequence of events, and offers speculation and innuendo in support of his motion. For these reasons, the Court should deny Mr. Ballock's motion as to Sgt. Kief.

I.     **TIMELINE OF RELEVANT EVENTS**

Because Mr. Ballock confuses the timeline of events in making his argument, it is important to set forth the actual sequence of events at issue in his motion, as reflected in the evidentiary record:

- August 13, 2013:  Mr. Ballock's father, Tom Ballock, called Sgt. Kief to inform Sgt. Kief that Defendant State Trooper Chris Berry was suspected of having an affair with Mr. Ballock's estranged wife, Defendant Ellen Ruth Costlow. (Pl.'s Timeline at 12, attached as "Exhibit 1"; Ballock Dep. 24:21-25:5 [confirming Plaintiff created timeline], attached as "Exhibit 2").

- Between August 13 and 22, 2013:  Shortly after Tom Ballock contacted Sgt. Kief, Sgt. Kief contacted Ms. Costlow to ask her about the allegations. Ms. Costlow informed Sgt. Kief that she had been harassed by Mr. Ballock for nearly a year. (Kief Dep. 59:23-60:4, 61:3-16, 66:7-22, attached as "Exhibit 3").

- August 22, 2013:  Sgt. Kief requested permission to initiate a criminal investigation of Mr. Ballock, which Defendant State Trooper Ronnie M. Gaskins began on September 2, 2013. (Invest. Rep. 1, attached as "Exhibit 4")

- Between September 2 and 13, 2013:  Either Sgt. Kief or Cpl. Gaskins contacted the FBI, as a professional courtesy, to inform the agency that one of its agents was under criminal investigation. (Ex. 3, Kief Dep. 106:21-107:13).

- September 13, 2013:  Sgt. Kief served Mr. Ballock with the arrest warrants. (3d Am. Compl. ¶ 35 [ECF No. 49]).

- Late September 2013:  Within "a matter of days" after Mr. Ballock's arrest, Agent John Hambrick of the FBI's Clarksburg Resident Agency met with Cpl. Gaskins to discuss the allegations against Mr. Ballock and to obtain a copy of the disc of harassing communications Mr. Ballock sent to Ms. Costlow. (Gaskins Dep. 62:5-63:13, 214:6-215:8, attached as "Exhibit 5").

- September 26, 2013:  The FBI initiated its own internal investigation into Mr. Ballock's conduct, although it appears to have deferred active investigation until after the criminal charges were dismissed. (Signed Sworn Statement of Scott T. Ballock (Mar. 12, 2018) at 1, attached as "Exhibit 6"; Ex. 2, Ballock Dep. 155:5-22).

- May 9, 2014:  The Monongalia County Family Court entered the final divorce decree for the Ballocks which, among other provisions, prohibited Mr. Ballock and Ms. Costlow from contacting the other's employer. (Ex. 1 to Pl.'s Mot. for Part. Summ. J. [ECF 122-1]).

- April 7, 2016:  The Monongalia County Prosecuting Attorney dismissed criminal charges against Mr. Ballock. As part of the agreement leading to the dismissal, Mr. Ballock agreed that probable cause existed for the issuance of the arrest warrants against him, and Ms. Costlow agreed not to contact Mr. Ballock's employer. (Mot. to Dismiss, *State v. Ballock*, Case Nos. 13-M31M-06741 and 13-M31M6739, in the Magistrate Court of Monongalia County, W. Va., Apr. 7, 2016, attached as "Exhibit 7").

- Approximately April 14, 2016:  FBI investigators interviewed Sgt. Kief about the criminal investigation of Mr. Ballock. (E-mail from Ellen Costlow to Sgt. Michael Kief (Apr. 14, 2016, 2:50 a.m.), attached as "Exhibit 7" to Pl.'s Mot. for Part. Summ. J. [ECF No. 122-1]).

- May 12, 2016:  FBI investigators interviewed Ms. Costlow about Mr. Ballock's harassment of her. (Pl.'s Mot. for Part. Summ. J. 7-8).

- July 13, 2016:  The Monongalia County Circuit Court entered an order expunging Mr. Ballock's criminal record. (Agreed Expungement Order, *Ballock v. State*, Pet. No. 16-P-233, in the Circuit Court of Monongalia County, W. Va. (July 13, 2016), attached as "Exhibit 2" to Pl.'s Mot. for Part. Summ. J. [ECF No. 122-1])

- April 10, 2017:  FBI's Office of Professional Responsibility ("OPR") first proposed Mr. Ballock's discharge from employment. (Letter from Timothy J. Dowling to Scott T. Ballock (Apr. 10, 2017), attached as "Exhibit 8.")

- September 21, 2017:  FBI first discharged Mr. Ballock from employment. (Letter from Asst. Dir. Candice M. Will to Scott T. Ballock (Sept. 21, 2017), attached as "Exhibit 9.")

- March 5, 2019:  After remanding its internal inquiry into Mr. Ballock's conduct to the Inspection Division for additional investigation, the FBI again reached the decision to discharge Mr. Ballock. (Letter from Nancy McNamara to Scott T. Ballock (Mar. 5, 2019) at 24, attached as "Exhibit 10").

## II.   STANDARD OF DECISION

"Summary judgment 'should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that *the movant is entitled to judgment as a matter of law*.'" *Cloaninger v. McDevitt*, 555 F.3d 324, 332 (4th Cir. 2009) (emphasis added) (quoting Fed. R. Civ. P. 56(c)).

## III.   ARGUMENT

### A.   Mr. Ballock Seeks Partial Summary Judgment as to Subjects That Are Not Elements of a Claim of Tortious Interference With Contract.

Mr. Ballock argues that he is entitled to partial summary judgment against Sgt. Kief on Count Ten, which is his claim of tortious interference with contract. Pl.'s Mot. for Part. Summ. J. 8. Specifically, Mr. Ballock seeks summary judgment on the elements of duty and breach. *Id.* at 1. Neither duty nor breach are elements of the tort of tortious interference with contract, however.

In order to establish a claim of tortious interference with contract, a plaintiff must show: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by an outside party; (3) that the interference caused harm; and (4) damages. Syl. Pt.

8497665                                          4

5, *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 223 W. Va. 259, 672 S.E.2d 395 (2008). Duty and breach play no part in a tortious interference claim.

Because Mr. Ballock seeks summary judgment on duty and breach, which are not elements of the tortious interference count for which he seeks partial summary judgment, the Court should deny his motion. Nevertheless, even if Mr. Ballock's motion is interpreted as seeking partial summary judgment as to any element of the tortious interference count, the Court should still deny the motion because Mr. Ballock produces no evidence to show he is entitled to judgment as a matter of law.

> **B.    Mr. Ballock Offers No Evidence That Sgt. Kief Tortiously Interfered With Mr. Ballock's Employment or That Anything Sgt. Kief Did Caused Him to Lose His Job.**

In his motion, Mr. Ballock does not introduce any evidence to show that he is entitled to summary judgment on any element of the tortious interference with contract count against Sgt. Kief.

Mr. Ballock argues that he is entitled to summary judgment on the element of "duty," but he fails to identify any "duty" Sgt. Kief owed him. Although Mr. Ballock spends a great deal of time discussing the divorce decree between Ms. Costlow and him and the agreement that led to the dismissal of the criminal charges he faced, it is undisputed that Sgt. Kief was not a party to either the divorce or the dismissal agreement.

To the extent that Mr. Ballock implies that the expungement of the criminal charge created a "duty" on the part of Sgt. Kief (Pl.'s Mot. for Part. Summ. J. 2), he confuses the sequence of events. The FBI's interview with Sgt. Kief, which forms the basis of Mr. Ballock's motion, occurred on or about April 14, 2016. E-mail from Ellen Costlow to Sgt. Michael Kief (Apr. 14,

2016, 2:50 a.m.), attached as "Exhibit 7" to Pl.'s Mot. for Part. Summ. J. [ECF No. 122-1].[1] The Monongalia County Circuit Court did not expunge Mr. Ballock's criminal charges until three months later, on July 13, 2016. Agreed Expungement Order, *Ballock v. State*, Pet. No. 16-P-233, in the Circuit Court of Monongalia County, W. Va. (July 13, 2016), attached as "Exhibit 2" to Pl.'s Mot. for Part. Summ. J. [ECF No. 122-1]. Therefore, there was no order prohibiting Sgt. Kief from agreeing to speak to FBI officials at the time he did so.

Furthermore, Mr. Ballock cannot show any act of interference by Sgt. Kief. As fully discussed in the Memorandum in Support of State Police Defendants' Motion for Summary Judgment, which Sgt. Kief incorporates by reference, Sgt. Kief providing truthful information to the FBI in response to its request does not constitute an act of interference. [ECF No. 120-1 at 17-19].[2]

More fundamentally, Mr. Ballock has no evidence of a causal connection between the FBI's interview of Sgt. Kief in April 2016 and Mr. Ballock's loss of employment. In reaching its decision to discharge Mr. Ballock, the FBI relied upon Mr. Ballock's own conduct; in particular, his extensive harassing communications with Ms. Costlow. Ex. 10 at 2. In fact, the FBI quoted extensively from Mr. Ballock's e-mails to Ms. Costlow in its latest dismissal letter. *Id.* at 6-12.

---

[1] In Ms. Costlow's e-mail to Sgt. Kief of April 14, 2016, she referred to him speaking to FBI officials "at [his] 10am meeting," in which case Sgt. Kief's interview occurred on April 14, 2016. *Id.* at 1. Later in the e-mail, however, she mentioned him speaking to the FBI "tomorrow." *Id.* at 3. Because Ms. Costlow sent the e-mail at 2:50 in the morning, early on April 14, 2016, it is likely that by "tomorrow," she meant later that same day. The exact date FBI officials interviewed Sgt. Kief is immaterial, however, as it is undisputed that he had been interviewed before Ms. Costlow was on May 12, 2016.

[2] Mr. Ballock implies that the information Sgt. Kief provided to the FBI was false. Pl.'s Mot. for Part. Summ. J. 3-4. Yet, he bears the burden of proof, and he has only speculation that Sgt. Kief provided any false information to the FBI. There is no mention in the FBI's dismissal letters of any information Sgt. Kief provided its officials during his interview. There is no evidence that Sgt. Kief provided the FBI with anything but a truthful account of the State Police's investigation of Mr. Ballock.

Furthermore, the FBI based its discharge on three violations of its policies by Mr. Ballock, each of which it found was an independent basis for his discharge. *Id.* at 24.

Although Mr. Ballock argues that Sgt. Kief and Ms. Costlow's communications with FBI officials "set in motion" the FBI's administrative proceedings, he again confuses the timeline of events and ignores relevant evidence. Pl.'s Mot. for Part. Summ. J. 3.[3] The evidentiary support for Mr. Ballock's motion are e-mails between Sgt. Kief and Ms. Costlow during April and May 2016, after the criminal charges against Mr. Ballock were dismissed and around the time of the FBI interviews with both Defendants. *Id.* at Exs. 7-8. But the FBI's investigation was "set in motion" nearly three years earlier, shortly after Mr. Ballock was arrested. Although Mr. Ballock claims the FBI did not begin its investigation until after the criminal charges against him were dismissed (*Id.* at 2), FBI records confirm, and Mr. Ballock has acknowledged, that the investigation began about the same time as Mr. Ballock's arrest in September 2013, although the FBI may have held its investigation in abeyance, pending the outcome of the criminal proceedings. Ex. 6; Ex. 2, Ballock Dep. 155:5-22.[4] Additionally, as part of its investigation, the FBI had already obtained copies of the harassing communications, upon which it based its decision, shortly after Mr. Ballock's arrest in September 2013, well before officials interviewed Sgt. Kief and Ms. Costlow. Ex. 5, Gaskins Dep. 62:5-63:13, 214:6-215:8.

---

[3] Mr. Ballock further mischaracterizes events by arguing that the FBI's interviews with Sgt. Kief and Ms. Costlow "took a private domestic dispute out of the Family Court where it belonged[.]" Pl.'s Mot. for Part. Summ. J. 3. Mr. Ballock's harassment of Ms. Costlow was not a "private domestic dispute," but a matter of alleged criminal violations. As Exhibits 7 through 9 to Mr. Ballock's motion show, Sgt. Kief and Ms. Costlow's communications with the FBI were about Mr. Ballock's harassment of Ms. Costlow, not the divorce or child custody matters, over which the Family Court would have jurisdiction.

[4] Nevertheless, Mr. Ballock's argument that Sgt. Kief and Ms. Costlow's communications with FBI officials "set in motion" the FBI's investigation makes no sense. It is undisputed that the FBI interviewed Sgt. Kief and Ms. Costlow *as part of its investigation* of Mr. Ballock. Thus, the administrative proceedings necessarily were already "set in motion" at the time of the interviews in question.

In sum, even if Mr. Ballock is deemed to have properly moved for partial summary judgment as to any element of the tortious interference with contract count, he has produced no evidence to show that he is entitled to judgment as a matter of law. For this additional reason, the Court should deny Mr. Ballock's motion.

C.   **Mr. Ballock Includes Inaccurate or Irrelevant Arguments in His Motion for Partial Summary Judgment.**

In his motion, Mr. Ballock makes factual assertions that have no relevance to the elements of the cause of action for which he seeks partial summary judgment. Nevertheless, because the factual assertions are either not supported by, or blatantly contradicted by, the evidentiary record, Sgt. Kief will take this opportunity to refute Mr. Ballock's mischaracterizations of the record.

1.   **Claim That Sgt. Kief Pulled Web Content from Tom Ballock's Website as Recently as February 14, 2018**

Although it is not clear what possible relevance it has to his motion, Mr. Ballock makes the assertion that "Sgt. Kief appears to have pulled down web content from Thomas Y. Ballock's blogging website as late as February 14, 2018, (Troopers 804-816)." Pl.'s Mot. for Part. Summ. J. 3. Oddly enough, Mr. Ballock does not include the cited document as an exhibit to his motion.

A review of the communication at issue, however, demonstrates that Mr. Ballock is wrong on both counts: Sgt. Kief did not pull down web content from Tom Ballock's website, and the content at issue was not downloaded on February 14, 2018.

The document at issue is an e-mail from Ms. Costlow to Sgt. Kief, in which she forwarded content from Tom Ballock's website that *she* had downloaded. E-mail from Ellen Costlow to 1Sgt. Michael Kief (Nov. 4, 2016, 9:28 p.m.), attached as "Exhibit 11." Ms. Costlow sent the e-mail to Sgt. Kief on November 4, 2016. *Id.* The February 14, 2018 date on the footer of the e-mail is the date that Sgt. Kief printed the e-mail for production in this action. Sgt. Kief produced the e-mail to Mr. Ballock on March 9, 2018 in response to Mr. Ballock's requests for all documents related

to either him or Ms. Costlow. State Police Defs.' Supp. Resp. to Pl.'s 1st Set of Doc. Reqs., attached as "Exhibit 12."

Although this e-mail has no relevance to Mr. Ballock's argument that he is entitled to summary judgment on the supposed elements of duty and breach in his tortious interference with contract count against Sgt. Kief, Mr. Ballock is nonetheless incorrect about any meaning to be taken from the e-mail. It provides no evidence that Sgt. Kief downloaded content from Tom Ballock's website in 2018 or at any time.

### 2.   Claim That Mr. Ballock's Co-Dependent Condition Explains the Volume of Texts and E-Mails Mr. Ballock Sent to Ms. Costlow

Mr. Ballock contends in a footnote that his "codependent condition explained the volume of texts and emails decrying the loss of family and seeking reconciliation." Pl.'s Mot. for Part. Summ. J. 5 n.5. Again, this assertion has no bearing on the question of whether Sgt. Kief tortiously interfered with Mr. Ballock's employment relationship with the FBI. The only conceivable basis for making this statement in his motion is as an attempt to influence the decision on the State Police Defendants' own motion for summary judgment. [ECF No. 120]. This claim of Mr. Ballock's, however, is nothing more than post-hoc rationalization of his harassment of Ms. Costlow.

Mr. Ballock never once in the criminal proceedings, in the FBI investigation, or in this action claimed that his harassing attempts to get Ms. Costlow to reconcile—despite her repeatedly informing him that she had no interest in reconciliation—was due to his codependent condition. Rather, he claimed that his attempts were for the sake of the couple's children. He informed FBI investigators that he repeatedly sent her e-mails and texts, despite her requests that he stop, because he wanted to ensure their conversations were documented. Signed Sworn Statement of Scott T. Ballock (June 29, 2016) at 2, attached as "Exhibit 13." In his deposition in this action, Mr. Ballock also testified under oath that his constant attempts at reconciliation were not due to any

codependent condition, but for the benefit of his children and out of fear he would lose custody of his children in a divorce. Ex. 2, Ballock Dep. 29:8-23, 286:15-21. In Mr. Ballock's view, any communication with Ms. Costlow related to the couple's children because he believed that reconciliation was in the children's best interests, regardless of what Ms. Costlow felt. *Id.* at 29:20-23.

Mr. Ballock's latest attempt to explain away his harassment of Ms. Costlow has no relevance to his motion for partial summary judgment. Furthermore, it is not supported by the evidentiary record. Therefore, the Court should not consider it when deciding Mr. Ballock's motion.

### 3.   Claim That the Criminal Prosecution of Mr. Ballock Was an Effort to Shut Down His Father's Websites

Finally, in his motion for partial summary judgment, Mr. Ballock comes up with an entirely new theory as to why he was arrested. The reason for his arrest has no relevance to the question of whether Sgt. Kief tortiously interfered with his employment by agreeing to an interview by FBI officials, however. In any event, as with his other irrelevant arguments, this assertion is also contradicted by the record.

In his pleading in this action, Mr. Ballock alleges that his arrest in September 2013 was an attempt by Sgt. Kief and Cpl. Gaskins to assist Ms. Costlow in the divorce proceeding because they knew Trooper Berry was having an affair with Ms. Costlow. 3d Am. Compl. ¶¶ 33-34. He maintained this position during his deposition in April 2019. Ex. 2, Ballock Dep. 145:2-6.

Yet, in his motion, Mr. Ballock now claims that his criminal prosecution was an effort directed not at him, but at Tom Ballock, "to intimidate Scott T. Ballock's father out of his Internet blogging activities by prosecuting Scott[.]" Pl.'s Mot. for Part. Summ. J. 6. According to Mr. Ballock's latest conspiracy theory, in May 2013, Ms. Costlow informed her boyfriend that she had

the upper hand in possibly ruining Mr. Ballock's career, and three months later, Sgt. Kief arrested Mr. Ballock "after arranging for an agent from the FBI to attend and witness the event." *Id.* at 6-7. Mr. Ballock now claims that his prosecution and the resulting threat to his career was initiated after Ms. Costlow's "direct efforts" to shut down Tom Ballock's website failed; consequently, according to Mr. Ballock, Ms. Costlow, with the help of Sgt. Kief, prosecuted Mr. Ballock. *Id.* at 6. This "coercion" forced Mr. Ballock to sign the dismissal agreement in the criminal case, in which he stated that the State Police had probable cause to charge him. *Id.* Mr. Ballock claims that the evidence at trial will show an offer to drop the criminal charges against him if Tom Ballock would agree to take down his internet blog. *Id.* at n.9. Mr. Ballock does not attach this purported evidence to his brief, however.[5]

To support his attempt to portray himself, and not Ms. Costlow, as the victim, Mr. Ballock repeatedly mischaracterizes the evidence in this matter. Mr. Ballock mentions that Ms. Costlow discussed having the upper hand in ruining his career in May 2013 in the same paragraph as discussing his arrest in September 2013, implying that the two events are related. *Id.* at 6-7. The undisputed evidence, however, shows that Sgt. Kief never heard of Scott Ballock and Ellen Costlow until August 13, 2013. Ex. 1; Ex. 3, Kief Dep. 59:23-60:4, 61:3-16, 66:7-22. Moreover, Sgt. Kief did not learn of Mr. Ballock through Ms. Costlow, but through Tom Ballock himself. *Id.* There is no evidence that Ms. Costlow contacted Sgt. Kief for assistance in bringing about a criminal prosecution of Mr. Ballock in order to pressure Tom Ballock to remove his websites. To the contrary, Mr. Ballock himself puts the sequence of events as Tom Ballock contacting Sgt. Kief and Sgt. Kief then contacting Ms. Costlow in response. Ex. 1.

---

[5] There is no evidence that Sgt. Kief ever offered to drop the criminal charges against Mr. Ballock (even if he could) in exchange for Tom Ballock taking down his websites or for any other reason. Mr. Ballock concedes that Sgt. Kief never offered to drop the criminal charges against him. Ex. 2, Ballock Dep. 140:17-21.

Furthermore, there is no evidence that Tom Ballock's websites played any role in the decision to bring charges against Mr. Ballock. Once again, contrary to Mr. Ballock's assertion, the evidence shows just the opposite: Tom Ballock's websites played *no role* in the decision to bring charges. Ex. 3, Kief Dep. 219:1-12.[6]

Mr. Ballock further distorts the record when he claims that Sgt. Kief "arranged" for an FBI agent to witness Mr. Ballock's arrest, implying that Sgt. Kief did so in an attempt to harm Mr. Ballock's career. Pl.'s Mot. for Part. Summ. J. 7. There is absolutely no evidence that Agent John Hambrick attended the arrest of Mr. Ballock at Sgt. Kief's request. Once again, the evidence is directly contrary to Mr. Ballock's assertion in his brief: The FBI sent a representative to Mr. Ballock's arrest at *its* insistence, not because Sgt. Kief "arranged" it. Ex. 3, Kief Dep. 122:24-123:4. Moreover, Mr. Ballock testified that Agent Hambrick attended the arrest for *Mr. Ballock's benefit*. Ex. 2, Ballock Dep. 287:6-21. Indeed, if the goal had been to harm Mr. Ballock's career, the best means of doing so would have been for Sgt. Kief to come to Mr. Ballock's FBI office and arrest him there. Ex. 3, Kief Dep. 122:4-23.

Mr. Ballock claims that he only acknowledged in the dismissal agreement in the criminal case that the State Police had probable cause to arrest him because of "coercion." Pl.'s Mot. for Part. Summ. J. 6. This is not true. Mr. Ballock certainly could have taken the matter to trial and

---

[6] Sgt. Kief candidly admitted in his deposition to having a personal dislike for Tom Ballock as a result of a website Tom Ballock created. Ex. 3, Kief Dep. 154:13-20. The website Tom Ballock created that caused Sgt. Kief to have a personal disdain for Mr. Ballock and his father, however, did not exist at the time of Mr. Ballock's arrest. *Id.* at 265:12-266:7 To the contrary, Tom Ballock created a website *after* Mr. Ballock's arrest, claiming that the arrest was a "railroad job" by "Cowboy Kief." Tom Ballock appears to have taken the website down since this action was filed. A copy of the website as it existed on April 17, 2017 is attached as "Exhibit 14." Given the content of the website, it was natural for it to create a personal dislike of both Tom and Scott Ballock by Sgt. Kief. Yet, because the website was not created until after Mr. Ballock's arrest, it could not have played any role in the decision to charge Mr. Ballock, and there is no evidence that Tom Ballock's various websites concerning Ms. Costlow played any role in the decision to charge Mr. Ballock. As set forth in the State Police Defendants' motion for summary judgment, the decision to charge Mr. Ballock was based upon ample probable cause and directed by an Assistant Prosecuting Attorney. Mem. in Supp. of State Police Defs.' Mot. for Summ. J. 12-15 [ECF No. 120-1].

been vindicated through a defense verdict. Nothing prevented him from doing so. Given the evidence against him, however, it appears he did not want to risk a conviction. Instead, with the advice of his counsel, he willingly chose to sign the document, agreeing that there was probable cause for his arrest, and submitted a false statement to the Magistrate Court.

Although it occurred post-arrest, Mr. Ballock makes another mischaracterization of events related to his arrest and Sgt. Kief's supposed interest in his prosecution by stating that the divorce decree, which included an injunction preventing either Mr. Ballock or Ms. Costlow from contacting the other's employer, was entered on May 9, 2014 and "[t]wo days later, Ellen Ruth Costlow emailed Sgt. Kief on May 11, 2014," acknowledging signing the agreement. Pl.'s Mot. for Part. Summ. J. 7. Yet, the email in question, Exhibit 5 to Mr. Ballock's brief, shows that Ms. Costlow sent it on August 11, 2014; not two days after the divorce decree was entered, but three months later. Although the time of this exchange has no relevance to Mr. Ballock's brief, its mischaracterization is but one more example of Mr. Ballock twisting the evidentiary record in an attempt to support his argument.

Throughout his brief, Mr. Ballock repeatedly and consistently mischaracterizes the evidence of record while making arguments that are irrelevant to his limited motion for summary judgment. His purpose in doing so is unclear, but the Court nevertheless should be made aware of Mr. Ballock's tactics.

## IV.    CONCLUSION

Mr. Ballock seeks partial summary judgment on duty and breach, which are not elements of any count he brings against Sgt. Kief. Regardles, Mr. Ballock produces no evidence to show he is entitled to summary judgment as to *any* element of his tortious interference with contract count. To the contrary, the undisputed evidence shows that Sgt. Kief, along with Cpl. Gaskins and

Trooper Berry, are entitled to summary judgment on this count. Mem. in Supp. of State Police Defs.' Mot. for Summ. J. 17-20. In a vain attempt to support his motion, however, Mr. Ballock repeatedly mischaracterizes the evidence of record while making irrelevant arguments.

WHEREFORE, for the foregoing reasons, Defendant State Trooper Michael Kief respectfully requests that the Court DENY Plaintiff's Motion for Partial Summary Judgment and grant any and all other relief the Court finds appropriate.

Dated this 29th day of July 2019.

Respectfully submitted,

*/s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

      Plaintiff,

v.
                                      CIVIL ACTION NO.:  1:17-CV-52
                                      Honorable Irene M. Keeley

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

      Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of July 2019, I electronically filed the foregoing "Defendant State Trooper Michael Kief's Response to Plaintiff's Motion for Partial Summary Judgment" with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

                                  Charles J. Crooks, Esquire
                                  Crooks Law Firm PLLC
                                  244 Pleasant Street
                                  Morgantown, WV 26505
                                  *Counsel for Plaintiff*

                                  P. Todd Philips, Esquire
                                  Lyons Phillips Legal Group PLLC
                                  141 Walnut Street
                                  Morgantown, WV 26505
                                  *Counsel for Defendant Ellen Ruth Costlow*

                                  ***s/ Mark G. Jeffries***
                                  Mark G. Jeffries (WV Bar No. 11618)
                                  STEPTOE & JOHNSON PLLC
                                  400 White Oaks Boulevard
                                  Bridgeport, WV 26330
                                  (304) 933-8000
                                  mark.jeffries@steptoe-johnson.com

8497665

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper
Michael Kief, State Trooper Ronnie M.
Gaskins, and State Trooper Chris Berry*