06/29/2016
Clarksburg, West Virginia

ATB I, Scott T. Ballock, having been duly sworn by Supervisory Special Agent (SSA) James L. Herman, hereby make the following statement to SSA James L. Herman and SSA Lawrence W. Quigley, whom I know to be SSAs of the Federal Bureau of Investigation (FBI), assigned to the Inspection Division:

I entered on duty (EOD) on 6/1/2003, as a Special Agent, and I am currently assigned to the CJIS Division as a Supervisory Special Agent.

I understand that this is an internal investigation regarding an allegation that I was arrested on 09/13/2013 by the West Virginia State Police (WVSP), Morgantown, WV, and charged with the following misdemeanor counts: 1) Stalking-Harass/Credible Threat; and 2) Stalking-Harass/Credible Threat (4.8, Other Misdemeanors). I have been further advised of my rights and responsibilities in connection with this inquiry as set forth on a "Warning and Assurance to Employee Required to Provide Information" form FD-645 which I have read and signed. I understand from my review of the FD-645 that should I **refuse to answer or fail to reply fully and truthfully during this interview, I can expect to be dismissed from the rolls of the FBI**.

On Friday, 09/13/2013, I attended Family Court in Morgantown, WV concerning my divorce from Ellen R. Costlow. During this scheduled final hearing to divide assets and to decide custody of our children, the Family Court Judge stated ATB

Page 1 of 10

**CONFIDENTIAL**

PL 00002

**EXHIBIT 13**

06/29/2016
Clarksburg, West Virginia

*AB* that the West Virginia State Police (WVSP) had an arrest warrant for me. During a break, WVSP Sgt. Michael Kief served me with paperwork. I reported to the WVSP Detachment in Morgantown where I was processed and released for the above described charges. I was never interviewed by police regarding Ellen's allegations. Through my attorney, I offered to waive my consitutional right to remain silent and be interviewed by WVSP so that they could learn the rest of the story, not simply Ellen's version. However the WVSP declined the interview offer.

The charges surrounded allegations that I sent "unwanted" and "threatening" communications in the form of texts and emails to my ex-wife, Ellen Costlow. During our separation and divorce, I specifically requested and engaged in "written" forms of communication with Ellen to ensure our conversations were documented - precisely so that my communications with her could not be misconstrued or misrepresented. Specifically because we were in the middle of contentious divorce proceedings, I ensured that nothing I sent to Ellen could be construed as anything but appropriate and respectful. Most of these communications referenced issues or concerns with our minor children, ▮ and ▮. I received calls from Ellen and I told her she needed to email or text me concerning the nature of her communication. I possess emails which demonstrate Ellen, despite her allegation that my communications were unwanted, actually wanted to communicate with me. Ellen repeatedly initiated contact with me. *ATB*

**CONFIDENTIAL**  **PL 00003**

06/29/2016
Clarksburg, West Virginia

ATB
Among other reasons, Ellen contacted me to request that I help her secure employment with the FBI, to discuss issues with the children, and to discuss the possibility of reuniting and saving our marriage. I once woke in the middle of the night to Ellen standing directly above me in my apartment; she had let herself in to talk to me. On another occasion, Ellen called me in the early morning hours and asked that I meet her "at the mailbox" in front of her home to talk (I declined). I have printouts of her communications with me via FaceTime and as well as photos of herself she sent me during this time period. On at least one occasion, she initiated contact with me posing as our son ▮. I did initiate communications, but usually referencing our children. None of my communications were threatening or harassing.

For background, we moved to West Virginia in August 2011 when I received a promotion to CJIS. Ellen met Kenny Ice from Fairmont, WV in June 2012 on Craigslist. She developed a romantic relationship with Ice and we separated in September 2012. Ellen stayed in our home and initially kept the children until the divorce could be heard in Family Court. I retained an apartment in Morgantown, WV. During this period of separation, Ellen engaged in highly concerning behaviors. On several occasions, ▮ contacted me concerning Ellen mistreating and physically harming him, and he and ▮ being left alone. Over the Christmas holiday, in December 2012, Ellen had ▮ ATB

CONFIDENTIAL        PL 00004

06/29/2016
Clarksburg, West Virginia

ATB
involuntarily "committed" and evaluated at Chestnut Ridge Mental Health Facility for "misbehaving". ▮ was deemed by the mental health professionals to have been improperly committed by his mother and he was released with no recommendation for followup treatment. Ellen improperly abused the system to punish ▮ for his misbehavior, "to teach him a lesson". My son was unnecessarily traumatized by this incident. Numerous incidents of this nature were presented to Family Court and it was ordered that ▮ would live with me.

During our separation, Ellen continually behaved inappropriately, exposing ▮ to harmful experiences and environments. She failed to ensure ▮ regularly attended school, resulting in 16 absences and more than 29 tardees. She socialized ▮, then age 9, with a known and convicted child molester, Karl Vincent Taylor. She abused prescription drugs including Adderal and Hydrocodone and admitted to using cocaine. She attempted suicide with the children in the home. She was involved with Kenny Ice who is a known drug dealer in Northern West Virginia. She regularly took ▮ to a "Hot Spot", a "seedy" gambling and drinking establishment I corroborated the above information through my own investigation by talking with Kenny Ice, Taylor, Ice's father, Taylor's Probation Officer and employees of the Hot Spot. I documented those conversations 302 style and would provide them upon request.

During these inquiries, I began to have regular contact with ATB

CONFIDENTIAL         PL 00005

06/29/2016
Clarksburg, West Virginia

*ATB* Ice who provided me with information via texts from Ellen concerning Ellen's behaviors and plans to destroy my reputation and get me fired. Ice also voluntarily provided me his cellular telephone which contained the above mentioned texts and other highly concerning information regarding Ellen's behaviors. I contracted with Forensicon to conduct an examination of the cellular telephone. Through these discussions and identified text messages with Ice, I learned that Ellen wanted to get me arrested, have my gun taken away, and get me fired from the FBI. My son heard Ellen say she was trying to get my gun taken away from me so that I would be fired. During a court-ordered counseling session, Ellen admitted that she made that statement. In a text message, Ellen told Ice that she had the "upper hand in ruining (my) career." She initiated these allegations, with the help of WVSP, not because she felt threatened or harassed, but in an attempt to harm me and to gain lifetime alimony and full custody of the children through Family Court. The Family Court judge wrote in his order that he, "has to believe the timing of the arrest [at issue in this administrative inquiry] represented primarily a strategic decision to gain advantage in this case. In that regard, the Father's communications at issue occurred over several months with no apparent effort by the Mother to seek assistance from this Court or any other judicial body until the time of the hearing."

On more than one occasion when Ellen and Ice were fighting, *ATB*

CONFIDENTIAL     PL 00006

06/29/2016
Clarksburg, West Virginia

ATB sometimes violently, the police responded. In one police report, Ellen requested that her name not be mentioned in the report because she was going through a divorce and did not want her contact with the police to negatively impact her position with Family Court. This report was shown to interviewers and would be available upon request.

During my pending divorce from Ellen, my belongings were still located in our home and subject to a constructive trust; Ellen was not to dispose of any property from the home. Despite the constructive trust, Ellen gave various items of mine to Ice including the following FBI property items: ammunition, and work-related tools such binoculars, gloves, and a thumb drive. Ice said he knew the items belonged to the FBI and that he and Ellen shot all of the ammunition. Ice returned one empty box of ammunition to me to confirm this information. I promptly reported this information to the CJIS Security and Professonial Responsibility Office (CSPRO). Ice and Ellen later returned some of the FBI items they had taken.

During the Family Court session on 09/13/2013, and on other occasions, forensic Psychiatrist Christi Cooper-Lehki provided her professional opinion of Ellen. Cooper-Lehki is an expert in Battered Women's Syndrome and a Professor of Behavioral Medicine and Psychiatry at West Virginia University's (WVU) School of Medicine. The Family Court appointed Dr. Cooper-Lehki to conduct the evaluation because Ellen was (falsely) claiming that I was ATB

CONFIDENTIAL                    PL 00007

06/29/2016
Clarksburg, West Virginia

physically abusive toward her. Contrary to Ellen's claims, Dr. Cooper-Lehki testified that Ellen was not abused and that she was not a battered woman. Rather, Dr. Cooper-Lehki formally diagnosed Ellen as suffering from severe mental illnesses, including Borderline Personality Disorder and Paraphilia. She described Ellen as vindictive and dangerous, with behaviors consistent with a Sociopath. Cooper-Lehki said Ellen does not perceive reality correctly and aggressively attempts to harm those whom she believes have wronged her. According to Dr. Cooper-Lehki, Ellen's desire to hurt me at all costs, her repeated and active attempts to alienate our children from me, and her lack of association with reality made her dangerous. Unlike the WVSP, Dr. Cooper-Lehki actually read every single communication between Ellen and me during an exhaustive, months-long investigation (Cooper-Lehki testified that it was the most comprehensive investigation she has ever conducted). Dr. Cooper-Lehki did not find my communications to be threatening or harassing. Rather, consistent with her diagnosis, Cooper-Lehki believes my arrest was simply another attempt by Ellen to harm me.

On this same date, the date of my arrest, the children were placed with me, and Ellen received only 4 hours visitation with ▇. Based on Dr. Cooper-Lehki's findings, combined with Ellen's continued erratic and dangerous behaviors, I sought to revoke entirely Ellen's parental rights. At the court hearing to discuss my request, but before the judge heard testimony, Ellen

CONFIDENTIAL          PL 00008

06/29/2016
Clarksburg, West Virginia

ATB
volunteered to waive all custodial and visitation rights to the children. I believe she did so in order to avoid having all of her parental rights permanently revoked. I was granted and continue to have full custody of ▮▮▮ and ▮▮▮ with no visitation rights by Ellen. Ellen's visitation rights have been revoked.

Following my arrest, I offered to be interviewed by WVSP. They declined and all charges were "Dismissed with Prejudice" on 04/07/2016. I believe the WVSP did not want to take my statement because I suspect that Ellen was engaged in a romantic relationship with Trooper Chris Berry during our separation. I was informed of this allegation by Kenny Ice. Ice said that Trooper Berry and Ellen were working together to find a way to have me arrested so as to help Ellen in her custody and alimony claims. Ice said that at Ellen's request Trooper Berry was conducting surveillance of both me and my parents. I was unconcerned because I was not engaged in any wrongdoing. This information was provided to WVSP Sgt. Kief by my father, Thomas Ballock, however, to my knowledge, no additional inquiries were conducted by the WVSP to clarify this information. I possess documentation which lends credence to and corroborates these allegations and which I intend to use in a civil suit against WVSP.

One condition of dismissal outlined in paragraph 1 of the motion to dismiss stated that I agree that the WVSP had Probable ATB

CONFIDENTIAL                PL 00009

06/29/2016
Clarksburg, West Virginia

*ATB*

Cause for my arrest. This was insisted upon by the prosecutor so I would not be able to initiate a lawsuit against WVSP for malicious prosecution. However, I may initiate a lawsuit against WVSP for Abuse of Process as that tort does not require a finding that probable cause did not exist. Rather, I must prove that WVSP and Ellen used the judicial system for ulterior motives. I have filed for an expungement of my record for the arrest. I never threatened Ellen and none of my communications to her could be perceived in that fashion. I contacted her primarily for reasons involving our children or to respond to contact initiated by her. And, she pursued charges against me only to harm me and improve her standing with Family Court where she hoped to gain lifetime alimony and custody of the children (Ellen, a stay-at-home mother, was denied custody and alimony; she now pays me approximately $500 a month in child support).

I have supporting documents for my statement which are available upon request. I provided a timeline of events to interviewers to attach to this statement.

I am willing to voluntarily take a polygraph examination concerning the truthfulness of the information contained in this signed, sworn statement. I have no other pertinent information regarding the aforementioned allegations. I have been advised that I should submit any additional information of which I may become aware, regarding this inquiry, to the Internal Investigations Section (IIS)/Inspection Division (INSD) or to the *ATB*

Page 9 of 10

**CONFIDENTIAL**                                       **PL 00010**

06/29/2016
Clarksburg, West Virginia

*STB* Office of Professional Responsibility (OPR).

I have been given the opportunity to review this statement and make any changes prior to signing it.

I was instructed on 06/29/2016 <u>not</u> to discuss this matter with anyone other than the person(s) conducting this interview, representatives from IIS/INSD, OPR, the FBI Ombudsman, and/or an FBI Employee Assistance Program (EAP) Counselor. I have been told that should I decide to discuss this matter with anyone else, I must first obtain authorization from the interviewer(s).

I have read this statement, consisting of this and 5 other pages and it is true and correct. *STB*

_____
Scott T. Ballock

Sworn to and subscribed before me on the 13th day of July, 2016, in Clarksburg, West Virginia.

_____
James E. Herman

Witness:

_____
Lawrence W. Quigley

CONFIDENTIAL    PL 00011