## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**                                  Case No.:      1:17-CV-52

      Plaintiff,

v.                                                                        JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,**
and
**STATE TROOPER CHRIS BERRY,**

      Defendants.

### PLAINTIFF'S OPPOSITION TO TROOPER DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Scott T. Ballock, submits this brief in opposition to the three
individual West Virginia State Police Defendants', (collectively referred to as the Trooper
Defendants), joint motion for summary judgment filed on July 8, 2019, (Doc 120). The
Plaintiff has filed a cross motion for partial summary judgment (Doc 122) against
Michael A. Kief on the elements of duty and breach as alleged in Claim Ten (tortious
interference with contract of employment) of the third amended complaint. (Doc 49)

### Issues

The Trooper Defendants' summary judgment arguments fail principally due to the
existence of genuine issues of disputed fact, but there are legal flaws as well. By way of

1

alternative relief, they argue the summary application of qualified immunity. This argument also fails to account for genuine triable issues of material fact.

The Trooper Defendants principally rely on two contested factual arguments: 1. that the Trooper Defendants had probable cause for the arrest at issue; and 2. the FBI Office of Professional Responsibility (OPR) has the final say on why the Plaintiff was terminated and it had nothing to do with the Trooper Defendants.

### Probable Cause

The Trooper Defendants posit that probable cause for Plaintiff's arrest on September 13, 2013 is beyond dispute when that is certainly not the case. The facts concerning probable cause for the arrest are in genuine dispute, as explained in the Plaintiff's motion for partial summary judgment. (Doc 122)

This fact-dependent argument failed at the pleading stage of the action (Doc 48 and 58) and has lost ground in discovery.[1] At the pleading stage, it took the form of judicial estoppel, but that failed owing to the multiple factual issues that were begged by proffer of the doctrine. (Doc 48, at 15-21)

Probable cause has been disputed and doubtful from the start. After applying Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996), United States Magistrate Judge Aloi

---

[1]    Eleven of Fourteen claims in the Plaintiff's *pro se* pleading were sustained by the Honorable Michael John Aloi, United States Magistrate Judge, while Claim 9 (Intentional Infliction of Emotional Distress) was held in abeyance pending amendment. (Docs 49 and 50)  It was recommended that Claims 3 (Violation of First Amendment Right to Seek Redress in the Courts) and 14 (Color of Law) be dismissed. (Doc 48) No objections were filed by any party and the entire report and all recommendations were adopted on March 9, 2018. (Doc 58)

stated: "If Plaintiff had attempted to enter a guilty plea on these admissions of fact alone, the undersigned would reject it as insufficient to establish an independent factual basis for his plea." (Doc 48 at 19) Indeed, there was no evidence developed in discovery to show that Magistrate Herschel Mullens did anything more than accept the prosecuting attorney's motion to dismiss without inquiry or making any findings at all. (Doc 48 at 20) Likewise, there was no evidence developed throughout discovery to suggest the Plaintiff asserted a prior inconsistent position or misled Magistrate Mullens in any way. (Doc 48 at 20)

The defense of judicial estoppel was not foreclosed by its untimely proffer. After pointing out that the cases offered in support of the motion, including Lowery, were summary judgment decisions, United States Magistrate Judge Aloi suggested: "Whether there is additional evidence to support probable cause contained in the warrant affidavit considered by the judge who issued the arrest warrant is a question that the defendants are free to address on a motion for summary judgment when such evidence may be considered." (Doc 48 at 21). Still, the only effort made in the Trooper Defendants' motion for summary judgment was to argue the emails and text messages of an estranged co-dependent and obsessive-compulsive spouse, the single review by an Assistant

Prosecuting Attorney[2] and Magistrate Sandy Holepit's signature given without any evidentiary proffer.[3]

Discovery has revealed the investigation was motivated by malign intent, it was predisposed and it failed to satisfy standards established within the West Virginia State Police.[4] As for the defense of judicial estoppel, the Trooper Defendants have made no serious effort to revisit the merits of that argument. At page 15 of their supporting brief they cite <u>Lowery v. Stovall</u>, 92 F.3d 219, 225 (4th Cir. 1996) in an effort to discount the Plaintiff's deposition testimony concerning the statement he signed under coercion. (Doc 120-1 at 15). How they can seriously argue that Magistrate Mullens was mislead resulting in an unfair advantage to the Plaintiff is left to speculation.

At the Rule 12 stage, the Trooper Defendants chose not to address <u>Town of Newton v. Rumery</u>, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) until the Plaintiff cited it. Knowing they could not meet the <u>Rumery</u> criteria, they disingenuously attempted to distinguish it, suggesting the Plaintiff did not agree to give up his right to sue the Trooper Defendants but merely acknowledged probable cause existed for the arrest.[5] (Doc 48 at 21).

---

[2]     This was discovered in the deposition of Cpl. Ronnie Gaskins, the Trooper nominally appointed to lead the investigation. Assistant Prosecuting Attorney Cindy Scott was not deposed.

[3]     Cpl. Gaskins presented the complaints and the warrants were signed, no questions asked. Cpl. Gaskins dep. at 151-152.

[4]     This was cited in the Plaintiff's motion for partial summary judgment. (Doc 122)

[5]     At the hearing on the motions to dismiss, held October 13, 2017, Magistrate Judge Aloi asked defense counsel why the prosecuting attorney agreed to dismiss the charges and defense counsel was obliged to admit he did not know why. Discovery revealed that four weeks before trial in Magistrate Court, on March 4, 2016, an Assistant Prosecuting Attorney from Marcia Ashdown's office went to Family Court and persuaded Judge Minor to deny Scott Ballock's motion to use the report of forensic psychiatrist Dr. Christi Cooper-Lehki in his defense of the criminal charges. <u>See</u> Ex. 2. That report was exculpatory as it explained the dynamics of the

"Defendants seeking to enforce a release-dismissal agreement bear the burden of establishing that such a release was 'voluntarily made, not the product of prosecutors overreaching, and in the public interest.'" (Doc 48 at 23, citing 480 U.S. at *401) The Defendants had to carry the burden of establishing the following factors if they wish to argue the Plaintiff voluntarily and knowledgeably agreed that probable cause existed for his arrest:

1. The knowledge and experience of the criminal defendant;
2. The nature of the criminal charges;
3. The existence of a legitimate criminal justice objective for obtaining the release;
4. Whether the defendant was counseled; and
5. Whether the agreement was executed under judicial supervision.

(Doc 48 at 23; citing 480 U.S. at *401-02)

In their depositions, the Trooper Defendants disclaimed any knowledge of the document at issue. Other than the deposition of the Plaintiff and the exchange of a copy of the dismissal motion and the attached signed statement, the Trooper Defendants did nothing to meet the Rumery factors.

Evidence on the third Rumery criterion is notable by its absence. "Also relevant are the prosecuting attorney's subjective, actual reasons for dismissing the specific charges at issue; for example, whether a necessary witness was refusing to testify, or would be subject to undo trauma in so doing." (Doc 48 at 25, citing Rumery, 480 U.S. at

---

relationship between Scott (co-dependent features) and Ellen Ballock (a manipulative sociopath) at the time the emails and texts were transmitted.

*402-3) Neither the prosecuting attorney or the defense attorney were deposed, and no transcript of the hearing was produced.

The Plaintiff testified in deposition that the statement he signed on March 7, 2016 was not voluntary.[6] The Plaintiff was told by his defense lawyer, Michael Benninger, that the elected prosecutor, Marcia Ashdown, took over the case as it neared trial and stated to Mr. Benninger, "It appears my boys have misbehaved." She went on to say she would not leave office with such a scandal brewing. So, she appeared for the start of trial with the statement in hand and would only agree to drop both charges and expunge the record of the arrest if the statement was signed by the Plaintiff and attached to the motion to dismiss. See Plaintiff's dep. at 109 attached as Ex. 1 to the Troopers' joint motion. This, the only evidence discovered on the third Rumery criterion, shows a *quid pro quo* was being sought. Thus, Rumery governs any proffer of the statement on probable cause and the only evidence bearing on that criteria is damning of the resulting document.

As for the fifth Rumery criterion, whether the agreement was executed under judicial supervision, the treatment given to the judicial estoppel argument demonstrates there was no supervision. There cannot be any evidence meeting the fifth Rumery criterion.

The Report and Recommendation entered December 6, 2017, detailed multiple issues of fact that would be incumbent on the defense to address if they were to succeed

---

6    See Plaintiff's dep. at p.109 submitted as Ex. 1 by the Trooper Defendants.

in utilizing the signed statement attached to the prosecutor's motion to dismiss. (Doc 48 at 21-26) Yet, the Defendants attempted no discover and have presented no evidence meeting the <u>Rumery</u> criteria.

The only evidence discovered shows this was a case of prosecutorial overreach for the purpose of covering up for police misconduct. The Trooper Defendants' decision to pass on trying to meet the controlling <u>Rumery</u> standard concedes the issue.[7] Accordingly, the statement attached to the prosecuting attorney's motion to dismiss the charges cannot be considered in the current joint motion for summary judgment or used at trial.

The Trooper Defendants have based their joint summary judgment motion on the credibility of their complaining witness, Ellen Ruth Costlow, their interpretation of the emails and texts she received from the Plaintiff, the cursory review of those emails and texts made by Assistant Prosecuting Attorney Cindy Scott[8] and Magistrate Sandy Holepit's approval of the warrants without proffer. Their joint motion for summary judgment is replete with proffers of discovery along these lines, yet they leave out significant countervailing discovery evidence. Their brief is a good start on their pretrial memorandum, but that is all.

---

[7]  Owing to the lack of <u>Rumery</u> evidence, the Plaintiff intends to move in limine to redact the attached statement and preclude the argument that Scott Ballock ever signed it.

[8]  Cpl. Gaskins testified in deposition that he showed the computer disc of evidence to Assistant Prosecuting Attorney Cindy Scott the day before the arrest and she spent a few minutes looking at it. This is the same Assistant Prosecuting Attorney who advised Sheriff Deputies Snider and Jones the previous week that charges for malicious wounding against Ellen Ruth Costlow were not appropriate because of difficulty in establishing whether she or Kenny Ice, Jr. was the aggressor. <u>See</u> Gaskins dep. at 114.

## Contested Issues of Fact

Ellen Ruth Costlow filed her petition for divorce on November 24, 2012 and the divorce decree was ultimately entered on May 9, 2014. The initial scheduling order entered December 7, 2012, appointed Teresa Lyons as Guardian ad Litem for the interest of the two minor children.

On March 6, 2013, Troopers Gaskins and Horne were dispatched to the scene of a domestic argument between Ellen and Kenny Ice, Jr. The Ballock's minor daughter was living with her mother at the time, so the Plaintiff sought to obtain the police report of the incident. When the Plaintiff spoke with Sgt. Kief, he was told the Criminal Investigative Log showed no report was done. Sgt. Kief dep. at pgs. 69-70.

Ellen Costlow filed a civil action against Scott Ballock and his father, Thomas Y. Ballock, on April 23, 2013. She sought to force Tom Ballock to stop blogging about her. She also alleged that Scott was involved in the blogging activity. The case was ultimately dropped when a counterclaim was asserted and discovery was requested.

On April 25, 2013, an order was entered by Family Judge Minor granting Ellen Ruth Costlow's motion for a custody evaluation to be done by a forensic psychiatrist Dr. Christi Cooper-Lehki. Dr. Cooper-Lehki is a well-regarded practitioner with a special interest in Battered-Woman Syndrome. Ms. Costlow contended she suffered that condition and apparently hoped Dr. Cooper-Lehki would confirm it; she certainly did not. Dr. Cooper-Lehki's report was submitted *in camera* by Family Court Judge Minor to

8

United States Magistrate Judge Aloi.   The parties have copies subject a protective order. That report details the time spent between April and September of 2013, in some cases over several sessions with the principals at issue as well as several witnesses, including Kenny Ice, Jr.

On May 1, 2013, Ellen Ruth Costlow texted Kenny Ice, Jr., gloating that she was hated for threatening Plaintiff's job and stating she would proceed to file harassment charges against him.[9] On May 3, 2013, Matthew Stout, her attorney at the time, wrote to Plaintiff, stating all communications should come through the lawyers or they would go to Judge Minor about it. This proved to be simply a predicate for seeking charges. Mr. Stout's threat of going to Judge Minor was either an empty one, or his client would not pursue relief with Judge Minor, having elected to seek criminal charges. Judge Minor was not told of the Plaintiff's unwanted emails and texts until after the Plaintiff was arrested in family court at the conclusion of a custody hearing at which Dr. Cooper-Lehki testified, Friday, September 13, 2013.

A few weeks after the texts just cited, an Interim Report and Motion for Temporary Relief, filed by the Guardian ad Litem, Teresa Lyons, was heard on May 23, 2013. Ellen Ruth Costlow, relying on her boyfriend, Kenny Ice, Jr., had introduced her minor daughter to a registered sex offender, Karl Vincent Taylor, and the Guardian ad Litem brought this to Judge Minor. On June 11, 2013,  Judge Minor enjoined any further

---

9       Ellen Ruth Costlow told Kenny Ice she had the "upper hand" in "possibly ruining Scott's career" and she was going to proceed with charges against him. See Exhibit 4, Plaintiff's Motion for Partial Summary Judgement.

such behavior and required therapy for the children. Ex. 4. Dr. Cooper-Lehki conducted her first interview of Ellen Ruth Costlow on June 12, 2013, the day after Judge Minor entered his injunctive order. In all, Dr. Cooper-Lehki spent 11.5 hours in interviews over three sessions and another 1.5 hours on the telephone with her.

After the interview session conducted August 12, 2013, Ellen Costlow went home and attacked her boyfriend, Kenny Ice, Jr. with a knife. County Sheriff's deputies responded to the scene. They later met with APA Cindy Scott on August 20, 2013. According to their report, she told them charges would not be sought as it was not possible to tell who was the aggressor.[10] About four weeks later, the same APA Cindy Scott, according to the deposition of Cpl. Gaskins, perused the Plaintiff's texts and emails, declined to get search warrants for Plaintiff's phone or computer and authorized warrants for his arrest. Cpl. Gaskins dep. at 85-87 and 113-114.

The Plaintiff was understandably distraught with his estranged wife's behavior toward their children.[11] The prior Christmas, she attacked their minor son, who was visiting, and had him committed to Chestnut Ridge Psychiatric Hospital, alleging he was threatening her. Their son was several days in the hospital before the Plaintiff rescued him on Christmas day, despite Ellen Costlow's efforts to keep the Plaintiff in the dark. In

---

[10]   The Monongalia County Sheriff Office's Call Summary Report of the August 12, 2013 incident was Ex. 2 in the deposition of Sgt. Michael Kief. It is attached as Ex. 5.
[11]   Twice, Christmas of 2012 and March 6, 2013, the local police responded to domestic disturbances where Ellen Ruth Costlow was acting out with the children present, yet nothing was done or even reported.

fact, their minor son called police when his mother attacked him, but they took no action. The commitment was an apparent retaliation.[12]

The Plaintiff was concerned that the family court would allow his estranged wife shared or unsupervised custody of their children. He also feared that Dr. Cooper-Lehki, because of her clinical and research focus, might be predisposed against him; it was on his estranged wife's motion that Dr. Cooper-Lehki was appointed. In a desperate effort to protect the children, the Plaintiff texted and emailed his estranged wife, seeking reconciliation, reasoning that if they were together he could try and manage his wife's moods and protect the children.[13]

The testimony of Cpl. Gaskins is telling in this respect. He was the investigating officer and his review of the emails and texts led him to view them as harassing rather than threatening. Cpl. Gaskins dep. at 115-116. To his review, it appeared Scott Ballock was trying to reconcile with his wife. Cpl. Gaskins dep. at 88-89. The communications were deemed harassing in that he was trying to get her to reconcile and she did not want to do that. Cpl. Gaskins dep. at 130. A number of emails concerned the children and those were permitted by the family court. Cpl. Gaskins dep. at 95-96. He found no overt threats in the communications. Cpl. Gaskins dep. at 115-116. Moreover, Cpl. Gaskins did not

---

12      Dr. Cooper-Lehki addressed abusive behaviors toward her children in her report that is in the Court's possession. Records from the involuntary commitment were reviewed with Ellen Costlow in her deposition.
13      Dr. Cooper-Lehki's report reveals that Scott Ballock was suffering features of codependency and obsessive-compulsion at this time, though he did not meet all criteria for either syndrome. The man was under tremendous strain.

recall Ellen Costlow ever sharing any fear of physical harm from Scott Ballock. Cpl. Gaskins dep. at 157-158.

Judge Minor entered an order on August 7, 2013, modifying the scheduling order to address equitable distribution on August 30, 2013 and custody matters on September 13 2013. The next week, on August 12, 2013, after spending three hours with Dr. Cooper-Lehki, Ellen Costlow attacked Kenny Ice, Jr.

It was about a week or so later, about the same time Cindy Scott elected not to charge Ellen Costlow for her knife attack on Kenny Ice, Jr. that Ellen Costlow went to Sgt. Kief and they arranged for the Plaintiff's arrest.

The State Police had a policy of getting approval from headquarters before investigating other law enforcement members or high profile people. Sgt. Kief dep. at 100. Sgt. Kief never had to ask permission to open an investigation before this occasion. Sgt. Kief dep. at 100-101. Yet, Sgt. Kief did not review the texts and emails before he asked Captain Merrill for permission to open an investigation, he instead relied on Ellen Costlow's proffer as to what the emails would show. Sgt. Kief dep. at 102. Captain Merrill wanted to be kept advised because an FBI agent was under investigation. Sgt. Kief dep. at 108. There was no evidence in the investigation file that Captain Merrill was kept advised, so Sgt. Kief said he reported verbally. Sgt. Kief dep. at 110.

When challenged to explain his motivation, Sgt. Kief said he felt obliged to Ellen Costlow because he believed she was a victim. Sgt. Kief dep. at 104-105 Curiously, Sgt. Kief testified that Ellen Costlow may have been the first time he ever interviewed a victim of a crime. Sgt. Kief dep. at 147-148. Surprising as that sounds, it apparently Sgt. Kief's defense for falling in with Ellen Costlow, he was a soft-hearted sergeant who fell for her story.

Apparently unwilling to be complicit, her lawyers prepared a disc of texts and emails for the State Police[14] and withdrew as counsel for Ellen Costlow. The order granting leave to withdraw was entered August 21, 2013.[15] Immediately after the arrest of the Plaintiff in family court, Ellen Costlow's new lawyer, Kevin Tipton wrote Judge Minor and declared he knew nothing of the plan. Ex. 6.

Judge Minor entered an order on September 20, 2013, rendering several findings from the custody hearing held September 13, 2013. They confirmed many of Plaintiff's concerns for his children. Among his findings Judge Minor observed that the arrest was apparently done to influence him. He was right, it was. Ex. 7.

---

[14]     According to Cpl. Gaskins' report reviewed in deposition, the disc of emails and texts was received August 28, 2013. Cpl. Gaskins was the investigator, while Sgt. Kief was his supervisor, so Gaskins kept Kief informed. Cpl. Gaskins dep. at 21. After investigation closed on September 18, 2013, Cpl. Gaskins had no interest in it. Cpl. Gaskins dep. at 57. It was Sgt. Kief who continued corresponding and helping Ellen Costlow brief the FBI. The investigative file revealed activity as late as February of 2018, after this litigation was commenced.

[15]     That same day, August 21, 2013, Matthew Stout appeared before Judge Phillip Gaujot on behalf of Ellen Costlow in the civil action she filed against Scott and Thomas Ballock, Scott's father, regarding the blogging websites he maintained. Mr. Stout announced he was moving to withdraw from that case as well as the divorce action. The civil action was dropped after a counterclaim was asserted.

The criminal case was ultimately dismissed on April 7, 2016. The judgment order was entered April 13, 2016, the same day as the petition for expungement. The order granting the expungement was entered ninety days later on July 13, 2016. Marcia Ashdown signed for the State of West Virginia.[16] The expungement order made no reference to the issue of probable cause for the arrest or any statements on the issue. Since it was directly applicable to the West Virginia State Police their records were redacted of the Plaintiff's name.

## **Causation Argument**

The Trooper Defendants point to the Office of Professional Responsibility (OPR) that disclaimed any reliance on the fact that the Plaintiff was arrested to argue that the Plaintiff cannot possibly prove causation in the loss of his job as an FBI agent. This is flawed on several counts. First, the termination decision is on appeal and the Disciplinary Review Board (DRB) which is not bound by the cited disclaimer. Second, the argument overlooks the Plaintiff's damages other than his job loss. Third, and more important still, it fails to consider the causation pleading in the amended complaint.

On the third and preponderating point, reference is again made to the Report and Recommendation dated December 6, 2017. (Doc 48) In rejecting the Trooper Defendants' Rumery proffer that the charges at issue were not coercive because they were only misdemeanors, United States Magistrate Judge Aloi correctly pointed out:

---

[16]    The expungement order was submitted as an exhibit to the Plaintiff's Motion for Partial Summary Judgment. (Doc 122)

> Here, the undersigned is unable to so conclude because Plaintiff alleges that the mere fact of the *investigation and arrest* caused him to suffer in his employment and fear the loss of his job - as a career FBI agent for the federal government. In Plaintiff's specific case, there was thus significant impact from even mere pending misdemeanor charges, far beyond the coercive effect misdemeanors may have on an average defendant. (Ultimately, Plaintiff lost his job *despite* the charges being dismissed, which is a testament to the significant detrimental effect of the investigation and arrest alone despite being only misdemeanors.)

(Doc 48 at 24) Yes, the investigation and arrest in front of the family court judge and an FBI agent arranged by Sgt. Kief out of "professional courtesy"[17] set in motion an investigative process that should never have started. This entire matter should never have been taken out of the purview of the Family Court of Monongalia County and Sgt. Kief knew it.

The appeal of the Plaintiff's termination from FBI employment is pending before the FBI's DRB. The DRB, not the OPR will decide all aspects related to the OPR's termination decision. Indeed, the DRB will not be bound by the OPR's disclaimer regarding the investigation and arrest. The DRB decision is anticipated before the Pretrial Conference/Final Settlement Conference scheduled in this civil action for December 16, 2019. (Doc 88) Procedurally, it is simply premature to seek this Court's declaration on the causal element of this part of the Plaintiff's claims until the DRB rules.

---

[17]    See Sgt. Kief dep. at p. 107.

15

The OPR's disclaimer is not worthy of credit anyway. In the appeal before the DRB, the OPR has tried to distance itself from both Ellen Costlow and the Trooper Defendants. However, the OPR cannot fairly or accurately deny that its decision to terminate Scott Ballock was not based on information provided by Ellen and the WVSP troopers. The OPR attorney's review appears to have been based entirely on information provided by the Trooper Defendants and Ellen Costlow. For instance: "In addition to apprising FBI investigators of this information during this inquiry, your Ex-Wife recounted many of these accusations to the WVSP during its criminal investigation of you, and they are set forth in the WVSP report discussed below."[18]

Sgt. Kief admitted that he and the other WVSP troopers failed to follow basic established and published WVSP criminal practices and procedures in its investigation into Scott Ballock's communications with his then-estranged wife.[19] He agreed that procedure 3.02(c) required that Scott Ballock be interviewed. Sgt. Kief dep. at 138-139. He was obliged to agree that investigative policy 3.02(f) also required that Scott Ballock be interviewed if possible. Sgt. Kief dep. at 140. Sgt. Kief also agreed that if Scott Ballock was offering to sit for an interview by the police and/or the prosecutor and he was turned down, then that would violate WVSP procedure 3.02(c). Sgt. Kief dep. at 139-140.

---

18  See the OPR decision of March 5, 2019.
19  See Criminal Investigation Policy and Procedures, Troopers 844-868, attached as Ex. 8.

As for investigating the allegation that one of his troopers, Chris Berry, had a sexual affair with Plaintiff's ex-wife, Ellen Costlow, Sgt. Kief explained his investigation consisted of calling Trooper Berry at home to tell him of the allegation. Sgt. Kief dep. at pgs. 52-53. Kief told Berry that he wanted to look at his cell phone the next morning regarding an allegation that Berry was sleeping with Ellen Costlow. The next morning, Trooper Berry showed Sgt. Kief that there were no messages between him and Ellen on his cell phone. Sgt. Kief dep. at p. 55. Later that evening, Sgt. Kief met with Ellen Costlow but, he testified, he did not ask Costlow if he could look at her text messages.

Sgt. Kief said he called Ellen Costlow and shared the allegation. She became upset, denied the affair and said she was being harassed. Sgt. Kief at p.61. According to her deposition, Ellen Costlow testified she was never asked about Chris Berry. Costlow dep. at p. 188, lines 9-22. Yet, Sgt. Kief testified Ellen Costlow came to the barracks in response to his inquiry concerning the allegation against Trooper Berry. Sgt. Kief's dep. At pgs. 50-51. Ellen Costlow said she had no idea what it was about until she arrived at the barracks. Costlow dep. at p. 188, lines 9-22.

Sgt. Kief's call to Trooper Berry afforded Berry ample opportunity to delete any incriminating text messages from his phone, and a reasonable person would conclude that Sgt. Kief made the call for that very reason. Ultimately, when Sgt. Kief was directly asked in deposition whether Trooper Berry had a sexual affair with Ellen Costlow, he said he did not know. Sgt. Kief's dep. at p. 43.

Meanwhile, Ellen Costlow's boyfriend, Kenny Ice, Jr., who originally saw the intimate personal text messages exchanged between Ellen Costlow and Trooper Berry, was never interviewed by the Trooper defendants. Yet, the OPR wrote that West Virginia State Police told the FBI the allegation was investigated and deemed to be untrue. The OPR originally admonished Plaintiff for making the allegation against Trooper Berry and used it as aggravation in its decision to terminate him.

The Trooper defendants' reliance on the OPR's statements to obtain summary judgment in their joint motion is misplaced for the reasons outlined. The OPR's wholesale reliance on the Trooper Defendants and Ellen Costlow is being reviewed de novo by the DRB. Until a decision is rendered, little can be said about what evidentiary value there is in those proceedings, but it is clear they would never have commenced but for the arrest of Scott Ballock on Friday, September 13, 2013. That would never have happened without the coordinated efforts of the Trooper Defendants and Eleen Ruth Costlow.

## **Legal Argument**

The Trooper Defendants argue for qualified immunity, suggesting they violated no well established law in arranging the arrest. (Doc 114-1 at footnote 4). To successfully invoke qualified immunity, though, they must show no constitutional violation occurred or that the right violated was not clearly established at the time. Id., citing Hunter v. Town of Mocksville, N.C., 789 F.3d 389. 396 (4th Cir. 2015) and W.Va. Reg'l Jail & Corr. Fac.

Auth. v. A.B., 234 W.Va. 492, 766 S.E.2d 751 (2014). This argument leaves the Trooper Defendants where they started, trying to establish that there was probable cause for the arrest. This may explain why the argument was asserted in the alternative and in a footnote. The record shows probable cause is contested and proper for a jury trial.

The Trooper Defendants argue that there is no improper purpose shown to support the Plaintiff's claim for abuse of process. As stated in the Plaintiff's motion for partial summary judgment, there were three purposes to this investigation and arrest:

> 1. prejudice Family Court Judge Randal Minor against Scott T. Ballock on the custody of the children;
> 2. get Scott T. Ballock fired from his job as an F.B.I. agent if possible; and
> 3. to prosecute Scott T. Ballock in an effort to intimidate his father, Thomas Y. Ballock, who was publishing an Internet blog about Ellen Ruth Costlow, despite Scott's wishes.

(Doc 122 at 4).

The first objective failed. As to the second, the DRB has yet to say whether the Plaintiff will be reinstated; even so, he would have a residual damage claim in this action for having been put through the whole affair. Concerning the third, there came a point when the criminal charges were offered to be withdrawn if Tom Ballock would take down his websites. When Mike Benninger explained that to Tom Ballock, he refused and Mr. Benninger threw him out of his office. The investigation file obtained from the State Police, more than 800 pages, had as much material related to Tom Ballock's websites as

anything else. Sgt. Kief was adding website material to the file as recently as February of 2018.

The tortious interference claim was sustained at the Rule 12 stage, (Doc 48 at 37-39). It has been evidenced in discovery, as this briefing process demonstrates. Repeated argument of evidence is unnecessary to this point. The Trooper Defendants argue they were privileged to communicate to the FBI, resulting in the Plaintiff's termination. They argue the weight of the evidence to suggest everything they said was true and that it was ultimately unrelated to the outcome. Again, the discovery record has been sufficiently argued to demonstrate the issues are genuinely contested.

The Trooper Defendants must also answer to their assistance given to Ellen Costlow in her flagrant violations of orders to refrain from communications with the FBI about the Plaintiff. These orders were entered after JUdge Minor heard all the evidence the Trooper Defendants and Ms. Costlow gave to the FBI. They conspired in this and while the petition for expungement was pending they again met with the FBI to provide information, apparently not caring that the same information did not persuade Judge Minor to award custody of the children to Ellen Costlow. This was heedless of the truth and reckless at best.

Causation has already been addressed.

As to Cpl. Gaskins and defamation, the record is conflicting. Sgt. Kief does not recall if he directed contact be made with the FBI. Sgt. Kief's dep. at p.107. He said

Cpl. Gaskins had authority to contact the FBI prior to arresting Scott Ballock. Sgt. Kief's dep. at p.107. Cpl. Gaskins testified he was not involved in contacting the FBI and Sgt. Kief said he did.  Cpl. Gaskins dep. at 22. The evidence is genuinely conflicted.

As far as the stigma plus test is concerned, <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 309 n.16 (4th Cir. 2006), this record is more than adequately argued. The Plaintiff should never have had to defend himself against allegations hat belonged in the family court and hard their day in that forum. The Trooper Defendants were on notice of the import of what they were doing by virtue of their department's policy requiring approval from headquarters before even starting the "investigation." They plunged ahead and cost the Plaintiff dearly, perhaps his career and reputation with it.

As for any privilege that otherwise attaches to communications made within the confines of the investigation, that obviously does not apply in this case. There was no need or good purpose to what was done. (Doc 114-1 at 22-23).

The outrage claim was sustained against the motion to dismiss (Doc 48 at 29) and the record has been adequately presented to survive the current motion. The Court need only recall Sgt. Kief's delighted email to Ellen Costlow upon hearing that Scott Ballock was denied the chance to use the forensic psychiatry report in his defense. <u>See</u> Ex. 6 Plaintiff's Motion for Partial Summary Judgment. (Doc 122)

As to civil conspiracy, the record includes an investigation file of more than 800 pages, many are emails between Sgt. Kief, Cpl. Gaskins and Ellen Costlow, coordinating

the arrest and all that came after. The communications between Sgt. kief and Ellen Costlow are especially damning, when they collaborate on what to tell the FBI in knowing violation of court orders. Likewise, the FBI was briefed while a petition to expunge was pending, a petition that directly impacted the State Police.

### Conclusion

The Trooper Defendants did not follow through on the arguments they attempted in the motion to dismiss, for good reason. Those arguments obliged them to develop a damning record. By abandoning their Rumery burden, the Trooper defendants are foreclosed of using the statement coerced from the Plaintiff on the issue of probable cause.

Instead of arguing affirmatively, the Trooper Defendants have dug in and tried to snipe away at the Plaintiff's causes of action. The briefing demonstrates that their arguments on the weight of the evidence, as they always should, fail to justify summary judgment. Indeed, it is the Plaintiff who is entitled to summary relief, at least partially.

There are ample genuine issues of material fact precluding summary judgment as sought in the current joint motion. It must be denied in all respects and the action brought on for trial as scheduled.

This opposition brief is respectfully submitted this 29th day of July, 2019.

/S/ Charles J. Crooks, Esq.
Charles J. Crooks, Esq.
WVSB # 4633
Crooks Law Firm PLLC
244 Pleasant Street

Morgantown, WV 26505
charles@crookslawfirm.org
(304) 282-1039
**Counsel for Plaintiff,**
**Scott T. Ballock**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**                                    Case No.:      1:17-CV-52

      Plaintiff,

v.                                                                  JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,**
and
**STATE TROOPER CHRIS BERRY,**

      Defendants.

### <u>CERTIFICATE OF SERVICE</u>

I, Charles J. Crooks, Esq., local counsel for the Plaintiff, Scott T. Ballock, hereby certify

that on the 29th day of July, 2019, I filed the foregoing "**PLAINTIFF'S OPPOSITION TO**

**TROOPER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**" with the Clerk of

the Court using the CM/ECF system, which will send notification of the filing to the following:

P. Todd Phillips, Esq.
P. Todd Phillips & Associates
235 High Street
Suite 322
Morgantown, WV 26505
ToddPhillips.Law@gmail.com
**Counsel for Defendant,**
**Ellen Ruth Costlow**

And

Mark G. Jeffries (WV Bar No. 11618)
Steptoe & Johnson PLLC
400 White Oaks Blvd.
Bridgeport, WV 26330-4500
Mark.jeffries@steptoe-johnson.com

24

Monté L. Williams (WV Bar No. 9526)
Steptoe & Johnson PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
Monte.williams@steptoe-johnson.com
**Co-counsel for Defendants State Trooper**
**Michael Kief, State Trooper Ronnie M.**
**Gaskins and State Trooper Chris Berry**


*/S/ Charles J. Crooks, Esq.*