# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**　　　　　　　　　　Case No.:　　1:17-CV-52

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,**
and
**STATE TROOPER CHRIS BERRY,**

　　　　Defendants.

### PLAINTIFF'S OPPOSITION TO TROOPER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Judge Minor's order entered on September 20, 2013, cited at page 13.

Exhibit No. 7

IN THE FAMILY COURT OF Monongalia COUNTY, WEST VIRGINIA

IN RE THE MARRIAGE/CHILDREN OF:

| PETITIONER: | and | RESPONDENT: |
|---|---|---|
| Ellen Ballock | | Scott Ballock |

CIVIL ACTION NUMBER: 12-D-529 (Minor)

## TEMPORARY MODIFICATION ORDER

This matter came on for hearing on September 13, 2013 pursuant to the Father's Emergency Motion to Modify Order Pendente Lite. Petitioner Ellen Ballock and Respondent Scott Ballock appeared for the hearing. Petitioner's counsel, Kevin T. Tipton, and Respondent's counsel, Delby Pool, also appeared for the hearing.

WHEREUPON, based upon the Findings of Fact and Conclusions of Law indicated below and/or stated upon the record, this Court ADJUDGES and ORDERS as follows:

1. **JURISDICTION AND VENUE**

    a. This Court has subject matter jurisdiction, personal jurisdiction over the parties, and venue.

2. **MINOR CHILDREN**

    a. The parties are the parents of the following minor children:

        i. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

        ii. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. **CUSTODIAL RESPONSIBILITY & DECISION-MAKING**

    a. Custodial responsibility and decision-making for the parties' children has been governed by the Court's previous orders entered January 11, 2013, April 25, 2013 and June 11, 2013.

    b. Under the current order and parenting plan, the Father is designated as the parent with primary custodial responsibility of ▮▮▮▮ while the Mother is designated as the parent with primary custodial responsibility of ▮▮▮▮.

    c. Per the original temporary order, the parties were to alternate custodial responsibility on weekends with the children to be together with the Father one weekend and the Mother the next weekend. However, the Mother has had only very limited contact with ▮▮▮▮ since January 2013. In late December 2012 there was an incident that resulted in the Mother placing ▮▮▮▮ in Chestnut Ridge Hospital for evaluation. Since then, ▮▮▮▮ has been resistant to spending much if any time with the Mother.

d. Both children have been in counseling with Diane Halbritter since early in these proceedings. It was Ms. Halbritter's recommendation ▇▇▇ not be forced to spend time with the Mother, and an order to that effect was entered by the Court on April 25, 2013.

e. In his Motion the Father seeks to be designated the primary custodial parent for both children.

f. After considerable thought and consideration of the evidence presented at the September 13, 2013 hearing, the Court has entered a modified temporary parenting plan dated September 20, 2013 that will govern the parties till further Order of the Court.

g. In entering the modified temporary parenting plan the Court considered the entire record herein, including the following:

   i. The Court has given significant weight to the recommendations of the Guardian Ad Litem (GAL) and the custody evaluator. It is apparent to the Court both have spent many hours in carrying out their duties in this matter, that their investigations have been comprehensive, and that their findings and conclusions are entitled to great deference. Both appeared to feel quite strongly the Father should be designated as the children's primary custodian pending a final decision in this case.

   ii. Though she did not testify at the hearing on September 13, it is the Court's impression based upon the testimony of the custody evaluator and GAL that Diane Halbritter also has reservations about the appropriateness of the Mother having primary custody of either child at this time.

   iii. Despite the apparent advice of her attorney, the Mother has insisted on maintaining an on again/off again relationship with Kenneth Ice that has been volatile and which may very well have interfered with her caretaking of ▇▇▇ At the very least, that relationship appears to have resulted in ▇▇▇ being exposed to arguments between the Mother and Mr. Ice, as well as to a registered sex offender, Karl Taylor, who apparently is an acquaintance of Mr. Ice. It also seems more likely than not the Mother's preoccupation with the relationship has caused her to neglect to some extent her responsibilities to the child. The Court questions whether the Mother has any real desire to end the relationship with Mr. Ice or to otherwise avoid exposing ▇▇▇ to the fallout from the relationship.

   iv. The Court is concerned regarding the Mother's emotional state over the past several

months. It appears the Mother has had suicidal thoughts during this period and may have taken an overdose of pills on at least one occasion.

v. The Court is concerned ▓▓▓▓ has missed considerable school while in the Mother's care since September 2012. While in fairness, it appears both children also missed considerable school in the preceding school year while the parties were together, it also appears that getting the children to and from school during that time was the responsibility of the Mother who was a stay-at-home mom.

vi. There were significant concerns raised by the custody evaluator regarding the Mother's sexual behavior both during the marriage and quite likely since the parties' separation. In that regard, it is undisputed the Mother has had multiple partners solicited through Craigslist and perhaps other social media throughout the marriage. It also appears the Mother spends an inordinate amount of time on the internet pursuing her sexual interests.

vii. It appears the Mother's preoccupation with sex and past actions have caused emotional harm to both parties. The custody evaluator believes the Mother's sexual behavior represents an obsession or other personality disorder on the Mother's part which impacts to some extent her caretaking of the children. At the very least, it is undisputed that the Mother's behavior resulted in ▓▓▓▓ exposure to a video of the Mother having sex with a stranger. That incident and other alleged statements by the Mother regarding ▓▓▓▓ future sexual behavior raises some concern on the Court's part whether the Mother has the ability to be an appropriate role model for her children, and particularly a young girl.

viii. In considering the parties' sexual behavior, the Court is not sanguine about the Father's role in that regard. At the very least, the Court finds the Father's apparent acquiescence in the Mother's sexual relations with other men to be a contributing factor. The Mother alleges her behavior was coerced by the Father. The Court questions that. The Court notes many if not most of the Mother's encounters occurred outside the presence of the Father though most admittedly with his knowledge and apparent consent. The Court also notes the Mother took no obvious steps throughout the marriage to end the extramarital encounters or to seek judicial intervention to stop the alleged coercion or other alleged

Page 3 of 7

abuse on the Father's part. Though it is true the Mother eventually made the decision to leave the Father, it appears that primarily stemmed from her relationship with Mr. Ice. If anything, it appears the Father's past acquiescence had more to do with his apparent obsession with the Mother than any real sexual gratification on his part. Ultimately, the Court is inclined to agree with the custody evaluator that the parties' behavior has been driven by the Mother to a significantly greater extent than the Father.

ix. The Court has considered the testimony of the Mother's counselor, Laura Surowick-Snyder; however, her conclusions have been discounted to some extent by the Court since they appear almost exclusively based upon the Mother's reports. In reaching that conclusion, the Court could not help but contrast the limited sources of Ms. Surowick-Snyder's information with the extensive efforts of the custody evaluator to seek corroboration of the parties' allegations from other sources. For example, there was the Mother's allegation regarding an affair by the Father. On closer inspection, as testified to by the custody evaluator, it appears more likely than not the affair never occurred.

h. In considering how the Mother would interact with the children, and particularly ████, over the next few months until the final hearing, the Court has sought to balance the interest of the Mother in having meaningful access against the recommendation of the custody evaluator that such access be limited to a few hours of supervised visitation each week. Ultimately the Court has concluded the Mother should continue to have unsupervised overnight visits with ████. In reaching that conclusion, the Court notes the following:

i. The Mother has been the primary caretaker for both children for most of their lives.

ii. While the custody evaluator and GAL raised significant concerns about the Mother, no one has suggested the Mother poses a risk of physical harm to the child.

iii. The primary concern raised with regard to the recommendation of only supervised visits dealt with the fear the Mother might retaliate by seeking to undermine the child's relationship with the Father and perhaps her therapist. However, it appears to the Court there are less restrictive ways to address that concern. Moreover, there has been little evidence of attempts to alienate the child, and indeed the child appears to have maintained a loving relationship with the Father throughout these proceedings.

    iv. Everyone agrees ▮▮▮▮ wishes to remain in her Mother's care. The Court is concerned it might be traumatic for the child to go from living with her Mother most of the time to having almost no contact or only interacting in a very restricted setting.

i. In considering custodial responsibility, the Court cannot help but be concerned regarding the high level of conflict in this case and the parties' apparent willingness to adopt a "scorched earth" approach to the litigation. The Court was somewhat dismayed at the arrest of the Father on the day of the hearing on September 13, 2013. While the Court in no way condones any potential criminal behavior on anyone's part, the Court has to believe the timing of the arrest represented primarily a strategic decision to gain advantage in this case. In that regard, the Court notes the Father's communications at issue occurred over several months with no apparent effort by the Mother to seek assistance from this Court or any other judicial body until the time of the hearing. This Court almost certainly would have been willing to enjoin such communications by the Father if the Mother had raised the issue at any time.

j. Similarly, the Court takes a jaundiced view of the Father's attempt to have the Mother referred as a sexual predator or other sexual offender based upon actions occurring many years ago. In that regard, the Court notes the Father had knowledge of the incident at the time, he chose to stay with the Mother, he later started a family with the Mother, he allowed her to be the primary caretaker of the parties children, and he apparently never raised the issue in any regard until this litigation.

k. The Court cautions the parties that if they continue in their efforts to ruin the other's lives for purely strategic reasons, the Court will almost certainly hold that against them in making a final decision regarding custodial responsibility and perhaps a claim for spousal support.

4. **CHILD SUPPORT**

    a. Under the Court's current Order, entered January 11, 2013, the Father has a child support obligation to the Mother in the amount of $1200 per month.

    b. Per the modified parenting plan, primary custodial responsibility for ▮▮▮▮ has changed from the Mother to the Father.

    c. Based upon the foregoing finding, the Father's child support obligation will be reduced to $0 per month effective October 1, 2013.

    d. The Mother has no employment income at this time, and the Court does not believe any purpose

would be served by Ordering her to pay child support at this time.

5. **INCOME TAX FILINGS**

   a. Because custodial responsibility for the children has been split between the parties for most of 2013, and in an effort to maximize funds available to the parties and the children, the Court directs the parties to cooperate to file a joint tax return for Tax Year 2013. Any refund obtained may be equally split between the parties if they agree. Otherwise, the refund should be deposited in the Father's attorney's client trust account. The parties are reserved all claims regarding how the Court might account for the refund with respect to the parties' divorce.

6. **EQUITABLE DISTRIBUTION**

   a. It appears more likely than not the former marital home ultimately will be sold. The Wife probably cannot afford to keep the home and buy out the Husband's share in the home. The Husband may very well choose to relocate to another state if he can do so with the children. Given that, the Court is inclined to believe it most fair to the parties to simply sell the home, determine thereby the true value of the home, and then split any proceeds equally between the parties.

   b. Based upon the foregoing, the Court directs the parties to contract with a realtor in the next 30 days to sell the home unless they reach some other agreement within that time.

   c. The parties will cooperate as necessary to facilitate the sale of the home.

   d. Pending the sale of the home, the Wife will remain in possession of the home and the Husband will maintain the mortgage payments, the property taxes, and homeowner's insurance as previously Ordered.

   e. The parties are reserved all claims regarding how the Court might account for the Husband's payments related to the home.

7. **SPOUSAL SUPPORT**

   a. This is a long-term marriage, and there is a significant disparity between the parties' financial circumstances.

   b. It does not appear the Wife has made any effort to seek employment over the past several months. Regardless, it is unlikely the Wife will be able to find employment immediately or to otherwise significantly better her financial circumstances in the next few months.

  c. The Court believes the Husband has the financial ability to pay spousal support to the Wife.

  d. Effective October 1, 2013, the Husband will have a temporary spousal support obligation to the Wife of $900 per month.

8. **PREVIOUS ORDER OR ORDERS**

  a. Except as otherwise provided herein, the Court's previous Order or Orders governing the parties remain in full force and effect.

9. **ATTACHMENTS TO THIS ORDER**

  a. The provisions of this Order are supplemented by the following documents, attached hereto and incorporated herein unless inconsistent with specific provisions contained in this Order:

    I. Parenting Plan dated September 20, 2013.

10. **COPIES TO ALL INTERESTED PARTIES**

  a. Upon the entry of this Order, the Clerk of this Court shall mail a certified copy of the same to:

    i. Petitioner's counsel, Kevin T. Tipton, at 316 Merchant Street, Suite 100, Fairmont, WV 26554.

    ii. Respondent's counsel, Delby Pool, at 230 Court Street, Clarksburg, WV 26301.

    iii. GAL Teresa Lyons, at 141 Walnut Street, Morgantown, WV 26505.

Date: September 20, 2013

_____
Family Judge Randal Minor

## IN THE FAMILY COURT OF Monongalia COUNTY, WEST VIRGINIA

IN RE THE CHILDREN OF:

| Petitioner: | Ellen Ballock | Respondent: | Scott Ballock |
|---|---|---|---|
| Civil Action Number: | 12-D-529 | Date: | September 20, 2013 |

### TEMPORARY MODIFIED PARENTING PLAN

A parenting plan provides a framework for how decisions affecting children will be made, where children will live, and how children will interact with parents and other family members. Once approved and adopted by a family court judge, a parenting plan becomes a binding court order which must be obeyed. While the parties always may agree to deviate from the parenting plan as circumstances may warrant, absent agreement by <u>both parties</u>, the terms of the parenting plan control.

This parenting plan was prepared by the ☐ Father ☐ Mother ☐ Parties Jointly ☒ Court ☐ Other: _____

This parenting plan applies to the following minor children:

| NAME | DATE OF BIRTH | SOCIAL SECURITY NUMBER | PRIMARY RESIDENTIAL CUSTODIAN* |
|---|---|---|---|
| Thomas Scott Ballock | January 22, 2001 | XXX-XX-9456 | Father |
| Summer Scott Ballock | May 1, 2003 | XXX-XX-8253 | Father |

\* The primary residential custodian is defined as the person with whom a child will physically resided for at least 6 months (ie. half or more of the time) out of the calendar year. The child will reside with the primary residential custodian except as otherwise provided by this parenting plan.

### DECISION-MAKING AND ACCESS TO INFORMATION

- Both parties shall have full access to each child's educational, medical and juvenile court records. Both parties shall have the right to be informed of and participate in all educational, medical and juvenile court activities and decisions involving a child.

- The party with whom a child is residing on any given day makes all day-to-day decisions about the care and control of the child.

- Either party may make emergency decisions affecting the health or safety of a child at any time, regardless of the party with whom the child is residing at that time. A party will take all reasonable steps to inform the other party of any emergency as soon as possible.

- With respect to major decisions involving a child, including decisions related to education, medical, dental, eye and other health care, religious matters, child care, the child's employment, motor vehicle use, school and after school activities, and sports (check boxes and complete as applicable):

  ☒ The parties will consult and share in the making of all major decisions involving a child.

  ☐ All major decisions will be made by the ☐ Father ☐ Mother
  ☐ Other: _____

☐ The parties will consult and share in the making of all major decisions involving a child with the exception of the following (check box and indicate who will make the decision):

☐ Education _____
☐ Medical _____
☐ Religious _____
☐ Child Care _____
☐ Employment _____
☐ Vehicle _____
☐ School Activities _____
☐ Sports _____
☐ Other: _____

## RESIDENTIAL SCHEDULES

- This section provides how a child listed above will spend time with each party. The primary custodial parent will have custodial responsibility of the children except as otherwise provided by this parenting plan.

- The parties may always agree to some other schedule than provided herein; however, in case of any conflict between the parties the schedule provided herein will control.

- The Holiday and Other Special Days Schedule will control over the Summer Vacation and Weekly Residential schedules. The Summer Vacation Schedule will control over the Weekly Residential Schedule.

- **Weekly Residential Schedule:** The Weekly Residential Schedule provides the basic day to day schedule where a child will reside, except as otherwise provided by the Summer or Holiday Schedules.

  ☐ The Weekly Residential Schedule will be as indicated on Attachment A: Residential Schedule.

  ☒ None of the schedules provided with Attachment A are appropriate in this case and the following schedule will apply:

  > The Mother will have custodial responsibility of Summer every weekend of the month except the weekend beginning the 3rd Friday of the month from Friday immediately after school or 6:00 PM if there is no school until Sunday at 6:00 PM.
  >
  > The Mother may spend time with Thomas at such times and upon such terms as deemed appropriate by Thomas' counselor, and the Father will cooperate in that regard. At the very least, it is contemplated by the Court the Mother will have at least two hours each week to spend with Thomas to work towards repairing the relationship between the Mother and child. This in no way precludes the time from being expanded should the counselor deem that appropriate.

- **Summer Residential Schedule:** The Summer Residential Schedule provides an opportunity for a party to spend an extended period of time with a child or children during the summer months when children typically are out of school. Parties may use extended periods for vacations or trips with the child. To the extent there are periods of time during the Summer months not covered by the options below or if none of the options provided below are checked, then the Weekly Residential Schedule will continue to apply (check the box and complete as appropriate):

  ☐ The parties will continue the regular weekly residential schedule during the Summer unchanged.

  ☐ During the Summer, _____ will have custodial responsibility the first Friday immediately following the last day of the school year and every other week thereafter from Friday at 6:00 PM until the following Friday at 6:00 PM. This alternating weekly summer schedule will terminate the last Friday before school starts and the parties will revert back to the regular weekly schedule at that time.

  ☐ The parties will continue the regular weekly residential schedule during the Summer, except that the parties will cooperate to arrange time for each party to have an extended period of no more than _____ continuous days of custodial responsibility during the Summer. Unless the parties agree otherwise, the period of extended custodial will commence at the beginning of the requesting party's normal period of weekend custodial responsibility. Each party will notify the other by no later than May 1 of when he or she proposes to exercise his or her extended period custodial responsibility during the Summer. In case of conflict between the parties with respect to when they propose to exercise their right to an extended period of custodial responsibility during the Summer, the Mother's wishes will control in even numbered years, and the Father's wishes will control in odd numbered years.

  ☐ None of the summer residential schedules provided above are appropriate for the children and the following summer schedule will apply

  [ ]

- **Holidays and Other Special Days Schedule:** The Holiday and Other Special Days Schedule provides how a child will spend time with his or her parents on holidays and other special days like the child's or the party's birthday (check the box and complete as appropriate):

  ☒ The Holiday Schedule for Summer will be as indicated on Attachment B: Holiday Schedule. The parties will cooperate to allow the Mother to spend at least some time with Thomas on Holidays subject to the recommendations of his counselor.

  ☐ The parties will spend holidays with the children as described below:

  [ ]

## TRANSPORTATION AND EXCHANGES

- The party having custodial responsibility of a child immediately prior to or immediately after any school day or after school activity of the child will be responsible for arranging transportation for the child between the party's home and the school or activity. Such arrangements will be at the responsible party's discretion, and may include letting the child ride a school bus between the school and the party's home if that is an available option.

- Otherwise, transportation and exchanges of a child will occur as follows (check the box and complete as appropriate):

  ☒ Transportation is a shared responsibility. The party receiving a child at the beginning of a period of custodial responsibility will do so at the other party's residence.

  ☐ Transportation is a shared responsibility. The parties will meet and exchange a child at:

  [ ]

  ☐ The _____ will be solely responsible for providing all transportation for a child to and from the parties' homes.

- A party who expects to be late in picking up or dropping off a child must provide as much advance notice to the other party as reasonably possible. Parties will always extend a 30 minute grace period to a party who is late in picking up or dropping off a child. A party who incurs childcare or other costs as a result of the other

party being late in picking up or dropping a child off will be reimbursed for such costs by the late party.

- A party will return all clothes and other belongings a child had when he or she arrived for a period of custodial responsibility to the other party at the conclusion of the period of custodial responsibility.

## TELEPHONE CONTACT

- The party with whom a child is not residing needs to make special efforts to stay in touch with the child. The party with whom a child is residing needs to encourage the child to stay in touch with the other party.

- A child may call the party with whom the child is not residing at any reasonable time and as often as the child wishes.

- A party with whom a child is not residing may call the child at any reasonable time. If the parties are unable to agree on what would be a reasonable time for the other party to call a child, then no calls are to be made to the child between the hours of 8:00 PM and 8:00 AM. If the parties are unable to agree on what would constitute a reasonable number of successfully completed calls to a child in a 24 hour period, then no more than one (1) call may be made from a party to a child in a 24 hour period.

- A party may call the other party at any reasonable time to discuss a child. If the parties are unable to agree on what would be a reasonable time for one party to call the other party, then no calls are to be made to the other party between the hours of 8:00 PM and 8:00 AM. If the parties are unable to agree on what would constitute a reasonable number of successfully completed calls by one party to the other party in a 24 hour period, then no more than one (1) call may be made from a party to the other party in a 24 hour period.

- Neither party may use phone calls to repeatedly harass, threaten or otherwise abuse the other party, or to unreasonably interfere with the other party's exercise of custodial responsibility.

- No party may knowingly refuse to answer or return, or permit a third party to refuse to answer or return, a phone call from the other party to the child or to the party in reference to a child. A party who is made aware the other party is trying to reach a child by phone, will take all reasonable steps to ensure the child returns the phone call as soon as reasonably possible.

- Long distance calls from the child to a party with whom the child is not residing will be paid for by the party with whom the child is residing at the time of the call.

- Long distance calls from the party with whom a child is not residing to the child will be paid for by the party making the call.

## COMMUNICATION

- Separated parties need to regularly communicate with each other to provide the best possible care for a minor child of the parties and to reduce the stress of the parties' separation on the child.

- A party will never speak poorly or allow anyone else to speak poorly of the other party in the child's presence.

- A party will never discuss litigation between the parties or the parties' financial matters in the child's presence.

## CHILDREN'S ACTIVITIES

- A party will not schedule activities for a child during the other party's scheduled parenting time, unless the party with the parenting time agrees in advance.

- The parties will cooperate to the extent reasonably possible to enable a child to participate in school, sports, and other scheduled activities so long as such activities do not unduly interfere with a party's exercise of custodial responsibility.

- The parties will take all reasonable steps to ensure that both parties have timely advance notice of a child's school, sports, and other scheduled activities.

## CHANGES IN CUSTODIAL ARRANGEMENTS

- If one party requests a non-emergency change in custodial arrangements, the party receiving the request will decide whether to permit the change.

- If a change in custodial arrangements is required because of an emergency, the party with custodial responsibility at the time of the emergency does not require advance agreement of the other party to make the change but must notify the other party of the emergency as soon as possible.

- A party receiving a request for a change will never use a request for a change as a bargaining chip, or as a way to punish the party making the request.

- A party making a request for a non-emergency change will make the request as soon as reasonably possible. A party receiving a request for a change will respond to the request as soon as reasonably possible.

- A party making a change without request and agreement as provided herein will be responsible for any additional child care or other costs caused by the change.

## SETTLING DISAGREEMENTS

- The parties will make all reasonable efforts to resolve disagreements with respect to their child or children informally.

- In the event the parties are unable to resolve a dispute informally, either party may file an appropriate motion with the Court seeking resolution of the dispute.

- In the event the Court finds that either party has acted unreasonably in addressing any dispute between the parties, including the filing of frivolous litigation, the Court may award the other party his or her costs associated with resolving the dispute, including reasonable attorney fees.

## RELOCATION OF EITHER PARTY

- A party who has custodial responsibility under a parenting plan or court order who intends to change his or her residence for more than ninety days must give a minimum of sixty (60) days advance notice, or the most notice practicable under the circumstances, to the other party. Notice shall include the relocation date, the address of the intended new residence, the specific reasons for the proposed relocation, a proposal for how custodial responsibility should be modified in light of the intended move, and information for the other party as to how he or she may respond to the proposed relocation or modification of custodial responsibility.

## DUTY TO INFORM THE OTHER PARTY OF RESIDENCE, MAILING ADDRESS, AND PHONE NUMBERS

- The parties will always let each other know their current residence addresses, mailing addresses, home, work, cell, and emergency telephone numbers, and will notify each other within 24 hours of any changes in these matters. **But this requirement does not apply in cases in which a family court has allowed the withholding of identifying information.**

- This duty to inform shall continue until there is no child of the parties under the age of eighteen (18) years.

- Service of any future filing or notice of hearing in this action shall be considered legally sufficient if timely made to the last address provided by the served party to the serving party.

## ENFORCEMENT OF PARENTING PLANS

- Once the Family Court accepts and adopts a parenting plan proposed by the parties jointly or individually by one party, the plan becomes a court order. While parties may always agree to alternative arrangements, absent such agreement by both parties, the parties must obey all terms and conditions of the parenting plan. A party has no right to violate a parenting plan even if the other party has violated the plan previously.

- If, upon a party's complaint, the Court finds the other party intentionally and without good cause violated a provision of the court-ordered parenting plan, it shall enforce the remedy specified in the plan or, if no remedies are specified or they are clearly inadequate, it shall find the plan has been violated and order an appropriate remedy.

- If a party interferes with the other party's right to exercise custodial responsibility for a child, the Court can order make-up time to compensate for time missed with the child.

- If a party misses planned time with a child or causes the other party to miss time with a child, the Court can award monetary compensation for the missed time, and/or award child care costs and other expenses in connection with the missed time.

- If a party violates the parenting plan, the Court can modify the plan in favor of the party who did not violate the plan. The Court can change custodial responsibility to favor the non-violating party, or the Court can grant exclusive custodial responsibility to the non-violating party.

- The Court can order a party violating the plan to submit to counseling.

- The Court can order a party violating the plan to pay a civil penalty up to $100.00 for a first violation, up to 500.00 for a second violation, or up to $1000.00 for a third or subsequent violation.

- The Court can order a party violating the parenting plan to pay the other party's court costs, attorney's fees, and any other expenses that the party incurred to enforce the parenting plan.

## CONTEMPT

- The failure by one party to perform any obligation imposed herein or by the attached order may give rise to the contempt powers of the Family Court and to such other powers as available to the Court, including the entry of judgment and the imposition of interest at up to the legal rate from the breach of any obligation, and the assessment of reasonable attorney's fees related to the enforcement of such obligation.

## ADDITIONAL TERMS AND CONDITIONS

- The following additional terms and conditions should apply to this parenting plan:

> The parties will cooperate to continue the children's counseling with Diane Halbritter until the counselor deems the same no longer necessary. The parties will adhere to the recommendations of Ms. Halbritter in all regards and neither party will do anything to undermine the children's counseling with Ms. Halbritter.
>
> The parties will cooperate to begin family counseling as soon as possible with Terri Laurita-Sigley or some other appropriate counselor if she is unavailable. It is contemplated this will primarily be designed as joint counseling for the parties, but the children may be involved as deemed appropriate by the counselor in the counselor's sole discretion. The parties will execute any authorizations required to allow the family counselor to collaborate with the parties' and the children's individual counselors. The parties will adhere to all recommendations of the family counselor.
>
> The Mother will not expose the children to Kenny Ice during her periods of custodial responsibility or otherwise.
>
> No one will access the internet in the Mother's home during the Mother's periods of custodial responsibility.
>
> Neither party will do anything to prevent the children from contacting the other party while in his or her custodial care.
>
> Neither party will denigrate the other party in any respect in the presence of the children or permit any third party to do so. The children's counselor will report any such comments or other efforts to undermine the children's relationship with the other party to the GAL and the Court if she has any suspicion that the same has occurred from this point forward.
>
> The paternal grandfather's ability to interact with the children is conditioned upon his removal of any website or related content that references Ellen Ballock by name or this litigation in any fashion whatsoever, including within the website address, within 96 hours of entry of the Court's modified temporary order. Neither party shall take any steps to reference anyone involved in this litigation or the litigation otherwise in a website address or otherwise discuss the other on the web, including on any social media. To the extent possible, the parties will remove any reference to the other party or this litigation from all social media.

_____        _____
Ellen Ballock                Date

_____        _____
Scott Ballock                Date


State of West Virginia

County of _____

This Parenting Plan was affirmed before me by one or both parents as evidenced by the foregoing signature(s) on

_____.

                                                _____
                                                Notary Public

My commission expires _____.

For the Court's Use:

_____ Accepted as Proposed

_____ Accepted as Modified

_____ Not Accepted


DATE:   September 20, 2013

_____
Family Judge Randal Minor

5 of 6

The following provisions will govern how the parties spend time with the children during holidays (check the box and complete as appropriate):

## CHILD'S BIRTHDAY

☒ The parties will cooperate to arrange time for each party to celebrate a CHILD'S BIRTHDAY with the child. If the parties cannot agree otherwise, the party not scheduled to have custodial responsibility on the child's birthday will have custodial responsibility on the child's birthday from 5:00 PM until 8:00 PM.

## PARENT'S BIRTHDAY

☒ The parties will cooperate to arrange time for a parent to celebrate the PARENT'S BIRTHDAY with the children. If the parties cannot agree otherwise, a parent not scheduled to have custodial responsibility on his or her birthday will have custodial responsibility on his or her birthday from 5:00 PM until 8:00 PM.

## MOTHER'S DAY

☒ The Mother will have custodial responsibility on MOTHER'S DAY from 9:00 AM until 6:00 PM.

☐ The Mother will have custodial responsibility the MOTHER'S DAY WEEKEND from Friday at 6:00 PM until Sunday at 6:00 PM.

## FATHER'S DAY

☒ The Father will have custodial responsibility on FATHER'S DAY from 9:00 AM until 6:00 PM.

☐ The Father will have custodial responsibility the FATHER'S DAY WEEKEND from Friday at 6:00 PM until Sunday at 6:00 PM.

## THREE DAY HOLIDAY WEEKENDS

☐ During THREE DAY HOLIDAY WEEKENDS if a party is scheduled to have custodial responsibility on a three day holiday weekend, then that weekend of custodial responsibility will be extended until Monday at 6:00 PM.

## EASTER HOLIDAY

☒ During the EASTER WEEKEND in even numbered years, the Mother will have custodial responsibility from Saturday at 6:00 PM until Sunday at 6:00 PM. In odd numbered years, the Father will have custodial responsibility per that schedule.

☐ During the EASTER WEEKEND in even numbered years, the Mother will have custodial responsibility Easter Weekend from Friday at 6:00 PM until Sunday at 6:00 PM. In odd numbered years, the Father will have custodial responsibility per that schedule.

## SPRING BREAK

☐ If a child receives a School Spring Break, the Mother will have custodial responsibility in even numbered years from the last day of school at 6:00 PM until the last day before school resumes at 6:00 PM. In odd numbered years, the Father will have custodial responsibility per that schedule.

## FOURTH OF JULY HOLIDAY

☒ During the FOURTH OF JULY HOLIDAY in even numbered years, the Father will have custodial responsibility on July 4 from 9:00 AM until 10:00 PM. In odd numbered years, the Mother will have custodial responsibility per that schedule.

## HALLOWEEN

☒ During HALLOWEEN if the parents' respective residential municipalities schedule trick or treating on different days, then each parent will have custodial responsibility from 1 hour before to 1 hour after the time period set aside for trick or treating by the parent's municipality. In the event the parents reside in the same municipality or the parents are otherwise unable to both take the child or children trick or treating on Halloween, the Father will have the opportunity, pursuant to the foregoing schedule, to take the child or children trick or treating in even years and the Mother will have that opportunity in odd years.

## THANKSGIVING HOLIDAY

☐ During the THANKSGIVING HOLIDAY in even numbered years, the Mother will have custodial responsibility from the last day of school at 6:00 PM until the Wednesday before Thanksgiving at 6:00 PM, while the Father will have custodial responsibility from the Wednesday before Thanksgiving at 6:00 PM until the day before school resumes at 6:00 PM. In odd numbered years, that schedule will be reversed between the parties.

☐ During the THANKSGIVING HOLIDAY in even numbered years, the Father will have custodial responsibility from the last day of school at 6:00 PM until the last day before school resumes at 6:00 PM. In odd numbered years, the Mother will have custodial responsibility per that schedule.

☒ During the THANKSGIVING HOLIDAY in even numbered years, the Father will have custodial responsibility from the day before Thanksgiving at 6:00 PM until Thanksgiving day at 4:00 PM; and the Mother will have custodial responsibility from Thanksgiving day at 4:00 PM until the next day at 6:00 PM. In odd numbered years, that schedule will be reversed between the parties.

## CHRISTMAS HOLIDAY

☐ During the CHRISTMAS HOLIDAY in even numbered years, the Mother will have custodial responsibility from the last day of school at 6:00 PM until Christmas Day at 2:00 PM, while the Father will have custodial responsibility from Christmas Day at 2:00 PM until the last day before school resumes at 6:00 PM. In odd numbered years, that schedule will be reversed between the parties.

☐ During the CHRISTMAS HOLIDAY in even numbered years, the Mother will have custodial responsibility from the last day of school at 6:00 PM until the last day before school resumes at 6:00 PM. In odd numbered years, the Father will have custodial responsibility per that schedule.

☒ During the CHRISTMAS HOLIDAY in even numbered years, the Mother will have custodial responsibility from the day before Christmas at 6:00 PM until Christmas day at 2:00 PM; and the Father will have custodial responsibility from Christmas day at 2:00 PM until the next day at 6:00 PM. In odd numbered years, that schedule will be reversed between the parties.

## NONSPECIFIC SHARED HOLIDAYS/BIRTHDAYS

☐ The parties will cooperate to allow the children to spend roughly equal time with each party on holidays and birthdays.

6 of 6