## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**                                 Case No.:      1:17-CV-52

      Plaintiff,

v.                                                                       JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,**
and
**STATE TROOPER CHRIS BERRY,**

      Defendants.

### PLAINTIFF'S OPPOSITION TO TROOPER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Criminal Investigation Policy and Procedures, Troopers 844-868, cited at page 16, footnote 19.

Exhibit No. 8

Issued 8/1/86

# CRIMINAL INVESTIGATION

## INDEX OF POLICIES AND PROCEDURES

| SUBJECT MATTER | SECTION |
|---|---|
| REPORT OF ACTUAL OR ALLEGED CRIMINAL VIOLATION | 1.00 |
| DETERMINATION OF ACTION TO BE TAKEN | 2.00 |
| CRIMINAL INVESTIGATION | 3.00 |
| SUBMISSION OF CRIMINAL INVESTIGATION REPORT | 4.00 |
| RELEASE OF INVESTIGATIVE DATA | 5.00 |

27-1



EXHIBIT

_1_

Kief

**Troopers 00844**

## WEST VIRGINIA STATE POLICE

PAGES __1 of 1__

| DEPARTMENT MEMORANDUM | NUMBER 2002-24 ⒸⓌ | DATE OF ISSUE 08/27/02 | EFFECTIVE DATE 08/27/02 | EXPIRATION DATE — |
|---|---|---|---|---|
| SUBJECT Criminal Investigation of High Visibility Suspects | | All Troop, | DISTRIBUTION District, Detachment & Section Commanders | |
| REFERENCE | | AMENDS | | RESCINDS |

Affected Personnel

☐ All Employees   ☒ Members   ☐ Civilians   ☐ Other

PURPOSE:

The investigation of crimes involving high visibility suspects (politicians, judges, law enforcement officials, etc.) will be conducted in compliance with the following guidelines:

Members of the West Virginia State Police will conduct investigations of violations of state or federal criminal statutes, regardless of the visibility of the suspect or his/her political influence. Should a member become involved in an investigation of such a figure, based upon reasonable suspicion of criminal activity, the member shall notify his/her immediate supervisor of the nature of the suspected violation(s) and the identity of the suspect(s). The supervisor shall ensure that the chain of command is notified of the investigation. The Supervisor will provide direction and assistance to the investigator or will assign the investigation to another officer as resources permit. Specialized investigative assistance is available through the Bureau of Criminal Investigations and should be considered.

Investigations resulting from federal grand jury testimony, governed by Rule 6-E (confidentiality requirement); will not be subject to this notification requirement. Members involved in such 6-E investigations will, with the supervising Assistant United States Attorney, discuss the possible notification of the commanding officer of the Bureau of Criminal Investigations and, if permitted, notify the commanding officer upon authorization by the AUSA.

Members of the West Virginia State Police will not investigate non-criminal violations of another agency's internal policy or procedure absent extenuating circumstances and a request for assistance from the prosecuting attorney. Investigations such as these will require approval from the executive office.

Members will place a copy of this memorandum in their Policy and Procedures Manual under Departmental Policy and Procedure 27 *Criminal Investigation Procedures.*

**Troopers 00845**

## WEST VIRGINIA STATE POLICE

PAGES ___ l of 1 _____

| DEPARTMENT MEMORANDUM | NUMBER 2005-07 | DATE OF ISSUE 02/02/05 | EFFECTIVE DATE 02/02/05 | EXPIRATION DATE — |
|---|---|---|---|---|

| SUBJECT | DISTRIBUTION |
|---|---|
| Criminal Investigation Submissions | All Troop, District, Detachment & Section Commanders |

| REFERENCE | AMENDS | RESCINDS |
|---|---|---|
| | Department Memorandum 2002-07 | |

**Affected Personnel**

☐ All Employees    ☒ Members    ☐ Civilians    ☐ Other

**PURPOSE:**

Department Memorandum 2002-07 directed that criminal investigations that require the completion of a Report of Criminal Investigation WVSP Form 17A be submitted within 14 days of the date of complaint. This directive is hereby amended as follows:  **All initial criminal investigation reports (WVSP Form 17A reports) will be submitted to the detachment commander within 60 days of the date of complaint.** The initial report may be initial/pending or initial/ complete.   Supplemental reports may be completed as warranted.

Members shall continue to  submit West Virginia State Police Complaint Reports (WVSP Form 193) at the end of his/her shift, in accordance with the provisions of Department Memorandum 2002-07.

**Troopers 00846**

## WEST VIRGINIA STATE POLICE

PAGES ___1 of 2___

| DEPARTMENT MEMORANDUM | NUMBER *cw* 2002-07 | DATE OF ISSUE 03/25/02 | EFFECTIVE DATE 03/25/02 | EXPIRATION DATE -- |
|---|---|---|---|---|

| SUBJECT Criminal Investigation Submissions | DISTRIBUTION All Troop, District, Detachment & Section Commanders |
|---|---|

| REFERENCE Operational Policy and Procedure #27-4 | AMENDS | RESCINDS |
|---|---|---|

**Affected Personnel**

☐ All Employees ☒ Members ☐ Civilians ☒ Other Detachment Secretaries

PURPOSE:

In an effort to reduce the number of complaints from outside entities seeking copies of criminal investigation reports and to reduce the number of lawsuits brought against the department for non-compliance with FOIA (Freedom of Information Act) requests, the department will immediately adopt the following guidelines concerning the completion and submission of criminal investigation reports:

Members will utilize the West Virginia State Police Complaint Report (WVSP Form 193) to document the complaint when received. At the end of the shift the complaint will be submitted to the member's supervisor who will assign the CI#, review the complaint information, and determine if additional investigation is warranted. If further inquiry is deemed necessary the supervisor will return the original of the Form 193 to the assigned member and forward a copy to the detachment secretary for entry into the CRIS system. If insufficient information is available on the Form 193 for entry into the CRIS system the detachment secretary will place the form into a "Pending" file.

As required by the detachment commander members will prepare a Report of Criminal Investigation utilizing WVSP Form 17A. **ALL INITIAL CRIMINAL INVESTIGATION REPORTS WILL BE SUBMITTED TO THE DETACHMENT COMMANDER WITHIN 14 DAYS OF THE DATE OF COMPLAINT.** The required reports may be initial/pending or initial/complete. The submitted reports should contain a complete list of any property stolen, if applicable.

Detachment commanders should review the Form 193s in the "Pending" file on a regular basis to ensure that the necessary information is provided to the secretaries for entry into the CRIS system. Such data entry should be made within the calendar month the complaint report was taken. CRIS data will continue to be transmitted to department headquarters on a monthly basis.

Detachment secretaries should enter current CRIS data as it is received. Overdue CRIS data entries from a month where the data disk have already been submitted should be entered as soon as possible but should always be entered after ensuring that the current month's data has been posted (don't enter old data unless you have all your current data entered). Enter overdue data as time permits. Don't create more of a backlog. Detachment secretaries are to provide Troop Headquarters with a monthly report of their CRIS backlog. Troop commanders are to review the monthly backlog reports and determine what action(s) will most effectively address the problem(s). Additionally, troop commanders will submit a monthly letter to the Chief of Field Operations delineating the number of CRIS entries backlogged by

**Troopers 00847**

detachment and the suggested corrective action(s).

A copy of all investigative reports, whether initial or supplemental, pending or complete, will be forwarded to department headquarters.  Department headquarters is the repository for all Criminal Investigation Reports completed by members.  When a report is not forwarded and the detachment criminal investigation files are purged (10 years, unless prohibited by legislative auditor as is the current situation) there then exists no record that the complaint was ever investigated.

Detachment commanders will continue to monitor the investigative efforts of assigned personnel.  If additional investigation is warranted it is the detachment commander's responsibility to ensure that the appropriate actions are taken by assigned personnel.

**Troopers 00848**

Issued 11-16-84
Revised 05-01-85

## CRIMINAL INVESTIGATION
## REPORT OF ACTUAL OR ALLEGED CRIMINAL VIOLATION

1.01    As used hereinafter, the phrase "Criminal Violation" is defined as any act on the part of any person which necessitates the initiation of a Criminal Investigation (Section 3.00) and the subsequent preparation of a Criminal Investigation Report (Section 4.00).

1.02    DPS Form 60, Criminal Investigation Log Sheet, (Illustration 1.02) shall be utilized pursuant to documenting any and all reports of actual or alleged criminal violations.

1.03    Any civilian employee who receives a report of an actual or alleged criminal violation shall, as soon as practical, enter applicable information on DPS Form 60, Criminal Investigation Log Sheet. Initial entries may be either hand or type written.

1.04    Any member who receives a report of an actual or alleged criminal violation shall be responsible for

(a)    Obtaining sufficient information pursuant to completing applicable portions of the first page of DPS Form 17-A, Report of Criminal Investigation (Illustration 4.01).

(b)    Completing applicable portions of the first page of DPS Form 17-A, Report of Criminal Investigation.

(c)    As soon as practical, entering applicable information on DPS Form 60, Criminal Investigation Log Sheet. Initial entries may be either hand or type written.

(d)    Submission of a copy of the first page of DPS Form 17-A, Report of Criminal Investigation, to the Detachment Commander. Said copy shall be attached to the receiving member's Daily Activity Sheet (DPS Form 64) at the completion of that tour of duty.

1.05    Any unusual report which might result in favorable or unfavorable publicity being cast upon the department shall be immediately reported through channels to the Superintendent. Responsibility for initiation of such report shall rest with the involved Detachment Commander.

1.06    Detachment Commanders shall be individually responsible for maintaining, or causing to be maintained, a chronological file of all Criminal Investigation Log Sheets (DPS Form 60) generated by their respective commands. Individual Log Sheets contained in such file shall be type written and shall be maintained indefinitely.

**Troopers 00849**

Revised 11-1-87

CRIMINAL INVESTIGATION

DETERMINATION OF ACTION TO BE TAKEN

2.01  Detachment Commanders shall, upon receipt of a report of an actual or alleged criminal violation, determine if the report warrants further investigation or action.

2.02  In the event no further investigation or action is warranted, the first page of DPS Form 17-A, Report of Criminal Investigation, shall be typed or legibly printed in pen/ink, then returned to the Detachment Commander for his approval.  Should a copy of such report be forwarded to CIB or any other identity, said copy forwarded shall be typed.  The Company Commander, at his discretion, may require more detailed information pertinent to the "No Action Warranted" Criminal Investigation Report.  In the absence of any direction, the designated District Sergeant and/or Detachment Commander may require more detailed information pertinent to the "No Action Warranted" Criminal Investigation Report.

2.03  In the event that further investigation or action is warranted, the Detachment Commander shall

   (1)  Determine the extent of such investigation or action;

   (2)  Assign one or more members to initiate such investigation or action;

   (3)  Determine the degree of detail required pursuant to reporting such investigation or action (refer to 4.00).

2.04  In the event that an investigation or other action has already been initiated, the Detachment Commander shall

   (1)  Ascertain the status of such investigation or action;

   (2)  Determine if the nature of the investigation or action warrants the assignment of additional members;

   (3)  Determine the degree of detail required pursuant to reporting such investigation or action (refer to 4.00).

2.05  Nothing contained heretofore or hereinafter shall be construed as prohibiting or limiting the Detachment Commander from assuming on-site command of any investigation or action.

27-3

**Troopers 00850**

## CRIMINAL INVESTIGATION

3.01     A "Criminal Investigation" is defined as a methodical inquiry for the purpose of determining:

(a) **What,** if any, crime was committed;

(b) **When** the crime was committed;

(c) **Where** the crime was committed;

(d) **Why** the crime was committed; and

(e) **Who** committed the crime.

3.02     Proper conduct of a "Criminal Investigation" includes, but is not necessarily limited to:

(a) Close scrutiny of the crime scene;

(b) Preservation of physical evidence found at the crime scene or elsewhere;

(c) Locating and interviewing all persons who have or who are thought to have any information concerning the crime under investigation;

(d) Obtaining a detailed description of property stolen and/or the alleged perpetrator(s) of the crime;

(e) Unless deemed inadvisable, initiate an appropriate radio and/or teletype message pertaining to the particulars of the crime. Such message should include, if available, a detailed description of property stolen and/or the alleged perpetrator(s) of the crime;

(f) Locating and questioning those persons suspected of having committed the crime;

(g) Effecting the lawful arrest of those persons deemed responsible for having committed the crime; and

(h) Properly documenting the conduct of such investigation.

3.03     Duties and responsibilities of the first member(s) arriving at the scene of an actual or alleged criminal violation:

(a) Determine whether or not other assistance is required.

(b) Unless it is necessary to take immediate steps pursuant to apprehending the perpetrator(s), secure the crime scene. All persons present at the scene when the member(s) arrive should be identified and instructed to wait, etc. until such time as they may be interviewed.

All unauthorized persons should be prevented from entering the crime scene.

Care should be taken to ensure that physical evidence is not disturbed or removed from the crime scene improperly.

(c) Locate and preserve physical evidence.

The Forensic Services Division publication **Forensic Laboratory Field Manual** contains detailed information pertaining to the gathering, preservation, and submission of physical evidence.

27-4

**Troopers 00851**

A detailed drawing and photographs of the crime scene, indicating the location of physical evidence in relationship to fixed objects or other points of reference, should be made prior to the removal of the evidence.

(d) Obtain a detailed description of property stolen and/or the alleged perpetrator(s) of the crime.

Property identifiable by serial numbers and/or known perpetrator(s) should be entered into the National Crime Intormation Center (NCIC).

(e) If appropriate, initiate an immediate radio and/or teletype message pertaining to the particulars of the crime. Such message should include, if available, a detailed description of property stolen and/or the alleged perpetrator(s) of the crime. The State Message number and the date and time such message was submitted to the member's dispatcher for transmittal should be recorded in the Criminal Investigation Report.

(f) Interview of Witnesses

All persons in the vicinity of the crime scene who were or who might have been in a position to see, hear, or otherwise sense anything pertinent to the commission of the crime should be interviewed. A written statement should be obtained from each person at the scene and those who can provide pertinent information regarding the commission of the crime. All members should be aware that any witness may also become a suspect at anytime during the interview.

All persons identified with the investigation should be located and interviewed. The questioning should be exhaustive and should deal with trivial as well as important instances. The persons whereabouts and movements at the time of the crime should be ascertained. The person's attitude, manner and appearance and the condition of his wearing apparel should be closely observed. If, during the course of the questioning, the person's participation in the criminal act is indicated or admitted, the person who, by virtue of his indication or admittance, has become the accused should be advised of his constitutional rights, the information reduced to writing, signed by the accused and witnessed by the member. Illustration 3-2 indicates the format to the utilized in regard to advising the accused of his constitutional rights and the waiver of such rights (Consent To Be Questioned).

Should, after having been advised of his rights, the accused knowingly and voluntarily desires to make a statement, the member(s) should have the accused sign a waiver of his rights. (Refer to Illustration 3-2) If the accused expresses any reason for waiving his rights and/or making a statement, this should be noted and preserved. Extreme care should be exercised to avoid any threat or resemblance of a threat or any promise or hint of a promise. The accused may be freely questioned and cross examined but a confession elicited, to be admissable as evidence, must be voluntarily made by someone informed of their rights. The accused may not be told even that it would be better for him to tell the truth; a promise would be implied therefrom. Threats may be implied from acts and gestures as well from predictions of dire consequence. If the accused, in the course of questioning, voluntarily reveals the facts and circumstances of the criminal act and his participation in it, his statement should be reduced to writing and each page or sheet thereof signed by him. It should contain the averment that it was freely and voluntarily made, without threat or promise on the part of any persons. If the accused, in the course of questioning, persists in denying his guilt, but admits a fact or facts from which an inference of it may be deduced, such admission should be carefully noted so that the member may give exact testimony respecting it. The accused should be questioned closely as to his

27-5

**Troopers 00852**

whereabouts and movements before, during and following the time of the crime and encouraged to name persons whom he met, with whom he conversed and who observed him; his answer should be tested for truth as soon as possible thereafter.

The accused should be searched, handcuffed, and transported in accordance with department policy and procedure governing same. In the event that the accused will not consent to a search of his motor vehicle(s) and/or regular abode, the authority of a search warrant should be invoked. All physical evidence obtained as a result of the search of the accused, his motor vehicle(s) and/or regular abode shall be preserved and submitted in accordance with the **Forensic Laboratory Field Manual.** .

27-6

**Troopers 00853**

# CRIMINAL INVESTIGATION

## SUBMISSION OF CRIMINAL INVESTIGATION REPORT

4.01     DPS Form 17-A, Report of Criminal Investigation (Illustration 4.01), shall be utilized pursuant to documenting investigation of a criminal violation. The degree of detail required pursuant to reporting such investigation shall be determined by the investigating member's Detachment Commander.

4.02     Upon completion of the investigation, the assigned member shall submit a Criminal Investigation Report, DPS Form 17-A, to the involved Detachment Commander. The Detachment Commander will indicate his approval of the typed report by inscribing his initials and the date on which he approved the report in the upper right corner of the first page of the report. The original, along with all handwritten notes, will be chronologically filed in the Detachment Criminal Investigation Report file. One copy will be forwarded through channels to the Criminal Identification Bureau and, dependent upon the desires of the Prosecutor, one copy will be forwarded to the Prosecuting Attorney of the county in which the criminal violation occurred unless said Prosecutor has formally indicated otherwise.

4.03     In the event that a criminal violation committed in one detachment's geographical area is cleared by a member of another, the member clearing such violation shall be responsible and accountable for obtaining a copy of the inital Criminal Investigation Report and subsequently preparing and submitting a supplementary Criminal Investigation Report. A copy of such supplementary report shall be forwarded to the Detachment Commander of the detachment initiating the investigation. The member clearing the investigation shall receive credit for the recovery of any stolen property recovered in connection with such investigation.

4.04     In the event that a criminal violation committed in this state is cleared by law enforcement officers in another state, the Detachment Commander of the detachment in whose area the violation was committed shall submit or cause to be submitted an initial Criminal Investigation Report, including any necessary supplementary reports. In the event that the violation is to be prosecuted in such other state, the involved Detachment Commander shall forward a copy of such report or reports through the Criminal Identification Bureau to appropriate officers in such other state.

4.05     In the event that a criminal violation committed in another state is cleared in this state, the Detachment Commander of the detachment responsible for clearing the violation shall prepare or cause to be prepared a proper initial and any necessary supplementary Criminal Investigation Reports. A copy of any and all such reports shall be forwarded through the Criminal Identification Bureau to the appropriate law enforcement agency of the state where the violation was committed.

4.06     In order that the Detachment Commander may remain abreast of the status of each investigation, members shall be individually responsible and accountable for indicating, on the Criminal Investigation Log Sheet, DPS Form 60, the current status of each assigned investigation.

Troopers 00854

CRIMINAL INVESTIGATION

RELEASE OF INVESTIGATIVE DATA

(Superseded by Policy and Procedure 71-1,
Release of Information)

27-8

**Troopers 00855**



Illustration 2.01
(Actual size of form is 8½"x14")

27-9

Troopers 00856

## STATEMENT OF JOHN DOE

Charleston, West Virginia
September 12, 1983
Time _____

(Here incorporate what the accused may say concerning the occurrence under investigation).

"I have made the above statement of my own free will without any promise of reward or leniency and without being threatened or mistreated in any way."

I have read the above statement and certify it to be true and correct to the best of my knowledge _____

The above statement has been read to me and I certify it to be true and correct to the best of my knowledge _____

WITNESS _____

WITNESS _____

## STATEMENT OF JOHN DOE

State of West Virginia, County of _____
To-Wit:

John Doe, Being by me first duly sworn upon his oath says:

(Here incorporate what accused may say concerning the occurrence under investigation).

"I have made the above statement without any promise of reward or leniency and without being threatened or mistreated in any way."

(Signed) _____

Taken, subscribed and sworn to before me this the day of ____ _____,

19 _____

Notary Public _____ County
West Virginia.

My commission expires the _____ day of, _____

19 _____

Illustration 3.01
27-10

**Troopers 00857**

## STATEMENT OF JOHN DOE

Charleston, West Virginia
September 12, 1983
Time _____

(Here incorporate what the accused may say concerning the occurrence under investigation).

"I have made the above statement of my own free will without any promise of reward or leniency and without being threatened or mistreated in any way."

I have read the above statement and certify it to be true and correct to the best of my knowledge _____

The above statement has been read to me and I certify it to be true and correct to the best of my knowledge _____

WITNESS _____

WITNESS _____

## STATEMENT OF JOHN DOE

State of West Virginia, County of _____
To-Wit:

John Doe, Being by me first duly sworn upon his oath says:

(Here incorporate what accused may say concerning the occurrence under investigation).

"I have made the above statement without any promise of reward or leniency and without being threatened or mistreated in any way."

(Signed) _____

Taken, subscribed and sworn to before me this the day of ____. _____ _____,

19 _____

Notary Public _____ County West Virginia.

My commission expires the _____ day of, _____

19 _____

Illustration 3.01

27-10

**Troopers 00858**

D.P.S. Form #79
Revised 8-84

A._____ You are **not** under arrest and are free to leave at any time.

B._____ You are under arrest for the crime of_____ .

## YOUR RIGHTS

Place  _____

Date  _____

Time  _____

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

## WAIVER OF RIGHTS

I have had this statement of my rights read to me and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed:  _____

Witness: _____

Witness: _____

Time: _____

Illustration 3.02

27-11

**Troopers 00859**

State of West Virginia

# Department of Public Safety

### Report of Criminal Investigation

DPS Form 17A
Revised 8/1981
GA 81x

| DET COMM | (INITIALS) |
| DIST SGT | (INITIALS) |
| CO OFFICER | (INITIALS) |

| DATE OF REPORT | COUNTY | NCIC ENTRY DATE |
|---|---|---|
| August 1, 1978 | Kanawha | |

| INITIAL ☒ | SUPPLEMENTAL ☐ | DETACHMENT FILE NUMBER | HEADQUARTERS FILE NUMBER |
|---|---|---|---|
| COMPLETE ☒ | PENDING ☐ | B-0000 DATE RECEIVED C.I.B. | SUPPLEMENTAL FILE NUMBER |

| COMPLAINT RECEIVED BY | SUBJECT OF INVESTIGATION |
|---|---|
| Trooper J. C. Doe | Murder |

| DATE AND TIME RECEIVED | CHAPTER | ARTICLE | SECTION | DATE OF CRIME |
|---|---|---|---|---|
| 7-25-78   0730 | 61 | 2 | 1 | 7-25-78 |

| MEMBER ASSIGNED | REPORT MADE BY | STATION AND COMPANY | UNIT NO. |
|---|---|---|---|
| Trooper J. C. Doe | Trooper J. C. Doe | "B" South Charleston | 000 |

| DATE ASSIGNED | VICTIM | TELEPHONE |
|---|---|---|
| 7-25-78 | John Henry Doe | 344-1111 |

| FOLLOW UP NEEDED   YES ☐   NO ☒ | VICTIM'S ADDRESS |
|---|---|
| | Anywhere |

| WEATHER CONDITIONS AND TEMPERATURE | | |
|---|---|---|
| Clear, Dry - Daytime Temperature 78 | DISCOVERED BY | TELEPHONE |
| | Jane Doe | 344-1111 |
| Ground and Road Conditions Dry | ADDRESS Anywhere | |

| DAY AND TIME OF OFFENSE | DATE AND TIME OF DISCOVERY |
|---|---|
| Tuesday   0700 DST | July 25, 1978   0725   DST |

| VICTIM | D.O.B | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|---|---|
| | 1-10-20 | W | M | 69" | 178 | Brown | Brown | 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 |

SUPPLEMENTAL VICTIM INFORMATION AND/OR LOCATION OF CRIME

| | 1. NAME | D.O.B | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES |
|---|---|---|---|---|---|---|---|---|
| ACCUSED ☒ | Jane Doe | 2-2-22 | W | F | 65" | 130 | Brn. | Brn. |
| SUSPECT ☐ | ADDRESS Anywhere | ALIAS | | | | SOCIAL SECURITY NUMBER 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 | | |
| ACCUSED ☐ | 2. NAME | D.O.B | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES |
| SUSPECT ☐ | ADDRESS | ALIAS | | | | SOCIAL SECURITY NUMBER | | |
| ACCUSED ☐ | 3. NAME | D.O.B | RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES |
| SUSPECT ☐ | ADDRESS | ALIAS | | | | SOCIAL SECURITY NUMBER | | |

| ACCUSED/ SUSPECT DISPOSITION | 1. Bound to Grand Jury.  Committed to Jail in lieu of bond. | ARREST RECORD ATTACHED YES ☒   NO ☐ |
|---|---|---|
| | 2. | ARREST RECORD ATTACHED YES ☐   NO ☐ |
| | 3. | ARREST RECORD ATTACHED YES ☐   NO ☐ |

Illustration 4.01
27-12

Troopers 00860

D P S Form No  17A-1
Page two

## Report Of Criminal Investigation

THIS SEGMENT TO BE COMPLETED AT TIME OF INVESTIGATION

I  PLACE OF CRIME   II  MOTIVE   III. MODE OF OPERATION   IV. PROPERTY STOLEN   V. PROPERTY RECOVERED   VI. LIST OF EXHIBITS
VII. ACTION TAKEN   VIII. WITNESS   IX. CONFESSIONS AND STATEMENTS   X  MILES TRAVELED AND HOURS SPENT

If victim is a place of business such as a partnership, company, or corporation, indicate on Form 17A in space provided for supplemental victim information, and list the principal office holders.

Give weather conditions at the time crime was committed, where the crime was committed. This should include day or nighttime, temperature, raining, or snowing, sun shining, or cloudy and ground conditions. Weather conditions to be given in space provided on Form 17A.

| | |
|---|---|
| **PLACE OF CRIME:** | County, district, area, description of the scene and surroundings where the crime was committed. Indicate the type of business establishment such as bank, hotel, bus depot, apartment house, beer tavern, parking lot, open field, etc. |
| **MOTIVE:** | Reason or influence which prompted the commission of the crime. |
| **MODE OF OPERATION:** | Describe in narrative form the manner in which the crime was committed. |
| **PROPERTY STOLEN:** | Complete description including any motor and serial numbers and value of all articles stolen. State whether the value listed is wholesale, retail or replacement value. |
| **PROPERTY: RECOVERED:** | Complete description including motor and serial numbers, place of recovery (give County and State if recovered in County different from County where stolen), also the value of all articles recovered and indicate any damage to property recovered. |
| **LIST OF EXHIBITS:** | List all objects or articles that will likely be produced in court as evidence when the case is brought to trial. The name and address of the person who has charge or possession of such articles shall also be shown. Neither a statement nor confession is an exhibit. |
| **ACTION TAKEN:** | An outline of the movements and activities in chronological order from start to finish, including dates and time, of the investigating officer or officers in conducting the investigation shall be described in complete detail. Members assisting or participating in the investigation will not be referred to by unit number. |
| **WITNESS:** | Name, address and telephone number of witnesses and a brief statement of what each can testify to . The original of signed or sworn statements will be retained by the investigating officer and filed in the detachment office with the report of investigation. |

27-13

**Troopers 00861**

D.P.S. Form No. 17A-1
Page two

**Report Of Criminal Investigation**

THIS SEGMENT TO BE COMPLETED AT TIME OF INVESTIGATION

I. PLACE OF CRIME   II. MOTIVE   III. MODE OF OPERATION   IV. PROPERTY STOLEN   V. PROPERTY RECOVERED   VI. LIST OF EXHIBITS
VII. ACTION TAKEN   VIII. WITNESS   IX. CONFESSIONS AND STATEMENTS   X. MILES TRAVELED AND HOURS SPENT

**CONFESSION AND STATEMENTS OF ACCUSED:**

Statement as to whether or not the accused has confessed. If a statement has been taken in writing, the original will be held by the investigating officer for use in court and carbon copies will be attached to other copies of report. If the accused has made an oral statement only, the investigating officer will include the detail of such statement under this heading.

**MILES TRAVELED AND MAN HOURS SPENT:**

Number of miles traveled and hours spent by all officers on this investigation.

_____
Trooper, Company "B"

**COPY TO:**   The Superintendent
Prosecuting Attorney
Detachment File

27-14

**Troopers 00862**

**State of West Virginia**
**DEPARTMENT OF PUBLIC SAFETY**

| Detachment File Number | REPORT OF INVESTIGATION | Headquarters File Number |
|---|---|---|
| F-1001 | | (Leave Blank) |
| **DATE OF REPORT** | **STATION** | **COUNTY** |
| September 15, 1978 | Oak Hill | Fayette |
| **INITIAL OR SUPPLEMENTARY** | **REPORT MADE BY** | **STATUS OF INVESTIGATION** |
| Initial | Trooper M. E. Ketchum | Complete |
| **SUBJECT OF INVESTIGATION** | | |
| Show main purpose of investigation, whether Applicant Investigation, Attempt to Locate Wanted Person, Interview Witnesses, Background Investigation, etc. | | |

**SUBJECT OF INQUIRY:** Give name and address of the person under investigation, wanted, or to be interviewed. Enough should be included to file properly.

**INVESTIGATION REQUESTED BY:** Show the name of the company, police organization, commission, or agency requesting the investigation.

**AUTHORITY FOR INVESTIGATION:** Show whether letter or verbal order from the Superintendent, Inspector, Company Officer, or letter or request from other persons, organizations, or departments, giving date of communications.

**ACTION TAKEN:** Show in sufficient and chronological detail what the investigating officer did, who he interviewed, the result, and any other information that might be obtained or appropriate.

**PROPERTY RECOVERED:** Omit unless applicable. If applicable, show description, value, and from whom recovered, or where or how recovered, disposition, or where held, and in whose custody.

**LEADS TO BE INVESTIGATED ELSEWHERE:** If the investigation uncovers leads to be investigated in another county, company, or state, list them here, giving names and addresses or descriptions that will enable other investigating officers to locate the lead easily.

**MILES TRAVELED AND MAN HOURS SPENT:** List here the miles traveled and hours spent by each officer.

TROOPER, COMPANY " "

Illustration 4.01
27-15

**Troopers 00863**

## State of West Virginia
### DEPARTMENT OF PUBLIC SAFETY

| Detachment File Number | REPORT OF INVESTIGATION | Headquarters File Number |
|---|---|---|
| A-5001 | | (Leave Blank) |
| **DATE OF REPORT** | **STATION** | **COUNTY** |
| September 15, 1978 | Beckley | Raleigh |
| **INITIAL OR SUPPLEMENTARY** | **REPORT MADE BY** | **STATUS OF INVESTIGATION** |
| Supplementary | Lieutenant J. B. Jones | Pending |
| | **SUBJECT OF INVESTIGATION** | |
| | STRIKE DUTY | |

**VICTIM:**      Show person, business or company against whom the strike or riot is directed.

**DATE:**      Time covered by the report.

**PLACE OR AREA AFFECTED:**      Location, description of place or area covered by report.

**INSTIGATED BY:**      Show name and type of organization or crowd responsible for the strike, mob, or riot. (This heading may be omitted in the supplementary report.)

**PARTICIPANTS:**      Names, aliases, color, sex, age and residence of all leaders in the mob, strike, or riot. (Show only additional agitators in the supplementary report.)

**MOTIVE:**      Motive or apparent motive for the strike, mob, or riot. (This heading may be ommitted in the supplementary report.)

**PERSONS ARRESTED:**      Name, aliases, color, sex, age and residence of all persons arrested during the period covered by the report.

**NUMBER INVOLVED:**      Number of persons involved in the strike, mob, or riot.

**MEMBERS ASSIGNED:**      Members on duty in the area covered by the report.

**ACTION TAKEN:**      Describe violence to persons or destruction of property, give names or members assigned to investigate, if any. Such investigations will be covered by separate reports as elsewhere required. List under this heading assignments, patrols, movements and activities of members, preventive measures taken against disorder. Action taken will be updated daily and actual times and dates of happenings so recorded under this heading.

**MILES TRAVELED AND MAN-HOURS SPENT:**      Number of miles traveled and hours spent by members assigned to duty at the strike or riot.

COPY TO:     The Superintendent (2)
                 Company Commander
                 Detachment File

| RANK | COMPANY |
|---|---|
| | |

Troopers 00864

**State of West Virginia**
**DEPARTMENT OF PUBLIC SAFETY**

| Detachment File Number | REPORT OF INVESTIGATION | | Headquarters File Number |
|---|---|---|---|
| H-4098 | | | (Leave Blank) |
| **DATE OF REPORT** | **STATION** | | **COUNTY** |
| September 15, 1978 | Harrisville | | Ritchie |
| **INITIAL OR SUPPLEMENTARY** | **REPORT MADE BY** | | **STATUS OF INVESTIGATION** |
| Initial | Sergeant W. H. Kilroy | | Complete |
| | **SUBJECT OF INVESTIGATION** | | |
| | AIRCRAFT CRASH | | |

**VICTIMS:** Names, color, sex, age and residence of victims killed or seriously injured, and name and residence of crew or passengers uninjured.

**TIME:** Date and hour of crash. Indicate Eastern Standard time or Daylight Saving Time.

**LOCATION:** County, district, area and brief identification of scene.

**WEATHER:** Weather conditions in the general area of crash at the time of occurrence.

**TYPE OF AIRCRAFT:** Identification number, make, type, and serial number of plane.

**CAUSE:** Cause, if known. Do not guess or state opinions. If unknown, so state.

**FLIGHT:** Origin and destination of flight, if known.

**ESTIMATED DAMAGE:** Value of property destroyed or damaged.

**MEMBERS ASSIGNED:** Name and rank of members on duty at the scene.

**OTHER ORGANIZATIONS:** Assistance rendered by other organizations. List all organizations participating.

**ACTION TAKEN:** Detailed information of assignments and services performed. Include here details of notification of proper authorities, removal of aircraft or parts or contents thereof in the interest of public safety or to protect from further damage, arrival of proper investigation authorities, including names and addresses of such individuals, name of undertaker and/or medical examiner having custody of bodies, and all other pertinent information.

**WITNESSES:** Statements of witnesses, if taken. Such statements may be furnished to BAS or military investigating authority.

27-17

Troopers 00865

**MILES TRAVELED AND
MAN HOURS SPENT:**          Number of miles traveled and hours spent by
members assigned to duty at the scene.

_____
                           RANK                          COMPANY

COPY TO:        Superintendent (2)
                Company Commander
                Detachment File

27-18

**Troopers 00866**

**POSSIBLE HEADINGS**

**When Procedure Headings Do Not Apply To Various Crimes,
Omit Format That Does Not Apply For Your Purposes.**

**VICTIM:** Show person, business or company officer, address, phone number (home and office). If victim is deceased, give Social Security Number, full description, date of birth, etc. Request deceased criminal record be removed from Criminal Identification Bureau files

**AUTHORITY FOR SEARCH:** Information secured for search warrant and by whom issued. If no warrant was obtained, by what authority was search made.

**DATE OF CRIME:** Date and approximate time the crime was committed, indicating Eastern Standard Time or Daylight Savings Time.

**DATE OF SEARCH:** Hour and date search was made.

**PLACE OR THING SEARCHED:** Describe building and/or premises, vehicle or container searched, including exact location, district, and county. If beer and/or liquor is sold, include license number and name of person and/or club to whom issued.

**PLACE OF CRIME:** County, district, area, description of the scene and surroundings where the crime was committed. Indicate the type of business establishment such as bank, hotel, bus depot, apartment house, beer tavern, parking lot, open field, etc.

**DISCOVERED BY:** Name, address, and telephone number of person or persons who first discovered the crime, including the date and time the crime was discovered, again indicating either Eastern Standard Time or Daylight Savings Time.

**OWNER:** Name and address of owner of building and/or premises, vehicle, conveyance or container searched.

**PROPRIETOR OR OPERATOR:** Name and address of persons who have control of, or are in possession of building and premises, vehicle, conveyance, or container searched. List owner of building and address if applicable.

**ACCUSED:** Name, aliases, nationality, color, age, sex, and residence and whether or not accused is in custody, also previous criminal record, if known.

**SUSPECTS:** Name, aliases, nationality, color, age, sex, and residence.

**WEATHER CONDITIONS:** Describe weather at time of search.

**PROPERTY SEIZED: PROPERTY RECOVERED:** Describe, list, and value of articles seized and disposition of same. If motor vehicle, list make, type, motor, serial and license number. If still, estimated capacity, mash, moonshine liquor, or other articles

27-19

Troopers 00867

seized. If disposition is pending, so state; also where held and in whose custody.

**VALUE OF PROPERTY RECOVERED:**   Itemize and fully describe articles recovered and who has possession of articles. List market value at time of theft if stolen.

**EXHIBITS:**   List all articles that will likely be produced in court as evidence, and names of witnesses who have charge of such exhibits.

**WITNESSES:**   Names and addresses of witnesses, including the names of members participating in the search, and brief statement of what each can testify to.

**CONFESSIONS AND STATEMENTS:**   State whether accused has confessed, and if such has been taken in writing. The original will be held by the Officer in Charge of the search, and carbon copies attached to each copy of report. If accused has made oral statement, the officer in charge will write the details under this heading.

**MILES TRAVELED AND MAN-HOURS SPENT:**   Number of miles traveled and man hours spent by members of the Department on the raid, search, or seizure.

---

RANK                                    COMPANY

COPY TO:   The Superintendent
Prosecuting Attorney
Alcohol Beverage Control Commission, if licensed
Beer Commission, if licensed
File

NOTE: Copies for Alcohol Beverage Control Commission and Beer Commission will be forwarded through Department Headquarters to proper designation.

For Criminal reports and complaints use Forms 17-A, 17-A-1, 17-A-2, DPS.

For Non-Criminal reports use form 17, DPS.

27-20

**Troopers 00868**