```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT
                  OF WEST VIRGINIA
                  * * * * * * * *

SCOTT T. BALLOCK,               *
     Plaintiff                  *   Case No.
     vs.                        *   1:17-CV-52
ELLEN RUTH COSTLOW, STATE       *
TROOPER MICHAEL KIEF,           *
STATE TROOPER RONNIE M.         *
GASKINS and STATE TROOPER       *
CHRIS BERRY,                    *
     Defendants                 *
                  * * * * * * * *
```

VIDEOTAPED DEPOSITION OF

ELLEN RUTH COSTLOW

June 13, 2019

Any reproduction of this transcript is prohibited without authorization by the certifying agency.

Sargent's Court Reporting Service, Inc.
1-800-727-4349

**EXHIBIT 5**

1   A.   Where Scott was told to stop contacting me.
2   Q.   All right.
3        My question to you is ---.
4   A.   No, that doesn't tell them to go do it.
5   Q.   All right.
6        I'm not going to parse the terms with you.
7   A.   Okay.
8   Q.   You wrote to them, you said you need to go get this done, you wanted it done that day. My question is why wasn't anything done that day? If not that day, pretty soon after that email was sent. Why'd it take them until the third week of August, same year before anything got done?
14  A.   I got a call from Marion County Sheriff Department.
16  Q.   Uh-huh (yes).
17  A.   It must have been --- it must have been August of 2013 or late July of 2013 --- it was late summer --- asking me if I knew Thomas Ballock. And they were concerned, telling me we need to let you know that he's been coming in asking lots of questions about you and asking for records under for you. A couple of days later I got a phone call from West Virginia State Police asking me to come in. They had concerns about Tom Ballock in

126

1   --- as it pertains to --- as it pertained to my safety.
2       Q.   Now I took the deposition of Michael Kief in
3   this case.  Are you aware of that?
4       A.   Yes, I'm aware.
5       Q.   That deposition was aided by certain documents
6   from this police investigation file.  And nearest we can
7   figure it that exchange you just characterized happened
8   in August 2013.  Okay?
9       A.   Okay.
10      Q.   I just showed you a May 29 email that you sent
11  your lawyers, saying that you need something done today.
12  And my question was, why didn't anything happen until
13  August.  Did your lawyers ---?
14      A.   Oh, no.
15      Q.   Did your lawyers explore alternate methods to
16  deal with the emails you were receiving?  Did they talk
17  to you perhaps about going to see Judge Minor?
18      A.   We ---.
19              ATTORNEY PHILLIPS:  Objection.
20              ATTORNEY CROOKS:  It's been weighed.  I
21  mean it's been weighed.  She --- this is all a weighed.
22  It opens --- yes, these questions are appropriate.
23              ATTORNEY PHILLIPS:  All right.
24              THE WITNESS:  I don't ---.

187

1   never going to stop.  Lucky for me, no one cares anymore
2   about his lies, public service announcements.
3       A.   Yes.
4       Q.   Are you looking for Sergeant Kief to do
5   something?  What --- what kind of feedback is he giving
6   you here at this point?
7       A.   Just understanding we will don't have laws
8   about that.
9       Q.   Would you say that you're friends with Mike
10  Kief?
11      A.   No.
12      Q.   He's not a friend of yours?
13      A.   No.
14      Q.   I know that Tom Ballock called Sergeant Kief
15  and made a complaint that you had an affair with Chris
16  Berry.  You know that.
17      A.   I just found that out.
18      Q.   You just found that out what from me?
19      A.   Yes.
20      Q.   Didn't Sergeant Kief explain to you why he
21  reached out to you back in August of 2013?
22      A.   No, I explained that earlier.  Concerned about
23  my safety.  When ---.
24      Q.   Concerned about your safety?