UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

    Plaintiff,

v.                                                            CIVIL ACTION NO.:  1:17-CV-52
                                                            Honorable Irene M. Keeley

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

    Defendants.

## DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY'S AMENDED REPLY TO PLAINTIFF'S <u>RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>

In his response in opposition to the Motion for Summary Judgment filed by Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry (collectively, the "State Police Defendants") [ECF No. 120], Plaintiff Scott T. Ballock buries his head in the sand, ignoring the evidence cited in the State Police Defendants' opening brief that he cannot meet head-on, and then argues that there are genuine issues of disputed fact. The only genuine disputes as to material facts, however, arise from Mr. Ballock's misstating the record. At the end of the day, however, Mr. Ballock can point to no genuine issues of material fact that preclude summary judgment on the State Police Defendants' behalf as to all causes of action.

Mr. Ballock argues that there are factual disputes as to two key issues—the existence of probable cause and whether any act of the State Police Defendants was the proximate cause of damages he suffered in employment. Pl.'s Resp. Br. 2 [ECF No. 124]. He also argues that the State

Police Defendants' legal arguments are flawed. *Id.* at 18-22. As shown in the State Police Defendants' opening brief, however, Mr. Ballock is incorrect.

## I.     THERE ARE NO GENUINE DISPUTES AS TO ANY MATERIAL FACTS.

Mr. Ballock claims that there are disputed facts as to probable cause and causation. Once his argument is stripped away of irrelevant and misstated facts, and the facts he chooses to ignore are again brought to light, it is clear that there is no dispute as to any fact material on either issue.

### A.     The Evidence of Record Shows that the State Police Defendants Had Ample Probable Cause to Charge Mr. Ballock.

Mr. Ballock first argues that the facts related to probable cause are in genuine dispute. Pl.'s Resp. Br. 2-7. He advances this claim, however, by countering a "straw man" argument not raised by the State Police Defendants, by ignoring the evidence identified by the State Police Defendants that he cannot meet, and by misstating the evidence of record. In truth, no reasonable jury could find that the State Police Defendants lacked probable cause to charge Mr. Ballock with harassing Ms. Costlow, given the evidence of record.

In his response brief, Mr. Ballock devotes six pages to re-hashing the arguments the parties raised in the State Police Defendants' Motion to Dismiss the First Amended Complaint [ECF No. 15], in particular, whether his admission to the Magistrate Court that there was probable cause for his arrest is subject to judicial estoppel under *Town of Newton v. Rumery*, 480 U.S. 386 (1987). *Id.* at 2-7. As Mr. Ballock acknowledges, however, the State Police Defendants have not argued judicial estoppel at the summary judgment stage. *Id.* at 4. It is a mystery, therefore, why Mr. Ballock devotes six pages of his brief pointing out that Magistrate Judge Aloi largely denied the State Police Defendants' Motion to Dismiss, which was largely based on an argument not made now, and where only the allegations in the complaint and limited materials referred to in the pleading could be considered. He fails to recognize that at the summary judgment stage, the State

Police may introduce, and the Court may consider, the entire evidentiary record, which Magistrate Judge Aloi did not have before him.

Mr. Ballock nevertheless incorrectly argues that the "only" evidence in support of probable cause identified in the State Police Defendants' summary judgment brief were "emails and text messages of an estranged co-dependent and obsessive-compulsive spouse, the single review by an Assistant Prosecuting Attorney and Magistrate Sandy Holepit's signature given without any evidentiary proffer." *Id.* at 3-4. Notably, the importance of the review by the relevant "Assistant Prosecuting Attorney", and its importance to the issues raised in this case, including the existence of probable cause, speaks for itself.  See Declaration of Cindy Scott, attached hereto as Exhibit 1. Likewise, Mr. Ballock downplays his written acknowledgement of probable cause that he submitted to the Monongalia County Magistrate Court in order to get the criminal charges against him dismissed [ECF No. 120-21], which, although not subject to judicial estoppel, is nonetheless a party admission.

Besides downplaying his admission of probable cause, Mr. Ballock misstates the record when he argues that Magistrate Sandy Holepit signed the warrants authorizing Mr. Ballock's arrest "without any evidentiary proffer." *Id.* at 4. When applying for the arrest warrants, Cpl. Gaskins submitted two sworn criminal complaints, setting forth the facts upon which he sought to arrest Mr. Ballock, attached as "Exhibit 2." Cpl. Gaskins's sworn statements to Magistrate Holepit constitute evidence, and they were enough evidence for Magistrate Holepit to find probable cause. The same is true with regard to the findings of P.A. Cindy Scott as set forth in her declaration.

"If there was 'sufficient evidence for an arrest warrant to be issued,' . . . then by definition there was probable cause." *McKinney v. Richland Cty. Sheriff's Dept.*, 431 F.3d 415, 418 n.3 (4th Cir. 2005). *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013) (noting that the general rule

is that "a person arrested pursuant to a facially valid arrest warrant cannot prevail on a section 1983 claim of false arrest.") Thus, in order to overcome the presumption of that the warrants were properly issued on the basis of probable cause, Mr. Ballock must prove that Cpl. Gaskins deliberately or with reckless disregard for the truth made material false statements to the magistrate or omitted material facts from the criminal complaints with the intent to make, or with reckless disregard for making, the complaints misleading. *Miller v. Prince George's Cty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007). Mr. Ballock makes no allegations, much less offers any proof, that Cpl. Gaskins intentionally made materially false statements or omitted material facts from the criminal complaints. To the contrary, as shown by Cpl. Gaskins's investigation report [ECF No. 120-5] and even the small sampling of the communications attached as exhibits to the State Police Defendants' brief [ECF Nos. 120-6 – 120-16], Cpl. Gaskins's evidentiary proffer to Magistrate Holepit accurately summed up the facts upon which the criminal complaints were based.

In addition to downplaying his own admission and the basis of Magistrate Holepit's finding of probable cause, Mr. Ballock ignores the findings of four officials of the nation's premier law enforcement agency of more than probable cause. Each of the FBI officials who recommended or approved of Mr. Ballock's discharge found that, based upon a *preponderance of the evidence*, Mr. Ballock harassed Ms. Costlow [ECF Nos. 120-19, 120-22, 120-24, 120-25].

Finally, Mr. Ballock also ignores his own admission during his deposition to contacting Ms. Costlow by electronic communication device after she asked him to stop. Ballock Dep. 65:8-18, attached as "Exhibit 3." His admitted conduct meets the statutory elements of W. Va. Code § 61-3C-14(a)(2), with which he was charged: "to use a . . . mobile phone . . . to . . . [m]ake contact with a person after being requested by the person to desist from contacting them[.]"

Mr. Ballock goes on to argue that "[d]iscovery has revealed the investigation was motivated by malign intent, it was predisposed and it failed to satisfy the standards established within the West Virginia State Police." Pl.'s Resp. Br. 4. Although the State Police Defendants strongly dispute Mr. Ballock's characterization, even accepting his view of the evidence for purposes of summary judgment, he fails to identify a genuine dispute of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Any "malign intent" does not play into the determination of whether the State Police Defendants had probable cause. "Probable cause to arrest is an absolute defense to any claim against police officers under § 1983 for wrongful arrest, even where the defendant officers allegedly acted upon a malicious motive." *Tebbens v. Mushol*, 692 F.3d 807, 816 (7th Cir. 2012); *see also*, *Smith v. Reddy*, 101 F.3d 351, 357 (4th Cir. 1996) ("Subjective factors involving the officer's motives, intent, or propensities are not relevant" to the qualified immunity analysis.)[1]

Similarly, even if the State Police Defendants' investigation did not meet standards established by the State Police, it does not mean that they lacked probable cause. "[P]olice officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established[.]" *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). Mr. Ballock mainly bases this argument on his interpretation that State Police policies— which provide that a criminal investigation "includes" interviewing the suspect, (Pl.'s Resp. Br. Ex. 8 at § 3.03 [ECF No. 124-8])—*required* that he be interviewed as part of the State Police's investigation. Pl.'s Resp. Br. 16. Although the State Police Defendants disagree with Mr. Ballock's

---

[1] A Section 1983 claim requires that a plaintiff prove that the defendant's actions deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988). And there is no constitutional violation when a plaintiff is arrested based upon a warrant supported by probable cause. *McKinney*, 431 F.3d at 418. Alternatively, however, the existence of probable cause for the arrest entitles the State Police Defendants to qualified immunity. *Id.*

characterization of the policies, even assuming for purposes of this Motion that he is correct, it does not change the probable cause analysis. The Fourth Circuit rejected this very argument—that failure to interview the accused or any other witness other than the criminal complainant negates probable cause. *McKinney*, 431 F.3d at 418-19. Furthermore, there is no Section 1983 violation for alleged violations of internal police policies. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984).

Mr. Ballock also improperly attempts to create a genuine dispute of fact by discussing hearsay within hearsay: That his criminal defense attorney told him that Prosecuting Attorney Marcia Ashdown told *him* that the State Police Defendants appeared to "have misbehaved." Pl.'s Resp. Br. 6. Mr. Ballock did not take Ms. Ashdown's deposition, and the statement he claims she made to his criminal defense attorney, which was then purportedly relayed to Mr. Ballock, cannot be used to defeat summary judgment. *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

In sum, Mr. Ballock attempts to create a factual dispute regarding probable cause by misstating the evidence the State Police submitted on the issue, which he characterizes as (1) Ms. Costlow's credibility, (2) the State Police Defendants' "interpretation" of the e-mails and texts Mr. Ballock sent her, (3) a "cursory review" of those communications by APA Cindy Scott, and (4) Magistrate Holepit's issuance of arrest warrants "without proffer." Pl.'s Resp. Br. 7. The State Police Defendants did not rely upon Ms. Costlow's credibility, nor did they interpret Mr. Ballock's harassing communications. Instead, probable cause was established by the more than 3,000 e-mails and texts themselves, a small sampling of which were attached to the motion for summary judgment. [ECF Nos. ECF Nos. 120-6 – 120-16]. These communications speak for themselves and need no interpretation.

Mr. Ballock buries his head in the sand and ignores the context of his e-mails themselves. He ignores his admission to communicating with Ms. Costlow by electronic device after she asked him to stop, which is a violation of W. Va. Code § 61-3C-14a. He ignores the sworn criminal complaints Cpl. Gaskins submitted to Magistrate Holepit. He ignores the findings of four FBI officials, by a preponderance of the evidence, that he harassed Ms. Costlow. Although the ostrich is a noble animal, its habits do not benefit Mr. Ballock, and they do not create a genuine issue of material fact where there is none. *See Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011).

**B. Mr. Ballock Identifies No Evidence Showing that the State Police Defendants Caused Any Interference with His Employment with the FBI.**

The second purported area of factual dispute Mr. Ballock claims exists is related to whether any act by the State Police Defendants caused him to lose his job with the FBI or otherwise suffer damages. Pl.'s Resp. Br. 14-18. As with his argument on probable cause, he bases this argument on misstatements of the record or factual disputes that are not material to any element of his claims.

Mr. Ballock first argues that the FBI's stated reasons for his discharge, which focus exclusively on his conduct and not communications by any of the Trooper Defendants, are not dispositive as to causation for his loss of employment because the discharge decision is currently being appealed before the FBI's Disciplinary Review Board ("DRB"). *Id.* at 14-15. This point is irrelevant. Regardless of how the DRB rules on Mr. Ballock's appeal, it will not change what the FBI stated was its reasons for his discharge, even if that decision is ultimately reversed. Furthermore, upon information and belief, the DRB has not restored Mr. Ballock's employment, and he remains discharged.

Mr. Ballock offers no authority for his remarkable proposition that, because his discharge is pending before the DRB and he anticipates its decision before the Pretrial Conference in

December 2019, "it is simply premature to seek this Court's declaration on the causal element of this part of the Plaintiff's claims[.]" *Id.* at 15. According to Mr. Ballock, the Court must ignore its own Scheduling Order, under which dispositive motions will be fully briefed and ripe for consideration by August 12, 2019, and instead wait until after the DRB makes its decision because it *might* restore his job. Yet, he offers no authority whatsoever for this argument.

Mr. Ballock goes on to argue that he suffered damages other than the loss of his job. *Id.* at 14-15. He points again to the Report and Recommendation on the earlier Motion to Dismiss, noting that Magistrate Judge Aloi observed that Mr. Ballock lost his job *despite* the dismissal of the criminal charges, which evidences the "significant detrimental effect of the investigation alone[.]" *Id.* at 15 (citing ECF No. 48 at 24). Of course, Magistrate Judge Aloi, relying only on Mr. Ballock's pleadings and documents incorporated therein, did not have before him the FBI's discharge letters, which set forth in detail the agency's reasons for Mr. Ballock's discharge.

Mr. Ballock again distorts the evidentiary record when he claims that Sgt. Kief arrested him in Family Court in front of an FBI agent whose presence was "arranged" by Sgt. Kief. *Id.* at 15. Sgt. Kief addressed this claim in his response to Mr. Ballock's Motion for Partial Summary Judgment, which arguments the State Police incorporate by reference. [ECF No. 123 at 12].

Mr. Ballock also claims that Sgt. Kief "set in motion an investigative process that should have never started." Pl.'s Resp. Br. 15. Sgt. Kief also addressed a similar argument in response to Mr. Ballock's Motion for Partial Summary Judgment, which the State Police Defendants also incorporate by reference. [ECF No. 123 at 7].

To the extent that Mr. Ballock now argues the initial, pre-arrest contact with the FBI, informing the agency that the State Police was investigating one of its agents, "set in motion" the investigation, such information was true. As argued in the State Police Defendants' opening brief,

giving "truthful information is an absolute bar to a claim of tortious interference 'whether or not the information is requested.'" *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 150, 506 S.E.2d 578, 593 (1998) (quoting *Restatement (Second) of Contracts* § 722(a) cmt. b (1981)).

Mr. Ballock continues to try to defeat summary judgment with speculation regarding the lack of evidence of any affair between Trooper Berry and Ms. Costlow. Mr. Ballock argues that, because Sgt. Kief called Trooper Berry to discuss the allegation that Ms. Costlow was having an affair with Trooper Berry a day before Sgt. Kief looked through Trooper Berry's text messages, Trooper Berry may have deleted any incriminating messages. Pl.'s Resp. Br. 17. He speculates that a reasonable jury could conclude that Sgt. Kief may have called Trooper Berry in advance for the very purpose of permitting Trooper Berry to delete any incriminating messages. *Id.*

The *evidence*, however, is far less sinister than Mr. Ballock's speculation. Trooper Berry testified that he was off-duty when Sgt. Kief first called him about Tom Ballock's allegations, and that is why he did not show Sgt. Kief his text messages until later. Berry Dep. 28:12-19, attached as "Exhibit 4." The reasonable inference is that Sgt. Kief did not consider Tom Ballock's unsupported allegations, for which Tom Ballock did not wish to file a formal complaint, to be worth calling Trooper Berry in from a day off. At summary judgment, a court need not draw *all* possible inferences in the non-movant's favor, only *reasonable* ones; and a reasonable inference must be based on more than speculation, conjecture, or fantasy. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002). Mr. Ballock's speculation does not meet this test.

Mr. Ballock also raises a disputed fact that is not material. He points out that in their depositions, Sgt. Kief and Ms. Costlow had different recollections about what Sgt. Kief told Ms. Costlow was his reason for calling her. Pl.'s Resp. Br. 17. Sgt. Kief testified that he told Ms. Costlow that he was calling her because Tom Ballock had made an allegation that she was having

an affair with Trooper Berry. Kief Dep. 59:23-61:8, attached as "Exhibit 5." Ms. Costlow recalled that Sgt. Kief called her because he had concerns about her safety as a result of Tom Ballock. Costlow Dep. 125:14-126:1, 187:20-23, attached as "Exhibit 6."

The reason Sgt. Kief gave Ms. Costlow for his initial call is not relevant to any element of any cause of action Mr. Ballock brings against the State Police Defendants. Regardless of whose recollection is correct as to exactly what Sgt. Kief told Ms. Costlow in a telephone conversation six years ago, it is undisputed that Ms. Costlow did not contact Sgt. Kief in an effort to bring charges against Mr. Ballock; Sgt. Kief reached out to her, and only after Tom Ballock first contacted him. *See* Sgt. Kief's Resp. to Pl.'s Mot. for Part. Summ. J. at 11 [ECF No. 123].

Mr. Ballock identifies no evidence of record that links any act by the State Police Defendants to any harm he suffered in his employment with the FBI. Instead, he continues to ignore the FBI's stated reasons for his discharge that focus on his conduct, which he continues to ignore in favor of attempting to blame others. To the extent Mr. Ballock attempts to identify disputed issues of fact, the issues he identifies are either not material to the causes of action he alleges, or they rest upon misstatements of the evidence or mere speculation.

### C.    Mr. Ballock Otherwise Mischaracterizes the Evidence in an Attempt to Show "Contested Issues of Fact."

Although Mr. Ballock argues there are contested facts related to the issues of probable cause and causation, he devotes over six pages of his response brief identifying other supposedly contested issues of fact. Pl.'s Resp. Br. 8-14. He makes no attempt to tie these purported factual disputes to any element of his causes of action, however. Therefore, these disputes are not material. Furthermore, in many cases, Mr. Ballock casts his allegations as "facts," when he cites to no evidence of record. Finally, as he does throughout his brief, Mr. Ballock mischaracterizes the evidence in an attempt to create factual disputes where there are none.

Mr. Ballock first refers to a domestic argument call at Ms. Costlow's house that Cpl. Gaskins responded to in March 2013, six months before Mr. Ballock's arrest. Pl.'s Resp. Br. 8. It is not clear why Mr. Ballock believes this incident is relevant to any cause of action. He mentions that no Criminal Investigative Log was completed. *Id.* He fails to mention, however, that Cpl. Gaskins explained that no investigation was opened because there were no allegations of criminal activity; the incident was merely a verbal argument between the couple. Gaskins Dep. 185:14-186:14, attached as "Exhibit 7."

Mr. Ballock asserts that his repeated attempts to seek reconciliation with Ms. Costlow were because he feared that Dr. Cooper-Lehki, appointed by the Family Court to conduct a forensic evaluation of both parents, "might be predisposed against him," and his repeated texts and e-mails were "a desperate effort to protect the children." Pl.'s Resp. Br. 11. Again, this assertion is demonstrably untrue. First, Dr. Cooper-Lehki was not appointed until April 25, 2013. *Id.* at 8. Mr. Ballock began seeking reconciliation with Ms. Costlow almost as soon as the couple separated, at least as early as October 11, 2012, a full six months before Dr. Cooper-Lehki's appointment. *See* E-mails between Scott Ballock and Ellen Costlow (Oct. 11, 2012) [ECF 120-12]. Second, Mr. Ballock's communications with Ms. Costlow went far beyond merely seeking reconciliation. They included derogatory references to people "stick[ing] their dick in [her]" and her having "sex with a dirty troll," calling her "pure evil," and threats of criminal and civil legal action against her. *See* ECF Nos. 120-7 – 8, 120-13 – 14. Finally, even to the extent Mr. Ballock's communications involved efforts at reconciliation, he ignores that Ms. Costlow clearly was not interested in reconciliation. He acknowledged as much within weeks of their separation. E-mail from Scott Ballock to Ellen Ballock (Oct. 11, 2012, 8:08 a.m.) [ECF No. 120-12]. Ms. Costlow also made it clear that reconciliation would not happen "for the remainder of [his] life." E-mail from Ellen

Ballock to Scott Ballock (Nov. 15, 2012, 9:35 p.m.) [ECF No. 120-9]. But to Mr. Ballock, Ms. Costlow's feelings and desires mean nothing. Only his desire to "protect the children" is relevant.

Mr. Ballock further misstates the record when he claims that in August 2013, "Ellen Costlow went to Sgt. Kief and they arranged" for his arrest. Pl.'s Resp. Br. 12. Mr. Ballock does not cite to the record for this assertion. As discussed above, the undisputed evidence is that Sgt. Kief contacted Ms. Costlow, not the other way around, and he did so only after Tom Ballock first contacted him. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Mr. Ballock repeats the false claim, first made in his motion for partial summary judgment, that Sgt. Kief maintained correspondence with Ms. Costlow "as late as February of 2018, after this litigation was commenced." Pl.'s Resp. Br. 13 n.14, 20. Sgt. Kief addressed the inaccuracy of this statement in his response to Mr. Ballock's summary judgment motion. [ECF No. 123 at 8-9].

To the extent Mr. Ballock identifies "contested issues of fact" on pages 8-14 of his brief, they are only factual disputes because Mr. Ballock misstates the facts. Moreover, the issues he identifies have no relevance to any of his claims.

## II. MR. BALLOCK IDENTIFIES NO EVIDENCE TO OVERCOME THE STATE POLICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Mr. Ballock spends scant time actually addressing the arguments made in the State Police Defendants' Motion for Summary Judgment. Pl.'s Resp. Br. 18-22. To the extent that he does, however, he fails to cite to evidence in the record that would create a genuine issue of fact that would preclude summary judgment.

Mr. Ballock argues there is evidence of improper purpose to support his abuse of process count. *Id.* at 19. He does not identify any evidence that would create a genuine dispute as to any material fact. The "improper purposes" he identifies—for which he offers no evidentiary support—all involve the initiation and prosecution of the criminal charges against him, which cannot support an abuse of process claim.

Regarding the tortious interference with contract count, Mr. Ballock passes, simply pointing out that the count was sustained at the Rule 12 stage and stating that "[r]epeated argument of evidence is unnecessary at this point." *Id.* at 20. He notes that the State Police Defendants "argue the weight of the evidence to suggest everything they said [to FBI officials] was true and that it was ultimately unrelated to the outcome." *Id.* He then states that issues on this subject are genuinely contested.

The issues may be contested, but only one side has offered evidence in support of their position. The State Police Defendants cited to the FBI's own, detailed explanations of its reasons for discharging Mr. Ballock. Mr. Ballock has produced no evidence to show that the FBI's stated reasons for his discharge are untrue. He notes that the State Police Defendants suggest everything they said to FBI officials was true, but he offers no evidence to the contrary. *Id.* He improperly attempts to put the burden of proof on the State Police Defendants to prove that they did *not* interfere with his employment, when he bears the burden to proof that they did. He fails to meet his burden.

Mr. Ballock claims the record is conflicting regarding the defamation claims against Cpl. Gaskins. Pl.'s Resp. Br. 20. It is not. Mr. Ballock bases these counts solely on the contents of the investigation report Cpl. Gaskins prepared. 3d Am. Compl. ¶¶ 199-216. He admits that everything in the report was true. Ex. 3, Ballock Dep. 136:24-137:9. Now Mr. Ballock attempts to stretch the

claim into Cpl. Gaskins's discussions with FBI officials. Pl.'s Resp. Br. 21. Still, he identifies no false statement Cpl. Gaskins is alleged to have given to FBI officials, nor does he identify any evidence to show that Cpl. Gaskins's communications with FBI officials were not privileged. He attempts to create a factual dispute, although an irrelevant one, by claiming that "Cpl. Gaskins testified that he was not involved in contacting the FBI and Sgt. Kief said he did." *Id.* Although Mr. Ballock cites to Cpl. Gaskins's testimony on the issue, he does not cite to Sgt. Kief's. Contrary to Mr. Ballock's claim, Sgt. Kief did not testify that Cpl. Gaskins was involved in initially contacting the FBI; he testified that he could not remember who first contacted the agency. Ex. 5, Kief Dep. 106:21-107:13.

Mr. Ballock falsely claims that "the FBI was briefed while a petition to expunge was pending[.]" Pl.'s Resp. Br. 20, 22. Once again, Mr. Ballock makes a bald assertion of fact, without any supporting evidence, which is blatantly contradicted by the record. The record shows that the criminal charges against Mr. Ballock were dismissed on April 7, 2016. 3d Am. Compl. ¶ 56. FBI officials interviewed Sgt. Kief on or about April 14, 2016. [ECF 123-7]. Mr. Ballock's criminal charges were expunged by an order entered on July 13, 2016. Agreed Expungement Order, *Ballock v. State*, Pet. No. 16-P-233, in the Circuit Court of Monongalia County, W. Va. (July 13, 2016), attached as "Exhibit 8." Per the expungement order, the petition was filed more than 60 days after the criminal charges were dismissed, as required by W. Va. Code § 61-11-25(b). *Id.* at 3. Thus, the *earliest* the petition for expungement could have been filed was June 6, 2016, nearly two months *after* Sgt. Kief spoke to FBI officials. There was no petition for expungement pending when the FBI interviewed Sgt. Kief. At any rate, it is an expungement *order* that prohibits public officers from referring to the expunged charges, not a mere petition. W. Va. Code § 61-11-25(e).

The only evidence Mr. Ballock identifies to support his outrage count is a single e-mail between Sgt. Kief and Ms. Costlow. *Id.*, citing to Pl.'s Mot. for Part. Summ. J., Ex. 6. This e-mail cannot possibly support the outrage count. It was between Sgt. Kief and Ms. Costlow; Mr. Ballock was not even aware of it until it was produced in discovery in this action. Ex. 3, Ballock Dep. 93:9-94:2. More importantly, the e-mail merely reflects Sgt. Kief's expression of support for Ms. Costlow in the criminal proceedings. It cannot, as a matter of law, meet the high bar for an intentional infliction of emotional distress claim.

In short, Mr. Ballock does not identify a single fact that is in dispute that can support his varied claims against the State Police Defendants.

### III.   CONCLUSION

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In response to the State Police's Motion for Summary Judgment, where they pointed out the absence of evidence to support Mr. Ballock's claims, Mr. Ballock was obligated to point to specific facts showing there is a genuine issue for trial. *Id.* at 324-25. He utterly fails to do so. Instead, he makes bald conclusions, unsupported by any evidence or legal authority; misstates the evidence; and buries his head in the sand as to evidence he cannot meet. Most importantly, he continues to ignore his own conduct, which led to criminal charges being brought against him and eventually, his dismissal from the FBI.

WHEREFORE, for the foregoing reasons, as well as those set forth in their opening brief, Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper

Chris Berry respectfully request that the Court GRANT their Motion and enter summary judgment in their favor and grant them any and all other relief the Court finds appropriate.

Dated this 12th day of August 2019.

Respectfully submitted,

*/s/ Monte' L. Williams*
Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
mark.jeffries@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK,**

    **Plaintiff,**

**v.**                                              **CIVIL ACTION NO.: 1:17-CV-52**
                                                       **Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M.**
**GASKINS, AND STATE TROOPER**
**CHRIS BERRY,**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August 2019, I electronically filed the foregoing "Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry's Amended Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment" with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

                               Charles J. Crooks, Esquire
                               Crooks Law Firm PLLC
                               244 Pleasant Street
                               Morgantown, WV 26505
                               *Counsel for Plaintiff*

                               P. Todd Philips, Esquire
                               Lyons Phillips Legal Group PLLC
                               141 Walnut Street
                               Morgantown, WV 26505
                               *Counsel for Defendant Ellen Ruth Costlow*

8554987

*s/ Monte' L. Williams*
Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
mark.jeffries@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

8548236