UNITED STATES DISTRICT COURT
NOTHERN DISTTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

      **Plaintiff,**

v.
                                **CIVIL ACTION NO..: 1:17-CV-52**
                                **Honorable Irene M. Keeley**

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

      **Defendants.**

## REPLY OF DEFENDANT ELLEN RUTH COSTLOW TO PLAINTIFF'S RESPONSE TO COSTLOW'S MOTION FOR SUMMARY JUSGMENT

Defendant Ellen Ruth Costlow, by counsel, hereby replies to the Plaintiff's Response (Doc. 126) to her Motion for Summary Judgment (Doc.121), filed on July 8, 2019. The Plaintiff's Response identifies no question of fact which would create an issue for trial for any claim he alleges. The evidence in the record clearly shows that no genuine issue of fact exists for any of the Plaintiff's claims and entitles Ms. Costlow to summary judgment as a matter of law, dismissing the Complaint against her.

### I.    INTRODUCTION

The Plaintiff's Response to Ms. Costlow's Motion for Summary Judgment does not cite any document or law opposing the grounds for dismissal cited in her Motion. Instead, the Plaintiff's argument consists largely of irrelevant and unsubstantiated allegations concerning the

relationship between the Plaintiff and Ms. Costlow, mischaracterizations and unfortunate name-calling.[1]

The Plaintiff incorporates by reference his Response to the Motion for Summary Judgment filed by the Trooper Defendants (Doc.124), in his Response to Ms. Costlow's Motion, Plaintiff's Response to Costlow's Motion, pp. 3-4, and most of Ms. Costlow Reply will be in reference to the Plaintiff's Response to the former document. None of the causes of action alleged against Ms. Costlow alone [the Plaintiff's: Eleventh Claim (tortious interference with employment); Twelfth Claim (defamation); and Thirteenth Claim (Breach of Contract], which do not require the Plaintiff proving one of the various conspiracy theories he has alleged,[2] are not mentioned in either Response filed by the Plaintiff. As such, the evidence presented by Ms. Costlow in requesting dismissal of these claims is not challenged and the clear grounds she provides for dismissal as a matter of law should be granted.

## II.    ARGUMENT

### A.  The Plaintiff Does Not Challenge the Evidence of Probable Cause for His Arrest

Among the most conspicuous absences in the Plaintiff's Response to the Troopers' Motion for Summary Judgment are his failure to challenge the evidence supporting probable cause for the criminal charges against him in the Magistrate Court of Monongalia County, consisting of more

---

[1] The Plaintiff appears insistent on relitigating his divorce, by saturating his pleadings and motions with derogatory statements about Ms. Costlow's character and parenting, wholly irrelevant to the claims he alleges. *See, e.g.,* Third Amended Complaint at ¶ 86 (containing 14 subsections attacking Ms. Costlow's parenting and character), ¶ 127 (containing 27 subsections attacking Ms. Costlow's parenting and character). This reaches a low point in the Plaintiff's reference to Ms. Costlow as a "sociopath." Plaintiff's Response to Costlow's Motion, p. 2, Plaintiff's Response to Trooper's Motion at fn. 5. This epithet is obviously the Plaintiff's unqualified diagnosis, is not supported by any medical or behavioral evidence, and is simply another example of the Plaintiff using these proceedings to vent his anger at a woman who did not wish to remain married to the Plaintiff and would not reconcile with him, despite his manipulative efforts at achieving such. *See,* Plaintiff's Response to Trooper's Motion, p. 11 (identifying reconciliation as the objects of his texts and emails). The Plaintiff's inappropriate use of this crude slur highlights the inadequacy of his claims and a purpose his commencing this action.

[2] The Plaintiff introduced a new theory in his motion for partial summary judgment (Doc. 122), alleging that Trooper Kief had the Plaintiff arrested to stop the Plaintiff's father from blogging about the Trooper, which is not contained in any prior pleading or document filed by the Plaintiff. Plaintiff's Motion for Partial Summary Judgment, p. 4.

than 3,000 emails and texts he sent to Ms. Costlow over a ten-month period, <u>Exhibit 1, Report of Trooper Gaskins</u>, and failure to cite the elements of the two criminal charges alleged against him, namely Harassment, W. Va. Code § 61-2-9(b) and Harassment by electronic device, W. Va. Code § 61-3C-14(a)(2). Under W. Va. Code § 61-2-9a(b), "Any person who repeatedly harasses or repeatedly makes credible threats against another is guilty of a misdemeanor," while pursuant to W. Va. Code § 61-3C-14a(a)(2), "It is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to:….(2) Make contact with a person after being requested by the person to desist from contacting them."

Probable cause for the Plaintiff's arrest would, thus, be established by evidence sufficient for a reasonable person to conclude that the Plaintiff emailed or texted Ms. Costlow after she had requested that the Plaintiff desist from such contact. <u>See, Gerstein v. Pugh, 420 U.S. 103, 112 (1975)</u>, <u>citing, Beck v. Ohio, 379 U.S. 89, 91 (1964)</u>("The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'"). As detailed in the Motions for Summary Judgment filed by the Defendants, the volume of texts and emails sent by the Plaintiff to Ms. Costlow, which were reviewed by Trooper Gaskins and provided the grounds for Magistrate Holepit to issue warrants for the Plaintiff's arrest, <u>See, Report by Trooper Gaskins, Ex. 2, Criminal Complaints and Warrants</u>, contains numerous examples of this occurring, including two dozen text messages sent by the Plaintiff to Ms. Costlow on May 17, 2013 after Ms. Costlow pleaded with the Plaintiff to "Stop texting me" and "Please leave me alone." <u>Ex. 3, Texts messages between Plaintiff and Ms. Costlow (May 17, 2013 8:24 a.m.-8:48 p.m.)</u>.[3] Under oath, the Plaintiff

---

[3] The Plaintiff had previously sent Ms. Costlow 38 text message that same day, which elicited her pleas for the plaintiff to desist. <u>Texts messages between Plaintiff and Ms. Costlow (May 17, 2013 8:24 a.m.-8:48 p.m.)</u>.

admitted that his texts and emails to Ms. Costlow were at times "voluminous," Ex. 4, Deposition of Scott Ballock, 327:9-14, and that Ms. Costlow indicated many times that she did not want to receive such communications. *Id.* at 327:15-18. As noted in the Defendants' Motions for Summary Judgment, the same texts and emails reviewed by Trooper Gaskins were reviewed by Assistant Prosecuting Attorney Cindy Scott, who thought such texts and emails established probable cause of the Plaintiff engaging in criminal conduct and suggested the two charges filed against the Plaintiff. Report of Trooper Gaskins. FBI investigators reviewing the same texts and email found grounds to conclude that the Plaintiff had indeed committed at least one of the offenses charged. Exhibit 5, Letter from OPR to Plaintiff, September 21, 2017, p. 13. Furthermore, "[i]f there was 'sufficient evidence for an arrest warrant to be issued,'...then by definition there was probable cause." McKinney v. Richland Cty. Sheriff's Dept., 431 F.3d 415, 418 fn. 3 (4th Cir. 2005). The probable cause supporting the Plaintiff's arrest was apparently strong enough that the Plaintiff is unaware of his criminal attorney challenging his arrest on probable cause grounds by filing a motion to dismiss in Magistrate Court or a Writ of Prohibition in Circuit Court. Deposition of Scott Ballock, 326:24-327:8.

The Plaintiff does not challenge the evidence establishing probable cause of criminal conduct. He does not dispute sending the more than 3,000 texts and emails obtained by the Trooper Defendants, *Id.* at 248:7-12, sending these communications after Ms. Costlow told him multiple times that she did not want to be contacted by the Plaintiff,[4] *Id.* at 247:17-21, which would establish, at the very least, probable cause to believe he had committed the criminal offenses for which he was charged. The intent of the Plaintiff to harass Ms. Costlow with his texts and emails is easily inferred from messages like the 1:38 a.m. "Black boots, Black coat, Black

---

[4] The Plaintiff claims that at times Ms. Costlow indicated that she wanted the Plaintiff to contact her, but he has yet to produce a single document supporting this claim. Deposition of Scott Ballock, 247:21-248:1.

heart, Black soul" email, or the "sex with a dirty troll" message, both attached to Ms. Costlow's

Motion for Summary Judgment. Motion for Summary Judgment Exhibits. 7, 3. In addition, Ms.

Costlow gave the Plaintiff notice on November 7, 2012 that she considered his communications

to be harassing, Emails between Plaintiff and Ms. Costlow, (November 7, 2012 3:31 p.m., 4:01

p.m.) and he continued to bombard her with "voluminous" texts and emails of the same type for

another eight months.    Although the Plaintiff claims that his texts and emails have been

"mischaracterized" by the Defendants in their respective Motions for Summary Judgment,

Plaintiff's Response to Costlow's Motion, pp. 2-3, he fails to cite one of the more than 3,000

communications in support of this claim.

Instead of arguing that the texts and emails the Plaintiff sent to Ms. Costlow did not create

probable cause to believe that he had violated W. Va. Code §§ 61-2-9(b) and 61-3C-14(a)(2), the

Plaintiff devotes his entire section titled "Probable Cause" to a discussion of whether, pursuant to

*Lowery v. Stovall*, 92 F.3d 219 (4th Cir. 1996) and *Town of Newton v. Rumery*, 480 U.S. 386

(1987), judicial estoppel applied to the Plaintiff acknowledging the existence of probable cause

for his arrest on the attachment to a motion to dismiss criminal charges against him. Plaintiff's

Response to Troopers Motion, pp. 2-7. The Plaintiff's argument against summary judgment, thus,

appears to be that probable cause is in dispute so long as the Plaintiff is not precluded from

challenging such. This carefully ignores the evidence produced in discovery following the

Defendants' Motions to Dismiss the Plaintiff's Third Amended Complaint (Docs. 15, 17), at

which time the expunged record of the Plaintiff's criminal case was unavailable. As noted in the

Defendants' Motions to Dismiss, the evidence in the record establishes that the Plaintiff: (1) sent

more than 3,000 texts and emails to Ms. Costlow, Report of Trooper Gaskins, Deposition of Scott

Ballock, 248:7-12; (2) sent these after Ms. Costlow asked the Plaintiff to cease messaging her,

Deposition of Scott Ballock, 327:15-18, 247:17-21; (3) continued to message Ms. Costlow after she told him that she considered his texts and emails to be "harassing," Texts messages between Plaintiff and Ms. Costlow (May 17, 2013 8:24 a.m.-8:48 p.m.); (4) sent messages accusing her of being "pure evil," Motion for Summary Judgment Ex. 5,  having a "Black soul," Motion for Summary Judgment Ex. 7, and threatening criminal charges against her, "Theft of government property is an matter we will be addressing immediately," Motion for Summary Judgment Ex. 6; and (5) indicated that he was not going to cease messaging her, regardless of her wishes. "As long as you have custody of [daughter's name], I will make my requests directly to you. That is my privilege." Motion for Summary Judgment Ex. 11, "I will never stop reminding you of the terrible, life-altering mistake you have made," Motion for Summary Judgment Ex. 13. This evidence, obtained by the Trooper Defendants in their investigation, clearly establishes probable cause to believe that the Plaintiff had violated W. Va. Code §§ 61-2-9(b) and 61-3C-14(a)(2). None of this evidence is challenged by the Plaintiff.

## B.  The Plaintiff Raises No Contested Issue of Fact

The Plaintiff's Response to the Trooper's Motion for Summary Judgment contains a "Contested Issues of Fact" section after the section titled "Probable Cause," which contains allegations, some of which are not "contested," and none of which are relevant to any issue evidenced in the Defendants' Motions for Summary Judgment.[5] A paragraph by paragraph review of the "contested issues of fact" alleged by the Plaintiff is as follows:

---

[5] In his Response to Ms. Costlow's Motion, the Plaintiff indicated that he was responding to "three arguments: 1. that probable cause for the arrest is beyond dispute; 2. There cannot be any conspiracy to harm the Plaintiff owing to the existence of probable cause for the arrest; and 3. The grounds cited by the Office of Professional Responsibility (OPR) is its second try at discharging the Plaintiff are wholly unrelated to the fact that she and the Trooper Defendants brought this family court matter to the FBI in the beginning. Plaintiff's Response to Costlow's Motion, p. 1. The Plaintiff's Response to the Troopers' Motion list numbers 1 and 3 as the responsive issues of that Response. Response to Troopers' Motion, p. 2.

1.  The first contested issue lists the date Ms. Costlow filed a petition for divorce from the Plaintiff, the date a divorce decree was entered and the date an initial scheduling order was entered. Plaintiff's Response to Troopers' Motion, p. 8;

2.  Ronnie Gaskins and another West Virginia State Trooper were dispatched to a report of a dispute between Ms. Costlow and Kenny Ice, Jr. and did not file a report of this call (no arrest was made). *Id.*

3.  Ms. Costlow filed a civil action against the Plaintiff and the Plaintiff's father to stop the Plaintiff's father from generating defamatory blogs about Ms. Costlow. *Id.*

4.  Christi Cooper-Lehki was appointed to perform a custody evaluation by the Family Court of Monongalia County in the divorce between Ms. Costlow and the Plaintiff and generated a report of her findings. *Id.* at 8-9;

5.  Ms. Costlow texted Kenny Ice, Jr., in May 2013 stating, "that she was hated for threatening Plaintiff's job and stating she would proceed to file harassment charges against him," and her attorney sent the Plaintiff a May 3, 2013 letter advising the Plaintiff not to communicate with the Plaintiff. *Id.* at 9;

6.  A motion hearing in the divorce between Ms. Costlow and the Plaintiff was held on May 23, 2013 and Ms. Cooper-Lehki interviewed Ms. Costlow the following month. *Id.* at 9-10.

7.  Charges were not filed against Ms. Costlow or Mr. Ice for an incident occurring on August 12, 2013. An assistant prosecuting attorney authorized warrants for the Plaintiff's arrest. *Id.* at 10.

8. Ms. Costlow "attacked" her son and had him "committed" to Chestnut Ridge Hospital, alleging that her had "threatened" her, in "retaliation" for the child calling the police. *Id.* at 10-11.

9. The Plaintiff was concerned about the disposition of Family Court proceedings, had co-dependent and obsessive-compulsive features and "texted and emailed his estranged wife, seeking reconciliation, reasoning that if they were together he could try and manage his wife's moods and protect the children." *Id.* at 11;

10. Trooper Gaskins reviewed the Plaintiff's communications with Ms. Costlow and found them to be harassing, with many apparently seeking reconciliation after the Plaintiff was told that Ms. Costlow did not want such communications and some referring to Ms. Costlow's children. Trooper Gaskins did not find "overt threats" in the communications and did not recall Ms. Costlow expressing fear of the Plaintiff physically harming her. *Id.* at 11-12;

11. The Family Court entered a scheduling order on August 7, 2013 and Ms. Costlow attacked Kenny Ice, Jr. the following week. *Id.* at 12;

12. Ms. Costlow met with Trooper Kief in August and "they arranged for the Plaintiff's arrest." *Id.*;

13. After interviewing Ms. Costlow, Trooper Kief, following agency policy, asked permission to open an investigation of the Plaintiff and obtained oral approval to do so. *Id.*;

14. Trooper Kief believed that Ms. Costlow was a victim of criminal acts. *Id.* at 13;

15. Ms. Costlow's Family Court attorneys prepared a disc of the Plaintiff's communications with Ms. Costlow for the State Police and withdrew from

8

representing Ms. Costlow. Her new attorney stated he did not have knowledge that the Plaintiff would be arrested. *Id.*;

16. The Family Court entered an order on September 20, 2013, which included an observation by the Family Court Judge that the arrest of the Plaintiff in Family Court appeared to have been done to influence proceedings.[6] *Id.*; and

17. Criminal charges against the Plaintiff were dismissed and expunged.[7] *Id.* at 14.

It is not clear how resolution of any of these "contested issues of fact," most of which are not contested, would aid the Plaintiff in disputing that probable cause for his arrest existed, that the Defendants conspired to injure the Plaintiff in an illegal manner or that the Plaintiff was dismissed from his employment as the result of a tortious act by any Defendant. Ms. Costlow does not have access to all documents to check on the dates provided by the Plaintiff (as noted in footnote 6, Ms. Costlow finds the date the Plaintiff claims to have filed a petition for expungement to be odd) but will not quibble about the dates alleged by the Plaintiff. Many of the "contested issues of fact" cited by the Plaintiff omit significant relevant details and could have been phrased with more propriety but, on the whole, present information which is not generally disputed.

Ms. Costlow does not dispute that: a divorce petition was filed and a scheduling and final order entered (First paragraph); Troopers came on a call to a dispute between her and Mr. Ice and did not find the situation to require any additional action[8] (Second paragraph); She filed a civil

---

[6] The Plaintiff continues to emphasize the circumstances of his arrest as probative of his claims, despite admonishment from the FBI Office of Professional Responsibility for his presentation of the facts surrounding such arrest. As previously noted and discussed, *infra.*, the Plaintiff's arrest in Family Court was coordinated with the FBI, which found a reasonable concern for the safety of officers arresting the Plaintiff, Letter from OPR to Plaintiff, September 21, 2017.

[7] Counsel does not have a copy of the petition for expungement filed by the Plaintiff, but questions how it could have been filed on April 13, 2016, the same day as entry of the judgment order dismissing the charges against him, as alleged in this paragraph. Pursuant to W. Va. Code § 61-11-25(b), petitions for expungement after an acquittal or dismissal "shall be filed not sooner than sixty days following the order of acquittal or dismissal by the court."

[8] Ms. Costlow has no knowledge about whether a report was filed, but is not surprised that one was not, based upon the innocuous nature of the incident.

action in a desperate attempt to stop incessant blogging by the Ballocks[9] (Third paragraph); Ms. Cooper-Lehki was appointed to perform a custody evaluation, which generated a report (Fourth paragraph); A hearing on a temporary custody order was held and Ms. Costlow met with Cooper-Lehki (Sixth paragraph); No charges were filed for an incident investigated by Monongalia County Deputy Sheriffs on August 12, 2013 and Assistant Prosecuting Attorney Cindy Scott authorized warrants for the Plaintiff's arrest after a review of his texts and emails (Seventh paragraph); Trooper Gaskins found the volume of the Plaintiff's texts and emails, especially after Ms. Costlow asked him to stop, to be the most harassing feature of his communications (Tenth paragraph); More scheduling orders were entered[10] (Eleventh paragraph); Although without direct knowledge, it appears from discovery that Trooper Kief obtained oral permission for a high profile investigation after interviewing Ms. Costlow (Thirteenth paragraph); Ms. Costlow believes that Trooper Kief found her to be the victim of the Plaintiff sending her thousands of abusive, harassing texts and emails, after she told him they were harassing and asked him repeatedly not to contact her (Fourteenth paragraph); Ms. Costlow's divorce attorneys compiled the Plaintiff's emails and texts on a disc, which was delivered to the State Police, and withdrew from representation. Ms. Costlow believes that Mr. Tipton had no prior knowledge of the Plaintiff's arrest (Fifteenth paragraph); and that criminal charges against the Plaintiff were dismissed and expunged (Seventeenth paragraph).

One glaring inaccuracy presented by the Plaintiff (contained in his Twelfth paragraph), not relevant to any dispositive issue but subject to contest, seems to be unintended and the result of a lack of clarity in drafting. In that paragraph, the Plaintiff alleges "It was about a week or so

---

[9] FBI OPR cited the Plaintiff's contributions to his father's demeaning websites as a ground for his termination.

[10] Ms. Costlow does dispute the characterization that she "attacked Kenny Ice, Jr.".

later [after August 12, 2013], about the same time Cindy Scott elected not to charge Ellen Costlow for her knife attack on Kenny Ice, Jr. that Ellen Costlow went to Sgt. Kief and they arranged for the Plaintiff's arrest." *Id.* at 12. It is not clear who the Plaintiff is alleging arranged for his arrest and in which month this occurred. If the Plaintiff is alleging that this occurred in August, it would conflict with another timeline provided in his "Contested Issues of Fact" section. In his seventh paragraph, the Plaintiff provides citations establishing that APA Scott authorized warrants for the Plaintiff's arrest "[a]bout four weeks" after August 20, after she had the opportunity to review some of the Plaintiff's communications with Ms. Costlow. *Id.* at 10. The Plaintiff does not cite to anything indicating any arrest was arranged in August 2013.

The Plaintiff's eighth paragraph, while not alleging anything remotely connected to issues of probable cause, conspiracy or the reason the FBI decided to terminate the Plaintiff's employment, repeats a mischaracterization the Plaintiff inserted into his original Complaint and every pleading after (paragraph No. 127b of Third Amended Complaint). This paragraph alleges that Ms. Costlow "attacked their minor son...and had him committed to Chestnut Ridge Psychiatric Hospital, alleging he was threatening her," Plaintiff's Response to Trooper's Motion at 10-11, and that this was "apparent retaliation" for the child calling the police. *Id.* The child's treatment record, attached as Exhibit 6, which the Plaintiff introduced during his deposition of Ms. Costlow, however, provides a different picture of the incident. For starters, the record shows that the child was transported to the emergency room of West Virginia University Hospital (not Chestnut Ridge) because he was running with a hatchet and Ms. Costlow feared for his safety and the safety of others. Medical Report, p. 2. Upon arriving at the hospital, the child was found to have three knives in his pocket, *Id.* at 4, and showed no signs of having been abused. *Id.* at 6. No law enforcement of Child Protective Services investigation ensued, likely because the child

11

exhibited no signs of having been abused. Medical staff became concerned for the safety of the child and those around him and recommended that he be admitted to Chestnut Ridge Hospital. <u>Id.</u> <u>at 2, 11</u>. The record also indicates that Ms. Costlow feared violent retaliation from the Plaintiff if he learned that the child had been admitted for assessment of behavioral problems. <u>Id.</u> at 11. The facts of this incident, thus, are far different that the account the Plaintiff has shared on multiple occasions.

The Plaintiff's claim that he had "features" of two psychological syndromes, but did not actually suffer from either syndrome, as alleged in the ninth paragraph of the Plaintiff's "Contested Issues" section, <u>Plaintiff's Response to Troopers' Motion p. 11, fn. 13</u>, is equally irrelevant and disingenuous to any dispositive issue, as is his claim that he sent thousands of texts and emails to Ms. Costlow after being told that they were harassing and being asked to cease communications in an effort to "try and manage his wife's moods." <u>Id</u>. As noted in the Trooper Kief's Response to the Plaintiff's motion for partial summary judgment against him (Doc. 123), the Plaintiff previously excluded any mention of codependent features in describing his decision to repeatedly text and email Ms. Costlow. <u>Kief's Response to Plaintiff's Motion for Partial</u> <u>Summary Judgment, pp. 9-10, <i>citing,</i> Ballock Dep., 29:8-23, 286:15-21</u>. Resolution of the truth of the Plaintiff's latest explanation for his conduct, nearly seven years after the first harassing emails were delivered, is not material to any issue to be decided in this action. It certainly does nothing to call into question the undisputed evidence that, on September 12, 2013, when Trooper Gaskins obtained warrants for the Plaintiff's arrest, he had documentation of the Plaintiff sending thousands of texts and emails to Ms. Costlow after being informed that she felt harassed by the texts and emails and being asked multiple times to cease communications, which is more than sufficient to establish probable cause that the Plaintiff committed the offenses of Harassment and

Harassment by electronic device, W. Va. Code §§ 61-2-9(b) and 61-3C-14(a)(2). As noted, the Plaintiff does not challenge any of this evidence and admits contacting Ms. Costlow after she asked him to cease communicating with her. Deposition of Scott Ballock, 327:15-18, *supra*.

Random text messages (fifth paragraph) the Plaintiff claims to have uncovered in a "forensic examination" of a cell phone used by Kenny Ice, Jr. during the "unauthorized investigation" that provided grounds for OPR to terminate the Plaintiff's employment, *See*, Ex. 7, OPR Letter to Plaintiff, March 5, 2019, pp. 14-16, 20-21, 23-24, also fails to create a genuine issue for trial on any dispositive issue. Given the Plaintiff's history of incomplete factual disclosure in this action (the Plaintiff's claim of Ms. Costlow having her son "committed" in "retaliation" after "attacking" him and his incomplete account of his arrest, discussed *infra.*, are but two immediate examples) calls into question the claim of such recovery, and the abbreviated nature of the material the Plaintiff presents indicates a desire on the part of the Plaintiff to remove informative context of any message he claims to have "uncovered." The admission of any such evidence at trial would be challenged.

Even setting aside the unreliability of the Plaintiff's "evidence," however, the text messages attributed to Ms. Costlow, observing that she had information (close to eight months of harassment documented by text and email messages) which could place the Plaintiff's continued employment as an FBI special agent in jeopardy, and that she was considering filing charges based upon the Plaintiff's harassment of her,[11] does nothing to call into question evidence of probable

---

[11] The selected nature of the messages presented and absence of context make it impossible to determine, based on the texts themselves, whether criminal or Family Court "charges" were sought. The timing of the message alleged by the Plaintiff, May 1, 2013, in conjunction with Ms. Costlow's Family Court attorney sending a letter to the Plaintiff two days later, Motion for Summary Judgment Ex. 9, threatening as much if he did not stop harassing Ms. Costlow, makes the latter more likely.

cause for the Plaintiff's arrest, the absence of an illegal conspiracy and the reason for termination of his Plaintiff's employment – the issues the Plaintiff claims to be addressing in his Responses.

Finally, the Plaintiff again, despite evidence in his possession to the contrary, presents his theory that he was arrested at a Family Court hearing on September 13, 2013 to influence the decision of the Family Court, and references an observation by the Family Court judge in support of this theory. As has been previously noted, each time the Plaintiff has made this argument, he was aware that the site of his arrest was coordinated with the FBI, which determined that West Virginia Troopers faced a "risk of violence" in an attempted arrest of an armed Plaintiff and wanted to reduce this risk by having him arrested under circumstances where the Plaintiff would not have access to a firearm. As OPR observed in its September 21, 2017 letter to the Plaintiff:

> Although you have had an opportunity to review the file, which (along with OPR's proposal letter) shows the State Troopers coordinated with the FBI regarding the arrest, your filing in the civil suit fail to disclose the efforts by the State Police to coordinate the arrest with the FBI, and the legitimate concerns shared by the State Police and the FBI regarding the need to ensure you were unarmed when arrested to reduce the risk of violence. *Id.* at 10.

It is doubtful that a convenient site for arrest of the Plaintiff existed. If the Plaintiff were to have been arrested at home, he likely would allege a conspiracy to embarrass him in front of his children, and if at work, a conspiracy to injure his employment. The Plaintiff seemingly cannot accept the fact that the "risk of violence" he posed while armed was the determining factor in the site and circumstances of his arrest.

Scattered among the Plaintiff's "Contested Issues of Fact" are several allegations concerning the relationship between Ms. Costlow and Kenny Ice, Jr. It is not clear what the Plaintiff seeks to show with these allegations, which have no bearing on whether probable cause for his arrest existed, whether the Defendants conspired to commit an illegal act, or the reason OPR decided to terminate his employment. These allegations, like the others presented in the

Plaintiff's seventeen "Contested Issues of Fact" paragraphs, accomplish nothing more than to distract from the undisputed evidence presented in the Defendants' Motions for Summary Judgment.

The Plaintiff's "Contested Issues of Fact" fails to mention anything regarding probable cause, civil conspiracy or the reason the Plaintiff was terminated. Determination of any or all of the "contested" issues the Plaintiff cites is inconsequential to the unchallenged evidence, contained in the Defendants' Motions, which establishes that probable cause existed for the Plaintiff's arrest, that no conspiracy to injure the Plaintiff by unlawful means existed and that the Plaintiff was terminated from his employment for conduct wholly unrelated to any act he alleges against any Defendant. Moreover, many of the "Contested Issues of Fact" listed by the Plaintiff, describing procedural matters in Family Court, are not contested.

### C. The Plaintiff Cannot Establish that His Employment Was Terminated as the Result of Any Illegal Act by the Defendants

In his "Causation Argument" section, the Plaintiff addresses the issue of whether he can introduce any evidence to prove that he was terminated from his employment with the FBI as a result of any illegal act on the part of the Defendants. In his argument, the Plaintiff does not challenge the fact that OPR dismissed him from employment for reasons unrelated to any act of the Defendants. As documented in Ms. Costlow's Motion for Summary Judgment, OPR dismissed the Plaintiff from employment for: Misuse of a Weapon/Safety Violation, for acts the Plaintiff has admitted or does not dispute committing, OPR Letter to Plaintiff, March 5, 2019, pp. 19-20, 23; (2) Unprofessional Conduct-Off Duty, for harassing and psychologically abusing Ms. Costlow with thousands of unwanted emails and texts, physically abusing Ms. Costlow by penetrating her with a wine bottle to the point where she required emergency medical attention, Id. 6-14, 20-21, 23-24, and conducting an unauthorized investigation of Ms. Costlow and her

boyfriend, *Id.* 14-17, 20-21, 23-24; and Lack of Candor/Lying Under Oath, for twice lying under oath to FBI investigators about the content of his texts and emails to Ms. Costlow and the conduct described in the emails and texts. *Id.* at 17-20, 22, 24.

The Plaintiff does not dispute the fact that these findings by OPR are unrelated to the act of any Defendant and resulted in his termination. Rather, the Plaintiff argues that his termination is subject to an appeal with FBI's Disciplinary Review Board (DBR), although he acknowledges that the decision of the DBR may have no evidentiary value, Plaintiff's Response to Costlow's Motion, p. 18, and that his termination was caused by his arrest, implying that some fault must lie with the Defendants for the fact that such occurred. *Id.* at 14, 18. The Plaintiff states that "it is clear [FBI disciplinary proceedings] would never have commenced but for the arrest of Scott Ballock on Friday, September 13, 2013. That would never have happened without the coordinated efforts of the Trooper Defendants and Eleen (*sic.*) Ruth Costlow." *Id.* at 18.

As the reason OPR terminated the Plaintiff is well-documented and beyond dispute, the Plaintiff is arguing that OPR would never have learned of his unprofessional conduct and misuse of a weapon, and that he would never have had to lie to the FBI in the course of its investigation of his conduct if he had not been arrested. The Plaintiff, thus, rests his claim for damages on a challenge to the legal nature of his arrest and his claim for conspiracy upon the "coordinated efforts"[12] of the Defendant in effecting his arrest. If probable cause for the Plaintiff's arrest existed, no civil conspiracy existed and the Plaintiff has no damages.

---

[12] "Coordinated efforts" is obviously a term chosen by the Plaintiff to imply a civil conspiracy. In the lawful investigation and arrest of the Plaintiff, the only "coordination" between Ms. Costlow and the Trooper Defendants was the former describing the harassing texts and emails she received from the Plaintiff, and Troopers Gaskins and Kief reviewing the communications, meeting with an assistant prosecuting attorney, obtaining a warrant and arresting the Plaintiff. The record contains no evidence of any participation by Trooper Berry in the investigation or arrest. *See, generally,* Report of Trooper Gaskins.

As noted, the Plaintiff does not challenge evidence contained in the Defendants' Motion for Summary Judgment, which establish that no unresolved issue of fact exists to prevent a conclusion that the Plaintiff sent more than 3,000 texts and emails to Ms. Costlow, Report of Trooper Gaskins, that these were harassing and that she informed the Plaintiff that they were harassing, Texts messages between Plaintiff and Ms. Costlow (May 17, 2013 8:24 a.m.-8:48 p.m.), and that these communication were sent after Ms. Costlow told the Plaintiff to stop contacting her Deposition of Scott Ballock, 247:17-21, 327:15-18, thus, establishing probable cause for the Plaintiff's arrest on charges of violating W. Va. Code §§ 61-2-9(b) and 61-3C-14(a)(2) and demanding that summary judgment be granted to the Ms. Costlow. The remainder of the Plaintiff's Response to the Troopers' Motion for Summary Judgment consists of an argument related to the Troopers' qualified immunity, which does not directly apply to Ms. Costlow.

###### D. The Plaintiff Creates No Issue of Fact in His Response to Ms. Costlow's Motion

As previously observed, most of the Plaintiff's arguments against the Court granting summary judgment to Ms. Costlow are contained in his Response to the Troopers' Motion and incorporated by reference in his Response to Ms. Costlow. His separate Response to Ms. Costlow, thus, contains little that has not already been discussed. The Plaintiff repeats his claim of Ms. Costlow having her son "committed," omitting the same pertinent facts as he did in his Response to the Troopers' Motion, Plaintiff's Response to Costlow's Motion, p. 2, and asserts that texts he claims to have uncovered during his "unauthorized investigation" support an allegation of Ms. Costlow conspiring with the Trooper Defendants. *Id.* at 3. The Plaintiff makes this argument in spite of the fact that the two texts he claims to have uncovered, "I'm very hated aren't I? I have the upper hand with possible ruining Acotts career so they're going all out,"

(*sic.*) and "I'm going to move forward filing harassment charges against Scott," do not mention the Troopers, do not mention a concerted effort and do not mention an intent to do anything illegal. The Plaintiff fails to present any evidence to the contrary.

The Plaintiff also repeats his disingenuous complaint about being arrested in Family Court, *Id.*, alleges that Ms. Costlow and Trooper Kief "continued to collaborate on what to tell the FBI, knowing they were violating court orders in doing so," and references the Divorce Decree attached to his motion for partial summary judgment against Ms. Costlow, which the Plaintiff unsuccessfully attempted to portray as a "contract" in said motion. *Id.* For all the attention the Plaintiff has given to the site and circumstances of his arrest, he has yet to cite any law violated by such. As evidenced, this was a probable cause arrest, coordinated with the FBI and executed under circumstances designed to make sure that the Plaintiff was unarmed, to reduce the perceived risk, shared by federal and state law enforcement, that the Plaintiff might react violently to such arrest.

As for the Plaintiff's claim of "collaboration," no order existed which prevented Ms. Costlow from speaking with Trooper Kief about any subject and no order existed which prohibited the Trooper in any way. The order only prevented Ms. Costlow from contacting the Plaintiff's employer about the Plaintiff, and the Plaintiff has failed to produce any evidence of Ms. Costlow initiating contact with the FBI. Finally, the Plaintiff asserts that a measure of his damages includes compensation for "the emotional toll inflicted by the Defendants," *Id.*, where the Plaintiff has testified under oath that his anxiety has lessened and he is emotionally better off now that when he was while working for the FBI and going through a divorce in the summer of 2013 – a time prior to his arrest and prior to any tortious act he alleges. Deposition of Scott Ballock, 330:14-18.

The Plaintiff, thus, is unable to generate a single factual issue to dispute the evidence contained the Defendants' Motions, which establishes that he was arrested based upon probable cause, precipitating an investigation by the FBI, which ultimately discovered countless acts of dangerous, disreputable and unprofessional conduct, and dishonest acts by the Plaintiff during the course of investigations, resulting in his termination. The thousands of texts and emails sent by the Plaintiff are at the heart of this matter and are not in dispute. _Id._ at 248:7-12. These documents were reviewed by Trooper Gaskins and established probable cause for the Plaintiff's arrest, Report of Trooper Gaskins, and were also the FBI's first exposure to the Plaintiff's misconduct, being delivered to the Bureau soon after the Plaintiff's arrest. Exhibit 8, Deposition of Ronnie Gaskins, 62:4-65:1. From review of these documents, FBI investigators and OPR determined that the Plaintiff had harassed and abused Ms. Costlow with the communications themselves, OPR Letter to Plaintiff, March 5, 2019, pp. 6-12, and had a history of abusing her. _Id._ at 12-14.

The Plaintiff attempts to distract attention from the evidence contained in these documents with tales of fictitious affairs, retaliatory mental health commitments, conspiracy theories, codependency features and the "complaints" of mystery Troopers.[13] Running through the Plaintiff's arguments is a claim that he was wronged when his harassment of Ms. Costlow was "taken out of the purview of the Family Court," Plaintiff's Response to Trooper's Motion, p. 15, yet the Plaintiff fails to cite anything to support the proposition that a lawful criminal investigation and arrest are somehow invalidated if the perpetrator and victim are parties to Family Court proceedings. The Plaintiff seeks to assert a duty for certain criminal matters to be deferred to Family Court, which does not exist. The undisputed facts in the record are clear that

---

[13] _See,_ Third Amended Complaint, ¶¶ 225-28.

probable cause for the Plaintiff's arrest existed, that the Defendants committed no unlawful act against him and that he was terminated for a series of deplorable, unprofessional and dishonest acts, which were unrelated to any claim he alleged. No genuine issue of fact, therefore, exists that the Plaintiff is unable to prove any claims he alleges, entitling Ms. Costlow to summary judgment, dismissing all the Plaintiff's claims as a matter of law.

### III.    Conclusion

The Plaintiff fails to raise a genuine issue in his Responses to Ms. Costlow and the Trooper Defendants. The evidence provided in more than 3,000 harassing emails and texts is not disputed and establishes probable cause for the Plaintiff's arrest. The Plaintiff can maintain no cause of action where his arrest was lawful. The Plaintiff does not challenge that OPR terminated his employment for conduct unrelated to the causes of action he alleges, preventing the Plaintiff from any claim for damages related to his loss of employment. For these reasons, the Plaintiff is unable to present any claim worthy of trial and Ms. Costlow is entitled to summary judgment as a matter of law, dismissing all claims against her.

WHEREFORE, Ms. Costlow prays that this Honorable Court GRANTS her Motion for Summary Judgment, DISMISSES the Plaintiff's Third Amended Complaint with prejudice, AWARDS her all fees and costs, including reasonable attorney's fees, incurred in defending against this action and any other relief as the Court finds in the interest of justice.

Dated July 29, 2019

**RESPECTFULLY SUBMITTED,**
**ELLEN RUTH COSTLOW,**
**By counsel,**


_____/s/ P. Todd Phillips_____
P. Todd Phillips (WV State Bar #9499
LYONS PHILLIPS LEGAL GROUP PLLC
141 Walnut Street
Morgantown, WV 26505
304-296-3200
304-296-0713 *fax*
toddphillips.law@gmail.com

## UNITED STATES DISTRICT COURT
## NOTHERN DISTTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK,**

      **Plaintiff,**

**v.**

                                       **CIVIL ACTION NO..: 1:17-CV-52**
                                       **Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M.**
**GASKINS, AND STATE TROOPER**
**CHRIS BERRY,**

      **Defendants.**

## CERTIFICATE OF SERVICE

      I hereby certify that, on the 29th day of July 2019, I served "Reply of Defendant Ellen Ruth Costlow to Plaintiff's Response to Costlow's Motion for Summary Judgment" with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

                      Mark G. Jeffries, Esq.
                      STEPTOE & JOHNSON, PLLC
                      400 White Oaks Boulevard
                      Bridgeport, WV 26330-4500

                      Montè L. Williams
                      STEPTOE & JOHNSON, PLLC
                      PO Box 1616
                      Morgantown, WV 26507-1616

      *Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins and State Trooper Chris Berry*

Charles J. Crooks, Esq.
CROOKS LAW FIRM PLLC
244 Pleasant Street
Morgantown, WV 26505

*Counsel for Plaintiff*

**RESPECTFULLY SUBMITTED,**

/s/ P. Todd Phillips
P. Todd Phillips (WV State Bar #9499)
LYONS PHILLIPS LEGAL GROUP PLLC
141 Walnut Street
Morgantown, WV 26505
304-296-3200
304-296-0713 *fax*
toddphillips.law@gmail.com

23