**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT T. BALLOCK,**

**Plaintiff,**

**v.**

**CIVIL ACTION NO.: 1:17-CV-52**
**Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW, STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY,**

**Defendants.**

**DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY'S MOTION TO EXCLUDE CLIFFORD B. HAWLEY AS AN EXPERT WITNESS**

## I. INTRODUCTION

Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry (collectively, the "State Police Defendants"), by counsel, move the Court pursuant to Federal Rule of Evidence 702 for an Order precluding Plaintiff Scott T. Ballock from offering, either through report or testimony, Dr. Clifford B. Hawley as an expert witness. Dr. Hawley has been disclosed as an economist for purposes of offering an opinion on Plaintiff's alleged past and future economic losses. Federal Rule of Evidence 702 requires expert testimony to be reliable, and the Court must serve as a gatekeeper to exclude unreliable opinions and testimony. Several of Dr. Hawley's assumptions and decisions, which significantly affect his calculations and opinions, have no factual basis, demonstrate a misunderstanding of relevant facts, or do not account for relevant facts. Because Dr. Hawley's calculations and conclusions are based upon several unfounded or incorrect assumptions, Dr. Hawley's report and testimony should be excluded as being uninformed, inaccurate, and ultimately, unreliable.

## II. BACKGROUND

Plaintiff disclosed Dr. Hawley as an economics expert on March 27, 2019. Pl.'s Expert Witness Disclosures ¶ 2, attached as "Exhibit 1." Dr. Hawley's report assumes, based on Plaintiff's own statements, Plaintiff would have obtained post-retirement employment paying at least $100,000. "Economic Losses of Scott Ballock" by Clifford B. Hawley, Ph.D., attached as "Exhibit 2," at 3. Dr. Hawley's report also assumes, again based on Plaintiff's own assertions, that when Plaintiff was employed as an FBI agent, he received a flat 25% supplement in addition to his federal employee "GS" salary. *Id.* at 2. Finally, Dr. Hawley's report assumes Plaintiff would have received the full amount of his pension had he not been discharged from the FBI in September 2017. *Id.* at 4. Based upon such assumptions and other calculations, Dr. Hawley's report concludes Plaintiff's alleged economic losses to be approximately $2 million. *Id.* at 1.

During Dr. Hawley's deposition, he admitted that he is not a vocational expert. Hawley Dep. 22:15–17, excerpts of which are attached as "Exhibit 3." Dr. Hawley further testified that he did not review a vocational assessment in determining the $100,000 post-retirement employment salary. *Id.* at 22:18–21. Rather, Dr. Hawley based the $100,000 figure solely on a statement provided by Plaintiff in an e-mail. *Id.* at 22:22-23:9, 50:12–22; *see also* E-mail from Scott Ballock to Clifford Hawley & Charles Crooks (Mar. 14, 2019, 10:02 p.m EST), attached as "Exhibit 4." In determining and applying the $100,000 per year salary, Dr. Hawley did not consider any specific job, the type of work the post-retirement job would involve, or the geographic location of the job. Ex. 3 at 20:5-21:18. Additionally, the hypothetical $100,000 annual salary was not specifically based on work in the private sector, state government, or local government. *Id.* at 21:21–22:6. Nor was the figure based on a national average. *Id.* at 21:19–20. Dr. Hawley further testified that he did not know the average salary for a retired FBI agent with a

master's degree in criminal justice in the private sector or in state or local government. *Id.* at 22:7–14.

Dr. Hawley also testified that Plaintiff's e-mail statement was the source of the flat 25% supplement for "availability" or "on-call" pay used to calculate Plaintiff's future losses. *Id.* at 49:24–50:11. Availability pay for criminal investigators is authorized and governed by Title 5 of the United States Code. 5 U.S.C. § 5545a (2012). According to the governing statute, a "criminal investigator" receives availability pay, if "the annual average of unscheduled duty hours worked by the investigator in excess of each work day" and "the annual average of unscheduled duty hours such investigator is available to work on each regular work day upon request of the employing agency" equals or is greater than two hours. *Id.* § 5545a(d). The same section defines "criminal investigator" for purposes of availability pay. *Id.* § 5545a(a)(2); *see also Fact Sheet: Availability Pay*, United States Office of Professional Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/availability-pay/, attached as "Exhibit 5." And while the standard pay rate for availability pay is 25% of the criminal investigator's base salary, there are limitations that may result in it not being exactly 25%. *See* 5 U.S.C. § 5547; *see also* Ex. 5. For example, an employee may only receive premium pay to the extent that the aggregate of the basic and premium pay does not exceed the greater of "the maximum rate of basic pay payable for GS-15" or "the rate payable for level V of the Executive Schedule." 5 U.S.C. § 5547(a). In his deposition, Dr. Hawley demonstrated an overall lack of awareness of the applicable qualifications and limitations for the award and calculation of availability pay under these statutes. Ex. 3 at 14:3–16:21.

Furthermore, before merely applying the flat 25% rate in calculating Plaintiff's future losses, Dr. Hawley did not calculate and check that Plaintiff actually earned 125% of his base

salary in his last full year of employment with the FBI. *Id.* at 17:10–12. In fact, for at least the last three full years of his employment, Plaintiff's employment earnings reflected on his tax returns did not equal 125% of his base pay according to the applicable salary tables. *Id.* at 39:4–41:10. Nevertheless, Dr. Hawley based his calculations of Plaintiff's lost earnings on the assumption that, had he remained employed by the FBI, Plaintiff would have been paid a full 125% of the applicable GS pay scale.

Finally, Dr. Hawley testified that he did not review the divorce decree between Plaintiff and Ms. Costlow and did not account for it in calculating the pension portion of Plaintiff's alleged damages. *Id.* at 34:18–24. According to the divorce decree, issued by the Family Court of Monongalia County, Ms. Costlow was awarded fifty percent of Plaintiff's retirement accounts arising from the date of their marriage on June 8, 1991, through the date of their separation on September 14, 2012. Divorce Decree ¶ 5(b)(vi), attached as "Exhibit 6." Dr. Hawley's calculations of Plaintiff's potential damages from lost pension, however, were not based upon Ms. Costlow getting any portion of the pension. Ex. 3 at 38:2–4.

## III. STANDARD OF DECISION

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. The district court functions as a "gatekeeper" in determining the admissibility of expert testimony under Rule 702. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). As the gatekeeper under Rule 702, the trial court must ensure that speculative and unreliable opinions do not reach the jury. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005). "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) (citing *E. Auto Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329,

337 (4th Cir. 1986)). Accordingly, the trial court must ensure that an expert's testimony both rests on a reliable foundation and is relevant. *See E.E.O.C. v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (quoting *Westberry*, 178 F.3d at 260); *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). In considering the admissibility of expert testimony, generally, "[t]he inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Daubert,* 509 U.S. at 594–95. And the court may take into account "any factors bearing on validity that the court finds to be useful." *Westberry*, 178 F.3d at 261.

## IV. ARGUMENT

Under Rule 702, expert testimony must be both relevant and reliable. Dr. Hawley's report and potential testimony are unreliable because his calculations and conclusions regarding Plaintiff's potential future damages are based upon several unfounded or incorrect assumptions. First, Dr. Hawley has no factual basis, besides an e-mail statement from Plaintiff, that Plaintiff would have obtained post-retirement employment paying $100,000, which nearly doubles his damage calculations. Second, Dr. Hawley demonstrates a lack of understanding of availability pay for criminal investigators and relied merely upon Plaintiff's statement that a flat 25% bump is added to the base salary, further inflating Plaintiff's lost earnings. Third, Dr. Hawley admits that he did not account for Plaintiff's divorce decree, which awards Ms. Costlow approximately half of Plaintiff's pension and thereby places nearly half of any pension losses on Ms. Costlow, not Plaintiff. Accordingly, Dr. Hawley's report and potential testimony are unreliable and should be excluded by the Court.

**A. Dr. Hawley's conclusions regarding Plaintiff's post-retirement employment have no factual basis.**

Dr. Hawley's opinions should be excluded because they approximately double Plaintiff's lost earnings with no factual basis to do so. In his report, Dr. Hawley assumes Plaintiff could obtain post-retirement employment in the private sector or state or local government for $100,000 per year. Ex. 2 at 3. The report does not include any explanation or justification for such an assumption. *Id.* During his deposition, Dr. Hawley admitted that he is not a vocational expert, nor did he consult the report of a vocational expert in assuming the $100,000 post-retirement employment.[1] Ex. 3 at 22:15–30. Dr. Hawley further testified that the $100,000 figure was not based on any national average and that the assumption did not account for a particular type of job, sector of employment, or geographic location. *Id.* at 20:5–22:6. Dr. Hawley did testify, however, that the figure was based solely on an e-mail statement from Plaintiff in which Plaintiff stated agents routinely accept six-figure salaried positions after retirement from the FBI. *Id.* at 22:22-23:9, 50:12–22. Even the statement provided by Plaintiff to Dr. Hawley was vague and did not include any further explanation or justification for the assertion or salary figure. Ex. 4. In short, Dr. Hawley pulled a hypothetical $100,000 per year post-retirement job out of thin air and used it to double Plaintiff's economic losses.

Dr. Hawley's opinion regarding Plaintiff's future vocational outcomes is outside the scope of Dr. Hawley's expertise as an economist. When an expert's testimony is outside his area of expertise, that testimony is unreliable and should be excluded. *See Steele v. Kenner*, 129 F. App'x 777, 781 (4th Cir. 2005) (per curiam). For example, in *Garland v. Rossknecht*, the court found an expert opinion about vocational disabilities to be unreliable where the expert witness was a forensic economist who specialized in projecting earning loss over time and admittedly

[1] Because Dr. Hawley is not a vocational expert, he is not qualified to offer an opinion as to Plaintiff's potential post-retirement employment. Fed. R. Evid. 702.

had no competence as a vocational expert. 624 N.W.2d 700, 703–04 (S.D. 2001). Here, Dr. Hawley conceded he was not a vocational expert and did not consult a vocational expert report. Ex. 3 at 22:15–21. And while Dr. Hawley, as an economist, may be qualified to testify regarding the calculation of future losses, Dr. Hawley is not qualified to offer opinions regarding Plaintiff's potential career outcomes upon which to base those calculations. Dr. Hawley's assumption that Plaintiff would obtain unspecified post-retirement employment with a six-figure salary is, accordingly, outside the scope of his economics expertise. Therefore, Dr. Hawley's report and potential testimony based upon such vocational assumptions is outside his expertise and should be excluded.

Additionally, Plaintiff also is not a vocational expert. Therefore, any assumption or conclusion based upon a bare assertion from Plaintiff is a far cry from an expert opinion based upon sufficient facts and resulting from reliable principles and methods. An expert witness's testimony regarding future earnings losses must be based upon a sufficient factual foundation. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000). And if expert testimony regarding future damages is found to be speculative or lacks a sufficient factual foundation, the court may exclude it as unreliable. *See Greig v. Botros*, 525 F. App'x 781, 793 (10th Cir. 2013) (finding insufficient factual foundation where expert did not provide support for use of hypothetical annual income figures); *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009) (holding district court did not abuse its discretion in excluding expert testimony where expert relied almost exclusively on party's speculative estimates without any independent verification); *Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 642–43 (3d Cir. 1987) (finding expert's future earnings figure based on plaintiff's personal belief to be speculative and without proper foundation); *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 568–69 (D.C. Cir. 1993)

(finding expert testimony should have been excluded where expert assumed career move based on conjecture and insufficient evidence).

In Dr. Hawley's report, the only fact Dr. Hawley relied on for the assumption of a $100,000 post-retirement job was the statement of Plaintiff. Ex. 3 at 22:22-23:9, 50:12–22; *see also* Ex. 4. Dr. Hawley provided no evidentiary support for his assumptions of the post-retirement employment or the $100,000 salary and made no effort to independently verify Plaintiff's claim. *See* Ex. 2 at 3. Furthermore, Dr. Hawley did not apply any, let alone reliable, principles or methods in determining this post-retirement employment and salary figure. As a result, Dr. Hawley's calculations and conclusions accounting for this $100,000 annual post-retirement salary are not based on the reliable factual foundation necessary for admissible expert testimony. Rather, Dr. Hawley's report and potential testimony are the type of unreliable opinion, conjecture, and speculation that the Court should exclude in exercising its gatekeeping function.

**B. Dr. Hawley's testimony and calculations demonstrate a lack of understanding of the "availability pay" premium.**

Dr. Hawley's opinions should also be excluded because he improperly inflated Plaintiff's FBI pay without proper evidentiary support. Dr. Hawley assumes in his report that Plaintiff received and would continue to receive a flat 25% supplement to Plaintiff's FBI base salary as availability pay. *Id.* at 2. Dr. Hawley did not provide any further explanation or justification for such an assumption in his report. *Id.* As discussed above, availability pay for criminal investigators is governed by federal statute, and there are particular qualifications and limitations involved in the award of availability pay. *See* 5 U.S.C. §§ 5545a, 5547. During his deposition, Dr. Hawley was asked a series of questions regarding these aspects of availability pay and demonstrated a general unawareness of the qualifications, restrictions, and actual calculations

involved in availability pay. Ex. 3 at 14:3–16:21. Dr. Hawley could not explain whether Plaintiff, as a supervisor in a headquarters position,[2] was a "criminal investigator" for purposes of the statute or whether Plaintiff met the hour requirements to qualify for availability pay. *Id.*

Further, before applying the flat 25% supplement to Plaintiff's base salary in his calculations, Dr. Hawley did not independently verify Plaintiff's claim by determining whether Plaintiff's past years' earnings were actually 125% of his base salary. *Id.* at 17:10–12. In fact, they were not. For example, in 2014, Plaintiff's tax return indicates he earned $131,653. Pl.'s 2014 IRS Form 1040, attached as "Exhibit 8." According to the published GS salary table for 2014, the salary for grade 14, step 5 was $110,676, and 125% of that amount is $138,345. *See Salary Table 2014-RUS*, United States Office of Professional Management, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2014/RUS.pdf, attached as "Exhibit 9." Likewise, Plaintiff's 2016 tax return indicates he earned $130,121. Pl.'s 2016 IRS Form 1040, attached as "Exhibit 10." But according to the published GS salary table for 2016, the salary for grade 14, step 6 was $116,417, and 125% of that figure is $145,521.25. *See Salary Table 2016-RUS*, United States Office of Professional Management, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2016/RUS.pdf, attached as "Exhibit 11." Such comparisons demonstrate that Plaintiff's prior earnings were not actually 125% of the base GS salary.

Rather than independently verify how Plaintiff's earnings were actually influenced by availability pay, Dr. Hawley based his assumption and application of the flat 25% availability pay solely on a statement from Plaintiff. Ex. 3 at 49:24–50:11. Just as with the post-retirement employment and salary, Plaintiff provided Dr. Hawley a statement by e-mail stating that all FBI

[2] *See* Pl. Dep. 169:2–10, excerpts of which are attached as "Exhibit 7."

agents receive "essentially a 25 percent bonus" as availability pay, without any further explanation or justification for that assertion. *See* Ex. 4. Again, one statement by Plaintiff is not the kind of sufficient facts and data upon which admissible expert opinion or testimony may be founded. *See US Salt, Inc.*, 563 F.3d at 691; *Benjamin*, 820 F.2d at 642–43. And where an expert witness's calculations for damages are based on assumptions not supported by the factual record, those calculations are speculative in nature and should be excluded by the court. *See Tyger Constr. Co. Inc.*, 29 F.3d at 144–45. Additionally, because he was not familiar with and did not apply the appropriate statutory provisions, Dr. Hawley did not adequately apply reliable principles and methods in reaching his opinions and conclusions. Accordingly, Dr. Hawley's calculations and conclusions relying on such assumptions and unsupported by sufficient facts and principles are unreliable and should be excluded.

**C. Dr. Hawley's calculations do not account for the divorce decree awarding Ms. Costlow approximately 50% of Plaintiff's pension.**

Finally, Dr. Hawley's opinions should be excluded because they fail to account for the fact that Ms. Costlow bears approximately half of any loss to Plaintiff's pension. Dr. Hawley's report does not account for the fact that Plaintiff's ex-wife, Ms. Costlow, is entitled to approximately half of Plaintiff's pension from the time of their marriage. *See* Ex. 2 at 4; Ex. 3 at 34:18–24. Dr. Hawley's report does not mention Plaintiff's divorce decree in any manner. *See* Ex. 2. Yet, as discussed above, the divorce decree awards Ms. Costlow half of Plaintiff's pension during the time of their marriage, which would be slightly less than half of Plaintiff's total pension. *See* Ex. 6. As Dr. Hawley calculates Plaintiff's pension losses to be approximately $650,000, his failure to account for the divorce decree results in an error in the neighborhood of $325,000.

Here, rather than assuming unfounded facts, Dr. Hawley overlooks a fact that has a significant impact on his total calculation of damages. Plaintiff communicated to Dr. Hawley by e-mail that Ms. Costlow would be entitled to half of his pension from the time of their marriage;[3] yet, in this instance, Dr. Hawley ignores or overlooks a fact that could influence his calculation by hundreds of thousands of dollars. Again, it is clear from these discrepancies that Dr. Hawley did not obtain sufficient facts or data upon which to base reliable conclusions or testimony. Nor, as evidenced by the inconsistency and frequent lack of explanation and justification, did Dr. Hawley engage in a reliable application of methods or principles to arrive at his conclusions. Accordingly, the oversight of the divorce decree's effect upon the calculation of losses again demonstrates the unreliability of Dr. Hawley's report and potential testimony.

## V. CONCLUSION

The Court has the obligation under Rule 702 to ensure that expert opinion evidence is relevant and reliable and to exclude evidence that is unreliable or merely speculative. Dr. Hawley's report and potential testimony are based on several unfounded assumptions and overlooked facts. These faults evidence a pattern of inconsistency and lack of thorough expert analysis, which undermine Dr. Hawley's calculations and conclusions. Ultimately, this results in Dr. Hawley's report and potential testimony being based upon mere speculation. Such speculation approximately doubles Plaintiff's economic losses, resulting in an error of over $1 million.

WHEREFORE, Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry respectfully request that the Court GRANT their Motion

[3] *See* E-mail from Scott Ballock to Clifford Hawley & Charles Crooks (Mar. 20, 2019, 10:59 EST), attached as "Exhibit 12."

and enter an Order excluding the report and testimony of Dr. Clifford B. Hawley from being offered in this case.

Dated this 4th day of September 2019.

Respectfully submitted,

***/s/ Mark G. Jeffries***
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT T. BALLOCK,**

**Plaintiff,**

**v.**

**CIVIL ACTION NO.: 1:17-CV-52**
**Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW, STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY,**

**Defendants.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September 2019, I filed the foregoing "***Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry's Motion to Exclude Clifford B. Hawley as an Expert Witness***" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles J. Crooks, Esq.
CROOKS LAW FIRM PLLC
244 Pleasant Street
Morgantown, WV 26505

*Counsel for Plaintiff*

P. Todd Phillips, Esq.
LYONS PHILLIPS LEGAL GROUP PLLC
141 Walnut Street
Morgantown, WV 26505

*Counsel for Defendant Ellen Ruth Costlow*

*s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*