**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT T. BALLOCK**                                    Case No.: 1:17-CV-52 IMK

       Plaintiff,

v.                                                                         JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,**
and
**STATE TROOPER CHRIS BERRY,**

      Defendants.

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO**
**TROOPER DEFENDANTS' MOTION TO EXCLUDE CLIFFORD HAWLEY**

The Trooper Defendants filed a motion in limine (Doc 134) seeking to exclude the Plaintiff's proffered expert witness, Dr. Clifford B. Hawley, an economist (Doc 96). The Plaintiff serves this responsive memorandum in accordance with LR Civ P 7.02(b).

**I.      INTRODUCTION**

Dr. Hawley was disclosed on March 27, 2019 and deposed on May 13, 2019. The current motion in limine (Doc 134) invites error by suggesting the Court exclude the witness owing to alleged inadequacies in the factual predicates for two elements of the claimed damages. These alleged deficiencies speak to two discrete aspects of the claim for damages, not the entirety of Dr. Hawley's body of opinion. Exclusion of the witness would be out of all proportion even if the motion had merit.

The Defendants' motion invokes the Court's gatekeeper role as it relates to the admissibility of expert methodology. *See* Doc 134 at 4, *citing Westberry v. Gislaved Gummi AB,*

178 F.3d 257, 261 (4th Cir. 1999)[1]; *McCain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005)[2]; *Tyger Constr. Co., Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994)[3]; *E.E.O.C. v. Freeman*, 778 F.3d 463, 446 (4th Cir. 2015)[4]; *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995).[5] Ironically, the motion cites the storied decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) emphasizing the gatekeeper role must focus on the principles and methodology employed, "not on the conclusions reached." *See* Doc 134 at 5, *citing Daubert*, 509 U.S. at 594-95.

---

[1] In *Westberry*, the plaintiff's expert medical testimony on causation in an industrial toxicity action (talcum powder lubricant) was sufficiently reliable as the physician relied on a differential diagnosis and temporal relationship between the plaintiff's exposure and illness. This satisfied the reliability and relevance standards of the federal evidence rules and was properly admitted into evidence.

[2] *McCain* was a products liability action. The verdict for the plaintiffs was reversed because expert opinions lacked the indicia of reliability. The reasons: (1) he drew speculative conclusions about the dietary supplement's toxicity from **questionable principles of pharmacology** while **neglecting the dose-response relationship**; (2) he drew **unsubstantiated analogies** between ephedrine and phenylpropanolamine; (3) he **inferred unauthorized conclusions** from studies and reports; (4) **unjustifiably relied on government public health reports and consumer complaints** to establish medical causation; and (5) he **failed to follow the basic methodology** that experts should follow in toxic tort cases. (emphasis added) The *McCain* decision was heavily influenced by multiple methodological defects, whereas the motion at bar merely challenges the facts upon which the expert relies in two respects.

[3] The *Tyger* decision concerned a case twice tried between two companies that attempted a joint venture construction project. The Fourth Circuit held that the expert's opinion was inadmissible because uncontradicted evidence, including the expert's own admission, explicitly negated the expert's damages theory.

[4] The *Freeman* decision described a "mind-boggling" number of errors and unexplained discrepancies in the government expert's database. One example: a subset of 41 individuals for whom the EEOC was seeking back pay, 29 had at least one error or omission. Seven were missing from the database altogether. Seven were listed in the database without a race code, "one was incorrectly coded as passing the criminal background check, two were incorrectly coded as failing the criminal background check, one ha[d] an incorrect race code, five ha[d] incorrect gender codes, nine [we]re listed twice and double-counted in the results, and three who failed the credit check [we]re not coded with a credit check result." J.A. 1064. *Freeman*, 778 F.3d 463, 467 (4th Cir. 2015).

Contrast that to the current case in which defense counsel challenges the reasonableness of Dr. Hawley's reliance on Scott Ballock's report of information borne of his employment at the F.B.I.

[5] *Benedi* was a product liability case. The Fourth Circuit affirmed a treating physician rendering an opinion that combining alcohol with therapeutic doses of acetaminophen caused liver disease in light of "medical community's daily use of the same methodologies in diagnosing patients" *Benedi*, 66 F.3d 1378, 1384 (4th Cir. 1995), *citing City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987).

## II. BACKGROUND

Dr. Hawley, recently retired as a professor in economics at WVU, he taught analytical methodology. He has testified many times in state and federal court. The motion at bar cites no deficiencies in Dr. Hawley's credentials, the scope or thoroughness of the disclosures attending Dr. Hawley's opinions. Defense counsel has instead opted to share his trial cross examination outline concerning the facts Dr. Hawley considered on two discrete elements of Scott Ballock's damage claim. Indeed, the bulk of Dr. Hawley's reported opinions are unchallenged in the motion.

Dr. Hawley has opined and testified as an expert witness in many wrongful termination cases. As far as his part in this is concerned, the Ballock case is a wrongful termination case. He developed a questionnaire for use in such cases. That was used in this case and was disclosed. Scott Ballock was a principal source of data concerning his work history and expectations for advancement had he not suffered termination. By force of circumstances, Scott Ballock must indulge some speculation on the truncated arc of his career with the F.B.I., as informed by his successful tenure up until the time the defendants intervened. The data disclosed by Scott Ballock to Dr. Hawley is premised to some degree on presumptions of continued employment and advancement, but this is no different that any other wrongful termination scenario tried to a jury.

The divorce decree was suggested as a material omission in Dr. Hawley's calculations. The response to that is obvious enough. The jury cannot properly reduce its award of damages to Scott Ballock just because Ellen Costlow may have a claim against the retirement part of it. It is the same logic as tax liability for lost earnings awards, that is sorted out with the I.R.S. after the

3

judgment is paid, the jury does not deduct taxes from the damage award. It is difficult to believe this argument is even being offered.

## III. STANDARD OF DECISION

The *Daubert* standard of decision is well known to this Court.

Dr. Hawley has proffered no novel, unreliable approach to his calculations of Scott Ballock's losses. It is a misapplication of the law to suggest this Court should exclude Dr. Hawley's testimony when the criticisms are narrowly targeted and easily resolved at trial.

## IV. ARGUMENT

In this case, there has been ample disclosure and discovery of Dr. Hawley's anticipated opinions. Except for giving up their cross examination strategy, there is no doubt the defense has a fair chance to meet the witness in court on fair terms.

As to the motion, there are essentially three arguments. First, the defense dismisses Scott Ballock as a source of reliable data on his expectations for employment after his mandatory retirement from the F.B.I. at age 57. It is urged that this is all the merest speculation and only a vocational assessment witness, someone with only second-hand information of the F.B.I., could possibly support Dr. Hawley's opinion. Second, the application of the differential paid to criminal investigators is challenged, not that a differential is unavailable, just whether it can fairly be counted as part of Scott Ballock's losses. Third is the baseless argument of the divorce decree. Except for the divorce decree, these are jury arguments. The divorce decree will be the subject of a limine motion.

The opinion in *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), contained trenchant reasoning omitted in the defense motion:

4

> The court, however, should be conscious of two guiding, and sometimes competing, principles. On the one hand, the court should be mindful that Rule 702 was intended to [**6] liberalize the introduction of relevant expert evidence. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1158-59 (4th Cir. 1996). And, the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. *See id.* As with all other admissible evidence, expert testimony is subject to being tested by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

The *Daubert* standard is flexible, true, but ultimately the question for the trial court is whether the proffered expert, subject to cross examination, is more likely to be helpful or misleading to the jury's understanding of the evidence.

### A.  Dr. Hawley's calculation of post-retirement losses are justifiably based on the information provided.

Scott Ballock would be obliged to retire at age 57, this is F.B.I. policy. Scott Ballock provided Dr. Hawley anecdotal information in this respect, information which agents are well positioned to know.  Defense counsel is unimpressed, but Dr. Hawley need not be a vocational evaluator to consider such information. Scott Ballock acquired reliable information on this issue in the course of his many years with the F.B.I., knowing agents who have retired before him and planning his own retirement.  The motion simply overstates the difficulty of acquiring the information.

### B.      The availability pay premium.

The deposition demonstrated that Dr. Hawley was aware of the 25% availability pay premium. He was not experienced in its application and relied on Scott Ballock's information concerning his qualification for the premium. Scott Ballock was deposed on April 29, 2019 and

could have been questioned as to this aspect of his damages. He clearly intended to remain with the F.B.I. until retirement and testified to this in support of his pleadings.

Scott Ballock will testify at trial. He will address his qualification as a criminal investigator for the 25% availability pay premium. If he does not meet the statutory criteria, then Dr. Hawley will not address that aspect of the claim. Barring Dr. Hawley as a witness on the basis of this issue is a remedy grossly out of proportion to the potential evidentiary defect.

### C. There is no reason Dr. Hawley had to take the divorce decree into account.

The motion suggests the divorce decree had to be accounted for in the calculation of Scott Ballock's diminished pension owing to his termination. If his appeal is successful, the loss will be repaid and the issue will be moot for purposes of the jury trial. Otherwise, the jury may consider his claim. Should Scott Ballock prevail, the award will be subject to the jurisdiction of the family court decree. If the jury makes him whole, then the decree will govern whatever rights Ellen Costlow and Scott Ballock have to the pension. There is no need or logical sense of justice served by having Dr. Hawley reduce his calculations of the loss based on the contents of the divorce decree. Reducing the claim would simply hurt both Scott Ballock and Ellen Costlow in such an instance. As stated previously, it is analogous to taxes, the claim for lost earnings is not reduced for taxes before the jury hears the figures, nor does the jury deduct taxes. This argument simply lacks merit.

## V.   CONCLUSION

Dr. Hawley is an experienced expert witness whose body of opinion has largely gone unchallenged. He will be helpful to the jury's understanding of Scott Ballock's economic losses. No challenge to Dr. Hawley's qualifications has been attempted and to the extent two issues have

been identified as subject to challenge for lack of an adequate predicate in the evidence, the just approach to resolving them is to defer rulings until the evidence is adduced at trial. Wholesale exclusion of the witness is uncalled for and would work an undue prejudice to the Plaintiff's case at trial.

As to the post-retirement income issue and Scott Ballock's qualification for the availability pay premium, these discrete issues are easily flagged for rulings at trial, they do not merit excluding the Plaintiff's damages expert witness all together.

This responsive memorandum is respectfully submitted this 18th day of September, 2019.

*/S/ Charles J. Crooks, Esq.*
Charles J. Crooks, Esq.
WVSB # 4633
Crooks Law Firm PLLC
244 Pleasant Street
Morgantown, WV 26505
charles@crookslawfirm.org
(304) 282-1039
***Counsel for Plaintiff,***
***Scott T. Ballock***

7

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**                                   Case No.:      1:17-CV-52

            Plaintiff,

v.                                                                JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**STATE TROOPER RONNIE M. GASKINS,**
and
**STATE TROOPER CHRIS BERRY,**

            Defendants.

### CERTIFICATE OF SERVICE

I, Charles J. Crooks, Esq., local counsel for the Plaintiff, Scott T. Ballock, hereby certify

that on the 18th day of September, 2019, I filed the foregoing **"PLAINTIFF'S**

**MEMORANDUM IN RESPONSE TO TROOPER DEFENDANTS' MOTION TO**

**EXCLUDE CLIFFORD HAWLEY"** with the Clerk of the Court using the CM/ECF system,

which will send notification of the filing to the following:

P. Todd Phillips, Esq.
P. Todd Phillips & Associates
235 High Street
Suite 322
Morgantown, WV 26505
ToddPhillips.Law@gmail.com
**Counsel for Defendant,**
**Ellen Ruth Costlow**

And

Mark G. Jeffries (WV Bar No. 11618)
Steptoe & Johnson PLLC
400 White Oaks Blvd.
Bridgeport, WV 26330-4500
Mark.jeffries@steptoe-johnson.com

Monté L. Williams (WV Bar No. 9526)
Steptoe & Johnson PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
Monte.williams@steptoe-johnson.com
**Co-counsel for Defendants State Trooper**
**Michael Kief, State Trooper Ronnie M.**
**Gaskins and State Trooper Chris Berry**

/S/ Charles J. Crooks, Esq.

8