UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

       Plaintiff,

v.

                                      **CIVIL ACTION NO.:  1:17-CV-52**
                                        **Honorable Irene M. Keeley**

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

       Defendants.

**DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER
RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY'S REPLY TO
PLAINTIFF'S MEMORANDUM IN RESPONSE TO
<u>MOTION TO EXCLUDE CLIFFORD B. HAWLEY AS AN EXPERT WITNESS</u>**

        In his response in opposition to Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry's (collectively, the "State Police Defendants") motion to exclude the opinions of his economics expert, Plaintiff Scott T. Ballock understates the flaws in his expert's opinions as much as his expert overstates Mr. Ballock's economic losses. Mr. Ballock argues that, in moving to exclude Dr. Hawley's opinions on Mr. Ballock's alleged lost earnings and lost pension benefits, the State Police Defendants only challenge "two discrete aspects of the claim for damages." Resp. Br. 1 [ECF No. 135]. Mr. Ballock claims that "the bulk of Dr. Hawley's reported opinions are unchallenged in the motion." *Id.* at 3. Yet, Mr. Ballock's lost earnings and lost pension benefits are the *only* two aspects of Mr. Ballock's claimed damages on which Dr. Hawley offered an opinion. Hawley Rept. 4-5 [ECF No. 134-2]. To be clear, then, the State Police Defendants challenge the *entirety* of Dr. Hawley's report and his related testimony that is to be offered at trial.

In his response brief, Mr. Ballock fails to distinguish any of the on-point authority offered in support of the State Police Defendants' motion and also fails to offer any authority in support of his position. Rather, Mr. Ballock argues that the deficiencies in Dr. Hawley's report and opinions should nevertheless be presented to the jury, and the State Police Defendants can attempt to undermine his opinions through cross examination. Resp. Br. 4-5. Dr. Hawley's opinions, however, are so lacking in a reliable foundation and are based upon so many unsupported assumptions—resulting in an error of more than $1 million—that the proper course is for the Court to exclude Dr. Hawley as an expert witness.

I.    **Dr. Hawley Improperly Inflated Plaintiff's Lost Earnings by Relying On a Hypothetical Post-Retirement Position That Was Based On Nothing More Than Plaintiff's Unsupported Statement.**

In his response brief, Mr. Ballock makes no attempt to distinguish the authority cited by the State Police Defendants, which holds that an economics expert may not base his lost earnings calculations on income that is not supported by the record, including income that is only attributable to a plaintiff's belief. Instead, Mr. Ballock simply argues that Dr. Hawley need not be a vocational evaluator to consider such unsupported information provided by Mr. Ballock. Resp. Br. 5. While it is true that Dr. Hawley does not need to be a vocational expert—and is not a vocational expert—in order to render an opinion on the present value of Mr. Ballock's alleged lost wages, Dr. Hawley does have to base his opinion on a reliable foundation. And he did not.

Mr. Ballock ignores the ample authority cited by the State Police Defendants in their motion, all of which holds that an economics expert cannot base a lost earnings calculation on vocational outcomes—such as Mr. Ballock's assumed post-retirement employment—that are not supported by the record. *See* Mot. to Exclude 6-7. Nor did Mr. Ballock cite a single authority that

supports his position that his own "anecdotal information" on post-retirement employment by FBI agents is a proper foundation for Dr. Hawley's opinion.

Perhaps the authority cited in the State Police Defendants' motion that is most directly on-point to the facts of this case is *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993). *Joy* involved a wrongful death action brought by the families of those killed in a helicopter crash against the manufacturer of the helicopter's engine. *Id.* at 551-52. After a jury returned a verdict for the plaintiffs, the defendant appealed, in part, on the ground that the trial court failed to exclude speculative expert testimony concerning the earning capacity of the decedent of one of the plaintiffs. *Id.* at 552.

The decedent in *Joy* made slightly less than $15,000 operating a toy store in the year before he died. *Id.* at 568. Nonetheless, the plaintiff's economics expert presented a range of earnings estimates, ranging from yearly incomes of approximately $36,000 to approximately $98,500, based on assumptions that included that the decedent might go into consulting or wholesaling. *Id.* The economics expert based his conclusion that the decedent might have moved into consulting upon a conversation with the decedent's wife, and he based his conclusion that the decedent might have moved into wholesaling on the fact that the decedent occasionally received discounts for pooling his inventory purchases with other toy stores. *Id.*

On appeal, the D.C. Circuit agreed with the defendant that the district court should have excluded the expert's testimony because it was solely based upon guesswork, speculation, and conjecture. *Id.* The court found that the economics expert in *Joy*, as Dr. Hawley does for Mr. Ballock here, "simply made up new lines of work" for the decedent. *Id.* at 569. Similar to Mr. Ballock's argument in his response brief, the decedent in *Joy* argued that her testimony that she discussed with her late husband the possibility of moving into consulting was sufficient to

3

provide a basis for her expert's opinion. *Id.* The appeals court disagreed, stating that "it should be obvious" that the wife's statement was not sufficient to lift her expert's projections "out of the realm of pure conjecture." *Id.*

An expert witness "is not permitted to simply rely on a plaintiff's own speculative belief regarding [his] future earnings capabilities." *Jerome v. Watersports Adventure Rentals & Equip., Inc.*, Civil Action No. 2009-02, 2013 WL 3663059, at *11 (D.V.I. July 11, 2013). In *Jerome*, the plaintiff's economics expert calculated her post-injury earnings on the assumption that she would work in retail, making twice the minimum wage in her home state. *Id.* at *10. The expert conceded in his deposition, as Dr. Hawley did, that these assumptions were not based on any vocational assessment but were simply based on the plaintiff's own thoughts regarding her future employment. *Id.* at *11. The expert's opinions ignored the fact that since the accident at issue, the plaintiff had worked in fields other than retail, as well as the amount she had actually earned. *Id.* In granting the defendant's motion to exclude the economics expert, the court noted, "An expert's opinion . . . requires a proper factual foundation, which such speculation does not provide." *Id.*; *see also Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95 CIV.8136 (RCC), 2001 WL 1602976, at *4 (S.D.N.Y. Dec. 14, 2001) ("Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation[,] are not reasonable.")

Here, neither Dr. Hawley in his report and deposition, nor Mr. Ballock in his assertion that retired FBI agents routinely get post-retirement jobs as contractors making low six figure income, specified what job Mr. Ballock might obtain after retirement, for whom, where, or exactly how much Mr. Ballock might make. Hawley Dep. 20:5-22:6, attached as "Exhibit 1"; e-mail from Scott Ballock to Clifford Hawley & Charles Crooks (Mar. 14, 2019, 10:02 EST) [ECF

10281567

No. 134-4]. Furthermore, Dr. Hawley ignored evidence in the record that Mr. Ballock, as a former FBI agent with over 20 years of experience and a master's degree in criminal justice, has *not* obtained employment as a government contractor or with a state or local government making anywhere near $100,000 per year. Ex. 1, Hawley Dep. 20:16-17. In fact, Mr. Ballock is making only about $57,000 per year as a manager for a Kroger's grocery store. Ballock Dep. 225:23-226:24, attached as "Exhibit 2"; Hawley Rep. 2 [ECF No. 134-2][1]; *See Jerome*, 2013 WL 3663059, at *11 (excluding economics expert's testimony when both the type of work plaintiff did and the amount of money actually earned post-injury belied the expert's assumptions).

Dr. Hawley's assumption that Mr. Ballock would obtain employment after retiring from the FBI, making $100,000 per year is unsupported by the record. In fact, this assumption is directly contradicted by the fact that Mr. Ballock is not making anywhere near $100,000 after leaving employment with the FBI. But this assumption grossly inflates Mr. Ballock's alleged loss of earnings. Because Dr. Hawley's assumption of Mr. Ballock's post-retirement income has no reliable basis but is instead based on Mr. Ballock's unsupported, speculative belief, Dr. Hawley's calculation of Mr. Ballock's lost future earnings is unreliable and should be excluded.

II. **Dr. Hawley Improperly Inflated Plaintiff's Lost Earnings by Incorrectly Adding a 25% Mark-up to the Appropriate Federal Pay Scales.**

Besides inflating Mr. Ballock's alleged lost earnings by creating a hypothetical post-retirement job, Dr. Hawley also inflated Mr. Ballock's lost earnings by improperly increasing the appropriate GS-pay scale by 25%, supposedly because Mr. Ballock was entitled to "availability pay." In his response brief, Mr. Ballock admits that Dr. Hawley is "not experienced in its application." Resp. Br. 5. Mr. Ballock sees no problem with his expert's lack of knowledge about

---

[1] Dr. Hawley denied in his deposition that the reason that Mr. Ballock has not obtained employment making $100,000 per year following his departure from the FBI is because the FBI fired Mr. Ballock. Ex. 1, Hawley Dep. 21:2-4.

the application of availability pay, however, because Mr. Ballock can testify about his eligibility for the pay. *Id.* at 6.

Mr. Ballock identifies no authority that supports his contention that he is qualified to testify about his entitlement to availability pay. Simply because Mr. Ballock claims to have received availability pay at some point in his career, for some amount, does not qualify him to testify on an individual's eligibility for the pay and on the nuances of the applicable federal law.

The fact is, Mr. Ballock did *not* receive 125% of the applicable GS-scale pay for the last three full years of his employment with the FBI. Mot. to Exclude 9 [ECF No. 134]. Dr. Hawley's application of a flat 25% mark-up of the applicable GS scale resulted in Dr. Hawley's calculations of Mr. Ballock's assumed income for the year of his discharge—when Mr. Ballock worked nine out of twelve months—to be "significantly more" than the average of his last three years prior to discharge. Ex. 1, Hawley Dep. 39:4-41:4.

Mr. Ballock's assertion that he was entitled to 125% of the applicable GS-pay scale is not reliable. To the contrary, his assertion is contradicted by other data that was available to Dr. Hawley, such as Mr. Ballock's actual earnings prior to discharge and federal statutes applying the availability pay premium. Dr. Hawley based his calculations on Mr. Ballock's unsupported assurance, rather than available records. "This is not the type of shortcut to be expected from an economist with [forty] years experience." *Supply & Bldg. Co.*, 2001 WL 1602976, at *4 (citing *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)). This additional unsupported, speculative assumption further inflates Mr. Ballock's claimed economic losses and, consequently, provides further reason to exclude Dr. Hawley's opinions.

10281567

III.   **Dr. Hawley Improperly Inflated Plaintiff's Lost Pension Benefits by Failing to Account for the Divorce Decree, Which Awarded Approximately Half of Plaintiff's Pension to Ms. Costlow.**

Mr. Ballock takes issue with the State Police Defendants' argument that Dr. Hawley improperly failed to take into consideration Mr. Ballock's divorce, which awarded approximately half of his pension benefits to Ms. Costlow, characterizing the argument as "baseless" and claiming it was "difficult to believe" it was being offered. Resp. Br. 4. Mr. Ballock argues that Dr. Hawley had no reason to take the divorce decree into account when preparing his report. *Id.* at 6. The evidence of record, as well as Dr. Hawley's own testimony and report, contradict Mr. Ballock's position.

Mr. Ballock argues that Dr. Hawley had no need to reduce Mr. Ballock's assumed pension losses by any amount that would have been awarded to Ms. Costlow under the divorce decree, claiming that the divorce decree itself will govern how much of any verdict Mr. Ballock might receive will be provided to Ms. Costlow. *Id.* Mr. Ballock argues that the situation is analogous to taxes because a jury does not reduce a plaintiff's verdict to account for taxes; that adjustment is left to the IRS. *Id.* at 3-4.

Mr. Ballock's analogy is flawed. The IRS deducts taxes from a prevailing plaintiff's entire award. Here, presumably, if the jury were to award Mr. Ballock damages for his economic losses, such damages would simply be included in the total amount of compensatory damages, without delineating how much was attributable to his claimed reduced pension.

Moreover, even if the jury attributed some portion of a total award of compensatory damages to Mr. Ballock's claimed pension losses, the award would not actually be paid into his pension; instead, the award would be compensatory damages calculated based upon an estimate

7

of what Mr. Ballock's pension would have been absent termination and what it is given the fact of his termination.

The divorce decree between Mr. Ballock and Ms. Costlow awarded Ms. Costlow 50% of the marital portion of Mr. Ballock's "TSP and FERS retirement accounts," with the marital portion defined as "all Plan/Account benefits arising from contributions made *from the date of the parties' marriage on June 8, 1991 through the date of the parties' separation on September 14, 2012*, including subsequent gains or losses related to market performance." Divorce Decree at 3 [ECF 134-6] (emphasis added). Even though the Family Court awarded Ms. Costlow a portion of Mr. Ballock's federal pension, she has no claim to any portion of a post-divorce jury award calculated on the amount of his reduction in pension as a result of his discharge. Any jury verdict Mr. Ballock receives is not, and will not be, part of his "TSP and FERS retirement accounts." There is simply no mechanism by which the Family Court would have jurisdiction to reduce any jury award in this matter by the amount of reduced pension benefits borne by Ms. Costlow.

More fundamentally, Dr. Hawley himself disagrees with Mr. Ballock's argument. Dr. Hawley's report included his calculation of what "Scott Ballock could expect" as a pension absent termination and with termination. Hawley Rep. 4 [ECF No. 134-2]. Dr. Hawley then calculated both figures "out to life expectancy," which presumably means Mr. Ballock's life expectancy, not Ms. Costlow's. *Id.* Thus, Dr. Hawley's report purports to express the amounts that *Mr. Ballock himself would have received* in pension benefits, and the difference in those amounts.

The reason Dr. Hawley did not take the divorce decree into account in his report was not, as Mr. Ballock argues, because there was no need to. He did not take the divorce into account

8

simply because he did not review the divorce decree, and he was not sure when Mr. Ballock and Ms. Costlow divorced. Ex. 1, Hawley Dep. 34:18-24, 37:10-24. Nevertheless, Dr. Hawley agrees that this calculation "needs to be done," and he has done it before. *Id.* at 36:20-24.

Contrary to Mr. Ballock's argument, Dr. Hawley did need to account for the Family Court's award of approximately half of Mr. Ballock's pension benefits to Ms. Costlow when determining Mr. Ballock's alleged economic losses. He failed to do so simply because he did not review the divorce decree and was therefore not sure when the couple divorced. This fact further demonstrates the unreliability of Dr. Hawley's opinions and introduces an additional six-figure error to his damages calculations. The Court should therefore exclude Dr. Hawley's report and testimony.

## IV. Dr. Hawley's Opinions Should Be Excluded Because They Are So Unreliable That the Court Should Not Permit Them to Reach a Jury.

Mr. Ballock argues that whatever errors are contained in Dr. Hawley's opinions are "jury arguments" to be made by the State Police Defendants' counsel through cross examination and are not sufficient to exclude Dr. Hawley's opinions altogether. Resp. Br. 4-5. Mr. Ballock is wrong. Dr. Hawley's opinions are so flawed—to the tune of $1 million, approximately half the amount of his total damages calculation—that the Court, in its role as gatekeeper, should not permit those opinions to reach the jury.

Mr. Ballock seems to argue that because the State Police Defendants have not challenged Dr. Hawley's accounting methodologies or his qualifications as an economics expert, but instead base their motion on the argument that his opinions do not have an adequate basis in fact, exclusion is improper. *Id.* at 4. The Fourth Circuit has expressly rejected this argument. "The court may not abdicate its responsibility to ensure that only properly admitted evidence is considered by the jury. Expert opinion evidence based on assumptions not supported by the

9

record *should be excluded.*" *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 143 (4th Cir. 1997) (emphasis added).

Other courts have reached the same conclusion. "Where lost future earnings are at issue, an expert's testimony *should be excluded* as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (emphasis added). When an expert's opinion is not accompanied by a sufficient factual foundation, it is inadmissible under Federal Rule of Evidence 702, and a trial court abuses its discretion to permit an expert to testify regarding lost earnings based on such speculative assumptions. *Id.* at 22. "[A] lost future earnings expert who renders an opinion about a plaintiff's future economic harm based on economic assumptions not present in the plaintiff's case cannot be said to 'assist the trier of fact,' as Rule 702 requires." *Elcock v. Kmart Corp.*, 233 F.3d 734, 756 n.13 (3d. Cir. 2000).

Furthermore, given the great weight a lay jury is likely to give a witness identified as an "expert," particularly in matters as complicated as lost future earnings, to permit such a witness to offer opinions unsupported by a sufficient factual foundation would risk misleading the jury and confusing the issues, the dangers Rule 403 is designed to prevent. *Id.*; *Jerome*, 2013 3663059, at *11 n.8. Dr. Hawley's opinions are based on mere speculation and are so lacking in the foundational facts necessary to support them, the opportunity to cross examine Dr. Hawley is insufficient. The Court should exercise its gatekeeper role and exclude his opinions from the trial of this matter.

## V.     Conclusion

Dr. Hawley's opinions are rife with inaccuracies and assumptions that he is not qualified to make and that have no factual basis in the record. His errors more than double Mr. Ballock's

claimed economic damages, an error of approximately $1 million. Therefore, the Court should exclude his report and testimony from the trial of this matter.

WHEREFORE, for all the foregoing reasons, as well as those stated in their Motion, Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry respectfully request that the Court GRANT their Motion and enter an Order excluding the report and testimony of Dr. Clifford B. Hawley from being offered in this case.

Dated this 25th day of September 2019.

Respectfully submitted,


*/s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

10281567

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

        Plaintiff,

v.                                                                          CIVIL ACTION NO.:  1:17-CV-52
                                                                  Honorable Irene M. Keeley

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER
CHRIS BERRY,

        Defendants.

## CERTIFICATE OF SERVICE

        I hereby certify that on the 25th day of September 2019, I filed the foregoing

"*Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper*

*Chris Berry's Reply to Plaintiff's Memorandum in Response to Motion to Exclude Clifford B.*

*Hawley as an Expert Witness*" with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following:

        Charles J. Crooks, Esq.
        CROOKS LAW FIRM PLLC
        244 Pleasant Street
        Morgantown, WV 26505

        *Counsel for Plaintiff*

        P. Todd Phillips, Esq.
        LYONS PHILLIPS LEGAL GROUP PLLC
        141 Walnut Street
        Morgantown, WV 26505

        *Counsel for Defendant Ellen Ruth Costlow*

10281567

*s/  Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry*

8456804.5