## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**

        Plaintiff,                                Case No.: 1:17-CV-52

v.                                            JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**

        Defendants.

### PLAINTIFF'S RESPONSE TO DEFENDANT KIEF'S
### SECOND MOTION IN LIMINE

Pursuant to order (Doc 88), the Plaintiff responds to the second motion in limine filed on behalf of Sgt. Kief:

## I.     INTRODUCTION

The veracity of the allegations Sgt. Kief and Ellen Costlow shared with the FBI about Scott Ballock are material to Scott Ballock's causes of action. Dr. Cooper-Lehki is a disinterested witness of exceptional credentials in helping the jury understand the ill motive and deceptive methods Ellen Costlow employed to try and deny Scott Ballock his children and his career. Her investigation explains the nature of Scott Ballock's communications that were used against him by Sgt. Kief and Ellen Costlow and puts the lie to the worst allegations they shared with the FBI.

## II.     BACKGROUND

Christi L. Cooper-Lehki, D.O., is a forensic psychiatrist special interest in Battered Woman Syndrome, was appointed at the request of Ellen Ruth Costlow. The doctor evaluated Ms. Costlow,

Scott Ballock and their children between March and August of 2013. She testified and wrote a report.

The fact Dr. Cooper-Lehki did not treat Scott Ballock or Ellen Costlow is of no moment. Her report shows she performed a forensic evaluation over many months and provided her recommendation to the family court about child custody as well as her findings on the allegations of abuse leveled against Scott Ballock by Ellen Costlow. These allegations were only provided to the FBI because Sgt. Kief notified them of the planned arrest of Scott Ballock and the reasons for that arrest. But for Sgt. Kief's initiative the FBI would never have become involved.

Sgt. Kief denies ever reading Dr. Cooper-Lehki's report. He relied on the electronic communications exchanged by Scott Ballock and Ellen Costlow to prosecute Mr. Ballock. Had he performed an adequate investigation, simply questioned Ellen Costlow in some meaningful way, he would have understood that Dr. Cooper-Lehki had already finished a many-month-long investigation, including a review of the emails at issue. He would also have understood that the communications were subject to review and injunctive action by the family court. More important still, he would have understood he was in collaboration with a person diagnosed with Borderline Personality Disorder, a person who routinely manifested sociopathic traits, including lying and otherwise deceiving people to have her way.  He would also have learned that Ellen Costlow was highly motivated to harm Scott Ballock, as she in fact did, with Sgt. Kief's assistance. Had Sgt. Kief inquired rather than hasten to arrest Scott Ballock, his findings and training would have told him to leave the whole matter in the hands of the family court, guided by Dr. Cooper-Lehki's forensic investigation. Sgt. Kief's willful refusal to follow State Police policies and procedures

obliged him to inquire and follow up. He was a veteran officer who well knew he was obliged to speak with all knowledgeable witness, especially the accused if possible. He admitted this was not done. Sgt. Kief's duty as a law enforcement officer set a higher standard than to rely wholesale on the word of Ellen Costlow.

Sgt. Kief had many options on how to proceed with a complaint that arose from family court proceedings. After inquiring of Trooper Chris Berry about his relationship with Ellen Costlow, Sgt. Kief gave her a call and so began a relationship that spanned some four years and cost Scott Ballock his career with the FBI.

Yes, the family court declined to allow Scott Ballock to use the report Dr. Cooper-Lehki submitted. In fact, an assistant prosecutor appeared at the hearing to persuade Judge Minor to that decision. The report was exculpatory, and it was inappropriate to deny him the use of it, no doubt contributing to the decision to later dismiss the charges once it all came to the attention of the elected prosecutor.

The Office of Professional Responsibility (OPR) has shifted positions on the termination decision, but the letter of March 5, 2019 clearly and explicitly identifies charges of abuse related by Ellen Costlow to the FBI. Her allegations of physical and emotional abuse were false, defamatory and slanderous. Dr. Cooper-Lehki's investigation bore that out.

## III.     STANDARD OF DECISION

There is no dispute in this respect. The Court has broad discretion, more than enough to allow Scott Ballock to present his case without unfair prejudice or confusion.

3

## IV.    ARGUMENT

In its report, the OPR rejected Dr. Cooper-Lehki's findings, saying she did not do a thorough enough investigation. The OPR's characterization is not binding on the Disciplinary Review Board (DRB) and Dr. Cooper-Lehki's report details an impressive number of witnesses, materials and time spent investigating the facts. Based on her testimony in family court, Scott Ballock anticipates she will testify this was the most thorough-going investigation she ever performed. Moreover, it is difficult to understand how the OPR could discount the psychiatric expertise Dr. Cooper-Lehki brought to her work.

The OPR's flawed view is an example of why the Plaintiff's cause of action for interference with a contractual relationship accrued when the FBI was notified of the criminal charges, not once the OPR found against Scott Ballock. Indeed, had the appeal been successfully concluded before the trial of this matter, Scott Ballock would still be entitled to proceed. Putting him through the process of the administrative action was damage per se.

The jury is not bound by the OPR's assessment of Dr. Cooper-Lehki's work and findings. It would be unfairly prejudicial if the jury were to be left only with the findings of the administrative prosecutor. The report authored by Dr. Cooper-Lehki was submitted and reviewed by the OPR and the DRB. To allow the defense to argue that the OPR has the final word on Dr. Cooper-Lehki's work would be manifestly unjust.

As to the electronic communications, texts and emails, Dr. Cooper-Lehki will testify that she reviewed every single one. In family court she said she thought they evidenced co-dependent

4

features and were remarkably restrained given the extreme harms Ellen Costlow was visiting upon the children.

Credibility is always relevant. In her deposition, the Defendant Costlow said she never told Christi Cooper-Lehki that Scott Ballock forced or coerced her into having extramarital sex with other men. Yet, this is what she told the FBI as well as Dr. Cooper-Lehki. In fact, this was part of Ellen Costlow's falsified Battered Woman Syndrome claim against Scott Ballock.

In her deposition, Defendant Costlow said Dr. Cooper-Lehki diagnosed her as suffering only from anxiety associated with the divorce and said this was normal. Dr. Cooper-Lehki will refute this in significant respects. Likewise, in her deposition, Ms. Costlow claimed to have never known that Dr. Cooper-Lehki diagnosed her with Borderline Personality Disorder or Paraphilia. This is not true, either.

In her deposition, Costlow said she had no idea why medical professionals at WVU Hospital and Chestnut Ridge would have written that Costlow claimed her son tried to physically harm her. Costlow claimed that all she told hospital personally was that she was worried because he was so sad, and she was afraid he might harm himself. Dr. Cooper-Lehki will dispute this. Ms. Costlow also testified in deposition that she never coached her daughter to lie to authorities and that they must have been told by Scott Ballock to tell this lie. Dr. Cooper-Lehki will refute this as well. These are examples of sociopathic behavior, ultimately intended to harm Scott Ballock.

As to the audio recordings recovered from Kenny Ice, Jr.'s cellphone, defense counsel questioned whether they are authentic. Dr. Cooper-Lehki listened to those and she discussed them

with both Ellen Costlow and Kenny Ice, Jr. who admitted they were authentic and described the events they evidenced.

The Defendant, Kief argues that Dr. Cooper-Lehki was not timely disclosed as an expert. First, she is not being sponsored as a retained expert. Her role in the case has been known from the start of discovery. She was included in the Plaintiff's initial discovery disclosures served October 6, 2017. Likewise, her report has been available since the United States Magistrate Judge was presiding. She was available for anyone to depose. There is no basis for arguing surprise or rule violations.

## V. CONCLUSION

Dr. Cooper-Lehki nor Plaintiff's counsel has any desire to mislead or confuse the jury. This witness poses no credible risk on that account. To the contrary, she can assist the jury in understanding the evidence cited by the OPR in making its decision to terminate Scott Ballock.

Moreover, should she testify in the trial of this case, Dr. Cooper-Lehki's testimony could be offered to the DRB in the administrative litigation, as could the testimonies of Ellen Costlow and Sgt. Kief.

/S/ *Charles J. Crooks*
Charles J. Crooks, Esquire
Crooks Law Firm PLLC
244 Pleasant Street
Morgantown, WV 26505
***Counsel for Plaintiff***
WV State Bar # 4633
Phone (304) 282-1039

Charles@crookslawfirm.org

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT T. BALLOCK**                              Case No.:      1:17-CV-52

      Plaintiff,

v.                                                              JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW**,
**STATE TROOPER MICHAEL KIEF**,

      Defendants.

<u>**CERTIFICATE OF SERVICE**</u>

I, Charles J. Crooks, Esq., counsel for the Plaintiff, Scott T. Ballock, hereby certify that

on the 12th day of December 2019, I delivered the foregoing "**PLAINTIFF'S RESPONSE TO**

**DEFENDANT KIEF'S SECOND MOTION IN LIMINE,**" with the Clerk of the Court and

served the same by email upon the following:

P. Todd Phillips, Esq.
P. Todd Phillips & Associates
235 High Street
Suite 322
Morgantown, WV 26505
ToddPhillips.law@gmail.com

**Counsel for Defendant,**
**Ellen Ruth Costlow**

And

Mark G. Jeffries (WV Bar No. 11618)
Steptoe & Johnson PLLC
400 White Oaks Blvd.
Bridgeport, WV 26330-4500
Mark.jeffries@steptoe-johnson.com

8

Monté L. Williams (WV Bar No. 9526)
Steptoe & Johnson PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
Monte.williams@steptoe-johnson.com

**Co-counsel for Defendants State Trooper
Michael Kief**

/s/ *Charles J. Crooks*