IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

                    Plaintiff,

v.                                      CIVIL ACTION NO. 1:17CV52
                                               (Judge Keeley)

ELLEN RUTH COSTLOW AND
STATE TROOPER MICHAEL KIEF

                    Defendants.


MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

According to the plaintiff, Scott T. Ballock ("Ballock"), the Federal Bureau of Investigation ("FBI") terminated his employment as a consequence of his arrest by the West Virginia State Police in 2013. Characterizing the events leading to his termination as an elaborate conspiracy, Ballock filed this lawsuit under 42 U.S.C. § 1983 and West Virginia state law against his former spouse, Ellen Ruth Costlow ("Costlow"), and three (3) West Virginia State Troopers, Michael Kief ("Kief"), Ronnie M. Gaskins ("Gaskins"), and Chris Berry ("Berry").[1] Pending before the Court are motions for summary judgment filed by Kief and Costlow, the remaining defendants in the case (Dkt. Nos. 114; 116). For the reasons that

_____

[1] Berry was dismissed from the case on October 11, 2019 and Gaskins was dismissed from the case on December 6, 2019 (Dkt. Nos. 139, 146).

**BALLOCK V. COSTLOW, ET AL.**                                    **1:17CV52**

### MEMORANDUM OPINION AND ORDER GRANTING KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114], GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

follow, the Court **GRANTS** Kief's motion, **GRANTS IN PART** Costlow's motion, and **DISMISSES** the federal claims with prejudice.

### I. BACKGROUND

As it must, the Court recites the facts in the light most favorable to the non-moving party, Ballock. See Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F3d 846, 850 (4th Cir. 2000).

**A.   Family Court Proceedings and Criminal Charges**

After a tumultuous marriage, Costlow filed for divorce from Ballock in October, 2012 (Dkt. No. 116-1 at 2). Almost a year later, in August, 2013, Ballock's father, Tom Ballock, called Kief to accuse Costlow of having an affair with Berry (Dkt. No. 116-1 at 6). As part of his investigation into the allegation, Kief questioned Costlow, who then filed a criminal complaint against Ballock, alleging harassment. Id. at 7, 8. Kief assigned Gaskins to investigate that complaint.

Based on his review of 3,000 email and text messages between Ballock and Costlow contained on a DVD-R provided to him by Costlow, Gaskins submitted a report and the DVD-R to Monongalia County Assistant Prosecuting Attorney Cindy Scott ("Assistant Prosecuting Attorney Scott") for her consideration. After her

2

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

reviewing the documents, Scott advised Gaskins to charged Ballock
with Harassment and Harassment by Electronic Device (Dkt. Nos. 116-
1 at 7, 116-6 through 116-16). See also W. Va. Code §§ 61-2-9a(b),
61-3C-14a(a)(2).

Thereafter, on September 12, 2013, Monongalia County
Magistrate Sandy Holepit ("Magistrate Holepit") received Gaskins's
complaint and, finding probable cause, issued two warrants for
Ballock's arrest. The West Virginia State Police ("State Police")
arrested Ballock the next day outside the Monongalia County Family
Court ("Family Court") courtroom, during a recess in a child
custody hearing involving Ballock and Costlow.(Dkt. Nos. 49 at 5;
116-20).

Ballock contends that the investigation and arrest were part
of a coordinated effort between Kief and Costlow to "benefit
Costlow in the Family Court proceedings and to damage and harm
[him] personally." (Dkt. Nos. 49 at 5). In support, he relies on a
comment made by the Family Court judge that Ballock's arrest may
have been the result of an effort to influence him (Dkt. No. 114-
26). Ballock asserts that, before the hearing, Costlow had emailed
Gaskins providing the date and time of the custody hearing (Dkt.

3

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

No. 114-26). Kief contends that the location of the arrest was based solely on the safety concerns of the State Police officers who knew that Ballock, as an FBI agent otherwise authorized to carry a firearm, would not be armed inside the Monongalia County courthouse (Dkt. No. 114-19 at 10).

On May 9, 2014, the Family Court entered a final divorce decree that included "permanent injunctive relief," enjoining Ballock and Costlow from "contact[ing] any employer regarding the other party in any fashion whatsoever" (Dkt. No. 117-1) Attached to the decree was a handwritten "Mutual No Contact Order" that stated, in pertinent part:

> She is not to communicate with SB's Employer FBI, ever
> He is not to contact/communicate with EB's employer, ever, present or future
> Email & Text only as to kids
> Nothing will be posted on the internet by SB or TB

Id. (formatting in original).

Nearly two years after entry of this divorce decree, in April, 2016, the Monongalia County Prosecuting Attorney moved for dismissal of the criminal charges against Ballock (Dkt. No. 49 at 6). As part of the motion, she included a written acknowledgment by Ballock (1) that probable cause had existed for his arrest, and (2)

4

BALLOCK V. COSTLOW, ET AL.                        1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

that he had continued to communicate with Costlow long after she
directed him to stop (Dkt. No. 114-21 at 3).[2] Also as part of the
dismissal of the harassment charges, Costlow agreed not to
communicate "any disparaging information or commentary to Scott
Ballock's employer or place of employment." Id. Finally, both
Ballock and Costlow agreed that the Family Court would retain
jurisdiction over any future family issues. Ballock's criminal
charges were expunged on July 13, 2016 (Dkt. No. 49 at 7).

Ballock now argues that the dismissal of the criminal charges
evinces the malign nature of Kief's motive. He notes the apparent
close contact between Kief and Costlow from the time the criminal
case against him was filed until his termination by the FBI. He
further points to the fact that Kief and Costlow exchanged emails
on topics ranging from evidence of Ballock's defense to suggested
topics of discussion for Kief when he met with the FBI (Dkt. Nos.
114-27; 114-29).

---

[2] Ballock now disclaims the truthfulness of his admission that
probable cause existed, but it is telling that, in his deposition,
he admitted that he continued to message Costlow after she asked
him to stop doing so (Dkt. Nos. 114-2 at 10; 124 at 6).

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

B.    FBI Termination

During the State Police investigation, either Kief or Gaskins
notified the FBI that Ballock was under criminal investigation for
harassing his wife (Dkt. Nos. 114-1 at 8; 114-3 at 11). Pointing
out that Gaskins had provided the FBI with a copy of the DVD-R
containing Ballock's email and text messages to Costlow (Dkt. No.
114-1 at 8-9), Ballock contends that this disclosure must have
prompted the FBI to initiate its own investigation into Costlow's
allegations of harassment. (Dkt. Nos. 114-22 at 1). But no matter
what may have prompted the FBI's investigation, it is undisputed
that, as part of that investigation, the FBI interviewed both Kief
and Costlow. (Dkt. Nos. 114-1 at 19; 114-3 at 16-17; 114-24 at 5;
116-1 at 9). According to Ballock's theory of the case, these
interviews establish that Costlow, with the assistance of Kief,
violated the no-contact agreements that were attached to the motion
to dismiss Ballock's criminal charges and also her divorce decree.

After the conclusion of the FBI's investigation, its Office of
Professional Responsibility ("OPR") sent a letter to Ballock on
April 10, 2017, notifying him that, by a preponderance of evidence
standard, it had concluded that he had committed an offense under

6

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

W. Va. Code § 61-3C-14(a) (Dkt. No. 114-22) and was recommending
his dismissal (Dkt. No. 114-22). On September 21, 2017, the FBI's
Assistant Director of Human Resources concurred with the OPR's
recommendation and dismissed Ballock for conduct representing a
willful and intentional violation of FBI rules and regulations
(Dkt. No. 114-19 at 1). Ballock appealed his termination and, in
September, 2017, his case was remanded for re-adjudication (Dkt.
No. 114-25 at 1-2).

Following that re-adjudication, the OPR, on November 15, 2018,
again recommended that Ballock be dismissed. The OPR based its
recommendation on three independent reasons: (1) misuse of a
weapon/safety violation; (2) unprofessional off-duty conduct; and
(3) lack of candor/lying under oath (Dkt. No. 114-24). Ultimately,
on March 5, 2019, the FBI's Acting Assistant Director terminated
Ballock (Dkt. No. 114-25). Relevant to the issues raised here, the
FBI's letter of dismissal specifically states that it did not
consider Ballock's arrest in reaching its decision. Ballock,
however, insists that his arrest triggered a chain of events
ultimately leading to his termination. Id. at 4.

BALLOCK V. COSTLOW, ET AL.                           1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

**C.   The Instant Case**

Ballock alleges that shortly after he filed his pro se complaint on April 6, 2017, naming State Troopers Kief, Gaskins, and Berry as defendants, an unidentified representative of the State Police visited the FBI's Clarksburg, West Virginia Resident Agency to  complain about Ballock's lawsuit (Dkt. No. 49 at 31). While Kief acknowledges that he called the FBI on April 10, 2017, but only after Ballock harassed the State Troopers at the Morgantown State Police detachment (Dkt. No. 114-1 at 11), he adamantly denies either visiting the FBI or filing a complaint against Ballock (Dkt. No. 114-3 at 20, 23). Ballock, for his part, admits that he visited the Morgantown State Police detachment but claims his purpose was not harassment but to serve the State Police defendants in person with his lawsuit. Id.

**D.   Procedural Background**

After Ballock filed his first complaint pro se on April 6, 2017 (Dkt. No. 1), three amendments followed. He was represented by counsel by the time he filed his second amended complaint on October 13, 2017 and third amended complaint on December 20, 2017 (Dkt. Nos. 45, 49). As currently postured, his third amended

8

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

complaint alleges causes of action under both 42 U.S.C. § 1983 and
West Virginia state law (Dkt. No. 49).

Following the conclusion of discovery, the State Trooper
defendants and Costlow filed motions for summary judgment on July
8, 2019 (Dkt. Nos. 114; 116). Ballock also filed a motion for
partial summary judgment as to Costlow and Kief on July 9, 2019
(Dkt. No 117). On October 11, 2019, the Court denied Ballock's
motion (Dkt. No. 139). It also granted in part the State Trooper
defendants' motion and dismissed Berry from the case with prejudice
(Dkt. No. 139). Later, on December 6, 2019, the parties stipulated
to the dismissal, with prejudice, of all claims against Gaskins
(Dkt. No. 146). Thus, only Kief remains as a State Trooper
defendant.

Ballock's claims against Kief include allegations of (1) abuse
of process under § 1983 and state law; (2) malicious prosecution
under § 1983 and state law; (3) conspiracy under § 1983 and state
law; (4) intentional infliction of emotional distress under state
law; and (5) tortious interference with an employment contract

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

under state law. Id. He asserts those same claims against Costlow,[3]

as well as claims of defamation under § 1983 and state law, and

slander and breach of contract of under state law. Id.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions,

documents, electronically stored information, affidavits or

declarations, stipulations . . . , admissions, interrogatory

answers, or other materials" establish that "there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When

ruling on summary judgment, the Court reviews evidence "in the

light most favorable" to the nonmoving party. Providence Square

Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000).

The Court must avoid weighing the evidence or determining its truth

and limit its inquiry solely to a determination of whether genuine

issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249 (1986).

---

[3] Counts Ten and Eleven both allege tortious interference with
an employment contract. Although Count Ten is filed against both
Costlow and Kief, it alleges no facts involving Costlow. Therefore,
the Court will **DISMISS** Count Ten **WITH PREJUDICE** as to Costlow.

10

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

### III. APPLICABLE FEDERAL LAW

Title 42 U.S.C. § 1983 provides a remedy for those who suffer a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by one acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." The essential elements of a § 1983 action are that the defendant (1) was acting under color of state law and (2) deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Clark v. Link, 855 F.2d 156, 161 (4th

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING<br>
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],<br>
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT<br>
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH<br>
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

Cir. 1988) (citing <u>Briley v. California</u>, 564 F.2d 849, 853 (9th Cir. 1977)). The first element of a § 1983 claim requires the conduct allegedly causing the deprivation of rights to be fairly attributable to the state. <u>Conner v. Donnelly</u>, 42 F.3d 220, 223 (4th Cir. 1994). Generally, a public employee acts under color of law "while acting in his official capacity or while exercising his responsibilities pursuant to state law." <u>Id.</u> (quoting <u>West v. Atkins</u>, 487 U.S. 42, 50 (1988)).

Section 1983 is available even if a plaintiff can seek vindication of rights through the enforcement of a state constitution or statute. "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." <u>Zinermon v. Burch</u>, 494 U.S. 113, 124 (1990) (quoting <u>Monroe v. Pape</u>, 365 U.S. 167, 183 (1961)). Accordingly, when a court has original jurisdiction over § 1983 claims, it also has supplemental jurisdiction over "all other claims that are so related . . . that they form part of the same case or controversy." 28 U.S.C. § 1367.

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

**IV. ANALYSIS**

**A.   CLAIMS AGAINST DEFENDANT STATE TROOPER MICHAEL KIEF**

Kief's role in the events at issue include having contacted Costlow after Tom Ballock called him, and also having assigned Gaskins to investigate the harassment complaint filed by Costlow. In addition, he was present when Ballock was arrested at the Family Court, and also attended the hearing on the state's motion to dismiss the criminal charges against Ballock. He communicated with Costlow via email during the pendency of the state criminal charges and also during the FBI's administrative investigation. He was interviewed by the FBI as part of its investigation, and called the FBI after Ballock visited the State Police detachment.

1. Counts One and Four: Abuse of Process under § 1983 and State Law

Kief argues he is entitled to summary judgment on Counts One and Four because Ballock cannot point to a willful or malicious misuse of the criminal complaint and arrest process, and because the statute of limitations has run on Ballock's § 1983 cause of action (Dkt. No. 114-1 at 15-17).

In support of his abuse of process claims, Ballock contends

13

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

three improper purposes motivated Kief's actions: (1) intent to prejudice the Family Court judge; (2) intent to have Ballock terminated by the FBI; and (3) intent to intimidate Ballock's father, who maintained a website containing disparaging remarks about Costlow (Dkt. Nos. 117 at 4-5; 124 at 19). As explained below, even if true, none of these purposes establishes an improper use of the process itself.

      *a. State Abuse of Process Claim*

An abuse of process claim consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process. <u>Williamson v. Harden</u>, 585 S.E.2d 369, 372 (W. Va. 2003) (quoting <u>Preiser v. MacQueen</u>, 352 S.E.2d 22, 28 (W. Va. 1985)). The elements of an abuse of process claim include "first, an ulterior purpose, and second, *a willful act in the use of the process* not proper in the regular conduct of the proceeding." <u>Preiser</u>, 352 S.E.2d at 28 n.8 (emphasis added) (citation omitted). Notably, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." <u>Id.</u>

14

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

The tort of abuse of process focuses on the use of the process itself, and not on the initiation of the process:

> The distinctive nature of an action for abuse of process . . . is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue . . . As to the proof of malice, we have seen that such proof is not necessary as to the issuance, but is necessary to the use, of the process, in order to sustain an action of this character.

S. States Coop. Inc. v. I.S.P. Co., 198 F. Supp. 2d 807, 816 (N.D. W. Va. 2002) (quoting Preiser, 352 S.E.2d 28-29).

The decision in Rami v. Sovereign Bank N.A highlights the difference between improper use and improper initiation of process. Rami v. Sovereign Bank N.A., No. 3:12-CV-87, 2013 WL 412623 (N.D. W. Va. Feb. 1, 2013). The plaintiff in Rami alleged that a bank had fraudulently foreclosed on his property to create a strategically low bid in order to inflate the amount of its deficiency judgment against him. Id. at *2. The court held that the plaintiff had failed to show (1) that the bank had an ulterior purpose in the deficiency judgment proceedings other than the lawful purpose of obtaining the judgment or (2) that the bank did some willful act during the course of the deficiency judgment proceeding that was not proper in the regular conduct of the proceeding. Id. at *3.

15

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114], GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

So too here. Although the three improper purposes Ballock intuits to Kief speak to why Kief may have initiated Ballock's arrest (attempting to influence the Family Court judge may speak to an ulterior purpose for the location of arrest), it is undisputed that both the State Police and the FBI had legitimate safety concerns to "ensure [Ballock] was unarmed and to minimize the risk of violence" during his arrest (Dkt. No. 114-19 at 10). And there is no evidence that, at the time the Family Court judge made his comments, he had any knowledge of such concerns (Dkt. Nos. 114-1 at 27; 114-19 at 11). Therefore, the unrefuted evidence of record establishes that Kief and the State Police had legitimate reasons for arresting Ballock when, where, and how they did.

Moreover, no irregular or unlawful acts occurred during Ballock's arrest. He was never handcuffed (Dkt. Nos. 114-2 at 28) and, according to Kief, the arresting officers immediately "took him upstairs and got him arraigned" (Dkt. No. 114-3 at 24). As in Rami, no act occurred that was not in the regular course of an arrest, and no evidence of record rises to the level of an abuse of the criminal process by Kief.

16

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

*b. Section 1983 Abuse of Process Claim*

A § 1983 abuse of process claim, like a state claim for abuse
of process, emphasizes the difference between improper initiation
and improper use of process; each requires improper use as a
necessary element. Although the Fourth Circuit has not explicitly
analyzed the nature of an abuse of process claim under § 1983,
other circuits have held that abuse of process is, in effect, a
denial of procedural due process. Cook v. Sheldon, 41 F.3d 73, 80
(2d Cir. 1994)(citing Jennings v. Shuman, 567 F.2d 1213, 1220 (3d
Cir. 1977)). The Supreme Court of the United States elaborated on
the nature of the federal action in the seminal case of Heck v.
Humphrey, 512 U.S. 477, 486 (1994), stating that "[t]he gravamen of
that tort is . . . some extortionate perversion of lawfully
initiated process to illegitimate ends." (internal citations
omitted).

The same reasons that bar Ballock's state law abuse of process
claim bar his federal claim. Based on the uncontested evidence, no
rational trier of fact could find Kief misused Ballock's lawfully
issued and executed arrest warrant for an improper purpose.
Further, Ballock has not shown any process he was denied in his

17

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

criminal proceeding, his divorce proceeding, or the termination of his employment. Therefore, to the extent that the essence of a § 1983 abuse of process claim involves a denial of procedural due process, Ballock has failed entirely to make out any such claim against Kief. Kief therefore is entitled to summary judgment on Counts One and Four.

   *c. Statute of Limitations*

   In the alternative, both the state and federal abuse of process claims are time-barred. Courts hearing § 1983 claims apply the "most analogous state statute of limitations." Owens v. Okure, 488 U.S. 235, 240 (1989) (quoting Wilson v. Garcia, 471 U.S. 261 (1985)). In West Virginia, § 1983 actions are considered personal injury actions subject to the two year statute of limitations. McCausland v. Mason Cnty. Bd. of Educ., 649 F.2d 278, 279 (4th Cir. 1981); W. Va. Code § 55-2-12.

   Although state law governs the applicable statute of limitations, "federal law controls" when "[t]he applicable statute of limitations begins to run once a claim accrues." A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). An abuse

18

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

of process claims accrues on the date a plaintiff is arrested.

Denmark v. Starcher, No. 1:14CV58, 2014 WL 7272789, at *5 (N.D. W.

Va. Dec. 18, 2014).

The statute of limitations on a state law abuse of process

claim is even shorter: "An action for abuse of process must be

brought within one year from the time the right to bring the action

accrued," that is, "from the termination of the acts which

constitute the abuse complained of, and not from the completion of

the action in which the process issued." Preiser, 352 S.E.2d at 29

(citing 1 A.L.R. 3d 953-54 (1965)). Here, the investigation and

arrest ended on the day of Ballock's arrest, September 13, 2013

(Dkt. Nos. 49 at 5). Ballock, however, did not file his first

complaint until April 6, 2017 (Dkt. No. 1). Accordingly, both his

federal and state abuse of process claims are untimely, and Kief is

entitled to summary judgment as to Counts One and Four based on the

alternative ground that these claims are untimely filed.

2. Counts Two and Five: Malicious Prosecution under § 1983 and
State Law

Ballock alleges that Kief and Costlow initiated the criminal

charges against him "not out of a belief that probable cause

19

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

existed for their issuance . . . but in an attempt to punish . . .
and improperly assist [Costlow] in another proceeding" (Dkt. No. 49
at 22). Kief contends that probable cause existed for the charges
against Ballock and his arrest (Dkt. No. 144-1 at 12-15).

The required elements of a malicious prosecution claim under
West Virginia state law include:

> (1) that the prosecution was set on foot and conducted to
> its termination, resulting in plaintiff's discharge; (2)
> that it was caused or procured by defendant; (3) that it
> was without probable cause; and (4) that it was
> malicious. If plaintiff fails to prove any of these, he
> can not recover.

Goodwin v. City of Shepherdstown, 825 S.E.2d 363, 368 (W. Va. 2019)
(citing Radochio v. Katzen, 114 S.E. 746 (W. Va. 1922)).

In the Fourth Circuit, the foundational element for a § 1983
claim for malicious prosecution is an unlawful seizure in violation
of the Fourth Amendment. Brooks v. City of Winston-Salem, 85 F.3d
178, 184 (4th Cir. 1996). Thus, Ballock must prove that a defendant
caused a seizure pursuant to legal process unsupported by probable
cause, and that criminal proceedings terminated in his favor. Evans
v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012).

Here, probable cause existed for Ballock's arrest. In addition

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

to Gaskin's assessment that probable cause for criminal harassment
charges existed based on Ballock's messages to Costlow, Assistant
Prosecuting Attorney Scott determined there was probable cause to
pursue harassment charges against Ballock. See, e.g., Evans, 703
F.3d at 647-48 (holding that, in § 1983 cases, acts of independent
decision-makers, such as prosecutors and judges, shielded police
officers from a malicious prosecution claim when there was no
evidence that an officer misled or pressured the prosecutor); Pote
v. Jarrell, 412 S.E.2d 779, 775 (W. Va. 1991) (explaining that
acting on advice of counsel can be an absolute defense for
malicious prosecution when prosecution was in good faith and
obtained after a accurate disclosure of the facts on which advice
is sought (citations omitted)). And Magistrate Holepit found
probable cause to issue warrants for Ballock's arrest. The FBI, as
well, concluded by a preponderance of evidence that Ballock had
harassed Costlow through his emails and text messages(Dkt. Nos.
114-19 at 15; 114-22 at 12; 114-24 at 4; 114-25 at 3).

The topics of Ballock's email and text messages ranged from
insults regarding Costlow's parenting and sex life (Dkt. Nos. 114-
7; 114-10) to unrequited attempts at reconciliation (Dkt. Nos. 114-

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

9; 116-13). The volume and frequency of these communications were staggering; among others, Ballock sent Costlow 61 text messages over a 12-hour period on May 17, 2013 (Dkt. No. 116-15), and 40 emails in just over 2 hours on October 11, 2012 (Dkt. No. 114-12). It is beyond dispute that, in total, the content and number of these messages established probable cause that Ballock "repeatedly harass[ed] . . . another."[4] W. Va. Code § 61-2-9a(b).

Moreover, Ballock conceded as much in his deposition, where he admitted that he continued to contact Costlow after she had asked him to stop. This alone establishes probable cause that he "us[ed] a . . . mobile phone . . to . . . [m]ake contact with a person after being requested by the person to desist." W. Va. Code § 61-3C-12(a)(2); Dkt. No. 114-2 at 10. Thus, Ballock's denial that he voluntarily admitted to the Monongalia County Prosecuting Attorney that probable cause existed for his arrest is overwhelmed by evidence that probable cause did exist.

Nor can Ballock establish that his prosecution was undertaken

---

[4] "Harasses" is defined as willful conduct directed at a specific person or persons which would cause a reasonable person mental injury or emotional distress. W. Va. Code § 61-2-9a(f)(3).

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

with malice, which constitutes a separate element of his state law
malicious prosecution claim. Magistrate Holepit's issuance of two
warrants is fatal to Ballock's contention that Kief acted with
"malign intent" because the issuance of an arrest warrant is the
"clearest indication" that [Kief] "acted in an objectively
reasonable manner, or in 'objective good faith'." Messerschmidt v.
Millender, 565 U.S. 535, 546 (2012) (internal citation omitted).
Even if the ultimate dismissal of the criminal charges could be
considered a termination in Ballock's favor, this fact is
immaterial inasmuch as the other two other elements of Ballock's
claim of malicious prosecution--lack of probable cause and
malice--are lacking. Kief therefore is entitled to summary judgment
as to Counts Two and Five.

3. Count Nine: Intentional Infliction of Emotional Distress

Ballock alleges that Kief acted outrageously and with reckless
disregard for "community standards" by "encourag[ing] and
support[ing] his prosecution" (Dkt. No. 49 at 29). In response,
Kief contends that his conduct does not meet the legal standard of
an outrageous act (Dkt. No. 114-1 at 24-25). Ballock's argument, at
bottom, relies entirely on an email from Kief to Costlow (Dkt. No.

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

124 at 21).[5]

To prevail on an intentional infliction of emotional distress

claim, Ballock must prove:

> (1) that the defendant's conduct was atrocious,
> intolerable, and so extreme and outrageous as to exceed
> the bounds of decency; (2) that the defendant acted with
> the intent to inflict emotional distress, or acted
> recklessly when it was certain or substantially certain
> emotional distress would result from his conduct; (3)
> that the actions of the defendant caused the plaintiff to
> suffer emotional distress; and, (4) that the emotional
> distress suffered by the plaintiff was so severe that no
> reasonable person could be expected to endure it.

Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 425 (W. Va. 1998).

Whether conduct may reasonably be considered outrageous is a

legal question. Id. at 369. The West Virginia Supreme Court of

Appeals has elaborated on the type of conduct that may give rise to

liability:

> [I]t has not enough to say that "the defendant has acted
> with an intent which is tortious or even criminal, or
> that he has intended to inflict emotion distress, or
> even that his conduct has been characterized by

---

[5] As a matter of law, neither Kief's assignment of Gaskins to
investigate Costlow's harassment complaint, nor Ballock's arrest
based on probable cause was outrageous. Given the safety concerns
of the State Police regarding Ballock's authorization to carry a
firearm, it was not outrageous to arrest Ballock in a secure
courthouse, rather than at his home or place of work.

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING**
**KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],**
**GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT**
**[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH**
**PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

> 'malice,' or a degree of aggravation which would entitle
> the plaintiff to punitive damages for another tort."

Id. at 425-26 (citation omitted). Notably, "[t]he elements to establish a malicious prosecution case are less severe than an action for outrageous conduct." Hines v. Hills Dep't Stores, Inc., 454 S.E.2d 385, 390 (W. Va. 1994) (per curiam) (holding that a jury's determination that probable cause precluded a claim for malicious prosecution also negated an action for outrageous conduct because malicious prosecution requires a lesser degree of proof).

Kief's email to Costlow followed a hearing where the Family Court judge declined to unseal a forensic psychiatry report of Costlow that Ballock had argued contained exculpatory evidence favorable to his case (Dkt. No. 124 at 21). In his email to Costlow, Kief stated: "I'm sure [Ballock] has tucked his tail between his legs and was humiliated . . . I am so glad he shot Scott down for everything" (Dkt. No. 114-27). Even viewed most favorably to Ballock, the remarks establish no more than that Kief may have reacted as a zealous advocate for a victim. But they do not establish the level of outrageousness required to sustain an

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

intentional infliction of emotional distress claim under West Virginia law.

In this vein, it is probative that Ballock never learned of Kief's email until after it was produced in the course of discovery. As he was unaware of its existence at the time it was sent, he cannot establish the element of causation necessary to sustain a successful intentional infliction of emotional distress claim. Because Ballock cannot meet his high burden of establishing that Kief's conduct was outrageous, Kief is entitled to summary judgment as to Count Nine.

### 4. Count Ten: Tortious Interference with an Employment Contract

In his third amended complaint, Ballock alleges that, after he visited a State Police detachment, "a uniformed representative" of the State Police visited the FBI resident agency and lodged a complaint about Ballock's lawsuit (Dkt. No. 49 at 31). Not only does the person at issue remain unidentified, Kief contends that his communications with the FBI about Ballock were truthful and not causally connected to Ballock's termination (Dkt. No. 114-1 at 18-

26

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING**
**KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],**
**GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT**
**[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH**
**PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

20). In reply, Ballock alleges that when Kief spoke with the FBI his petition for expungement of his criminal conviction was pending in state court, and characterizes Kief's discussion as "reckless at best" (Dkt. No. 124 at 20).

To establish tortious interference with a contract, a plaintiff must show (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. Syl Pt. 5, Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395, 403 (W. Va. 2008) (quoting Syl. Pt. 2, Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166 (W. Va. 1983)). Kief cannot be liable if any interference was justified. Id.; Torbett, 314 S.E.2d 215-26 (adopting Restatement (Second) of Torts § 772 (1979) and holding that giving truthful information is an absolute bar to a claim of tortious interference, whether or not the information is requested).

Beyond his bare allegation, Ballock has offered no evidence that Kief visited the FBI in an attempt to interfere with his

BALLOCK V. COSTLOW, ET AL.                        1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING**
**KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],**
**GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT**
**[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH**
**PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

employment. Kief denies doing so and Ballock produced no evidence refuting that denial. But even if evidence sufficient to make out a prima facie case of such a visit did exist, there is no factual dispute that any communications that Kief may have had with the FBI fail to rise to the level of tortious interference with employment. The first of these communications occurred when a state trooper, either Kief or Gaskins, notified the FBI that Ballock was under criminal investigation. When interviewed by the FBI on April 14, 2016, Kief was responding to the FBI's request. Finally, it was only after Ballock visited to the State Police detachment that Kief called the FBI to report Ballock's alleged harassment.

Significantly, Ballock has failed to establish that any of Kief's communications with the FBI were untruthful. That fact alone fatally undermines his claim of tortious interference. Nor does Ballock offer any evidence that Kief's actions proximately caused his termination. His claim that Kief "set in motion an investigation process [in the FBI]" (Dkt. No. 124 at 15-16), fails for the reason that the FBI never discussed the State Police investigation in its March 5, 2019 termination letter. According to

28

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING**
**KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],**
**GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT**
**[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH**
**PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

the FBI, Ballock was terminated for weapons safety violations,
unprofessional off-duty conduct, and lying under oath (Dkt. Nos.
114-25 at 2; 124 at 6).

Furthermore, Ballock's allegation that the FBI interviewed
Kief while Ballock's petition for expungement was pending is
factually inaccurate. Based on the evidence of record, it is
undisputed that the FBI interviewed Kief roughly one week after the
criminal charges against Ballock were dismissed on April 7, 2016
(Dkt. No. 128 at 14). And the expungement order states that the
petition for expungement was filed more than 60 days after that
dismissal (Dkt. No. 128-8). Tellingly, W. Va. Code § 61-11-25(e)
only prohibits public officers from discussing charges following an
expungement order, not after the filing of an expungement petition.
Thus, the timing of Kief's interview with the FBI provides no
support for Ballock's claim of intentional interference with
employment, let alone the "reckless" interference he has alleged.
The Court therefore **GRANTS** Kief's motion for summary judgment as to
Count Ten.

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING**
**KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],**
**GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT**
**[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH**
**PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

5. Count Six: Conspiracy

In Count Six of his third amended complaint, Ballock alleges that Kief and Costlow agreed to commit wrongful acts. Count Six does not allege whether Ballock is pursuing his conspiracy claim under state law or § 1983 (Dkt. No. 49 at 27). Nor does it describe the nature of the agreement or the unlawful acts committed. It also does not allege what the unlawful goal was or specify the unlawful means used to accomplish it. Kief argues that, whether under federal or state law, Ballock has not offered even a shred of evidence establishing that he and Costlow shared a conspiratorial objective, came to a mutual agreement to accomplish some unlawful goal, or mutually agreed to use unlawful means to accomplish some otherwise lawful goal (Dkt. No. 114-1 at 26-30).

Under West Virginia law, a conspiracy requires "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Dunn v Rockwell, 689 S.E.2d 255, 268 (W. Va. 2009); see also Hays v. Bankers Trust Co. Of Ca., 46 F. Supp .2d 490, 497 (S.D. W. Va. Apr. 19, 1999) ("[A] civil

30

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

conspiracy is a combination to commit a tort").

The elements of a § 1983 conspiracy claim include a requirement that the plaintiff establish that his constitutional rights were violated because the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). To survive summary judgment on a § 1983 conspiracy claim, it is incumbent on Ballock to produce sufficient evidence from which a jury may conclude that Kief and Costlow "shared the same conspiratorial objective," that is they "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id.

Acknowledging the woefully inadequate factual allegations of Ballock's conspiracy claim, Ballock's attorney urges the Court to liberally construe Count Six of the third amended complaint to include a conspiracy claim under § 1983, arguing that when the first complaint was filed, Ballock was representing himself (Dkt. Nos. 1, 138). This argument is unavailing, however, since Ballock was represented by counsel when he filed both his second and third

31

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

amended complaints. In any event, Ballock's attempt to state a colorable conspiracy claim, whether under federal or state law, is fatally flawed.[6] Not only has no conspiracy claim been adequately pled, there simply are no material facts in dispute to support the existence of a conspiracy under any legal theory.

Even when all the evidence of record is considered in the light most favorable to Ballock, he has failed to establish a conspiracy under § 1983 or state law for two reasons. First, Kief committed no unlawful act; therefore no tort or constitutional violation exists on which to base any conspiracy claim involving him. Syl. pt. 8, <u>Dunn</u>, 689 S.E.2d at 259 (2009) ("The cause of

---

[6] Ballock's theory of conspiracy is set forth not in his third amended complaint but in his summary judgment briefings where he argues that communications between Kief and Costlow show an agreement to unlawfully circumvent "court orders" (Dkt. No. 124 at 21-22). The Court presumes that these "court orders" are the attachment to the motion to dismiss Ballock's criminal charges and the injunctive relief provided in the divorce decree. Notably, however, Ballock does not mention the divorce decree at all in his third amended complaint, although he had knowledge of it from the outset of the litigation. <u>Cumpston v. Central Supply Company West Virginia</u>, No. 1:17CV61, 2018 WL 4855216 (N.D. W. Va. Oct. 5, 2018). Therefore, as a threshold matter, Ballock has failed to sufficiently plead a conspiracy under § 1983 or state law. This alone is a ground for dismissal.

BALLOCK V. COSTLOW, ET AL.                            1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

action is not created by the conspiracy but by the wrongful acts
done by the defendants to the injury of the plaintiff."). Indeed,
"[a] conspiracy is not, itself, a tort," and so "[i]t is the tort,
and each tort, not the conspiracy, that is actionable." Id. (citing
Segall v. Hurvitz, 114 Wis.2d 471, 481 (Wis. App.1983). Thus, a
conspiracy as to Kief cannot be based on any dismissed causes of
action.

     Second, there is no genuine dispute about whether Kief and
Costlow ever reached an unlawful agreement. Specifically, email
communications between Costlow and the State Police do not
establish a mutual agreement or conspiratorial objective between
Kief and Costlow to accomplish some unlawful goal or to use
unlawful means to accomplish a lawful goal. First, a September 8,
2013 email from Costlow to Gaskins merely informs Gaskins of the
date and time of the family court hearing. It discusses no illegal
common plan or scheme and, importantly, does not evince that Kief
was involved in or even knew of these discussions (Dkt. No. 114-
26). Whether or not Costlow may have hoped Ballock's arrest would
prejudice the Family Court judge in her favor, there is absolutely

33

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

no evidence that Kief shared this objective.

Second, on March 7, 2016, Kief responded to an email from Costlow advising that the Family Court judge had not unsealed her psychological evaluation. Kief's reply––"I'm sure [Ballock] has tucked his tail between his legs and was humiliated . . . I am so glad he shot Scott down on everything"––(Dkt. No. 114-27) may have been injudicious, but it falls far short of establishing that Kief and Costlow acted jointly in an effort to illegally influence the Family Court judge to bar release of the evaluation, or even agreed to attempt to do so.

Finally, an email on April 14, 2016 implies that Kief had asked Costlow if there was anything important she wanted him to share with the FBI. (Dkt. No. 114-29). In his response to Kief's motion for summary judgment, Ballock relies heavily on this communication to argue that a prima facie case exists that Kief and Costlow shared a common, unlawful purpose to circumvent "court orders" (Dkt. No. 124 at 21), presumably (1) the attachment to the motion to dismiss Ballock's criminal case in which Costlow agreed she would not communicate "any disparaging information or

34

**BALLOCK V. COSTLOW, ET AL.**                              **1:17CV52**

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

commentary to Scott Ballock's employer or place of employment" and

(2) the divorce decree prohibiting the parties from contacting one

another's employers (Dkt. Nos. 114-21 at 3).

Kief contends he was asking Costlow to refresh his

recollection about details of an investigation that had begun three

years earlier (Dkt. No. 114-1 at 29). Although he testified that he

did not know the Family Court judge had ordered Costlow not to

communicate with the FBI about Ballock (Dkt. No. 114-3 at 21), in

an email to Kief on August 11, 2014, Costlow mentions that she had

"signed an agreement to not contact the FBI" (Dkt. No. 117-1 at

26).

Even if Costlow told Kief at one point about the agreement not

to contact the FBI, there is no evidence Kief intended to subvert

the terms of the divorce decree, or that such a goal was even on

his mind when he asked Costlow to refresh his recollection. There

also is no evidence that Kief knew the specific language of the

divorce decree or agreed with Costlow to help her violate a court

order.

Tellingly, in a follow up email, Costlow told Kief that she

BALLOCK V. COSTLOW, ET AL.                    1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

planned to meet with the FBI (Dkt. No. 117-1 at 35). Since she made

her own plans to do so, there was no reason fo Kief to assist her

in circumventing the divorce decree or the attachment to the motion

to dismiss Ballock's harassment charges. Clearly, Costlow alone

made the decision to speak to the FBI, and Ballock cannot establish

any material question of fact in dispute regarding this issue.

Accordingly, the Court **GRANTS** Kief's motion for summary judgment as

to Count Six, the conspiracy claim.

6. Qualified Immunity

Alternatively, Kief contends that he has not violated any

clearly established law and is therefore qualifiedly immune from

suit under both West Virginia and federal law (Dkt. No. 114-1 at

14). Under West Virginia law, a public executive or official acting

within the scope of his or her authority may be entitled to

qualified immunity from personal liability for official acts. State

v. Chase Sec., Inc., 424 S.E.2d 591, 599-600 (W. Va. 1992). Where

there is no dispute regarding the foundational facts, the ultimate

determination of whether qualified immunity bars a civil action is

one of law for the court to decide. Syl. pt. 1, Hutchison v. City

36

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

of Huntington, 479 S.E.2d 649, 654 (W. Va. 1996).

Under West Virginia law, in order to determine whether
qualified immunity applies to Kief, the "[C]ourt must determine
whether [Ballock] has demonstrated that [discretionary] acts or
omissions are in violation of clearly established statutory or
constitutional rights or laws of which a reasonable person would
have known or are otherwise fraudulent, malicious, or oppressive."
W. Va. Bd. Of Educ. v. Marple, 782 S.E.2d 75, 84 (W. Va. 2015)
(citing Chase Securities, 424 S.E.2d at 591); see also Syl. pt. 11,
W. Va. Reg'l Jail & Corr. Fac. Auth. v. A.B., 766 S.E.2d 751 (W.
Va. 2014). If Ballock cannot make such a showing, Kief is immune
from liability.

Similarly, in the Fourth Circuit, "[t]o successfully avail
[himself] of qualified immunity, [Kief] must show either that no
constitutional violation occurred or that the right violated was
not clearly established at the time it was violated." Hunter v.
Town of Mocksville, 789 F.3d 389, 396 (4th Cir. 2015). Courts must
decide (1) "whether a constitutional right would have been violated
on the facts alleged" and (2) assuming the violation of the right

37

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

is established, "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Gilmore, 278 F.3d at 366-67 (internal citations and quotations omitted); see also Hupp v. Cook, 931 F.3d 307, 318 (4th Cir. 2019).

> *a. Violation of State Law or Otherwise Fraudulent, Malicious, or Oppressive Conduct*

Under state law, Ballock cannot establish the essential element of a violation of a state statute or other law. Nor can he establish that Kief's acts were "otherwise fraudulent, malicious, or oppressive." Marple, 782 S.E.2d at 84. In the first place, he has not alleged fraud or oppression, nor has he established a prima facie case that Kief's actions were motivated by malice. As discussed earlier in this opinion, the existence of probable cause to arrest Ballock negates any finding of malice. Furthermore, there is no evidence that any of Kief's communications were untruthful or unjustified. Thus, qualified immunity applies so long as Kief did not violate any of Ballock's clearly established constitutional rights.

38

BALLOCK V. COSTLOW, ET AL.                           1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

*b. Violation of Clearly Established Constitutional Rights*

When viewed in the light most favorable to Ballock, there is no evidence that Kief violated any of Ballock's clearly established constitutional rights. First, as discussed earlier, Ballock's abuse of process claims do not rise to the level of a denial of due process. Further, his malicious prosecution claims are legally infirm and do not amount to an unlawful seizure in violation of the Fourth Amendment. Ballock has failed to show either that Kief acted unreasonably in assigning the criminal investigation to Gaskins or secured Ballock's arrest without probable cause. Contra Hupp, 931 F.3d at 307 (finding that an officer did not act in an objectively reasonable fashion when the magistrate's probable cause finding was based on false statements by an officer). Thus, no violation of Ballock's Fourth Amendment rights occurred.

Finally, Kief did not violate Ballock's liberty interest in continued government employment. To prove such a deprivation, Ballock must show that any injury to his reputation was accompanied by a state action that "distinctly altered or extinguished his legal status." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314-15

39

**BALLOCK V. COSTLOW, ET AL.**                                    **1:17CV52**

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

(4th Cir. 2012). Although termination of government employment that
"foreclose[s] freedom to take advantage of other employment
opportunities" may amount to such a showing, such alteration or
extinguishment must be "a result of the state action complained
of." Paul v. Davis, 424 U.S. 693, 710-11 (1976) (describing the
reputational harm stigma plus test).

Here, the FBI's stated reasons for terminating Ballock are
unrelated to any of Kief's actions. These reasons include
(1) weapons safety violations; (2) unprofessional off-duty conduct;
and (3) and lying under oath. Accordingly, if other employment
opportunities were foreclosed to Ballock because of his
termination, it was not the result of any state action by Kief. The
Court therefore **GRANTS** summary judgment to Kief on the alternative
ground of qualified immunity.

**B.   CLAIMS AGAINST DEFENDANT ELLEN RUTH COSTLOW**

According to Ballock, his allegations against Costlow were
triggered by Kief's investigative call to her in response to
Ballock's father's allegation that she was having an affair with
Berry. After receiving Kief's call, Costlow filed a criminal

40

BALLOCK V. COSTLOW, ET AL.                           1:17CV52

### MEMORANDUM OPINION AND ORDER GRANTING
### KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
### GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
### PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

complaint alleging that Ballock was harassing her with unwelcome emails and text messages. Ballock further claims that Costlow gave false information to Gaskins as part of the State Police investigation into her allegations of harassment. Ballock contends that Costlow's communications with Kief and Gaskins support his conspiracy claims and preclude summary judgment. Finally, Ballock's claims against Costlow involve her conversations with the FBI in May, 2016, which Ballock contends directly violated her written obligations under the attachment to the motion to dismiss and under her final divorce decree.

    1. Counts One, Two, Six, and Seven: Abuse of Process under § 1983, Malicious Prosecution under § 1983, Conspiracy, and Defamation under § 1983

Costlow argues that an absence of any conspiracy requires dismissal of all § 1983 claims against her because she is a private individual (Dkt. No. 116-1 at 15). In his response, Ballock attacks Costlow's credibility, arguing that it is for a jury to decide whether to credit her version of the facts (Dkt. No. at 126 at 2). He restates his allegation that she conspired with Kief, and adopts by reference his conspiracy argument against Kief. Id. at 4. In her

BALLOCK V. COSTLOW, ET AL.                        1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

reply, Costlow argues that Ballock does not contest the evidence of probable cause for his arrest, and asserts that no order prevented her from speaking with the State Police (Dkt. No. 131 at 2, 18).

A private party may be liable under § 1983 when the party participates with a state actor in a conspiracy to violate another's constitutional rights, Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 930-31, or where there exists an interdependence or "symbiosis" between the private and the state actors. Jackson v. Pantazes, 810 F.2d 426, 430 (4th Cir. 1987). A private party's "mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law." Hessami v. Corp. of Ranson, 170 F. Supp .2d 626, 624 (N.D. W. Va. 2001) (citing Lee v. Town of Estes Park, 820 F.2d 1112, 1115 (10th Cir. 1987)). Symbiosis exists when the state profited from a private wrong. Rendell-Baker v. Kohn, 457 U.S. 830 (1982).

As discussed earlier, there is no evidence that Kief and Costlow participated in a conspiracy. Costlow contends that she was not a party to the decision to criminally charge Ballock (Dkt. No. 116-1 at 18), and also argues convincingly that merely providing

42

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

Gaskins with the DVD-R containing Ballock's messages during his
investigation in September, 2013, did not involve her in a common,
unlawful plan with Kief. Id. at 19.

After careful review of the evidence of record, the Court
concludes that there is insufficient evidence to support the
elements of a conspiracy claim involving Costlow and Kief.
Moreover, there is no evidence whatsoever that the state profited
from Costlow's actions. Accordingly, Costlow is entitled to summary
judgment as to Counts One, Two, Six, and Seven.

 2. Counts Four and Five: Abuse of Process and Malicious
 Prosecution under State Law

Because Ballock is unable to establish that the criminal
process was used against him for anything other than prosecuting
him for offenses for which probable cause existed, his state law
abuse of process and malicious prosecution claims against Costlow
fail as a matter of law. Additionally, for the reasons discussed
earlier in this opinion, his abuse of process claims against
Costlow are time barred. The Court therefore **GRANTS** Costlow's
motion for summary judgment as to Counts Four and Five.

43

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

<u>3. Counts Eight, Nine, Eleven, Twelve, and Thirteen: Slander,
Intentional Infliction of Emotional Distress, Tortious
Interference with an Employment Contract, Defamation, and
Breach of Contract under State Law</u>

In filing his complaint, Ballock invoked federal question
jurisdiction under 28 U.S.C. §§ 1983, 1331, and 1343, as well as
this Court's supplemental jurisdiction pursuant to 28 U.S.C.
§ 1367(a) (Dkt. No. 49 at 2). Under 28 U.S.C. § 1367(c)(3), the
Court "may decline to exercise supplemental jurisdiction" and has
discretion to dismiss state claims where, as here, "it has
dismissed all claims over which it has original jurisdiction."

"Among factors that inform this discretionary determination
are convenience and fairness to the parties, the existence of any
underlying federal policy, comity, or considerations of judicial
economy." <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995)
(citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7
(1988) ("[I]n the usual case in which all federal-law claims are
eliminated before trial, the balance of factors . . . point toward
declining to exercise jurisdiction over the remaining state-law
claims.")); <u>see, e.g.</u>, <u>Keating v. Neb. Public Power Dist.</u> 660 F.3d

44

BALLOCK V. COSTLOW, ET AL.                        1:17CV52

MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE

1014, 1018-19 (8th Cir. 2011) (affirming district court's dismissal of state law claims in light of summary judgment on § 1983 claim).

Fairness concerns any prejudice to the parties. McCullough v. Branch Banking & Trust, 844 F. Supp. 258, 261 (E.D.N.C. 1993). Under West Virginia law, for one year from the date of an order dismissing an action, a party may re-file an action involuntarily dismissed for any reason not based on the merits. W. Va. Code § 55-2-18. Because Ballock's remaining claims were timely filed in federal court, if dismissed here, they would not be time-barred should he chose to re-file them in state court. Thus, a dismissal without prejudice, although perhaps an inconvenience, is not unfair. Accordingly, the first factor weighs in favor of dismissing Ballock's state law claims.

As to the second and third factors, no underlying federal policy weighs in favor of the Court maintaining jurisdiction over Ballock's remaining state law claims. Indeed, the criminal and family law issues that remain are "at the heart of state sovereignty." Harper v. Public Service Com'n of W. Va., 396 F.3d 348, 354 (4th Cir. 2005)("that which must be respected through

45

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

'comity' is identical to the traditional 'areas of paramount state concern,' and also the same as the 'important state interests' test" (internal citations omitted)); see also Mills v. Mills, 2:04-23286-DCN-GCK, 2006 WL 8443489, at *3 (D.S.C. April 5, 2006) ("Family law is among the most central state law interests.").

Ballock's remaining claims all arise from writings attached to a motion to dismiss and a final divorce decree, both of which were filed in West Virginia state court (Dkt. Nos. 114-21; 117-1). It therefore is clearly in the state courts's interest to interpret and, if necessary, enforce its earlier rulings. Moreover, Ballock has repeatedly asserted that this matter belongs in Family Court (Dkt. Nos. 124 at 15; 117 at 6). Thus, the second and third factors weigh strongly in favor of declining to exercise supplemental jurisdiction here.

Finally, because this case is in the summary judgment phase, no overriding interest of judicial economy will be served by dismissing the claims. This factor thus weighs in favor of retaining jurisdiction; standing alone, however, it does not outweigh the compelling fact that all remaining claims against

46

**BALLOCK V. COSTLOW, ET AL.**                              **1:17CV52**

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

Costlow involve quintessentially state law causes of action.
Therefore, given that all federal claims have been dismissed, the
Court concludes that the balance of factors weighs strongly in
favor of declining to exercise jurisdiction over the remaining
state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), therefore,
the Court **DISMISSES** Counts Eight, Nine, Eleven, Twelve, and
Thirteen **WITHOUT PREJUDICE** as to Costlow.

**V. CONCLUSION AND SUMMARY OF RULINGS**

In conclusion, for the reasons discussed, the Court:

• **GRANTS** Kief's motion for summary judgment as to all counts
  [Dkt. No. 114], and **DISMISSES** those claims **WITH PREJUDICE**;

• **GRANTS IN PART** Costlow's motion for summary judgment as to
  Counts One, Two, Four, Five, Six, Seven, and Ten [Dkt. No.
  116], and **DISMISSES** those claims **WITH PREJUDICE**;

• **DISMISSES WITHOUT PREJUDICE** Ballock's remaining state law
  claims against Costlow, Counts Eight, Nine, Eleven, Twelve,
  and Thirteen; and

• **DENIES AS MOOT** Kief's motions in limine (Dkt. Nos. 149, 150).
  It is so **ORDERED.**

47

**BALLOCK V. COSTLOW, ET AL.**                                          **1:17CV52**

**MEMORANDUM OPINION AND ORDER GRANTING
KIEF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 114],
GRANTING IN PART COSTLOW'S MOTION FOR SUMMARY JUDGMENT
[DKT. NO. 116], AND DISMISSING THE PLAINTIFF'S § 1983 CLAIMS WITH
PREJUDICE AND HIS SUPPLEMENTAL STATE LAW CLAIMS WITHOUT PREJUDICE**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to the Clerk of the Circuit Court of Monongalia County, West Virginia. The Court further **DIRECTS** the Clerk to remove this action from the active docket of this court.

DATED: December 20, 2019

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE