## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK,**

       **Plaintiff,**

**v.**
                                      **CIVIL ACTION NO.:  1:17-CV-52**
                                        **Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW and**
**STATE TROOPER MICHAEL KIEF,**

       **Defendants.**

### DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY'S MOTION FOR ATTORNEYS' FEES AND COSTS

Because Plaintiff Scott T. Ballock pursued frivolous claims against them, Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry (collectively, the "State Police Defendants"), by counsel, move the Court, under Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988, for an award of attorneys' fees and costs.

## I.    <u>PROCEDURAL HISTORY</u>

As the Court is familiar with the factual background of this case, the State Police Defendants will omit a recitation of the facts in the interest of brevity.

Plaintiff Scott T. Ballock filed a *pro se* complaint on April 6, 2017 [ECF No. 1]. Mr. Ballock filed an amended complaint on May 25, 2017 [ECF No. 14] and a second amended complaint on October 13, 2017 [ECF No. 45]. In his second amended complaint, Mr. Ballock asserted claims under 42 U.S.C. § 1983 for malicious prosecution, abuse of process, denial of his First Amendment right of access to the courts, and defamation, along with state law claims of malicious prosecution, abuse of process, slander, tortious interference with contract, and

intentional infliction of emotional distress. *See*, *generally*, 2d. Am. Compl.[1] In addition, Mr. Ballock requested a declaratory judgment, releasing an unsealed copy of a forensic psychiatric evaluation conducted on his former wife, Defendant Ellen Ruth Costlow, that had been ordered in Family Court during the couple's divorce, "for use in connection with his employer." *Id.* at ¶¶ 257-289.

In support of his claims, Mr. Ballock made several demonstrably false or misleading factual allegations. He alleged that the Family Court judge found that his arrest on September 20, 2013 during a break in the divorce proceedings was timed to gain a strategic advantage for Ms. Costlow. *Id.* at ¶ 90. Mr. Ballock knew at the time he filed this pleading, however, that the State Police had coordinated his arrest during the Family Court hearings with the FBI. Nevertheless, he did not disclose in his pleadings "the efforts by the State Police to coordinate the arrest with the FBI, and the legitimate concerns shared by the State Police and the FBI regarding the need to ensure [he] was unarmed when arrested to reduce the risk of violence." Letter from Asst. Dir. Candice M. Will to Scott T. Ballock (Sept. 21, 2017) at 10, attached as "Exhibit 1."

Similarly, Mr. Ballock alleged that Ms. Costlow "committed her then 11-year-old son to Chestnut Ridge Hospital . . . for the offense of misbehaving" shortly before Christmas 2012. 2d Am. Compl. ¶ 122B. As Ms. Costlow pointed out in her response to Plaintiff's motion for partial summary judgment, the child's medical records—which Mr. Ballock possessed—showed that this allegation was untrue. Def. Costlow's Resp. to Pl.'s Mot. for Partial Summ. J. 11-12 [ECF No. 131]; *id.* at Ex. 6 [ECF No. 131-6]. In addition, the child's medical records show that not only did

---

[1] The Section 1983 and state law claims for defamation were only filed against Cpl. Gaskins. In addition, Mr. Ballock also filed a third amended complaint on December 20, 2017 [ECF No. 49], at the direction of Magistrate Judge Aloi, in order to cure deficiencies in his state law intentional infliction of emotional distress claim. *See* R. & R. 43 [ECF No. 48]. His causes of action and the relevant factual pleadings in support of those claims remained unchanged, however.

Mr. Ballock know that this allegation was untrue, but that he had made the same allegation to the treating psychiatrist at Chestnut Ridge, who expressly told him that his version of events was untrue.

Finally, Mr. Ballock made several misstatements of facts in his allegations related to his request for declaratory judgment. He alleged that Ms. Costlow had the forensic evaluation sealed by the Family Court, and she was able to purportedly interfere with Mr. Ballock's employment with the FBI "only because, by having the report sealed, the true motives, intent and mental illness of Costlow would remain unpublished and unavailable for Ballock to use in order to disprove and discredit her falsehoods." 2d Am. Compl. ¶ 281. Similarly, he alleged that the sealing of the report harmed him "by concealing the truth of the circumstances regarding the divorce, the custody battle, the criminal charges wrongfully sought by Costlow, and other personal and legal issues," and that such harm continued so long as the report was sealed. *Id.* at ¶¶ 283-84. He alleged that Ms. Costlow had refused his requests to unseal the report for him to use in connection with the disciplinary process he faced at the FBI, and that he therefore needed this Court to grant him declaratory relief so that he could obtain an unsealed report for use "in connection with his employer." *Id.* at ¶ 287-88. In reality, however, at the time Mr. Ballock filed the second amended complaint, he had already provided an unsealed copy of the report at issue to the FBI. Letter from J. Cathyrne Watson to Asst. Dir. Candice M. Will, June 14, 2017, excerpts are attached as "Exhibit 2."[2]

Magistrate Judge Aloi granted Mr. Ballock's request for declaratory relief, dismissed the Section 1983 First Amendment claim, but permitted the remaining Section 1983 claims to proceed

---

[2] The State Police Defendants only attach the first and last pages of Mr. Ballock's June 14, 2017 submission to the FBI. The rest of the submission points out specific language in Dr. Cooper-Lehki's report that is highly sensitive and is not relevant to the present motion. The purpose of the two pages that are excerpted is simply to demonstrate that Mr. Ballock undeniably already had an unsealed copy of the report at the time he requested declaratory relief from this Court for the same.

to discovery. R. & R. (Dec. 6, 2017) at 43-44 [ECF No. 48]; Order Granting Decl. J. 1 [ECF No. 54].

Because of Mr. Ballock's claim that the State Police Defendants tortiously interfered with his employment with the FBI, the State Police Defendants requested that he produce all communications from the FBI related to any adverse actions he faced, which he alleged were caused by the State Police Defendants. In response, Mr. Ballock did not produce correspondence that he had in his possession from the FBI, detailing its reasons for his discharge. Pl.'s Resps. to Defs.' Req. for Prod. No. 18, attached as "Exhibit 3." Mr. Ballock's failure to produce these clearly relevant documents in his Rule 26(a)(1) Initial Disclosures resulted in a long, and ultimately fruitless, *Touhy* request to the FBI. His additional failure to produce the requested documents in response to the State Police Defendants' discovery requests resulted in a motion to compel, as well as a joint motion to amend the scheduling order and move the trial date, which the Court reluctantly granted. [ECF No. 84]. Mr. Ballock only produced to his counsel the responsive documents he had on the morning of the hearing on the motions to compel and to amend the scheduling order. Ex. 1 at 1 ("This was received from Scott Ballock on Monday, August 21, 2018[.]")

The Court granted Trooper Berry's motion for summary judgment by order dated October 11, 2019 [ECF No. 139]. Mr. Ballock belatedly agreed to voluntarily dismiss his claims against Cpl. Gaskins on December 6, 2019 [ECF No. 146]. The Court granted Sgt. Kief's motion for summary judgment by an order entered on December 20, 2019 and amended on December 23, 2019 [ECF No. 164].[3]

---

[3] The State Police Defendants waited until they had orders completely resolving all claims against all of them before moving for attorneys' fees, in order to avoid piecemeal motions. In addition, because of vacation over the Christmas and New Year's holidays, counsel for the State Police Defendants was not able to confer with the representative of the liability insurance carrier in order to file this motion prior to January 6, 2020.

## II.    LEGAL AUTHORITY

When a defendant prevails in a civil rights claim, the district court may award the prevailing defendant attorney's fees if the plaintiff's claim was "frivolous, unreasonable, or groundless, or if the plaintiff continued to litigate after it clearly became so." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016); *DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999). Moreover, unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party of a civil action.  Fed. R. Civ. P. 54(d)(1).

## III.    ARGUMENT

The State Police Defendants are prevailing parties in this civil action, particularly as to Mr. Ballock's claims under Section 1983.  Mr. Ballock's claims, including his Section 1983 claims, were frivolous, unreasonable, or groundless from the beginning. Mr. Ballock knew at the time he filed his initial pleading in this matter that he had sent Ms. Costlow over 3,000 emails and text messages over the course of a year following their separation. He knew that his intent in doing so was to harass her. Indeed, he only stopped his harassment after he was arrested by Sgt. Kief. This lawsuit itself was simply a continuance of Mr. Ballock's harassment of Ms. Costlow, and he included the State Police Defendants in the harassment. The groundless nature of his claims is demonstrated by his vexatious conduct in this litigation and by the material misstatements of fact he contained in his pleadings. Accordingly, the Court should award the State Police Defendants their attorneys' fees and costs incurred in defending this frivolous lawsuit.

Mr. Ballock knew at the time he filed his second amended complaint that the State Police had probable cause to charge him with the two criminal counts he faced. In fact, he admitted as much in a signed statement submitted to the Monongalia County Magistrate Court. *See* ECF No.

120-21 at 2. He knew that before he was arrested, a magistrate had signed the arrest warrants, finding probable cause for his arrest. 2d Am. Compl. ¶ 40. He knew that "a local prosecutor . . . reviewed the evidence and . . . determined there was enough evidence to charge [him] with two misdemeanor counts[.]" Ex. 1 at 13. He knew that the FBI found not just probable cause, but by a preponderance of the evidence that he had committed a misdemeanor offense. Ex. 1 at 2. And he knew that he had continued to send messages to Ms. Costlow after she had asked him to stop. Ballock Dep. 65:16-18 [ECF No. 120-2].

Mr. Ballock knew at the time he filed the second amended complaint that the State Police Defendants had not abused the criminal process. He knew that Sgt. Kief arrested him during a break in the Family Court hearing only after coordinating that arrest with FBI officials. Ex. 1 at 10. He knew that the reason for his arrest during the hearing was not to give Ms. Costlow any advantage, but to minimize the risk of violence during his arrest, a concern he knew was shared by both the State Police and FBI. *Id.* He furthermore knew "no act occurred that was not in the regular course of an arrest" when Sgt. Kief served him with the arrest warrant. Order Granting Mot. for Summ. J. 16 [ECF No. 164].

Mr. Ballock knew when he filed the second amended complaint that Cpl. Gaskins had not made any false statements in the report of the criminal investigation, as Mr. Ballock alleged. 2d Am. Compl. ¶ 200. He had seen the investigation report, and he quoted from it in his pleadings. *See id.* at ¶¶ 67-68. He admitted that nothing Cpl. Gaskins put in the report was untrue. Ballock Dep. 136:24-137:9 [ECF No. 120-2].

Mr. Ballock knew when he filed the second amended complaint that the actions of the State Police Defendants did not deprive him of access to the courts, in violation of the First Amendment, because he was *currently in this Court. See Swerkel v. City of River Rouge*, 119 F.3d 1259, 1263

(6th Cir. 1997) (noting that when the act giving rise to a First Amendment access to courts claim occurrs post-filing, the party is already in court, and that court can address any improper conduct; thus, a post-filing access to courts claim is typically not viable); *LaBarbera v. Angel*, 95 F. Supp. 2d 656, 665 (E.D. Tex. 2000) (granting motion to dismiss Section 1983 access to court claim, finding plaintiff could not state claim based upon denial of access to court when underlying claim was pending).

Mr. Ballock knew when he filed his second amended complaint that the FBI had discharged him—not because of any acts by the State Police Defendants—but because of his own egregious misconduct. The FBI notified him by a lengthy letter dated September 21, 2017, a full month before he filed the second amended complaint, of its reasons for his discharge. Ex. 1. Nowhere in the letter did the FBI mention that it was discharging him because of a purported contact by a mystery state trooper with the Clarksburg Resident Agency, as Mr. Ballock alleged in Paragraph 220 of his pleading. In fact, after more than two years litigating this case, Mr. Ballock never was able to disclose who the mystery trooper was, if the contact even happened.

Mr. Ballock knew when he filed the second amended complaint that he did not need a declaratory judgment from this Court, releasing the forensic psychiatric evaluation conducted as part of the Family Court proceedings. He already had a copy of the report, and he had already provided it to the FBI to use in his defense of his employer's disciplinary investigation. Ex. 2. It is clear why Mr. Ballock sought declaratory relief to obtain a document he already had—he and his father hoped that if the Court released a copy of the report, the report would be in the public domain. As the FBI found, Mr. Ballock and his father worked hand-in-hand to post scandalous information about Ms. Costlow on the internet. Letter from Nancy McNamara to Scott T. Ballock (Mar. 5, 2019) at 5-6, attached as "Exhibit 4." In an e-mail to Ms. Costlow, Mr. Ballock's father,

Tom Ballock, explained his belief that court filings were in the "public domain." E-mail from Tom Ballock to Ellen Ballock (June 2, 2014, 10:04 p.m.) at 2, attached as "Exhibit 5"; *see also* Ex. 11 to Def. Kief's Resp. to Pl.'s Mot. for Partial Summ. J. at 4 [ECF No. 123-11] (Tom Ballock website discussing court filings involving Ms. Costlow as being in the "public domain"). Tom Ballock maintained a website devoted to this legal action, where he posted links to each filing with the Court, www.wvsp.us.[4] The only plausible reason Mr. Ballock would seek a declaratory judgment from this Court, releasing a report that he already had and that he had already provided to the FBI, was his belief that the Court's release of the report would place it in the "public domain," and he could post it on the internet with impunity.

While not necessary to awarding attorneys' fees under Section 1988, a finding of bad faith provides " 'an even stronger basis' " for charging a losing plaintiff with attorneys' fees. *Hutchinson v. Staton*, 994 F.2d 1076, 1080 (4th Cir. 1993) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). Mr. Ballock's bad faith in bringing this action is demonstrated not only by his groundless claims, and not only by his misrepresentations and material omissions in his pleadings, but also by his vexatious conduct in discovery. Besides the false allegations discussed above, Mr. Ballock knowingly made the false allegation that Ms. Costlow had their son committed to a psychiatric hospital when he had the medical records in his possession that said otherwise.

In addition, Mr. Ballock knowingly withheld highly relevant documents from discovery, resulting in a costly and time-consuming *Touhy* request and also in this Court having to move the trial date and amend its scheduling order. On May 21, 2018, when he served his responses to the State Police's discovery requests, Mr. Ballock was in possession of two letters—dated April 10,

---

[4] Since the Court granted Sgt. Kief's motion for summary judgment, it appears that Tom Ballock has taken down the website devoted to this action. The State Police Defendants previously brought this website to the Court's attention in their motion to compel, filed on August 15, 2018 [ECF No. 81 at 2].

2017 and September 21, 2017—from the FBI, first proposing his dismissal and then adopting that dismissal. *See* Ex. 21 to Memo in Supp. of Defs.' Mot. for Summ. J. [ECF No. 120-22]; Ex. 1. In addition, he was in possession of the written responses he had filed on June 14, 2017 and September 14, 2017. *See* Ex. 1 at 1 (listing Mr. Ballock's written responses to FBI's April 10, 2017 dismissal proposal). He also had his signed, sworn statement of June 29, 2016; his submission to the FBI's Office of Disciplinary Appeals of October 3, 2017; his second signed, sworn statement of March 12, 2018; and the FBI's nondisclosure agreement his counsel entered into. *See* Pl.'s *In Camera* Submissions (Aug. 23, 2018).[5] He did not produce any of these documents, but forced the State Police Defendants to submit a fruitless *Touhy* request and to file a motion to compel.

Mr. Ballock's claims against the State Police Defendants were frivolous and groundless from the beginning. This is not a case where the facts seemed questionable at the outset, but Mr. Ballock nonetheless had a subjective, good faith reason to believe that his claims had merit. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978). Here, Mr. Ballock's claims were frivolous from the outset, brought only for vexatious purposes. Even if his claims were not frivolous, unreasonable, or groundless from the beginning, they clearly became so at the close of discovery when he had not produced any evidence to substantiate them. Even by the close of discovery, Mr. Ballock was unable to back his conspiracy theory "with anything beyond conjecture and speculation." *Hutchinson v. Staton*, 994 F.2d 1076, 1080 (4th Cir. 1993).

Nevertheless, Mr. Ballock pursued these frivolous claims, requiring the State Police Defendants to incur over $265,000 in attorneys' fees and costs to defend themselves.  A specific

---

[5] The State Police Defendants do not imply that Mr. Ballock's counsel was involved in the withholding of responsive documents from discovery. It appears that Mr. Ballock withheld the documents at issue from his own counsel until the morning of the hearing on the competing motions to compel on August 21, 2018.

breakdown of all fees and costs can be provided if the Court so orders. Consequently, the Court should order Mr. Ballock to pay these costs for pursuing frivolous litigation and wasting the resources of both the State Police Defendants and this Court.

## V.    <u>CONCLUSION</u>

The State Police Defendants are prevailing parties in this civil action.  Because Mr. Ballock's Section 1983 claims were frivolous, unreasonable, or groundless, or he continued to litigate those claims after they clearly became so, the State Police Defendants are entitled to an award of their attorneys' fees. 42 U.S.C. § 1988(b); Fed. R. Civ. P. 54(d)(2).  Additionally, as prevailing parties, the State Police Defendants should be allowed to recover their costs from Plaintiffs, pursuant to Rule 54(d)(1).

WHEREFORE, for the foregoing reasons, Defendants State Trooper Michael Kief, State Trooper Ronnie Gaskins, and State Trooper Chris Berry respectfully request that the Court GRANT their Motion and award them attorney's fees and costs in amounts to be specified and for any other relief the Court deems just and proper.

Dated this 6th day of January 2020.

<u>s/  Mark G. Jeffries</u>
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants*
*State Trooper Michael Kief,*
*State Trooper Ronnie Gaskins, and*
*State Trooper Chris Berry*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**SCOTT T. BALLOCK,**

      **Plaintiff,**

**v.**                                          **CIVIL ACTION NO.:  1:17-CV-52**
                                                **Honorable Irene M. Keeley**

**ELLEN RUTH COSTLOW,**
**STATE TROOPER MICHAEL KIEF,**
**AND STATE TROOPER RONNIE M. GASKINS,**

      **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of January 2020, I filed the foregoing

"***Defendant State Trooper Michael Kief, State Trooper Ronnie Gaskins, and State Trooper Chris***

***Berry's Motion for Attorneys' Fees and Costs***" with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the following:

> Charles J. Crooks, Esq.
> CROOKS LAW FIRM PLLC
> 244 Pleasant Street
> Morgantown, WV 26505
>
> *Counsel for Plaintiff*
>
> P. Todd Phillips, Esq.
> LYONS PHILLIPS LEGAL GROUP PLLC
> 141 Walnut Street
> Morgantown, WV 26505
>
> *Counsel for Defendant Ellen Ruth Costlow*

_s/ **Mark G. Jeffries**_
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

_Counsel for Defendants_
_State Trooper Michael Kief,_
_State Trooper Ronnie Gaskins, and_
_State Trooper Chris Berry_

10740267v1