UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

SCOTT T. BALLOCK,

      Plaintiff,

v.

                                                              CIVIL ACTION NO.:  1:17-CV-52
                                                             Honorable Irene M. Keeley

ELLEN RUTH COSTLOW and
STATE TROOPER MICHAEL KIEF,

      Defendants.

**DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M.
GASKINS, AND STATE TROOPER CHRIS BERRY'S REPLY TO
PLAINTIFF'S MEMORANDUM IN RESPONSE TO
<u>MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

        In his response to the motion for attorneys' fees and costs filed by Defendants State Trooper

Michael Kief, State Trooper Ronnie M. Gaskins, and State Trooper Chris Berry (collectively, the

"State Police Defendants"), Plaintiff Scott T. Ballock largely fails to address the bases for the State

Police Defendants' assertion that he knew that the Section 1983 claims against them were frivolous

and groundless from the beginning. For the most part, he argues that the mere fact that he did not

ultimately prevail does not mean his causes of action were frivolous and groundless. This is

undoubtedly true, but that is not the grounds for the State Police Defendants' motion. The State

Police Defendants base their motion on the facts known to Mr. Ballock at the time he filed his

various complaints. Mr. Ballock's failure to explain his actions in the face of these facts is telling.

        Mr. Ballock does not address the State Police Defendants' argument that he knew at the

time he filed the Second Amended Complaint that his malicious prosecution claims under Section

1983 and state law were groundless due to the existence of probable cause. Instead, he argues that

he had a good-faith basis to believe probable cause was lacking because Magistrate Judge Aloi

denied the State Police's motion to dismiss, and the signed statement he submitted to the

10851716.1

Monongalia County Magistrate Court in order to get the criminal charges against him dismissed—where he acknowledged probable cause existed for the charges—was coerced. (Resp. Br. 8-9 [ECF No. 167]). This does not explain why he filed the claims in the first place when he knew (1) that a magistrate had signed the arrest warrant, finding probable cause; (2) that the prosecutor had reviewed the evidence and determined there was probable cause to arrest him; (3) that the FBI had found by a preponderance of the evidence that he harassed Ms. Costlow; and (4) that he had engaged in conduct that met the statutory definition of harassment by electronic device, as evidenced by his deposition testimony—most of which Magistrate Judge Aloi was not aware when he denied the motion to dismiss. (Mot. for Attorneys' Fees 5-6 [ECF No. 165]). In addition, as a former FBI agent, Mr. Ballock knew what probable cause meant, and he understood that it was "a very low standard" of proof. (Ballock Dep. 109:20-22, attached as "Exhibit 1").

Mr. Ballock does not address the frivolous nature of his abuse of process claims under Section 1983 and state law. Mr. Ballock based these claims largely upon the fact that he was arrested during a Family Court proceeding. (2d Am. Compl. ¶¶ 80-83, 90-93 [ECF No. 45]). He offers no explanation in his response brief why he would make such an assertion when he knew that Sgt. Kief had coordinated his arrest during the Family Court proceeding with the FBI in order to minimize the risk of violence, which concern the FBI shared. (Mot. for Attorneys' Fees 6).

Mr. Ballock does not address why he filed defamation claims under Section 1983 and state law against Cpl. Gaskins, when he had read the incident report that formed the basis of the charges, and he knew that everything Cpl. Gaskins put in the report was true. *Id.*

Mr. Ballock does not address why he filed a Section 1983 First Amendment "denial of access to courts" claim when he was already in court, and clearly, the conduct he complained of did not prevent him from seeking redress in this Court. *Id.* at 6-7.

Mr. Ballock scarcely addresses the groundless nature of his tortious interference with contract claim, given that he had read the FBI's September 21, 2017 dismissal letter, and he knew that nowhere in that letter did the FBI point to any acts by the State Police Defendants as grounds for its discharge decision, much less a purported contact with the FBI's Clarksburg Resident Agency by a "mystery trooper"—the grounds stated for the claim in the Second Amended Complaint. *See id.* at 7; 2d Am. Compl. ¶ 220. Again, Mr. Ballock merely points to the decision of Magistrate Judge Aloi, denying the motion to dismiss. (Resp. Br. 10). The fact that a Magistrate Judge, who only had the pleadings to rely upon, denied a motion to dismiss does not explain why Mr. Ballock, who had full knowledge of the FBI's reasons for his discharge, would file the claim in the first place.

Mr. Ballock does not address why he sought declaratory relief from this Court to release a forensic psychiatric study that he already possessed, and which he had already provided to the FBI. (Mot. for Attorneys' Fees 7-8).  Mr. Ballock, however, admits having possession of the report in his response brief. (Resp. Br. 7).

Mr. Ballock does not explain why he made the groundless claim that Ms. Costlow had their son committed to a psychiatric hospital, when he had the medical records that said otherwise. (Mot. for Attorneys' Fees 8). To the contrary, he repeats this claim in his response brief. (Resp. Br. 4).[1]

The only basis for the State Police Defendants' motion that Mr. Ballock comes close to addressing head-on is their claim that he knowingly withheld from discovery the documents he

---

[1] Although Mr. Ballock offers that his son is now an adult and proffers that his son could testify that "his mother attacked and threatened him," (Resp. Br. 4), he does not state that his son can testify that Ms. Costlow attacked and threatened him on the night he was admitted to the psychiatric hospital. Nor can his son contradict the medical records, which reflect that it was the medical staff at the ER—not Ms. Costlow—that recommended that he be admitted to the psychiatric hospital. *See* ECF Nos. 131, 131-6.

sent to and received from the FBI regarding his discharge, resulting in a *Touhy* request, motion to compel, and a continuance of the trial date. (Mot. for Attorneys' Fees 8-9). Mr. Ballock claims that he "was obliged to sign a non-disclosure agreement with the FBI about the [administrative] litigation." (Resp. Br. 11). Therefore, claims Mr. Ballock, he had to force the Court to issue an order compelling production of the documents to protect himself against "recrimination by the [FBI Office of Professional Responsibility]." *Id.*

Mr. Ballock's defense of his vexatious discovery conduct is demonstrably false. First, he never produced the purported non-disclosure agreement he claims he was forced to sign in discovery. Second, his discovery responses are, at a minimum, highly misleading. He did not respond that he had the documents but was prohibited by a non-disclosure agreement from producing them. [ECF No. 165-3 at 6]. In fact, he did not indicate at all that he had possession of the documents at issue. Instead, he objected that the request was overbroad and vague and duplicative of the *Touhy* request. *Id.* Nevertheless, he agreed to work with defense counsel to produce responsive documents, "if any." *Id.*

Moreover, Mr. Ballock's claim of fear of recrimination by OPR is belied by the fact that he previously disobeyed its commands by filing the Second Amended Complaint. In its September 21, 2017 discharge letter, the FBI expressly admonished Mr. Ballock not to discuss the FBI investigation and discharge decision "with anyone other than the Inspection Division's Internal Investigation Section (IIS), OPR, the Human Resources Branch's Office of Disciplinary Appeals (ODA), the Security Division, the FBI's Employee Assistance Program, the FBI's Ombudsman, or an attorney who has signed the appropriate Nondisclosure Agreement." [ECF No. 165-1 at 19 n.19]. Despite this admonition, Mr. Ballock made the FBI's decision a matter of public record by including allegations about the discharge in the Second Amended Complaint. (2d Am. Compl. ¶

10851716.1

120). If he felt he could make a public allegation about the FBI's decision to discharge him without fear of "recrimination by the OPR," there is no reason why he could not have produced documents relevant to that allegation in discovery, particularly when such documents could be subject to a protective order.

Finally, Mr. Ballock suggests that the Court should deny the State Police Defendants' motion for attorneys' fees and costs because they did not personally incur the costs, West Virginia's Board of Risk Management did. (Resp. Br. 12). In truth, the taxpayers of West Virginia, who pay BRIM's premiums for the State Police and other state agencies, bore the costs. This is all the more reason to grant an award of attorneys' fees and costs in this case.

Mr. Ballock offers no defense of his decision to pursue frivolous claims against the State Police Defendants that were clearly groundless, given the information that Mr. Ballock had at the time he filed his complaints—most of which information the State Police Defendants only learned of through discovery in this action. Because Mr. Ballock's Section 1983 claims were frivolous, unreasonable, or groundless, or he continued to litigate those claims after they clearly became so, the State Police Defendants are entitled to an award of their attorneys' fees. 42 U.S.C. § 1988(b); Fed. R. Civ. P. 54(d)(2). Additionally, as prevailing parties, the State Police Defendants should be allowed to recover their costs from Plaintiff, pursuant to Rule 54(d)(1).

WHEREFORE, for the foregoing reasons, as well as those set forth in their Motion, Defendants State Trooper Michael Kief, State Trooper Ronnie Gaskins, and State Trooper Chris Berry respectfully request that the Court GRANT their Motion and award them attorney's fees and costs in amounts to be specified and for any other relief the Court deems just and proper.

10851716.1

Dated this 28th day of January 2020.

Respectfully submitted,

*s/ Mark G. Jeffries*
Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants*
*State Trooper Michael Kief,*
*State Trooper Ronnie Gaskins, and*
*State Trooper Chris Berry*

10851716.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

SCOTT T. BALLOCK,

      Plaintiff,

v.                                         CIVIL ACTION NO.:  1:17-CV-52
                                         Honorable Irene M. Keeley

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
AND STATE TROOPER RONNIE M. GASKINS,

      Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January 2020, I filed the foregoing *"Defendant State Trooper Michael Kief, State Trooper Ronnie Gaskins, and State Trooper Chris Berry's Reply to Plaintiff's Memorandum in Response to Motion for Attorneys' Fees and Costs"* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

        Charles J. Crooks, Esq.
        CROOKS LAW FIRM PLLC
        244 Pleasant Street
        Morgantown, WV 26505

        *Counsel for Plaintiff*

        P. Todd Phillips, Esq.
        LYONS PHILLIPS LEGAL GROUP PLLC
        141 Walnut Street
        Morgantown, WV 26505

        *Counsel for Defendant Ellen Ruth Costlow*

*s/ Mark G. Jeffries*

Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants*
*State Trooper Michael Kief,*
*State Trooper Ronnie Gaskins, and*
*State Trooper Chris Berry*

10851716.1