UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

SCOTT T. BALLOCK,

   Plaintiff,

v.               CIVIL ACTION NO.:  1:17-CV-52
                 Honorable Irene M. Keeley

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M. GASKINS, and
STATE TROOPER CHRIS BERRY,

   Defendants.

**DEFENDANTS STATE TROOPER MICHAEL KIEF, STATE TROOPER RONNIE M. GASKINS, AND STATE TROOPER CHRIS BERRY'S RESPONSE TO PLAINTIFF'S MEMORANDUM REGARDING MEASURE OF RECOVERABLE ATTORNEY FEES AND COSTS**

In response to the Court's Order [ECF No. 171] directing the parties to brief two discrete issues—(1) whether the State Police Defendants are entitled to an award of attorneys' fees related to their motion to dismiss and (2) whether the State Police Defendants are entitled to an award of their attorneys' fees for work related to defending against the state law tortious interference with employment and intentional infliction of emotional distress counts—Plaintiff Scott T. Ballock offers no authority supporting his position relating to the first question, and concedes that the State Police Defendants are entitled to their fees related to defending the state law claims. But he goes further, submitting an affidavit that purportedly details his financial condition, continuing to argue that his claims were not frivolous merely because he initially prevailed at the Rule 12(b)(6) stage, and arguing that the State Police Defendants are not entitled to their attorneys' fees for work related to various discovery motions during the course of the proceedings. None of Mr. Ballock's arguments are viable, however, and the State Police Defendants are entitled to a full award of their attorneys' fees accrued in defending against Mr. Ballock's frivolous claims.

11416794

I.      **Mr. Ballock's Purported Financial Condition Does Not Preclude a Full Award of Attorneys' Fees.**

Mr. Ballock first seeks leave of the Court to submit a one-page financial disclosure of his income and expenses. (Pl.'s Br. 1; Ex. 1 [ECF No. 177, 177-1]). Mr. Ballock argues that there will be no unfair prejudice to the State Police Defendants if the Court considers evidence of his ability to pay and claims that "the defense withheld evidence in support of the fees they seek to recover pending a ruling on their motion[.]" (Pl.'s Br. 1).

As an initial matter, the State Police Defendants take issue with Mr. Ballock's accusation that they "withheld evidence" of their fees. As the Court noted, Rule 54(d)(2)(B) only requires a party seeking its attorneys' fees to provide "a fair estimate" of the amount sought, which the State Police Defendants did. (Mem. Opinion & Order Granting Mot. for Att'y's Fees & Costs 10-11 [ECF No. 175]) ("Order Granting Att'y's Fees").

Regardless, the State Police Defendants do not object to the Court considering Mr. Ballock's evidence of his financial condition. Indeed, while a party's financial position does not figure into the decision *whether* to award attorneys' fees, it may be a factor, "[i]n appropriate circumstances," when deciding the *amount* of attorneys' fees to award. *Arnold v. Burger King Corp.*, 719 F.2d 63, 68 (4th Cir. 1983).

The starting point for determining the amount of attorneys' fees to award a prevailing party is the "lodestar" figure—the reasonable number of hours reasonably expended on the case multiplied by the reasonable or customary hourly rate. *Id.* at 67. Twelve factors generally are considered in determining the amount of attorneys' fees to award:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount

2

in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 67 n.4. Some of these factors are of limited use in computing attorneys' fees awards for prevailing defendants, however. *Id.* 67 n.5. Also, the twelve so-called "*Johnson* factors"[1] are neither the exclusive means of determining the amount of attorneys' fees nor an exhaustive list of considerations to guide courts in assessing attorneys' fees against plaintiffs. *Id.* at 67-68.

A plaintiff's financial position is "but one among the several other relevant factors which a trial judge should consider." *Id.* at 68. Several courts recognize the important deterrent effect of an award of attorneys' fees to a defendant who prevailed in a frivolous lawsuit, holding that "in no case may the district court refuse altogether to award attorneys' fees to a prevailing . . . defendant because of the plaintiff's financial condition. A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence." *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982); *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1029 (2d Cir. 1979); *Miller v. Los Angeles Cty. Bd. of Educ.*, 827 F.2d 617, 621 n.5 (9th Cir. 1987) ("[A] district court should not *refuse* to award attorney's fees to a prevailing defendant under 42 U.S.C. § 1988 . . . solely on the ground of the plaintiff's financial situation.") (emphasis in original); *cf. Cherry v. Champion Intern. Corp.*, 186 F.3d 442, 447 (4th Cir. 1999) (in the context of awarding costs under Rule 54(d)(1), finding that district court abused its discretion in refusing to award prevailing party its costs simply because plaintiff claimed to be of "modest means" without addressing whether it would be unjust or inequitable to award costs against plaintiff).

---

[1] The twelve factors were first set forth by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.* at 67.

The Fourth Circuit Court of Appeals expressly instructs courts to consider the degree of frivolousness of the plaintiff's claims when awarding attorneys' fees to a prevailing defendant against a plaintiff who claims to be unable to pay them. While a showing of bad faith is not necessary to award attorneys' fees to a prevailing defendant under Section 1988, a plaintiff's motivation in bringing the lawsuit "may shed light on the degree of frivolousness." *Arnold*, 719 F.2d at 66; *see also, Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) ("[I]f a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.") When deciding the amount of attorneys' fees to award a prevailing defendant, trial courts are instructed to take note of the degree of frivolousness involved. *Arnold*, 719 F.2d at 68 n.7.

Here, the Court expressly found that all of Mr. Ballock's claims against Trooper Berry were "clearly frivolous, unreasonable, or groundless from the outset and were pursued in an attempt to harass Berry[.]" (Order Granting Att'y's Fees 13). Each claim against Cpl. Gaskins was "frivolous, unreasonable, or groundless." *Id.* As to the claims against both Sgt. Kief and Cpl. Gaskins, the Court found the "color of law" claim was "plainly frivolous, unreasonable, or groundless." *Id.* at 15. Mr. Ballock's federal and state law claims for malicious prosecution were "plainly frivolous." *Id.* at 17. His claim for intentional infliction of emotional distress was "*at least* unreasonable and groundless[.]" *Id.* at 18 (emphasis added). Mr. Ballock's tortious interference with employment claim "was frivolous or, at the very least, groundless." *Id.* at 19. Finally, the Court found that Mr. Ballock's conspiracy count was certainly unreasonable or groundless, if not frivolous. *Id.* at 20. In addition, the Court noted "the extensive evidence that Ballock pursued this litigation in bad faith in an ongoing effort to harass his ex-wife and the state police[.]" *Id.* at 9-10.

The Court "must be sensitive to the degree of frivolousness involved . . . when it decides the appropriate fee award." *Arnold*, 719 F.2d at 68 n.7.

Mr. Ballock's claims were clearly frivolous, given the information he knew at the time he filed his complaints. Mr. Ballock's malicious prosecution counts were especially frivolous, given the amount of evidence supporting the criminal charges against him: more than 3,000 e-mails where he repeatedly pressured Ms. Costlow to reconcile, despite her repeatedly telling him she was not interested in reconciliation, and where he repeatedly insulted her. As a supervisory FBI agent, Mr. Ballock, more than most other plaintiffs, knew what probable cause is and knew that the State Police had probable cause to charge him with two criminal counts related to harassment. The malicious prosecution counts were also particularly frivolous, considering that he obtained one necessary element to the claims—dismissal of the underlying criminal charges—only by submitting a signed document to the Magistrate Court affirming the absence of another essential element—lack of probable cause—which he then repudiated in this litigation. Quite simply, Mr. Ballock wanted to "have his cake and eat it, too," and he intentionally misled the Monongalia Magistrate Court and this Court in an attempt to gain unfair advantage in this litigation. *Cf. Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996).

Besides the frivolous nature of Mr. Ballock's claims against the State Police Defendants and the ample evidence that he pursued his claims in bad faith, the Court should also consider how much weight, if any, to give Mr. Ballock's affidavit about his financial condition. Obviously, the State Police do not have evidence with which to contest the amount of Mr. Ballock's claimed income and expenses. Nor should the determination of fees result in a second major litigation. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

11416794

Yet, it bears mentioning that Mr. Ballock did not attach any documentary evidence to support his claimed income and expenses. Mr. Ballock expresses his gross salary as an annual amount of $40,092 but his purported net salary as a monthly amount of $2,218. (Ballock Aff. [ECF No. 177-1]). Thus, Mr. Ballock claims that his *annual* net salary is only $26,616, a mere 66% of his gross salary. For a man of modest means, it would seem unusual that he has 34% of his salary deducted in taxes and insurance. Indeed, comparing Mr. Ballock's alleged monthly income and expenses reveals that he claims to spend $363 per month more than he takes in, resulting in a yearly deficit of $4,356. *Id.* Despite this monthly deficit, however, he has been able to put $13,500 into his IRA and $11,600 into his children's 529 savings plans, and he owns three vehicles. *Id.*

In addition, when deciding how much weight to give to Mr. Ballock's affidavit, the Court should consider Mr. Ballock's demonstrated willingness to play loose with the truth in proceedings before this Court and other adjudicatory bodies, as demonstrated by the evidence of record. Mr. Ballock admittedly lied to the Monongalia County Magistrate Court when he submitted a signed statement, in which he agreed the State Police Defendants had probable cause to charge him. *See* Mem. in Supp. of Mot. for Summ. J. 9 [ECF No. 120-1]. One of the FBI's grounds to discharge Mr. Ballock was his lack of candor or lying under oath in the signed, sworn statements he submitted as part of the FBI's administrative investigation. (Letter from Asst. Dir. Candice M. Will to Scott T. Ballock (Sept. 21, 2017) at 17 [ECF No. 120-19]; Letter from Nancy McNamara to Scott T. Ballock (Mar. 5, 2019) at 22 [ECF No. 120-25]). In his pleadings before this Court, Mr. Ballock falsely alleged that Ms. Costlow committed their son to Chestnut Ridge Hospital, purportedly for mere misbehavior. (Mot. for Att'y's Fees 2-3 [ECF No. 165]). He used this Court in an attempt to gain an unsealed copy of a forensic psychiatric evaluation of Ms. Costlow, falsely alleging that he needed the report to use in defense of the FBI administrative evaluation, even

though he had already provided a copy of the evaluation to the FBI at the time he made the request for declaratory relief. *Id.* at 3-4. Indeed, the Court has already noted that Mr. Ballock included allegations in his pleadings that he "well knew at the time were false." (Order Granting Mot. for Att'y's Fees at 17-18). Furthermore, the Court found that it was "undeniable" that when Mr. Ballock filed the Second Amended Complaint, he knew the FBI had fired him for reasons unrelated to any conduct by Sgt. Kief and Cpl. Gaskins. *Id.* at 19-20. Nevertheless, he alleged to this Court that the State Police Defendants caused his discharge. (2d Am. Compl. ¶ 120).

Mr. Ballock also has been less than forthright in discovery. Mr. Ballock failed to produce the most relevant documents he possessed—the FBI's letters regarding its discharge decision—either in his Rule 26(a)(1) Initial Disclosures or in response to a Rule 34 request by the State Police Defendants, implying in his discovery responses that he did not have the documents. (Mot. for Att'y's Fees 4, 8). In his response to the Motion for Attorneys' Fees, Mr. Ballock claimed that he withheld these highly relevant documents out of fear of recrimination by the FBI if he produced them without a court order. (Pl.'s Resp. to Mot. for Att'y's Fees 11 [ECF No. 167]). This argument is demonstrably untrue. (Reply to Pl.'s Resp. to Mot. for Att'y's Fees 3-5 [ECF No. 168]). Yet, Mr. Ballock repeats this claim in his latest brief. (Pl.'s Br. 6).

Even if the affidavit Mr. Ballock submitted is accurate, however, the Court may still award the State Police Defendants their full attorneys' fees. While Mr. Ballock's purported financial condition may mean that an award of attorneys' fees may not be able to easily be collected, that does not mean that a *substantial* award of attorneys' fees is not warranted to deter Mr. Ballock and others from filing frivolous lawsuits, thereby impeding access to the courts by those with legitimate claims.

11416794

Also, as Mr. Ballock has repeatedly pointed out to this Court, the FBI's decision to terminate his employment is being appealed. *See, e.g.*, Pl.'s Resp. to Mot. for Att'y's Fees 10 [ECF No. 167]. The evidence of record reveals that Mr. Ballock made approximately $150,000 per year as a supervisory FBI agent (*see* Hawley Rep. 7 [ECF 134-2]), and he has been discharged from that agency for approximately three years. If he is ultimately reinstated, as he appears confident he will be, he presumably would receive approximately three years of back pay totaling approximately $450,000, from which an award of attorneys' fees could be paid without causing him financial ruin.

Finally, Mr. Ballock should have considered his financial position earlier in this litigation. During mediation in this matter on June 20, 2019, the undersigned counsel asked the mediator to impress upon Mr. Ballock that Section 1988 provides for an award of attorneys' fees not just to prevailing plaintiffs but also to prevailing defendants, but the State Police Defendants would agree not to seek their attorneys' fees if Mr. Ballock voluntarily dismissed his claims at that time. Mr. Ballock declined to do so, doubling down with what he knew were frivolous, groundless claims and forcing the State Police Defendants to incur thousands of dollars more in defense costs. *See McAfee v. Boczar*, 738 F.3d 81, 90 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (noting that a district court has discretion to consider settlement negotiations in determining the reasonableness of attorneys' fees).

In sum, Mr. Ballock's financial condition—to the extent he has accurately presented it—is but one factor the Court may consider in appropriate circumstances. Given the egregious degree of frivolousness in the claims Mr. Ballock pursued, the deterrent effect of an award of attorneys' fees is also a very important factor. Accordingly, because they fully prevailed against Mr.

11416794

Ballock's claims after more than two years of expensive litigation, the Court should fully

compensate the State Police Defendants and award them their full attorneys' fees.

## II.   The Court Should Not Reduce the Award of Attorneys' Fees Accrued in the Rule 12(b)(6) Motion.

Mr. Ballock spends scant time in his brief discussing the propriety of awarding attorneys'

fees for the Rule 12(b)(6) motion the State Police Defendants filed, instead spending most of that

section of his brief apparently discussing whether his claims were frivolous, unreasonable, or

groundless.[2] That issue, however, has already been decided by the Court. All of Mr. Ballock's

claims against the State Police Defendants were frivolous, unreasonable, or groundless. (Order

Granting Att'y's Fees 12-20).

Mr. Ballock admits that his counsel "could not find a case specifically on all fours on the

precise issue posed[.]" (Pl.'s Br. 2). The State Police Defendants' counsel, however, found several,

all of which hold that a defendant who fully prevails should be fully compensated for the total fees

---

[2] To support his argument that his claims were not frivolous, Mr. Ballock argues that he "found a measure of success in his FBI administrative litigation" because the FBI supposedly found Sgt. Kief and Ms. Costlow not to be credible, and it "abandoned their evidence once Scott Ballock refuted it with discovery from this litigation." (Pl.'s Br. 4-5). To the extent it matters at all, this argument is wrong. The FBI did not "initially rel[y] on Sgt. Kief and Ellen Costlow" to justify Mr. Ballock's discharge. *Id.* at 4. In the initial discharge letter, Assistant Director Candice Will stated, "The findings in OPR's proposal letter and this final letter are based on independent record evidence, including your own communications, that in no way turn on [Ms. Costow's] credibility." (Letter from Asst. Dir. Candice M. Will to Scott T. Ballock (Sept. 21, 2017) 17 [ECF No. 120-19]). Nor did Mr. Ballock refute Sgt. Kief and Ms. Costlow's statements with discovery from this action. In its second discharge letter, the FBI still found that Mr. Ballock harassed Ms. Costlow, harassment that was "skillful, intrusive, and pervasive." (Letter from Acting Asst. Dir. Nancy McNamara to Scott T. Ballock (Mar. 5, 2019) 3 [ECF No. 120-25]). But, after further investigation, the FBI found that Mr. Ballock's harassment of Ms. Costlow was "but one aspect of the misconduct [he] engaged in" and expanded the grounds for his discharge to unprofessional conduct off duty, weapons safety violations, and lack of candor under oath. *Id.* Mr. Ballock found no measure of success in the FBI disciplinary process, and the FBI never found Sgt. Kief and Ms. Costlow not to be credible witnesses.

9

11416794

incurred in the defense, including for non-frivolous motions that were unsuccessful. (Defs.' Br. 4-7 [ECF No. 176]).

Mr. Ballock's argument on the issue of the Rule 12(b)(6) motion can be summed up with this sentence from his brief: "The unsuccessful motion to dismiss is fairly analogous to a plaintiff seeking attorney fees for pursuing an unsuccessful *count* in an otherwise successful cause of action." (Pl.'s Br. 3) (emphasis added). That is not a fair analogy.

The criteria for awarding attorneys' fees to prevailing plaintiffs is different than the criteria for an award to prevailing defendants. "[A] prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 417 (1978) (emphasis in original). Thus, an award of attorneys' fees to a prevailing plaintiff is presumed. But a defendant is not entitled to attorneys' fees merely for prevailing; a prevailing defendant is only entitled to attorneys' fees if the plaintiff presented claims that were frivolous, groundless, or unreasonable. *Fox v. Vice*, 563 U.S. 826, 833 (2011). This different standard for defendants reflects that quite different equitable considerations are at stake when a defendant is awarded attorneys' fees. *Id.* Plaintiffs ordinarily do not receive attorneys' fees for "work performed on claims that bore no relation to the grant of relief" because such work was not expended in pursuit of the ultimate result achieved. *Id.* at 834. There is a different standard for prevailing defendants, however: "Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim." *Id.* at 836. Thus, prevailing plaintiffs are entitled to receive attorneys' fees incurred in pursuit of, and only those fees incurred in pursuit of, the claims that resulted in them receiving the relief they sought. Defendants are entitled to receive attorneys' fees incurred because of, but only because of, a frivolous claim. Thus, whether a defendant is entitled to attorneys' fees does not turn on whether

10

11416794

the defendant "substantially prevailed," but on whether the plaintiff's claim was frivolous, groundless, or unreasonable.

Here, the State Police Defendants would not have incurred fees related to their motion to dismiss but for Mr. Ballock's frivolous claims. *See id.* at 836. The State Police Defendants fully prevailed, and they are entitled to be fully compensated for their expenses. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Not only was the motion to dismiss not frivolous, as the State Police Defendants discussed on pages 4-5 of their brief, but they were virtually bound to attempt to dispose of Mr. Ballock's frivolous claims at the earliest possible opportunity. *Leffler v. Meer*, 936 F.2d 981, 987 (7th Cir. 1991). Indeed, attorneys' fees can be awarded to defendants who achieve excellent results even for motions that *were not filed. EEOC v. Freeman*, 126 F. Supp. 3d 560, 580 (D. Md. 2015) (awarding, in full, hours spent considering filing an opposition to the plaintiff's motion to stay execution of costs that ultimately was not filed). "The question is not necessarily whether individual motions were successful, or whether research into various courses of action resulted in a decision not to oppose a motion, but whether the hours spent on those issues 'were expended in furtherance of the litigation of the case as a whole and centered on a common core of facts and related legal theories.'" *Id.* (quoting *Durham v. Jones*, 2012 WL 3985224, at *8 (D. Md. Sept. 10, 2012)).

Mr. Ballock cites to no authority to support his position that the State Police Defendants should not be awarded their attorneys' fees arising from the motion to dismiss initially filed in this matter. To the contrary, the authority cited by the State Police Defendants supports their position that they are entitled to be fully compensated for defending against Mr. Ballock's frivolous claims, including for time spent on a motion to dismiss that ultimately was not entirely successful.

III.    **The Court Should Award the State Police Defendants Their Attorneys' Fees Related to Discovery Motions.**

11

Although the Court asked for briefing on only two specific issues, Mr. Ballock nevertheless argues that the State Police Defendants should be denied their attorneys' fees for time spent on supposedly unsuccessful "discovery issues." (Pl.'s Br. 7). In particular, Mr. Ballock appears to refer to a motion to quash the subpoena served on the West Virginia State Police, which sought the same documents requested from the State Police Defendants, only two weeks sooner, and the motion to compel discovery of the documents Mr. Ballock had regarding the FBI administrative investigation. *Id.* at 4.

As with the motion to dismiss, expenses related to these discovery-related motions would not have been incurred but for Mr. Ballock's frivolous claims. Furthermore, the motions were not frivolous, and contrary to Mr. Ballock's assertion otherwise, were successful. Therefore, the State Police Defendants should be awarded their attorneys' fees related to these motions.

First, the State Police (represented by the undersigned counsel), as a non-party custodian of possibly relevant documents, moved to quash a subpoena that Mr. Ballock served on it. The chief reason for the motion to quash was that the subpoena served on the State Police was an improper attempt to make an end-run around Rule 34 and obtain documents from the State Police nearly two weeks before a response to a request for largely the same documents was required from the State Police Defendants. (Mot. to Quash 3-6 [ECF No. 53]). Twenty-four of twenty-eight categories of documents requested in the subpoena were also sought from the State Police Defendants in a Rule 34 request. *Id.* As Mr. Ballock points out, the State Police withdrew the motion to quash when it became moot. (Pl.'s Br. 4). By that time, the State Police Defendants had responded to Plaintiff's request for documents, and the State Police itself had responded to the four non-duplicative requests. (Notice of Withdrawal of Motion to Quash [ECF No. 64]). The motion to quash was not frivolous, and it successfully obtained the results sought—it prevented the State

11416794

Police from having to produce documents before the State Police Defendants were required to respond to Mr. Ballock's Rule 34 discovery requests.

Second, the State Police Defendants moved to compel Mr. Ballock to produce, among other information, records he received from the FBI related to its investigation of his conduct and ultimate decision to discharge him. (Mot. to Compel 7-8 [ECF No. 81]). Once again, Mr. Ballock makes the demonstrably false claim that he did not produce these records because:

> the record shows Scott Ballock signed a non-disclosure agreement to even receive the documents from the administrative litigation. This Court's order was necessary to protect him from OPR citing use of those documents in civil litigation as a further ground for terminating his employment. The defense fees incurred for this should not be awarded.

(Pl.'s Br. 6). Mr. Ballock is wrong on every count. The State Police Defendants' motion was successful, and Mr. Ballock did not force a motion to compel the discharge documents out of fear of recrimination from the FBI.

The motion to compel was largely successful. The FBI records were only one of six categories of documents sought by the motion to compel. (Mot. to Compel 4). The State Police Defendants did not receive any of the documents until moving to compel; after filing the motion to compel, they received everything except Tom Ballock's communications with Mr. Ballock's counsel. (Summ. Order Following Mot. Hearing 1-2 [ECF No. 87]).

More importantly, the record does *not* show that Mr. Ballock withheld the documents because of a non-disclosure agreement he purportedly signed with the FBI. No such agreement has ever been produced.[3] Also, his discovery responses were, at a minimum, highly misleading. He did not respond that he had the documents but was prohibited by a non-disclosure agreement

---

[3] In response to the State Police Defendants' motion to compel, Mr, Ballock produced, among other documents, a non-disclosure agreement *his counsel* executed. He has never produced the non-disclosure agreement he claims to have executed himself.

from producing them. [ECF No. 165-3 at 6]. In fact, he did not indicate at all that he had possession of the documents at issue. Instead, he objected that the request was overbroad and vague and duplicative of the *Touhy* request. *Id.* Nevertheless, he agreed to work with defense counsel to produce responsive documents, "if any," thereby implying that he may not have any responsive documents. *Id.* Moreover, Mr. Ballock's claim of fear of recrimination by the FBI is belied by the fact that he previously disobeyed its commands by mentioning his discharge in the Second Amended Complaint, despite the FBI's admonishment in its September 21, 2017 discharge letter that he not discuss the administrative investigation and discharge decision without the FBI's permission. [ECF No. 165-1 at 19 n.19].

The State Police Defendants' (and the West Virginia State Police's) discovery motions were reasonable and successful. Thus, the Court should award the State Police Defendants their full attorneys' fees incurred in researching and drafting these motions.

## IV.     Conclusion

Mr. Ballock offers no authority that would support a denial of the State Police Defendants' attorneys' fees related to the initial motion to dismiss or the state law claims of tortious interference with employment and intentional infliction of emotional distress. Nor does he offer any support for his argument that fees related to the discovery motions should not be awarded, even though this issue was not requested to be briefed by the Court. Finally, Mr. Ballock's purported limited financial means does not foreclose a substantial award of attorneys' fees to deter frivolous claims such as Mr. Ballock brought in this action.

WHEREFORE, for the foregoing reasons, Defendants State Trooper Michael Kief, State Trooper Ronnie Gaskins, and State Trooper Chris Berry respectfully request that the Court award them their full attorney's fees and costs and for any other relief the Court deems just and proper.

11416794

Dated this 15th day of June 2020.

Respectfully submitted,

*s/ Mark G. Jeffries*

Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants*
*State Trooper Michael Kief,*
*State Trooper Ronnie Gaskins, and*
*State Trooper Chris Berry*

15

11416794

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

SCOTT T. BALLOCK,

      **Plaintiff,**

v.

                                            **CIVIL ACTION NO.:  1:17-CV-52**
                                            **Honorable Irene M. Keeley**

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M. GASKINS, and
STATE TROOPER CHRIS BERRY,

      **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June 2020, I filed the foregoing "*Defendant State Trooper Michael Kief, State Trooper Ronnie Gaskins, and State Trooper Chris Berry's Response to Plaintiff's Memorandum Regarding Measure of Recoverable Defense Attorney Fees and Costs*" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles J. Crooks, Esq.
CROOKS LAW FIRM PLLC
244 Pleasant Street
Morgantown, WV 26505

*Counsel for Plaintiff*

P. Todd Phillips, Esq.
LYONS PHILLIPS LEGAL GROUP PLLC
141 Walnut Street
Morgantown, WV 26505

*Counsel for Defendant Ellen Ruth Costlow*

11416794

s/ *Mark G. Jeffries*

Mark G. Jeffries (WV Bar No. 11618)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

*Counsel for Defendants*
*State Trooper Michael Kief,*
*State Trooper Ronnie Gaskins, and*
*State Trooper Chris Berry*

11416794