UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**  Case No.: 1:17-CV-52

    Plaintiff,

v.  JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW**, and
**STATE TROOPER MICHAEL KIEF**,

    Defendants.

### PLAINTIFF SCOTT BALLOCK'S RESPONSE TO DEFENDANTS' KIEF, GASKINS AND BERRY'S SUPPLEMENTAL BRIEF ON COSTS AND ATTORNEY FEES

The Plaintiff submits this memorandum pursuant to an order entered May 18, 2020, (Doc 171). It follows the filing of opening briefs on the costs and attorney fees sought by the State Police Defendants, filed June 5, 2020, (Docs. 176 and 177).

**I.**  **The Affidavit**

The State Police Defendants submitted an affidavit (Doc 176-1) executed by their counsel. Mark Jeffries distinguished himself in all respects of his performance and was by all appearances the lead counsel for the State Police Defendants. He was supported by a platoon of six other lawyers, six paralegals and four law students, "Summer Associates." Between April 14, 2017 and May 20, 2020, they collectively billed $1,512.70 hours totaling $242,197.70. This was net of $65,657.20 in fees billed in duplication and administrative tasks.

The billing memorandum does not total time and cost for each timekeeper. Modern billing software typically does that. The omission poses a tedious challenge, made harder by what appears to be a 6-point font; it may have been a little larger font that shrank with reproduction. Redactions are extensive, apparently concealing the entirety of somewhere between 90 and 100 cells in the

spreadsheet; this leaves no way to determine whose entries were obliterated or how much they billed. Of the partially redacted entries, it appears Mr. Williams had the most closely guarded conversations and protected thought processes. Judging by the partially redacted entries, it appears the firm regards the identity of their claims adjusters at AIG to be privileged and/or attorney work product. It is also possible client names were redacted from entries describing communications. In either event, the identity of the client or adjuster would not be privileged, the substance of the communication might be, in the case of client communications, but not the identity of the person contacted.

Reviewing the entries in 2017 reveals the merit of the Plaintiff's argument on the fees billed for the motion to strike and the motion to dismiss. The State Police Defendants' brief acknowledged that the Plaintiff prevailed, (Doc 176 at 2). The time spent on the judicial estoppel and release dismissal agreements that were expressly found to lack any basis in the either the pleaded legal claims or the proffered factual allegations, as well as the broader mission of seeking a Rule 12 dismissal were wasteful. Given all the review and analysis reflected in the billing statement, the prospect for success had to be judged ambitious at best.

There were two counts dismissed without objection. One was apparently omitted from the report and recommendation, the matter was so inconsequential. These cannot justify the time and expense of the entire Rule 12 motion practice.

## II.  **Argument**

The defense brief (Doc 176 at 7) argues that the Plaintiff included baseless and distorted allegations in the complaint. It is suggested the allegations concerning the arrest in front of Family Judge Minor were an example. Although they relied exclusively on their own testimony, producing no documentary evidence, the State Police Defendants did apparently contact the FBI in advance.

They even arranged for a representative to witness the arrest. Nonetheless, the Plaintiff was within his rights to assert that their concern for safety was pretextual and their communications with the FBI were abusive of their qualified privilege. The facts proffered from discovery showed the State Police harbored no fear of Scott Ballock. When he went to the Morgantown State Police barracks to deliver his lawsuit, he was bearing his sidearm and nothing whatever was said or done about it.

The discovery record concerning the arrest included email from Ellen Costlow advising that the hearing on September 13, 2013 was fast approaching and that would decide the matter of custody. That hearing was the occasion when Dr. Christy Cooper-Lehki testified at length that Ellen Costlow, not Scott Ballock, was the one who posed risk. In fact, Judge Minor was moved by the arrest to mention in an order that he could not help but surmise it was staged to influence his decision.

Yes, the State Police had a rationale for their actions, so did Scott Ballock. He unsuccessfully sought the opportunity to argue to a jury that the State Police rationale was a mere pretext. The Court ruled his proffer would not be sufficient to support of jury finding in his favor. His evidence concerning subjective intent was circumstantial, as such evidence so often is. He could not overcome the qualified privilege. Still, there were facts and circumstances upon which Scott Ballock based his allegations.

Similarly, the State Police argue the complaint was baseless in alleging a causal link between the State Police communications with the FBI and his termination. The record shows the Office of Disciplinary Counsel abandoned reliance on the State Police finding that the alleged affair was investigated and found to be untrue. Sgt. Kief admitted in deposition he did not know whether the affair occurred, and he kept Trooper Berry out of the investigation and arrest of Scott Ballock. Similarly, Ellen Costlow's allegations of physical abuse were rejected by Dr. Cooper-

Lehki and recanted in deposition. The fact that an internal prosecuting counsel abandoned the State Police as a source of probative evidence and urged a different case after the claim was further investigated bears out Scott Ballock's good-faith belief that the State Police were abusing their qualified privilege in ever involving the FBI in a family court case.

The record does not demonstrate that Scott Ballock submitted falsified exhibits or alleged falsehoods in the pleadings. His allegations were judged sufficiently pleaded, subjected to discovery, argued from the record, and ultimately judged deficient as against the evidentiary proffer of the State Police, bolstered by the qualified immunity they currently enjoy.

Scott Ballock was motivated by the interest of his children. He tried to reunite the family, displaying what Dr. Cooper-Lehki described as co-dependent features. That effort failed, fortunately. Judge Minor, guided by an appointed expert witness, saved the children from abuse. Ellen Costlow took the matter to police officers who should have known better. Based on what Kenny Ice, Jr. told Scott Ballock, who was physically attacked for discovering evidence of an affair between Ellen Costlow and a police officer, together with the circumstances under which the police involved his employer, Scott Ballock asserted a collaboration, a conspiracy to harm him, that in fact accomplished its purpose.

Scott Ballock had so much at stake. He knew he was the target of his estranged wife's malign intent and deceitfulness; an intent and manner confirmed by Dr. Cooper-Lehki, an expert requested by Ellen Costlow. Kenny Ice volunteered he saw evidence of her affair with a police officer and less than a month after that, the State Police have the FBI watching them arrest Scott in front of the family court judge who would decide the custody of his children. Years of criminal charges against him followed, he was denied a speedy trial, then only to have the charges dropped in exchange for a coerced statement that there was probable cause for his arrest. Still, his ex-wife

and a police sergeant collaborated to violate her contractual agreements and a court order, giving the FBI information that was initially cited then abandoned by the ODC once Scott Ballock demonstrated it was unreliable. Ironically, the defense argues the ODC's change of argument as evidence they never did anything to cause Scott Ballock any actionable harm. It is grievous to consider.

Seven lawyers, six paralegals and four law students working as summer associates billed more than 1,500 hours between April of 2017 and May of 2020. Requiring so much to prevail gives credit to the allegations, at least the commitment to the effort.

In reviewing the fee application, the Court's discretion is entitled to deference and the details of the litigation are paramount. This Court's determinations will not be overturned unless clearly wrong. Robinson v. Equifax Info. Servs., LLC, 560 F3d 235, 243 (4th Cir. 2009).

The Fourth Circuit follows the three-step process found in McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), applied in Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec GmbH, 565 Fed. Appx. 232, 235; 2014 U.S. App. LEXIS 6428, **8. First, calculate the lodestar figure by multiplying the reasonable number of hours spent by a reasonable rate. In calculating the lodestar, the court may consider the oft-cited twelve criteria found Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

Second, fees expended on unsuccessful claims must be deducted. Best Med. Int'l, Inc., citing McAfee, 738 F.3d at 88. This is the argument Plaintiff has been making with respect to the Rule 12 motion practice in this action. The State Police acknowledge the Plaintiff substantially prevailed. The United States Magistrate Judge did not find that the motion was frivolous or vexatious. It was profitable, but not substantial.

The third step is to award a percentage the remaining amount, considering the degree of success achieved. The Court has ruled for the State Police on their summary judgment motion, but Scott Ballock was not guilty of bad faith, far from it. The record should bear out that he had a good-faith motivation and made a sincere effort if it required such an array of lawyers, paralegals and law clerks working so many hours to overcome him.

### III. CONCLUSION

Federal civil rights cases are difficult. The police enjoy qualified immunity, privileges, evidence of subjective intent is required for malicious prosecution, and they mount well-funded and competent defenses. Scott Ballock is already depleted by his loss and an award of any substantial percentage of the attorney fees sought will ruin him, financially. Still, his children are safe, and, in his heart, he knows he unsuccessfully pursued a challenging legal cause in which he believed. He did not act in bad faith or pursue a cause he knew to be without merit.

Respectfully submitted this 15th day of June 2020.

/S/ Charles J. Crooks
Charles J. Crooks, Esquire
Crooks Law Firm PLLC
12 Mont Chateau Estates
Morgantown, WV 26505

WV State Bar # 4633
Phone (304) 282-1039

CrooksLawFirmPLLC@Outlook.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SCOTT T. BALLOCK**                                    Case No.:    1:17-CV-52

    Plaintiff,

v.                                                     JURY TRIAL REQUESTED

**ELLEN RUTH COSTLOW**,
**STATE TROOPER MICHAEL KIEF**,

    Defendants.

## CERTIFICATE OF SERVICE

I, Charles J. Crooks, Esq., local counsel for the Plaintiff, Scott T. Ballock, hereby certify that on the 15th day of June, 2020, I electronically filed the certificate of service for the foregoing **"PLAINTIFF SCOTT BALLOCK'S RESPONSE TO DEFENDANTS' KIEF, GASKINS AND BERRY'S SUPPLEMENTAL BRIEF ON COSTS AND ATTORNEY FEES"** with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following:

P. Todd Phillips, Esq.
P. Todd Phillips & Associates
235 High Street
Suite 322
Morgantown, WV 26505
ToddPhillips.law@gmail.com

**Counsel for Defendant,
Ellen Ruth Costlow**

Mark G. Jeffries (WV Bar No. 11618)
Steptoe & Johnson PLLC
400 White Oaks Blvd.
Bridgeport, WV 26330-4500
Mark.jeffries@steptoe-johnson.com

Monté L. Williams (WV Bar No. 9526)
Steptoe & Johnson PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
Monte.williams@steptoe-johnson.com
**Co-counsel for Defendants State Trooper Michael Kief, State Trooper Ronnie M. Gaskins and State Trooper Chris Berry**

/S/ *Charles J. Crooks*
Charles J. Crooks, Esquire