IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SCOTT T. BALLOCK,

        Plaintiff,

v.                                          CIVIL ACTION NO. 1:17CV52
                                                    (Judge Keeley)

ELLEN RUTH COSTLOW,
STATE TROOPER MICHAEL KIEF,
STATE TROOPER RONNIE M. GASKINS,
and STATE TROOPER CHRIS BERRY,

        Defendants.

FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD

### I. BACKGROUND[1]

On April 6, 2017, the plaintiff, Scott T. Ballock ("Ballock"), filed a complaint pursuant to 42 U.S.C. § 1983, naming his former spouse, Ellen Ruth Costlow ("Costlow"), and West Virginia State Troopers Michael Kief ("Kief"), Ronnie M. Gaskins ("Gaskins"), and Chris Berry ("Berry") (collectively, "the State Troopers") as defendants. Ballock's claims stemmed, at least in part, from his arrest in September 2013 in Monongalia County, West Virginia, when he alleges the State Troopers conspired with Costlow to arrest him in connection with a long-running family court dispute.

Following more than two years of contentious litigation, only Costlow and Kief remained as defendants. On December 20, 2019, the

---

[1] A detailed summary of the facts can be found in the Court's December 23, 2019 Memorandum Opinion and Order (Dkt. No. 164).

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

Court granted Kief's motion for summary judgment, granted in part Costlow's motion for summary judgment, dismissed with prejudice Ballock's § 1983 claims, and dismissed without prejudice his remaining state law claims against Costlow (Dkt. No. 163).[2]

On January 6, 2020, pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988, the State Troopers moved for an award of a reasonable attorneys' fee as part of the costs in the § 1983 action (Dkt. No. 165). The Court granted their motion, but reserved its determination regarding the amount of a reasonable fee award. It then directed the parties to brief the issue of whether the State Troopers are entitled to an award for work related to their unsuccessful early motion to dismiss (Dkt. Nos. 175).

### II. THE PARTIES' CONTENTIONS

The State Troopers argue that they are entitled to an award of their entire attorneys' fee even though Ballock substantially prevailed on their motion to dismiss. This is because, overall, Ballock's claims were frivolous and without factual foundation, and the State Troopers ultimately fully prevailed in the case (Dkt. No. 176 at 2, 8). They contend that their entitlement to an attorneys'

---

[2] Three days later, on December 23, 2019, the Court entered an Amended Memorandum Opinion and Order for only editorial purposes (Dkt. No. 164 at 1 n.1).

2

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

fee award does not depend on whether their motion was successful, but rather on whether the time expended pursuing it furthered their successful litigation as a whole. Id. at 11.

Attached to the State Troopers' opening brief was an affidavit of attorney Mark Jeffries ("Jeffries"), of the law firm Steptoe & Johnson, PLLC ("Steptoe"), lead defense counsel in the case (Dkt. No. 176-1). In his affidavit, Jeffries avers that legal fees incurred by the State Troopers have been paid by AIG Claims, Inc. ("AIG"). Id. He provides the names, titles, and billing rates for all attorneys, paralegals, and law students who worked on Ballock's case. Id. Jeffries further itemizes the dates, hours worked, and amount billed, and provides a narrative description of the work performed. Id. Although this itemization initially included partially redacted entries, at the direction of the Court the State Troopers subsequently filed an unredacted description for the Court's review (Dkt. Nos. 182, 183, 183-1).

In his brief opposing the fee award sought by the State Troopers, Ballock contends that unsuccessful motions are analogous to unsuccessful claims for which the State Troopers would not be awarded an attorneys' fee (Dkt. No. 177 at 3). In his view, the time the State Troopers spent pursuing the motion to dismiss (as well as a motion to quash and motion to compel) was not justified

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD

by their ultimate success on summary judgment. Id. His claims were not frivolous, Ballock argues, contending that the 1,500+ hours expended by the State Troopers' attorneys "[give] credit to [his] allegations" (Dkt. No. 181 5).

Ballock also submitted a statement of financial position to support his argument that a fee award will bring hardship to him and his children (Dkt. No. 177 at 2). This statement outlines his monthly income, expenses, assets, and outstanding debt (Dkt. No. 177-1 at 1). The State Troopers, however, contend that Ballock's financial position is not determinative as to whether they are entitled to an attorneys' fee award. But they do concede it may factor into the Court's decision as to what amount to award (Dkt. No. 179 at 2).[3]

### III. DISCUSSION

**A.   Attorneys' Fee for Work Related to Motion to Dismiss, Motion to Quash, and Motion to Compel**

In an action to enforce 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). As the Second Circuit has observed, "[u]nder fee-shifting statutes

---

[3] Ballock concedes that the State Troopers are entitled to an attorneys' fee award related to defending against his state law claims (Dkt. No. 177 at 6).

4

BALLOCK V. COSTLOW, ET AL.                                1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

such as § 1988, 'a prevailing <u>plaintiff</u> ordinarily is to be awarded
attorney's fees in all but special circumstances.'" <u>Carter v. Inc.
Village of Ocean Beach</u>, 759 F.3d 159, 163 (2d Cir. 2014) (emphasis
in original) (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S.
412, 417 (1978)).[4]

By contrast, prevailing defendants may be awarded an
attorneys' fee only if the plaintiff's claims were objectively
"frivolous, unreasonable, or groundless," or "the plaintiff
continued to litigate [the claims] after [they] clearly became so."
<u>Hutchinson v. Staton</u>, 994 F.2d 1076, 1080-81 (4th Cir. 1993)
(quoting <u>Christiansburg</u>, 434 U.S. at 422) (rejecting plaintiff's
argument that claims surviving a motion to dismiss could not have
been frivolous and affirming award for attorneys' fees to
prevailing defendants who obtained only partial success on the
motion). Thus, in making its determination, the Court must review
the entire course of litigation and the overall results obtained.
<u>Christiansburg</u>, 434 U.S. at 421-422; <u>Hensley v. Eckerhart</u>, 461 U.S.
424, 435 (1983).

The State Troopers' entitlement to an attorneys' fee award on

---

[4] In <u>Christiansburg</u>, the Supreme Court interpreted the
attorneys' fee provision of Title VII of the Civil Rights Act of
1964. <u>See</u> 42 U.S.C. § 2000e-5. In <u>Hughes v. Rowe</u>, 449 U.S. 5 (1980)
(per curiam), it applied the <u>Christiansburg</u> analysis to § 1988.

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

## FINAL MEMORANDUM OPINION AND
## ORDER REGARDING ATTORNEYS' FEE AWARD

a partially successful motion turns on a characterization of Ballock's claims and not on whether the motion was successful. Ballock's argument that a defendant's unsuccessful motion is analogous to a plaintiff's unsuccessful cause of action thus is without merit. Nor does the fact that Ballock may have substantially prevailed on the motion to dismiss make its filing premature or unreasonable. Indeed, as even Ballock acknowledges, "motions to dismiss are routinely and appropriately denied in favor of discovery and disposition on the merits" (Dkt. No. 177 at 3). See EEOC v. Freeman, 126 F. Supp. 3d 560, 580 (D. Md. 2015) (citation omitted) (awarding attorneys' fee for work on a motion that was never filed when time spent on the issues "centered on a common core of facts and related legal theories").

In its May 28, 2020 Memorandum Opinion and Order granting the State Troopers' motion for attorneys' fees and costs, the Court previously determined that all of Ballock's claims against the State Troopers were, at the very least, unreasonable, groundless, or frivolous (Dkt. No. 175). His success at the motion to dismiss stage does not disturb this determination. See Hutchinson, 994 F.3d at 1080 (explaining that surviving motions to dismiss and summary judgment does not mean a claim could not have been factually frivolous); Introcaso v. Cunningham, 857 F.2d 965, 967 (4th Cir.

6

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

1988) (explaining that a denial of a motion to dismiss does not decide what the plaintiff and his counsel knew when they filed the complaint). Accordingly, after carefully reviewing the entire course of the parties' litigation, the Court concludes that the State Troopers are entitled to a reasonable attorneys' fee award for work performed pursuing their motion to dismiss.

Although the Court's Order only directed the parties to brief the State Troopers' entitlement to an attorneys' fee award related to their motion to dismiss and state law claims, Ballock has also pursued an argument that such an award is unwarranted for work performed on a motion to quash a subpoena served on the West Virginia State Police and on a motion to compel discovery (Dkt. No. 177 at 4, 7). This is a frivolous argument.

In the first place, the State Troopers actually withdrew the motion to quash after obtaining the result sought, which was to prevent the West Virginia State Police from having to produce the same documents previously provided in response to Ballock's discovery requests (Dkt. No. 64). Further, although the motion to quash was filed on behalf of a non-party custodian, it involved "the same common core of facts or related legal theories" as the main litigation and was "intermingled" with the lawsuit. See Plyler v. Evatt, 902 F.2d 273, 280 (1990).

7

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

**FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD**

And in contrast to Ballock's characterization, the motion to compel was not unsuccessful. In point of fact, the State Troopers obtained most of the documents sought in the motion, barring only privileged communications between Ballock's attorney and his father (Dkt. No. 87 and 91). Therefore, because an attorneys' fee award does not turn on whether the State Troopers substantially prevailed on these motions, they are entitled to an attorneys' fee award for the work performed on these challenged motions.

**B.   Ballock's Financial Position**

Ballock contends that awarding the costs and attorneys' fee sought by the State Troopers will impose a hardship on him and his children (Dkt. No. 177 at 2). In the one-page financial statement he submitted, he lists his monthly income, including his salary and the child support he receives from Costlow ($2,473.00); his total monthly expenses ($2,836.00); his assets, including vehicles, his home, and banking accounts; and outstanding debt ($4,500) (Dkt. No. 177-1). Notably, although notarized, the statement is not supported by any documentary evidence. Id.

The State Troopers argue correctly that, although Ballock's financial position does not figure into a decision as to whether to award an attorneys' fee under § 1988(b), it may be a factor in the

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

Court's decision about the amount of fee to be awarded. <u>Arnold v. Burger King Corp.</u>, 719 F.2d 63, 67-68 (4th Cir. 1983). The Court has discretion to reduce an otherwise reasonable attorneys' fee award based on a party's financial situation after due consideration of the dual purposes of equity and deterrence in granting an attorneys' fee award. <u>Id.</u> The Fourth Circuit has explained that "the policy of deterring frivolous suits is not served by forcing the misguided . . . plaintiff into financial ruin." <u>Id.</u> at 68. The fee award is "a conservative tool, to be used sparingly" when "the plaintiff presses a claim which he knew or should have known was groundless, frivolous or unreasonable." <u>Id.</u> at 65 (citing <u>Christiansburg</u>, 434 U.S. at 421-22).

Although the Court's award of an attorneys' fee need not include a finding that Ballock brought his suit in bad faith, his motive for bringing the action "may shed light on the degree of frivolousness," which impacts the Court's decision regarding whether to reduce an award based on his financial position. <u>Id.</u> at 66, 68 n.7 (citing same). Accordingly, the Court turns to consider Ballock's financial position, the degree of frivolousness of his case, evidence of bad faith, and other factors relevant to calculating an attorneys' fee award.

**BALLOCK V. COSTLOW, ET AL.**                                    **1:17CV52**

**FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD**

**C.   Reasonable Attorneys' Fee to be Awarded**

Calculating an attorneys' fee award involves a three-step process. McAfee v. Boczar, 738 F.3d 81, 88 (2013), as amended (Jan. 23, 2014). The Court first must calculate the lodestar figure by determining the number of reasonable hours expended and multiplying it by a reasonable hourly rate. Robinson v. Equifax Information Svcs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). Second, when appropriate, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. (citing same). Finally, the Court may award "some percentage of the remaining amount depending on the degree of success enjoyed." Id.; McAfee, 738 F.3d at 92.

**i.   Lodestar Figure**

To ascertain what is reasonable in terms of the rates charged and the hours expended, courts are guided by the following factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy

10

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

> and the results obtained; (9) the experience,
> reputation, and ability of the attorney; (10)
> the undesirability of the case within the
> legal community in which the suit arose; (11)
> the nature and length of the professional
> relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's Inc., 557 F.2d 216, 226 n.28 (4th Cir. 1978)

(adopting twelve factors set forth in Johnson v. Ga. Highway

Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on

other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

These factors need not be strictly applied in every case. EEOC

v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990); see also

Arnold, 719 F.2d at 67 n.5 (explaining that certain factors may not

apply to prevailing defendants). They are "neither the exclusive

means of determining the amount of attorneys' fees nor an

exhaustive list of considerations to guide courts in assessing

attorneys' fees." Arnold, 719 F.2d at 67-68.

### a.   Reasonable Hourly Rates

As to the reasonableness of the rates charged, the State

Troopers must show that the requested hourly rates are consistent

with the "prevailing market rates in the relevant community for the

type of work" performed. McAfee, 738 F.3d 91 (citing Plyler, 902

F.2d at 277). Although affidavits of other lawyers familiar with

BALLOCK V. COSTLOW, ET AL.                              1:17CV52

FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD

the skills of the fee applicants and the community are strong
evidence of market rates, evidence of what was actually charged and
paid may also be considered. See Depaoli v. Vacation Sales Assocs.,
489 F.3d 615, 622 (4th Cir. 2007) (considering what the attorney
charged client as evidence of market rate); Rum Creek Coal Sales,
Inc. v. Caperton, 31 F.3d 166, 179 (4th Cir. 1994) (same). But see
Robinson, 560 F.3d at 245 (explaining that affidavits of other
attorneys are evidence of the market rate). Further, the Court may
also consider its own knowledge and experience of the relevant
market, Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin,
LLC, 747 F. Supp. 2d 568, 593 (W.D.N.C. 2010), given its "close and
intimate knowledge of the efforts expended and the value of the
services rendered" in the case. Plyler, 902 F.2d at 277-78.

    In his affidavit, Jeffries lists rates ranging from $105.00
per hour for paralegals and summer associates to $179.00 per hour
for a member of the firm (Dkt. No. 176-1 at 3). He avers that,
aside from $4,439.00 for worked performed in May 2020, AIG has paid
these legal fees pursuant to a liability policy issued by the West
Virginia Board of Risk and Insurance Management. Id. at 2-3.

    Ballock does not dispute that the rates charged by counsel for
the State Troopers are reasonable. Furthermore, although the State
Troopers have not provided an independent attorney affidavit

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD

attesting to the reasonableness of the rates, Jeffries has
proffered that AIG has paid the fees charged except for those
incurred in May 2020. The Court finds this strongly evinces the
reasonableness of the rates charged. In addition, the Court's
knowledge of the relevant legal market in the Northern District of
West Virginia persuades it that these rates are at or below
prevailing rates in the community.

The rates are also reasonable in light of the relevant Johnson
factors. Regarding the skill required to perform the legal services
rendered, counsel's use of paralegals and summer associates at the
lower rates indicates a prudent effort to keep the rates as low as
possible. As well, these rates are reasonable given the difficulty
of the issues raised in this case. Among those issues were factual
disputes involving Ballock's former employment with the Federal
Bureau of Investigation ("FBI"), West Virginia state criminal and
family court proceedings, and the materiality of thousands of
documents containing email correspondence. Ballock sought
compensatory, special, and punitive damages for which the State
Troopers ultimately were found not liable. Thus, the State Troopers
obtained complete success.

In light of this, billing rates ranging from $105.00 to
$179.00 per hour are reasonable because (1) Ballock has raised no

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

objection to them, (2) AIG has paid fees based on them, (3) and the relevant Johnson factors weigh in favor of accepting them as reasonable. The Court, however, further concludes that the $4,439.20 billed in May 2020 is not reasonable inasmuch as AIG did not pay for the 24.8 hours of work performed during that month.

### b. Reasonable Number of Hours Expended

Jeffries' affidavit also includes an itemized spreadsheet of the time each attorney, law student, or paralegal worked, including the date, hours worked, amount billed, and narrative description of the work performed (Dkt. No. 183-1). For each line item, the billing rate and time expended are multiplied to calculate the amount billed for that item. In total, the State Troopers have accounted for 1512.70 hours, resulting in a fee request of $242,197.70.[5] Id. at 52.

Ballock's sole contention as to the number of hours expended is that "[requiring so much to prevail gives credit to [his] allegations, at least the commitment to the effort" (Dkt. No. 181

---

[5] Jeffries avers that the total fee for time Steptoe expended in defending this case was actually $307,854.90, but that the itemization has been reduced by $65,657.20 to remove "duplicative efforts and time spent on tasks that were not directly related to defending the claims in this matter, such as litigation plans and budgets required by AIG, and for other activity that counsel believes should not be included in the motion for attorney fees pending before the Court" (Dkt. No. 176-1 at 4).

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD

at 5). He argues the hours worked to "overcome" his legal arguments
establish that "he had a good faith motivation and made a sincere
effort." Id. at 6. Not only is this argument illogical, it also is
recursive insofar as his continual insistence on his case's merits
further establishes that frivolous arguments may require the
expenditure of more time, rather than less, by opposing counsel.
"Although in some instances a frivolous case will be quickly
revealed as such, it may sometimes be necessary for defendants to
'blow away the smoke screens the [plaintiff has] thrown up' before
the defendants may prevail." Introcaso, 857 F.2d at 967 (quoting
Hicks v. Southern Md. Health Sys. Agency, 805 F.2d 1165, 1167-68
(4th Cir. 1986)).

This is exactly the case here. Ballock's attempts to re-
litigate his underlying case in an effort to challenge the Court's
prior rulings and the amount of hours expended by opposing counsel
are misplaced. "A request for attorneys' fees should not result in
a second major litigation." Hensley, 461 U.S. at 437. Ballock's
efforts do nothing to persuade the Court that the hours expended
were unreasonable.

Turning to the Johnson factors, the Court must consider
whether the number of hours expended is reasonable given the
difficulty of the questions raised in the case. This protracted

15

BALLOCK V. COSTLOW, ET AL.                                1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

litigation involved fourteen claims for relief. Ballock filed a pro
se complaint in April 2017, and by the time he filed his third
amended complaint, in December 2017, he had retained counsel (Dkt.
Nos. 1, 49). The case involved multiple discovery motions, as well
as in camera review of disputed discovery documents (Dkt. Nos. 53,
71, 81, 82, 85, 91, 98). The evidence was extensive. Accordingly,
1,500+ hours expended in more two and a half years of hard-fought
litigation is not per se unreasonable.

### c. Lodestar Calculation

After carefully considering the relevant Johnson factors and
subtracting $4,439.20 for unpaid fees from the total fee submitted
of $242,197.70, the resulting lodestar figure is $237,758.50. This
represents the number of reasonable hours expended (1512.7),
multiplied by the reasonable hourly rates of $105.00-$179.00 per
hour, excluding the unpaid $4,439.20 for work performed in May
2020. Robinson, 560 F.3d at 243.

### ii.  Deduction for Unsuccessful Claims

Following the Court's determination of the lodestar figure, it
must "subtract fees for hours spent on unsuccessful claims
unrelated to successful ones." Id. (citing Grissom, 549 F.3d at
320). Because the State Troopers have successfully defended against

16

BALLOCK V. COSTLOW, ET AL.                          1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

all of Ballock's claims, the Court makes no such deduction.

### iii. Discretionary Adjustments

In the final step in the attorneys' fee analysis, the Court must award "some percentage of the remaining amount depending on the degree of success enjoyed." Id.; McAfee, 738 F.3d at 92 (describing the third step as a consideration of "the relationship between the extent of success and the amount of the fee award"). This typically involves a comparison of the amount of damages sought to the amount awarded, Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005), which is an analysis more directly applicable to prevailing plaintiffs.

Where, as here, the defendants have prevailed, the Court has discretion to reduce the award in light of mitigating factors, including the difficulty of the case, the motivation of the plaintiff, and the relative economic status of the litigants. Arnold, 719 F.2d at 68. Notably, the Supreme Court "has indulged a strong presumption that the lodestar number represents a reasonable attorneys' fee." McAfee, 738 F.3d at 88-89 (citing Perdue v. Kenny A. ex rel. Winn, 599 U.S. 542, 130 (2010)).

As already noted, the State Troopers' success was complete. Even though Ballock voluntarily stipulated to the dismissal of

BALLOCK V. COSTLOW, ET AL.                                1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

Gaskins, this occurred well after the filing of the motion for summary judgment and within a month of trial (Dkt. No. 146). Gaskins' dismissal, therefore, did not reduce the reasonable time spent by his attorneys to defend against Ballock's claims.

The difficulty of the case is not a mitigating factor warranting a fee reduction. This litigation was, without question, difficult and protracted, and the frivolous nature of Ballock's claims made the defense of the case even more laborious.

Nor do Ballock's motivations support a reduction in a fee award. His claims against the State Troopers were unreasonable, groundless, or frivolous from the outset. The Fourth Circuit's observation that a plaintiff's "insistent prosecution of the claim[s] tested the borders of subjective bad faith" is applicable here. Arnold, 719 F.2d at 69. Bad faith, in this context, "refers to [his] motivation for bringing groundless suits to accomplish collateral purposes, such as . . . harassment." Id. at 66.

As this Court has previously concluded, abundant evidence supports the conclusion that Ballock pursued this litigation to harass Costlow, his ex-wife, and the State Troopers he perceived were protecting her (Dkt. No. 175 at 9). For example, Berry's only connection to this case was Ballock's speculation that an inappropriate relationship existed between him and Costlow. And as

18

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

to Gaskins, Ballock alleged defamation and slander even though he knew the statements in the police report Gaskins had prepared merely recited Costlow's complaints (Dkt. No. 114-2 at 19-20).

Finally, as to Kief, Ballock knew from the outset that Kief had legitimate grounds, including probable cause, on which to base his arrest of Ballock. By arguing otherwise, Ballock sought to mislead this Court in order to gain an unfair advantage in his civil action. Lowery v. Stovall, 92 F.3d 219, 225 (4th Cir. 1996) (holding that a plaintiff who changed his position from an underlying state criminal case was "blowing hot and cold as the occasion demands" in order to gain an unfair advantage in his § 1983 action) (citation omitted). Ballock also knew that any communications between Kief and the FBI were not a proximate cause of the termination of his employment.

Tellingly, the underlying state criminal proceedings giving rise to Ballock's lawsuit involved harassment charges, but the FBI terminated Ballock for "lack of candor or lying under oath" (Dkt. Nos. 114-14, 116-1 at 7, 116-2, 116-6 through 116-15). Also telling is the fact that Ballock has continued to insist on the merits of his case long after its frivolousness was established.

Ballock's motives in bringing and pursuing this case were more than misguided. There is ample evidence of bad faith establishing

19

BALLOCK V. COSTLOW, ET AL.                                    1:17CV52

FINAL MEMORANDUM OPINION AND
ORDER REGARDING ATTORNEYS' FEE AWARD

a high degree of frivolousness. Christiansburg, 434 U.S. at 422 ("[I]f a plaintiff is found to have brought or continued . . . claim(s) in bad faith, there will be an even stronger basis for charging him with the attorneys' fees incurred by the defense."). Accordingly, deterrence is an important factor in this fee award, and Ballock's bad motives do not support a departure from the lodestar figure.

Nor does Ballock's financial position, or the relative financial status of the parties, persuade the Court that a reduction is warranted. Even taking Ballock's statement of financial position as true, the status of the parties, as individuals, is relatively equal. In addition, Ballock's concerns for his finances did not stop him from hiring his own attorney to prosecute his case--even though prevailing in his suit would not have guaranteed that the FBI would re-hire him. Thus, Ballock, who is gainfully employed, can pay the State Troopers a reasonable attorneys' fee on such payment terms as may be arranged. His financial situation therefore does not outweigh the extent of the State Troopers' success, the difficulty of the case, or the high degree of frivolousness that attended the allegations and pursuit of this litigation. The Court therefore finds no reason to depart from the lodestar figure in its attorneys' fee award.

20

**BALLOCK V. COSTLOW, ET AL.**                              **1:17CV52**

### FINAL MEMORANDUM OPINION AND
### ORDER REGARDING ATTORNEYS' FEE AWARD

### IV. CONCLUSION

After careful consideration, for the reasons discussed the
Court concludes that **$237,758.50** is a reasonable attorneys' fee
award and **ORDERS** that Ballock pay the State Troopers this amount
for such fees incurred in defending this case. This is in addition
to the $5,715.79 in costs other than the attorneys' fee award that
the Court has previously ordered (Dkt. No. 175).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this
Memorandum Opinion and Order to counsel of record and to strike
this case from the Court's active docket.

DATED: September 2, 2020.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE